No. 23-2842

In the

# United States Court of Appeals
### for the Seventh Circuit

PAULA WALLRICH, et al.,

*Petitioners-Appellees*,

v.

SAMSUNG ELECTRONICS AMERICA, INC., ET AL.,

*Respondents-Appellants*.

On Appeal from the United States District Court for the
Northern District of Illinois, Case No. 1:22-cv-5506,
Hon. Harry D. Leinenweber, *United States District Judge*

## MOTION TO STAY THE DISTRICT COURT'S ORDER; REQUEST FOR ADMINISTRATIVE STAY UNTIL THE COURT RULES; AND MOTION TO EXPEDITE THE APPEAL

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney
Jeremy Patashnik
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Randall W. Edwards
Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center,
  28th Floor
San Francisco, CA 94111

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

*Counsel for Respondents-Appellants Samsung Electronics America, Inc., and
Samsung Electronics, Co., Ltd. (additional counsel information on inside cover)*

*Additional counsel information continued from front cover*

Mark Howard Boyle
DONOHUE BROWN
  MATHEWSON & SMYTH LLC
131 South Dearborn Street,
  Suite 1600
Chicago, IL 60603

Ashley M. Pavel
O'MELVENY & MYERS LLP
610 Newport Center Drive,
  17th Floor
Newport Beach, CA 92660

James L. Kopecky
KOPECKY SCHUMACHER
  ROSENBURG LLC
120 North LaSalle Street,
  Suite 2000
Chicago, IL 60601

*Counsel for Respondents-Appellants Samsung Electronics America, Inc., and Samsung Electronics, Co., Ltd.*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Shay Dvoretzky      Date: 10/25/2023

Attorney's Printed Name: Shay Dvoretzky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address: 1440 New York Avenue, NW

Washington, DC 20005

Phone Number: (202) 371-7370      Fax Number: (202) 661-2370

E-Mail Address: shay.dvoretzky@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Samsung Electronics America, Inc. ("SEA")

    Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

    Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Parker Rider-Longmaid     Date: 10/25/2023

Attorney's Printed Name: Parker Rider-Longmaid

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address: 1440 New York Avenue, NW

    Washington, DC 20005

Phone Number: (202) 371-7061     Fax Number: (202) 661-4061

E-Mail Address: parker.rider-longmaid@skadden.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kyser Blakely      Date: 10/25/2023

Attorney's Printed Name: Kyser Blakely

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: 1440 New York Avenue, NW

Washington, DC 20005

Phone Number: (202) 371-7398      Fax Number: (202) 371-8398

E-Mail Address: kyser.blakely@skadden.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Michael W. McTigue Jr.     Date: 10/25/2023

Attorney's Printed Name: Michael W. McTigue Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000     Fax Number: (212) 735-2000

E-Mail Address: michael.mctigue@skadden.com

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Meredith C. Slawe     Date: 10/25/2023

Attorney's Printed Name: Meredith C. Slawe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000     Fax Number: (212) 735-2000

E-Mail Address: meredith.slawe@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Samsung Electronics America, Inc. ("SEA")

    Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

    Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Kurt Wm. Hemr     Date: 10/25/2023

Attorney's Printed Name: Kurt Wm. Hemr

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address: 500 Bolyston Street

    Boston, MA 02116

Phone Number: (617) 573-4800     Fax Number: (617) 573-4822

E-Mail Address: kurt.hemr@skadden.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Colm P. McInerney    Date: 10/25/2023

Attorney's Printed Name: Colm P. McInerney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000    Fax Number: (212) 735-2000

E-Mail Address: colm.mcinerney@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jeremy Patashnik    Date: 10/25/2023

Attorney's Printed Name: Jeremy Patashnik

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000    Fax Number: (212) 735-2000

E-Mail Address: jeremy.patashnik@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Samsung Electronics America, Inc. ("SEA")

    Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

    Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Randall W. Edwards      Date: 10/25/2023

Attorney's Printed Name:  Randall W. Edwards

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address:  Two Embarcadero Center, 28th Floor

    San Francisco, CA 94111-3823

Phone Number: (415) 984-8700      Fax Number:  (415) 984-8701

E-Mail Address: redwards@omm.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Matthew D. Powers    Date: 10/25/2023

Attorney's Printed Name:  Matthew D. Powers

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address:  Two Embarcadero Center, 28th Floor

San Francisco, CA 94111-3823

Phone Number: (415) 984-8700    Fax Number:  (415) 984-8701

E-Mail Address: mpowers@omm.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jonathan D. Hacker     Date: 10/25/2023

Attorney's Printed Name: Jonathan D. Hacker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐  No ☑

Address: 1625 Eye Street, NW

Washington, DC 20006-4061

Phone Number: (202) 383-5300     Fax Number: (202) 383-5414

E-Mail Address: jhacker@omm.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ashley M. Pavel          Date: 10/25/2023

Attorney's Printed Name: Ashley M. Pavel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✔]

Address: 610 Newport Center Drive, 17th Floor,

Newport Beach, CA 92660-6419

Phone Number: (949) 823-6900          Fax Number: (949) 823-6994

E-Mail Address: apavel@omm.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ..........................................i

TABLE OF AUTHORITIES................................................................... xv

INTRODUCTION ...............................................................................1

STATEMENT ....................................................................................6

    A.    Factual background..........................................................6

        1.    Samsung's arbitration agreement provides that the arbitration process is governed by the AAA Rules. ...........6

        2.    The AAA has complete discretion over the arbitration process, including administrative fees. ............6

    B.    Procedural background ...................................................8

        1.    Appellees' counsel file 50,000 identical arbitration demands against Samsung. ....................................8

        2.    Appellees move to compel arbitration, and the district court compels arbitration and the payment of fees. ...................................................................10

ARGUMENT....................................................................................12

I.    The Court should issue a stay pending appeal. ....................................12

    A.    Samsung is likely to succeed on the merits. ................................12

        1.    Appellees failed to meet their burden of showing that they each had a valid arbitration agreement with Samsung. ........................................................12

        2.    Arbitral-fee issues are for the arbitral body, not a court, as the arbitration agreements here confirm............15

# TABLE OF CONTENTS
(continued)

Page

3.   No court can second-guess the AAA's interpretation and application of its rules governing administrative fees. ...............................21

B.   Samsung will suffer irreparable harm. ........................................22

C.   A stay would not substantially harm Appellees, and the public interest supports a stay.......................................25

II.   The Court should expedite the appeal. ...................................26

CONCLUSION ........................................................................26

CERTIFICATE OF COMPLIANCE ....................................28

CERTIFICATE OF SERVICE .................................................29

INDEX OF SPECIAL APPENDIX........................................31

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.D. v. Credit One Bank*,
  885 F.3d 1054 (7th Cir. 2018) ..............................................................12

*A & F Enterprises, Inc. II v. IHOP Franchising LLC*
  (*In re A & F Enterprises, Inc. II*),
  742 F.3d 763 (7th Cir. 2014) ................................................................25

*Adams v. Postmates, Inc.*,
  414 F. Supp. 3d 1246 (N.D. Cal. 2019) ................................................19

*Andrews v. Chevy Chase Bank*,
  545 F.3d 570 (7th Cir. 2008) ................................................................26

*BG Group, PLC v. Republic of Argentina*,
  572 U.S. 25 (2014) ................................................... 15, 17, 18, 19, 20

*Chase Bank USA v. Swanson*,
  No. 10-cv-06972, 2011 WL 529487
  (N.D. Ill. Feb. 4, 2011) ........................................................................14

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*,
  809 F.3d 746 (3d Cir. 2016) .................................................................19

*Classic Components Supply, Inc. v.*
  *Mitsubishi Electronics America, Inc.*,
  841 F.2d 163 (7th Cir. 1988) ................................................................24

*Coinbase, Inc v. Bielski*,
  599 U.S. 736 (2023) ...................................................................... 23, 24

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
  588 F.3d 884 (5th Cir. 2009) .......................................... 4, 18, 19, 21, 22, 26

*Graphic Communications Union, Chicago Paper Handlers'*
  *& Electrotypers' Local No. 2 v. Chicago Tribune Co.*,
  779 F.2d 13 (7th Cir. 1985) ..................................................................24

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019)................................................................ 4, 15, 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Illinois League of Advocates for the Developmentally Disabled*
   *v. Illinois Department of Human Services,*
   803 F.3d 872 (7th Cir. 2015) .................................................................22

*James v. Hale,*
   959 F.3d 307 (7th Cir. 2020) .................................................................13

*Kass v. PayPal Inc.,*
   75 F.4th 693 (7th Cir. 2023) .......................................................... 12, 13

*Lamps Plus, Inc. v. Varela,*
   139 S. Ct. 1407 (2019).........................................................................16

*Lifescan, Inc. v. Premier Diabetic Services, Inc.,*
   363 F.3d 1010 (9th Cir. 2004) ....................................................... 20, 21

*Lumbermens Mutual Casualty Co. v.*
   *Broadspire Management Services, Inc.,*
   623 F.3d 476 (7th Cir. 2010) ....................................... 17, 18, 19, 20

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
   514 U.S. 52 (1995)...............................................................................25

*McClenon v. Postmates Inc.,*
   473 F. Supp. 3d 803 (N.D.Ill. 2020).....................................................19

*Nken v. Holder,*
   556 U.S. 418 (2009).............................................................................12

*Oxford Health Plans LLC v. Sutter,*
   569 U.S. 564 (2013).............................................................................21

*PaineWebber Inc. v. Farnam,*
   843 F.2d 1050 (7th Cir. 1988) .............................................................24

*Palmer v. City of Chicago,*
   806 F.2d 1316 (7th Cir. 1986) .............................................................22

*Philip Morris USA Inc. v. Scott,*
   561 U.S. 1301 (2010)...........................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Protect Our Parks, Inc. v. Buttigieg,*
    10 F.4th 758 (7th Cir. 2021)................................................................26

*Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.),*
    631 F.3d 869 (7th Cir. 2011) ...............................................................24

*Ty, Inc. v. Jones Group, Inc.,*
    237 F.3d 891 (7th Cir. 2001) ...............................................................25

*Wirtz v. City of South Bend,*
    669 F.3d 860 (7th Cir. 2012) ...............................................................26

## STATUTES

Federal Arbitration Act,
    9 U.S.C. § 1 *et seq.*.................................................................. 2, 5, 25
    9 U.S.C. § 4................................................................................ 2, 10, 12

## RULE

Federal Rule of Civil Procedure 56....................................................13

## OTHER AUTHORITY

*Practitioner's Handbook for Appeals to the United States
    Court of Appeals for the Seventh Circuit* (2020 ed.),
    https://www.ca7.uscourts.gov/rules-procedures/Handbook.pdf.........26

## INTRODUCTION

Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. (collectively, Samsung), respectfully submit this motion to stay the district court's order (Order), *see* SA19-53, and request that the Court issue an administrative stay until it rules on the stay request. Samsung also requests that the Court expedite the appeal. Samsung proposes filing its opening brief by November 14, 2023, and respectfully requests that Appellees' brief be due by December 12, 2023, with Samsung's reply due December 22, 2023, and oral argument scheduled at the earliest opportunity.

Appellees' counsel initiated 50,000 identical arbitration demands against Samsung on behalf of alleged owners of unspecified Samsung devices. The claims are frivolous, premised on demonstrably false assertions about how Samsung devices work. Counsel submitted them on behalf of thousands of individuals with threshold deficiencies, like being deceased or already represented by other counsel. Appellees' counsel hoped to leverage the threat of over a hundred million dollars in nonrefundable arbitration fees to extort a massive settlement to line their pockets.

So Samsung did exactly what the arbitration agreements allowed it to do under the American Arbitration Association (AAA) rules (which the

agreements incorporate): decline to pay the fees and allow the other party, if it truly wants to arbitrate, to front those fees. Samsung thus stood ready to arbitrate if the claimants (or their counsel) were willing to advance the fees for the claims they were asserting. But when the AAA gave Appellees the opportunity to pay and proceed, they refused. The AAA exercised its discretion to close the arbitrations, letting Appellees pursue their claims in court, where Samsung was willing to fight the meritless claims without the extortionate pressure of nonrefundable mass-arbitration fees. With arbitration foreclosed, Appellees asked the district court to compel arbitration and require Samsung to pay the fees under the Federal Arbitration Act (FAA), 9 U.S.C. § 4. The district court agreed.

That was grave error, and it threatens Samsung with imminent irreparable harm, warranting both a stay pending appeal and expedited proceedings. In compelling arbitration and ordering Samsung to pay the fees, the district court found—without *any* evidence—that all Appellees had valid arbitration agreements with Samsung and then rewrote those arbitration agreements, which gave the AAA exclusive authority over fee questions. The court also openly disregarded appellate precedent making

clear that administrative-fee issues are for arbitral bodies and arbitrators, not courts.

Samsung is likely to succeed on appeal. But unless this Court grants a stay, the Order will require Samsung to pay $4 million in unrecoverable administrative fees imminently — a figure that could surpass $100 million as the arbitrations proceed. The Court should grant a stay. And for the same reasons, the Court should also expedite the appeal.

**1.** Samsung will likely succeed on appeal. *First*, this Court will likely hold that the district court erred in ruling, based on *no evidence*, that Appellees met their burden to establish that they *each* assented to an arbitration agreement with Samsung. The district court merely accepted "the word of over 30,000 individuals," SA40 — meaning the allegations of their counsel — and ruled against Samsung without citing any evidence — no affidavits, declarations, or other proof. The court also assumed that Samsung has a comprehensive customer list that it could use to verify whether all Appellees are Samsung device purchasers, but that is simply not true. The court cited no record evidence to support its finding — because there is none.

*Second*, this Court will likely hold that the district court erred in ruling that it had authority to order Samsung to pay administrative arbitral fees.

- 3 -

The arbitration agreement expressly provides that administrative fees "shall be determined according to AAA rules." SA56. That means only the AAA can decide whether the parties owe administrative fees and, if so, how much they owe and when payment is due. But the district court rewrote these "clear and unmistakable" terms, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), giving *itself* the authority to determine whether and when Samsung must pay administrative filing fees. In other words, it rewrote the contract.

Even if the parties had not expressly agreed to have the AAA resolve fee issues, those issues would *still* be committed to the AAA, *not* the courts, because they are procedural matters, as the Fifth Circuit and other courts have recognized. *See, e.g.*, *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887-88 (5th Cir. 2009). The district court rejected those decisions. *See* SA49-50. But this Court should not create a circuit split. Regardless, this contrary authority shows that Samsung has a substantial case on the merits.

*Third*, the Court will likely hold that the district court erred in ordering Samsung to pay administrative filing fees after the AAA had decided *not* to order Samsung to pay those fees. The AAA acted well within its authority

when it decided not to order Samsung to pay the administrative fees immediately. The district court, by ordering Samsung to pay those fees immediately, usurped the AAA's authority and overrode its decision.

2.     Samsung will suffer irreparable harm without a stay. Having to pay unrecoverable money is irreparable harm, as the Court's precedents confirm. Samsung may be forced to pay exorbitant *nonrefundable* fees now, and it may have to continue paying such fees, exceeding $100 million, as the arbitrations play out.

3.     Any inconvenience to Appellees from delaying arbitration does not outweigh Samsung's substantial case on the merits or the irreparable harm it will suffer from paying astronomical fees it can never recover. The public's interest in enforcing the FAA and seeing that arbitration agreements are enforced according to their terms also favors a stay. And any delay should be brief given Samsung's request for expedited proceedings.

4.     The parties need a speedy answer to the important questions presented in this appeal. And given the irreparable harm the order inflicts on Samsung, coupled with Samsung's strong likelihood of success, this Court should expedite the appeal, even if it denies a stay.

## STATEMENT

### A.    Factual background

#### 1.    Samsung's arbitration agreement provides that the arbitration process is governed by the AAA Rules.

"Samsung designs, manufactures, and sells devices, including smartphones and tablets." SA20. Samsung device owners agree to arbitrate "all disputes" with "Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product." SA56. Every arbitration "shall be conducted according to [AAA rules]." *Id.* The AAA has the authority to "decide all issues of interpretation and application of [the arbitration agreement]." *Id.* Additionally, "[a]dministrative … and arbitrator fees" "shall be determined according to AAA rules" when the "total damage claims … exceed $5,000.00." *Id.*

#### 2.    The AAA has complete discretion over the arbitration process, including administrative fees.

In certain arbitrations, including the arbitrations here, *see* Dist. Ct. Doc. 27-3, at 2, the AAA applies the Consumer Arbitration Rules (SA60-107) and the Supplementary Rules for Multiple Case Filings (SA110-19) (collectively, the AAA Rules). The AAA has made clear that it "has the discretion to apply or not to apply the [AAA Rules]." SA65. That "discretion" extends to "all

AAA administrative fees," like "filing fees, case management fees and hearing fees." SA93. For example, "the AAA retains the discretion to interpret and apply [the] fee schedule to a particular case or cases." *Id.* And the "AAA, in its sole discretion, may consider an alternative payment process for multiple case filings." SA95. ("Multiple case filings" are when the same or coordinated counsel files 25 or more similar demands against the same respondents. *See* SA113.)

Discretion aside, the default AAA rules governing administrative fees are simple. Take filing fees: each party has certain predetermined filing-fee obligations and those fees are nonrefundable. SA92-95. "Filing fees are non-refundable," the AAA Rules explain, even if "the cases are closed due to settlement or withdrawal." SA95.

Sometimes, parties do not pay filing fees (or other administrative fees). But the AAA Rules provide a rule for nonpayment, specifically in the context of multiple case filings: "the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA." SA118. If a party advances payment, the arbitration will proceed and the advancing party, if successful in arbitration, may recover the fees from the other party. *See* SA87. But if the fees are not paid—by any party—before

an arbitrator is appointed, "the AAA may suspend or terminate those proceedings." SA118; *see* SA91. "Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." SA69.

### B. Procedural background

#### 1. Appellees' counsel file 50,000 identical arbitration demands against Samsung.

Appellees' counsel simultaneously filed 50,000 individual claims with the AAA as part of a scheme to extract a massive settlement from Samsung. *See* SA23; Dist. Ct. Doc. 27, at 13-20. When their demand for at least $50 million went unmet, *see* Dist. Ct. Doc. 27-11, at 2, they sought "to bury Samsung under the weight of hundreds of millions of dollars in arbitration fees" and use that financial "leverage" to "pressure" Samsung into settlement, Dist. Ct. Doc. 26, at 8. Each demand was identical, alleging the same state-law violations and seeking "at least $15,000" in "statutory damages." Dist. Ct. Doc. 1-11, at 34. Moreover, Appellees' counsel made demands on behalf of individuals unable to seek relief, like people who had died or are already represented by other counsel. Dist. Ct. Doc. 27, at 21. And while each

claimant claimed to be a Samsung device purchaser, *see, e.g.*, Dist. Ct. Doc. 1-11, at 2, not one provided any evidence.

Appellees' counsel paid the claimants' portion of the filing fees. *See* SA23-24. Samsung paid the filing fees for the 14 California residents' claims because of the unique requirements of California law. SA24. But Samsung elected not to pay the nonrefundable filing fees for the other 49,986 claimants, totaling more than $4 million, because (i) the AAA Rules provide a solution for nonpayment in multiple case filings, and (ii) the demands were frivolous because they rested on, among other things, demonstrably false claims about how Samsung devices operate. *See* Dist. Ct. Doc. 1-15, at 2-4; Dist. Ct. Doc. 27-15, at 2-3. But Samsung underscored that it "will participate" in arbitration should the claimants advance the unpaid fees, consistent with the AAA Rules. Dist. Ct. Doc. 1-15, at 4; Dist. Ct. Doc. 27-15, at 2-3. Samsung also stood ready to address those claims in court—where other counsel have filed a putative class action on the very same issues. *See G.T. v. Samsung Electronics America, Inc.*, No. 1:21-cv-4976 (N.D. Ill.).

The AAA noted that Samsung invoked the AAA Rules and opted not to pay the outstanding filing fees. *See* Dist. Ct. Doc. 27-16, at 2. But the AAA did not *order* Samsung to pay those fees. It recognized instead that the

claimants could advance "Samsung's portion of the filing fees so that the matters may proceed." *Id.* And while the AAA also acknowledged that the claimants had thus far declined to advance the fees, it gave them one last opportunity to do so to pursue arbitration. *Id.* The claimants again declined, so the AAA closed the 49,986 non-California claims, *see* SA25-26, rejecting Appellees' request to stay them, Dist. Ct. Doc. 27-17, at 2, thus triggering the right of "either party" to "submit its dispute to the appropriate court for resolution," Dist. Ct. Doc. 27-16, at 2.

### 2. Appellees move to compel arbitration, and the district court compels arbitration and the payment of fees.

**a.** Appellees—the 49,986 non-California residents—filed a single petition and motion to compel arbitration before the district court under 9 U.S.C. § 4. They asked the court to order Samsung to arbitrate and pay the filing fees. Dist. Ct. Docs. 1-2.

**b.** After dismissing 14,335 Appellees on venue grounds, SA31-36, the district court ordered Samsung to arbitrate the remaining 35,651 disputes and pay the filing fees, SA19, SA53.

The court first ruled that Appellees met their burden to show that they each had a valid arbitration agreement with Samsung. SA39-41. The court

did not cite *any* evidence supporting that ruling, but instead just accepted "the word of over 30,000 individuals," SA40—*i.e.*, Appellees' counsel's unverified, generic mass assertion.

The court then ruled that Samsung breached the arbitration agreement by invoking the AAA Rules and not paying the filing fees. *See* SA43-47. Although it had earlier recognized that the contract delegates "all issues of interpretation and application" to the AAA, SA42-43, the court ruled that *it* could order Samsung to pay the filing fees, reasoning that fee disputes are "issues of substantive arbitrability … for a court to decide," not "issues of procedural arbitrability" for an arbitrator to decide. SA48. The court acknowledged that its ruling on the fee issue conflicts with other courts' decisions, including Fifth Circuit precedent. *See* SA49-50.

**c.** On September 26, 2023, Appellees' counsel filed arbitration demands on behalf of 35,610 Appellees. Samsung expects the AAA to invoice it shortly for filing fees on those demands. On October 5, 2023, Samsung sought a stay pending appeal in the district court. *See* Dist. Ct. Doc. 61. On October 18, 2023, the district court denied Samsung's stay request, *see* SA1, reiterating its view of the underlying *merits* without ruling on whether the *stay factors*, on balance, warrant a stay, *see* SA16-17.

## ARGUMENT

The Court should stay the Order pending appeal (and issue an administrative stay until it resolves this motion), and also expedite the appeal.

## I.     The Court should issue a stay pending appeal.

Whether to grant a stay pending appeal turns on four factors: (1) the movant's likelihood of success on appeal, (2) whether the movant will suffer irreparable harm without a stay, (3) whether a stay will substantially harm other parties, and (4) whether a stay would serve the public interest. *Nken v. Holder,* 556 U.S. 418, 434 (2009). All four factors support a stay.

### A.     Samsung is likely to succeed on the merits.

#### 1.     Appellees failed to meet their burden of showing that they each had a valid arbitration agreement with Samsung.

This Court will likely hold that the district court erred in ruling, based on *no evidence*, that Appellees met their evidentiary burden to establish that they each had a valid arbitration agreement with Samsung. *See* SA39-41. "[T]he party seeking to compel arbitration … [has] the burden of showing" that the parties have agreed to arbitrate, *A.D. v. Credit One Bank*, 885 F.3d 1054, 1063 (7th Cir. 2018); *see* 9 U.S.C. § 4, and courts must "view the evidence and draw all reasonable inferences in favor of the party opposing

arbitration," *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023). The party seeking to compel arbitration must identify "sufficient evidence" that the parties agreed to arbitrate. *Id.* at 703. But Appellees submitted *no evidence* that they each had valid arbitration agreements with Samsung—no evidence that they purchased Samsung devices, much less which ones and when.

Instead, the district court accepted the identical "word of over 30,000 individuals," SA40—even though *allegations* are not *evidence*—that they purchased some unspecified Samsung device at some unspecified point in time. And the court did so even though it recognized that *Kass* requires *evidence*. SA27. Appellees' counsel labeled the petition "verified," Dist. Ct. Doc. 1, but no Appellee declared under penalty of perjury that the petition's allegations (or its attachments, like the "discrete list of named Petitioners," SA40) were true. Put simply, Appellees failed to convert the petition (and its attachments) into evidence under Federal Rule of Civil Procedure 56. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020). Because Appellees failed to submit any affidavits, declarations, or other evidence supporting their allegations, the district court erred in ruling that Appellees met their burden to show that they agreed to arbitrate with Samsung.

Contrary to the district court's evidence-free speculation, ostensibly based on Appellees' briefing, *see* Dist. Ct. Doc. 36, at 9, Samsung *does not have* a comprehensive "customer list, against which [it] could compare the list of Petitioners," SA40. Individuals typically purchase Samsung devices from mobile carriers or retail stores, and because Samsung device owners are not required to register their devices, Samsung *does not* have a list of every device purchaser. Moreover, it is not Samsung's burden to disprove Appellees' evidence-free allegations.

If the district court thought the AAA had already determined that each Appellee had a valid arbitration agreement with Samsung, *see* SA40, that is incorrect. The AAA does not require claimants to establish *at filing*, with evidence, that "a valid arbitration agreement exist[s]." *Chase Bank USA v. Swanson,* No. 10-cv-06972, 2011 WL 529487, at *2 n.2 (N.D. Ill. Feb. 4, 2011). It instead requires claimants to simply attach an arbitration agreement without proving that they are bound by it. Thus, the AAA's administrative determination that Appellees met the *filing* requirements says nothing about whether they each have a valid arbitration agreement with Samsung.

### 2. Arbitral-fee issues are for the arbitral body, not a court, as the arbitration agreements here confirm.

This Court will likely hold that the district court erred in resolving the fee dispute for two reasons. *First*, the arbitration agreement commits the administrative-fee issue to the AAA, and no court may rewrite the contract. *Second*, even if the contract is silent on the fee issue, administrative fees are "procedural" matters for arbitral bodies, not courts, to decide, as caselaw from the Fifth Circuit and other courts makes clear. This Court should not create a circuit split on that issue.

**a.** "Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 33 (2014). Thus, as with all other contracts, courts must enforce every provision delegating an issue to an arbitral body according to its terms. *Henry Schein*, 139 S. Ct. at 527, 529. Courts "may not override the contract." *Id.* at 529.

These fundamental principles require reversal, and they plainly establish Samsung's likelihood of success on the merits. The contract provides: "*Administrative*, facility and arbitrator *fees* for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed

$5,000.00 ('Large Claim') *shall be determined according to AAA rules*." SA56 (emphases added). "Administrative fees" include "filing fees." SA93. And each Appellee sought "at least $15,000" in "statutory damages." Dist. Ct. Doc. 1-11, at 34. Under the contract's plain terms, the parties expressly committed administrative-fee issues to the AAA. Thus, the AAA "shall" decide whether the parties owe administrative fees and, if so, how much they owe and when payment is due. SA56.

The district court rewrote these "clear and unmistakable" terms, *Henry Schein*, 139 S. Ct. at 530, giving *itself* the authority to determine whether and when Samsung must pay administrative filing fees. *See* SA47-53. That was error. The parties specified "the rules" governing administrative fees, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019)—the AAA Rules, not judge-made rules. No court may "override" that decision. *Henry Schein*, 139 S. Ct. at 529.

**b.**     Even if the arbitration agreement were silent on the fee issue, the district court's conclusion that it could decide the fee question is still incorrect. As the caselaw shows, administrative fees are procedural matters for arbitral bodies, not substantive matters for courts. The district court's

contrary ruling is wrong and conflicts with decisions from the Fifth Circuit and other courts.

*i.* When a contract is silent, courts presume that "procedural" questions are for arbitral bodies and "substantive" questions are for courts. *Lumbermens Mutual Casualty Co. v. Broadspire Management Services, Inc.*, 623 F.3d 476, 480-81 (7th Cir. 2010). Procedural arbitrability questions include "the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *BG Group*, 572 U.S. at 35 (quotation marks omitted). Substantive arbitrability questions, by contrast, tend to concern "*whether* there is a contractual duty to arbitrate at all." *Id.*; *see id.* at 34.

As conditions precedent to arbitration, administrative fees are quintessential procedural matters, meaning they are committed to the arbitral body. Administrative fees determine *when* the duty to arbitrate arises—they concern what must happen before for the arbitral proceedings begin or continue. Administrative fees are thus "conditions precedent to an obligation to arbitrate." *Id.* at 35. Here, that means only the AAA may decide administrative-fee issues.

That is exactly the conclusion that the Fifth Circuit reached in *Dealer Computer Services*, a case involving the very same AAA Rules. 588 F.3d at 888. The Fifth Circuit held that the trial court erred in ordering a party "to pay its share of the deposit" for the arbitration. *Id.* at 885. "Payment of fees is a procedural condition precedent that the trial court should not review," the court explained, because the AAA has full "discretion" with respect to administrative fees—it may ask one party to advance the other's fees, and it may decide whether to proceed with arbitration or suspend the arbitration absent full payment. *See id.* at 887-88. Payment of administrative fees thus "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *BG Group*, 572 U.S. at 35.

   ***ii.*** This Court will likely hold that the district court erred in ruling that administrative fees are substantive matters for courts to decide, rather than procedural matters for arbitral bodies to decide. *See* SA47-53.

   *First*, the district court's ruling conflicts with the Fifth Circuit's holding in *Dealer Computer Services*. It also is inconsistent with *Lumbermens*, where this Court favorably cited *Dealer Computer Services* for the proposition that "payment of fees is [a] question of procedural condition precedent to arbitration that is for [an] arbitrator, not a court, to decide." 623 F.3d at 482.

*Lumbermens* thus relied on *Dealer Computer Services* to support its holding that a different precondition to arbitration was procedural, not substantive. *See id.* at 482-83. Unsurprisingly, other courts have followed the Fifth Circuit, with one noting that *Lumbermens* "cit[ed] *Dealer* approvingly." *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 812 (N.D.Ill. 2020); *see also Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019). The Third Circuit has likewise explained that arbitration rules governing "the administrative filing fee" are "basic procedural issues that … the parties would likely expect the arbitrator to decide." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 762 (3d Cir. 2016).

*Second*, the district court wrongly reasoned that administrative fees must be substantive given their role in arbitration: "Money is the means of dispute resolution, and the way to start this process." SA52. The court's recognition that administrative fees *start* the arbitration process confirms that they are "a procedural condition precedent to arbitration." *BG Group*, 572 U.S. at 35. Indeed, in discussing the breach issue, the court stated that "[a]rbitration was *conditioned* on the payment of the AAA's assessed fees." SA44 (emphasis added). Under the district court's own logic, administrative fees determine "when the arbitration may begin, … not whether it may occur

- 19 -

or what its substantive outcome will be on the issues in dispute." *BG Group*, 572 U.S. at 35-36.

*Lastly,* while the district court said that *it* cannot "jigger" administrative fees, SA52, it overlooked the fact that, as noted, *the AAA* "has the discretion to apply or not to apply the [AAA Rules]," and that discretion extends to "administrative" "filing fees." SA65, SA93; *see supra* pp. 6-8; *see also Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1012-13 (9th Cir. 2004) (same). This discretion highlights a critical flaw in the court's logic. If administrative-fee issues are substantive, as the court stated, then the AAA should not decide them. *Lumbermens*, 623 F.3d at 481. But that would turn the AAA Rules on their head. Here, the court tried to split the difference, ruling that Samsung *had* to pay filing fees *now* without addressing *the amount* due. But as *Lumbermens* recognized, "[i]t would be strange to divide these largely overlapping [issues] between the court and the arbitrator." *Id.* There is no basis to treat one matter, like the timing of administrative fees, as substantive and another matter, like the amount of administrative fees, as procedural.

### 3.     No court can second-guess the AAA's interpretation and application of its rules governing administrative fees.

This Court will likely hold that the district court also erred in second-guessing how the AAA applied its rules governing administrative fees. The AAA acted "well within [its] discretion," *Lifescan*, 363 F.3d at 1013, by deciding (a) not to order Samsung to pay the administrative fees or threaten penalties for nonpayment; (b) to give Appellees the option to advance the unpaid fees; and (c) to close the cases, rather than stay them, thus triggering the right of either party to sue in the appropriate court for resolution. *Supra* pp. 6-10. (Indeed, as the district court recognized (SA35), a putative class of Samsung device owners is currently litigating claims similar to Appellees'. *See G.T.*, No. 1:21-cv-4976 (N.D. Ill.).)

In ruling that Samsung *had* to pay fees *immediately*, the district court ignored the AAA's discretion—vested in it under the arbitration agreement and background principles committing administrative-fee issues to arbitral bodies. SA53. That was error, because no court may second-guess an arbitral determination when it is the arbitral body's decisionmaking that the parties "bargained for." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

Appellees' "remedy lies with the [AAA]," not the courts. *Dealer Computer Services*, 588 F.3d at 888.

**B.    Samsung will suffer irreparable harm.**

Absent a stay, the Order will compel Samsung to pay millions of dollars, and what may end up as over $100 million, in *nonrefundable* and *unrecoverable* administrative fees. That's irreparable harm.

**1.**    A party suffers irreparable harm when it must pay money it might never get back. *See Illinois League of Advocates for the Developmentally Disabled v. Illinois Department of Human Services*, 803 F.3d 872, 877 (7th Cir. 2015); *Palmer v. City of Chicago*, 806 F.2d 1316, 1319-20 (7th Cir. 1986); *see also Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers). Here, because Appellees' counsel have filed arbitration demands on behalf of 35,610 individuals, Samsung will be forced in short order to pay nearly $4 million in filing fees. And as the arbitrations progress, Samsung may also owe roughly $50 million in case management fees ($1,400 per case) and between $50 and $90 million in arbitrator fees, depending on the type of arbitration. The AAA Rules make clear that the filing fees and case management fees are nonrefundable. SA94-95.

Samsung likely will never get most, if not all, of this money back. The *only* way Samsung could get a *full* refund is if (a) the arbitrator in each of the 35,610 arbitrations found that the claim was "filed for purposes of harassment" or was "patently frivolous," *and* (b) the arbitrator in each arbitration exercised their discretion to reallocate the fees, *and* (c) each of the 35,610 claimants had collectable funds. *See* SA87. None of these issues will be resolved on appeal, meaning Samsung's ability to get a refund turns not on this appeal but on the arbitrators' exercise of discretion and Appellees' liquidity—conditions that are independently speculative and jointly un-likely. Indeed, the district court was not "convinced" that Appellees could even cover the filing fees. SA49.

**2.**     Appellees may argue that litigation costs are not irreparable harm. *See* Dist. Ct. Doc. 65, at 16. But Appellees have identified no decision even remotely suggesting, much less holding, that this scenario—having to pay potentially $100 million in nonrefundable and potentially unrecoverable fees tied to a mass-arbitration settlement extortion tactic—falls short of irreparable harm. *Coinbase, Inc v. Bielski*, 599 U.S. 736 (2023), supports Sam-sung's argument. *Coinbase* noted that mass-disputes involving potentially

- 23 -

"colossal liability" can coerce defendants into "blackmail settlements." *Id.* at 743. That's exactly the tactic Appellees' counsel are using. *Supra* pp. 8-9.

The unique circumstances of this case, coupled with the recent insight from *Coinbase*, show that Samsung will suffer irreparable harm absent a stay, and that this case is both factually distinguishable and categorically different from this Court's pre-*Coinbase* decisions finding no irreparable harm in cases involving a small number of arbitrations. *See Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co.,* 779 F.2d 13, 15 (7th Cir. 1985) (expense of single arbitration between employer and union not irreparable harm); *PaineWebber Inc. v. Farnam,* 843 F.2d 1050, 1051-53 (7th Cir. 1988) (referring to singular "arbitration" and single state-court litigant; "motions papers do not discuss" irreparable harm); *Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc.,* 841 F.2d 163, 164 (7th Cir. 1988) (single arbitration; motion papers "do not address" irreparable harm); and *Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.),* 631 F.3d 869, 872 (7th Cir. 2011) (expense of a single arbitration not irreparable harm).

**C.** **A stay would not substantially harm Appellees, and the public interest supports a stay.**

The *only* impact a stay will have on Appellees is delaying the arbitration proceedings. That does not outweigh Samsung's likelihood of success and the irreparable harm that Samsung will suffer absent a stay, especially given that "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *A & F Enterprises, Inc. II v. IHOP Franchising LLC* (*In re A & F Enterprises, Inc. II*), 742 F.3d 763, 766 (7th Cir. 2014). And Samsung is asking for expedited proceedings, which would mitigate any delay.

A stay also serves the public interest in seeing courts uphold "the central purpose of [the FAA]" — that arbitration agreements "are enforced according to their terms," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995), which here commit fee issues to the AAA. That, when coupled with the principle that courts "should try to minimize the costs of being mistaken," *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 902 (7th Cir. 2001), confirms the need for a stay.

## II.    The Court should expedite the appeal.

Samsung also asks the Court to expedite the appeal. *See Practitioner's Handbook* 106. The irreparable harm to Samsung is a "compelling reason" to do so. *Wirtz v. City of South Bend*, 669 F.3d 860, 863 (7th Cir. 2012). The parties need speedy answers to the important questions on appeal. And while the Court should issue a stay—especially given that the Order rejected the Fifth Circuit's decision in *Dealer Computer Services* and that this Court does "not lightly conclude that [its] sister circuits are wrong," *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 (7th Cir. 2008)—the Court should expedite the appeal even if it denies a stay. *Cf. Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 765 (7th Cir. 2021) (expediting appeal after denying injunction pending appeal).

## CONCLUSION

The Court should stay the Order pending appeal; issue an administrative stay until it resolves the stay request; and expedite the appeal.

Dated: October 25, 2023

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney
Jeremy Patashnik
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Randall W. Edwards
Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center,
  28th Floor
San Francisco, CA 94111

Mark Howard Boyle
DONOHUE BROWN
  MATHEWSON & SMYTH LLC
131 South Dearborn Street,
  Suite 1600
Chicago, IL 60603

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Ashley M. Pavel
O'MELVENY & MYERS LLP
610 Newport Center Drive,
  17th Floor
Newport Beach, CA 92660

James L. Kopecky
KOPECKY SCHUMACHER
  ROSENBURG LLC
120 North LaSalle Street,
  Suite 2000
Chicago, IL 60601

*Counsel for Respondents-Appellants Samsung Electronics America, Inc.,
and Samsung Electronics Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 5,198 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: October 25, 2023

*/s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Respondents-Appellants*
*Samsung Electronics America, Inc.,*
*& Samsung Electronics Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2023, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: October 25, 2023                    */s/ Shay Dvoretzky*
                                            Shay Dvoretzky

                                            *Counsel for Respondents-Appellants*
                                            *Samsung Electronics America, Inc.,*
                                            *& Samsung Electronics Co., Ltd.*

[This page is intentionally left blank]

# INDEX OF SPECIAL APPENDIX

**Page**

District Court Order Denying Samsung's Motion to Stay,
Dist. Ct. Doc. 68 (Oct. 18, 2023) ................................................................. SA1

Transcript of Proceedings on Samsung's Motion to Stay,
(Oct. 18, 2023) ............................................................................................. SA3

District Court Memorandum Opinion and Order,
Dist. Ct. Doc. 51 (Sept. 12, 2023) ............................................................. SA18

Samsung's Arbitration Agreement,
Dist. Ct. Doc. 1-4 (Oct. 29, 2021) ............................................................. SA54

American Arbitration Association Consumer Arbitration Rules,
Dist. Ct. Doc. 1-7 (Oct. 29, 2021) ............................................................. SA58

American Arbitration Association Supplementary Rules for Multiple
Case Filings,
Dist. Ct. Doc. 27-2 (Dec. 5, 2022) ........................................................... SA108

**DISTRICT COURT ORDER DENYING**

**SAMSUNG'S MOTION TO STAY**

**DIST CT. DOC. 68 (OCT. 18, 2023)**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| | ) | |
| Paula Wallrich, et al | ) | Case No: 22 C 5506 |
| | ) | |
| v. | ) | Judge: Harry D. Leinenweber |
| | ) | |
| Samsung Electronics America, Inc. et al) | | |
| | ) | |

**<u>ORDER</u>**

Telephonic conference and ruling on motion hearing held. Pro hac vice motions are granted [66, 67]. Motion to stay is denied as set forth on the record [61].

(T:00:10)

Date: 10/18/23                                   /s/ Judge Harry D. Leinenweber

**TRANSCRIPT OF PROCEEDINGS ON**

**SAMSUNG'S MOTION TO STAY**

**(OCT. 18, 2023)**

<pre>
 1                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    PAULA WALLRICH, DANIELLE JONES,  )
      GRANT GRINNELL, JEFFREY BURTON,  )
 4    RHONDA MC CALLUM, PROVIDENCIA    )
      VILLEGAS, and 49,980 other       )
 5    individuals,                     )
                                       )
 6                   Petitioners,      )
                                       )  No. 22 C 5506
 7              vs.                    )  Chicago, Illinois
                                       )  October 18, 2023
 8    SAMSUNG ELECTRONICS AMERICA,     )  9:00 a.m.
      INC., and SAMSUNG ELECTRONICS    )
 9    CO., LTD.,                       )
                                       )
10                   Respondents.      )

11                 TRANSCRIPT OF PROCEEDINGS - MOTION

12             BEFORE THE HONORABLE HARRY D. LEINENWEBER

13    APPEARANCES:

14    For the Petitioners:       LABATON SUCHAROW LLP
                                 140 Broadway
15                               New York, New York 10005
                                 BY:  MS. MELISSA H. NAFASH
16
                                 WALLCE MILLER
17                               150 North Wacker Drive
                                 Suite 1100
18                               Chicago, Illinois 60606
                                 BY:  MR. MARK R. MILLER
19

20    For the Respondents:       DONOHUE BROWN MATHEWSON &
                                 SMYTH LLC
21                               131 South Dearborn Street
                                 Suite 1600
22                               Chicago, Illinois 60603
                                 BY:  MR. MARK H. BOYLE
23
      Official Court Reporter:   JENNIFER COSTALES, CRR, RMR, CRC
24                               219 S. Dearborn St., Room 1928
                                 Chicago, Illinois 60604
25                               (312) 435-5895
                                 jenny.uscra@yahoo.com
</pre>

SA4

1    APPEARANCES:   (Continued)

2    For the Respondents:          O'MELVENY & MYERS LLP
                                   Two Embarcadero Center
3                                  28th Floor
                                   San Francisco, California 94111
4                                  BY:  MR. MATTHEW D. POWERS

5                                  SKADDEN, ARPS, SLATE, MEAGHER
                                   & FLOM LLP
6                                  One Manhattan West
                                   New York, New York 10001-8602
7                                  BY:  MR. MICHAEL MC TIGUE, JR.

8                                  SKADDEN, ARPS, SLATE, MEAGHER
                                   & FLOM LLP
9                                  1440 New York Avenue, NW
                                   Washington, DC 20005
10                                 BY:  MR. SHAY DVORETZKY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings via teleconference)

2        THE COURTROOM DEPUTY:  22 C 5506, Wallrich versus

3    Samsung.

4        MR. MILLER:  Good morning, Your Honor.  Mark Miller,

09:04:37    5    local counsel for the petitioners.

6        MS. NAFASH:  Good morning, Your Honor.  This is

7    Melissa Nafash on behalf of petitioners.

8        MR. MC TIGUE:  Good morning, Your Honor.  It's

9    Michael McTigue with Skadden Arps, along with my partner Shay

09:04:53    10    Dvoretzky, who yesterday filed a motion for leave to appear

11    *pro hac vice* on behalf of Samsung.

12        MR. BOYLE:  Mark Boyle.  Good morning, Your Honor,

13    Mark Boyle on behalf of the Samsung defendants as local

14    counsel.

09:05:05    15        MR. POWERS:  And good morning, Your Honor.  Matt

16    Powers on behalf of the Samsung defendants.

17        THE COURT:  We'll take the motion for *pro hac vice*.

18    I'll grant that.

19        So the motion that is up this morning is Samsung's

09:05:25    20    motion to stay the Court's order that it pay the AAA

21    arbitration fee of I believe $4 million in order to commence

22    the arbitration.

23        And as I understand it, Samsung has appealed that to

24    the Seventh Circuit.  Have you heard from the Seventh Circuit?

09:05:50    25        I understand originally they questioned the

1   jurisdiction, and you filed a jurisdictional statement.  Has

2   there been any movement from the Seventh Circuit on that?

3           MR. DVORETZKY:  Judge Leinenweber, this is Shay

4   Dvoretzky.

09:06:06   5           No, we have not yet heard from the Seventh Circuit on

6   that.

7           THE COURT:  All right.  So the motion for stay up

8   this morning has been extensively briefed, including I believe

9   Samsung filed its reply brief last evening, and I have

09:06:23   10  reviewed it, and I'm prepared to rule on the motion for the

11  stay.

12          And I would just ask Samsung to make a brief

13  statement on behalf of your motion.

14          MR. DVORETZKY:  Well, thank you, Judge Leinenweber.

09:06:43   15  We appreciate the opportunity.

16          As we explained in our moving papers, we would ask

17  that the Court stay the order pending appeal.  If for whatever

18  reason the Court is not inclined to do that, we would ask for

19  an administrative stay in order to allow us to seek a stay

09:07:02   20  from the Seventh Circuit.

21          We believe that the stay factors are satisfied here.

22  At a minimum, as Your Honor recognized in the Court's opinion,

23  this case presents difficult questions, and so at a minimum

24  there is a substantial ground for us to appeal.

09:07:20   25          There is also irreparable harm to Samsung from having

1    to pay not just the $4 million, but potentially substantially

2    far more than that in arbitration fees that we would very

3    likely not be able to recover in full at a later date.  And so

4    we would --

09:07:39    5    THE COURT:  Let me interrupt you very briefly on this

6    irreparable harm because that's a sticking point here.  I

7    believe you've been ordered by AAA if you wish to arbitrate to

8    pay, what is it, $4 million?

9    MR. DVORETZKY:  We have not, we have not yet received

09:07:59    10    an invoice from the AAA on the newly filed claims, but that

11    would be what we would expect to happen if the AAA accepts

12    those claims for processing.

13    THE COURT:  The question, the reason I raise that is

14    that in the rules of AAA, and it gives -- well, AAA will

09:08:21    15    establish, I'll quote from it, "AAA may require a deposit of

16    money to cover expense of arbitration including fees and

17    shall," but then it goes on to say, "it shall render," and I

18    put that in my own notes in quotes, "any unused money after

19    conclusion of the case," to which would appear to me that if

09:08:47    20    the case is subject to being short-circuited by the arbitrator

21    as say the matter isn't arbitrable or for a variety of

22    reasons, it would seem to me that that $4 million would not

23    necessarily be the fee that Samsung would end up having to

24    pay.  And then they would be presumably, if they win the case,

09:09:14    25    subject to being paid back by the plaintiffs in the particular

1    case.

2         But the point that I want to make is that in your

3    papers, you speak of being possibly charged up to $100

4    million.  I don't see where that comes from, particularly if

09:09:35    5    the fact that you're correct that the arbitrator will

6    determine for a variety of reasons that the matter is neither

7    arbitrable or will scale it down to individuals or whatever.

8         So I'm just wondering how -- where you get

9    irreparable harm out of that.  The fact that you may under the

09:09:58    10    rules be entitled to money return, "render" obviously means to

11    transmit or deliver, to render a payment, which would mean

12    that AAA rules do provide for refunding of money so that you

13    wouldn't be stuck with the whole 4 million, and you may be

14    stuck with nothing by being able to pass it off to the

09:10:18    15    plaintiff class, plaintiffs.

16         Do you wish to comment on that?

17         MR. MC TIGUE:  Your Honor, this is Michael McTigue.

18    I can comment on that.

19         As an initial matter, the filing fees are

09:10:32    20    nonreimbursable by the AAA.  Other fees that are incurred as

21    arbitrations proceed, there are both administrative fees as

22    well as arbitrator fees, they are paid, you know, as the cases

23    proceed.

24         Administrative fees are not recoverable either.

09:10:47    25    There could be situations where arbitration, arbitrator fees

1  are reimbursable if the matter resolves prior to a hearing, so

2  hearing-related fees, things that you prepay for in connection

3  with a particular arbitration.

4          But upfront fees, filing fees and the second layer,

09:11:06   5  the administrative fees that come next are not refundable by

6  the AAA.

7          You are correct, Your Honor, that in certain

8  circumstances, if Samsung were able to establish that the

9  claims were brought for an improper purpose or were patently

09:11:22   10  frivolous, the arbitrator has discretion to award those fees

11  to Samsung in connection with each particular arbitration

12  proceeding.

13          We are very concerned that, you know, that, you know,

14  because it's left to the discretion of the arbitrator, that

09:11:39   15  that may not occur, or if it does occur, whether or not each

16  individual has the ability to pay these particular fees.

17          As Your Honor noted in the initial opinion, the Court

18  was not persuaded that each individual could even, you know,

19  come up with the initial filing fee to proceed with these

09:11:58   20  claims.

21          And so given Your Honor's already skeptical --

22  skepticism as to the individual ability to reimburse, Samsung

23  faces a significant chance that as it proceeds with these

24  arbitrations, none of the fees will be able to be reimbursed

09:12:15   25  to it.

1  THE COURT:  Well, except again under the rules, as I

2  understand, the $4 million is to cover the expense of

3  arbitration including fees.

4  MR. MC TIGUE:  Your Honor, we can point you -- I'm

09:12:31  5  sorry to interrupt you, sir.

6  THE COURT:  No.  Go ahead.

7  MR. MC TIGUE:  We can point you to rules that the

8  initial filing fees are nonreimbursable, period, full stop,

9  under the arbitration rules.  There is no opportunity to get

09:12:40  10  the initial filing fees back from the AAA once they're paid.

11  THE COURT:  Okay.  Well, go on, proceed.

12  MR. MC TIGUE:  And so our point is there are other

13  potential fees as the cases proceed relating to hearing

14  particular arbitrations that might be reimbursable if you

09:13:00  15  never hit those -- if those items in connection with

16  arbitration like a hearing does not occur, that does not apply

17  to the initial filing fees.  That does not apply to the

18  administration fees that will become due promptly after the

19  filings proceed.

09:13:21  20  And we can point you to those rules, you know,

21  subsequent to this call.  I don't have them in front of me,

22  Your Honor, but we can point you to those rules that will show

23  that those fees are nonreimbursable.

24  THE COURT:  Okay.  But state what your position is.

09:13:44  25  MR. MC TIGUE:  Shay, I don't know if you had anything

1    more on these matters.

2        THE COURT:  Briefly from -- excuse me.

3        MR. DVORETZKY:  So I think on irreparable harm, if

4    Your Honor would like us to provide supplemental information

09:14:01    5    about the AAA rules that Mr. McTigue was talking about, we're

6    happy to do that.

7        In terms of having a substantial case and substantial

8    likelihood of success on the merits, as we pointed out in our

9    papers, we believe there are several issues that present

09:14:16    10    substantial grounds for appeal.

11        One is that the petitioners didn't meet their burden

12    of showing that each of them had an arbitration agreement with

13    Samsung.

14        Two is that the parties expressly agreed here that

09:14:31    15    filing fees will be determined according to AAA rules.  And as

16    we've previously argued to the Court, that's something that,

17    therefore, that has to be decided by the arbitrator or by the

18    AAA and is not something that the Court can override.

19        And, lastly, as we pointed out in our papers, given

09:14:53    20    the Court's ruling that the arbitrator has to decide whether

21    this petition itself is barred given the arbitration

22    agreement's collective action waiver, the Court at that point

23    respectfully lacks authority to grant the petition itself and

24    holds that Samsung has breached the agreements.

09:15:11    25        So we think that all of those at a minimum presents

1   substantial grounds for appeal for the Seventh Circuit and

2   combined with the showing of irreparable harm warrant a stay

3   here.

4           THE COURT:  Okay.  Petitioners?

09:15:25   5           MS. NAFASH:  Thank you, Your Honor.  This is Melissa

6   Nafash.

7           I guess I'll start with the first two points -- the

8   last two points, excuse me, that Samsung made.  You know, we

9   disagree that there is any merit to the points that Samsung

09:15:42   10  believes are ripe for appeal.

11          First, that this order is ripe for appeal at all,

12  this is not a final order and thus not appealable.  Samsung

13  agreed with that position in stating that the Court would need

14  to superintend further dispute issues that may arise during

09:16:06   15  the arbitrations.  And we agree with that position.

16          As far as the inability to prove the arbitration

17  agreements, Samsung is not likely to succeed on that ground.

18  Petitioners are Samsung Galaxy device users.  As a result of

19  opening the Galaxy device packaging, using the device or

09:16:28   20  accessing Samsung's online platform, each petitioner agreed to

21  Samsung's various terms and conditions, including the end user

22  license agreement.

23          Samsung has argued this to district courts around

24  this country, including this district court.  Importantly,

09:16:43   25  since August of 2022, Samsung has had the information for all

petitioners.  Never once, even when requested by petitioners'

counsel to do so, has Samsung ever produced a list of

petitioners for whom it has no record.

As this Court so rightly found, simply denying facts

is not enough.  Instead, after telling the American

Arbitration Association and this Court that there were

deficiencies in the claimant data, because it listed claimants

for whom Samsung had no record, it then, after the Court

relied on its prior statements, tells this Court it really has

no way of knowing who is or is not a customer if a device

owner purchased its phone from a third party.

Regardless of which of those arguments is true, it

weighs against Samsung's likelihood of success on appeal,

because not even plain error permits reversal if the error is

that which was invited.

Secondly, Samsung argues that this Court overstepped

its authority by ordering Samsung to pay its fees.  First,

Samsung claims that payment of fees is a matter delegated to

the American Arbitration Association.  However, when the

American Arbitration Association determined that Samsung was

responsible for the payment of the fees, Samsung refused to

pay.  Indeed, that's what brought petitioners before this

Court, because without Samsung paying its fees, and the

American Arbitration Association having no option but to close

the cases for nonpayment, petitioners are left with no ability

SA14

1   to have their claims heard.

2        For Samsung to now claim that this Court should have

3   left that decision on fees to the American Arbitration

4   Association, who did make that determination, is merely this

5   continuous type of circular argument that's exactly Samsung's

6   playbook, continuously making arguments that allow it to avoid

7   ever litigating its liability.

8        The Court's analysis and finding that the payment of

9   fees is inherently substantive was well reasoned because, as

10  the Court correctly found, it goes to the question of whether

11  the parties can exercise their right to arbitrate at all.

12       And it's consistent with other opinions.  In *Croasmun*

13  *v. Adlatem Global Education*, Judge Lefkow did not order the

14  payment of fees because she thought that the record indicated

15  JAMS would resolve the fee issue if asked.  However, she

16  invited the parties back if resolution was needed to not have

17  petitioners face checkmate.

18       In *McClenon v. Postmates*, Judge Rowland did the same

19  thing.  She ordered the company to arbitrate consistent with

20  its contract and stated the company could not get out of

21  paying its millions of dollars to arbitrate.

22       And so on those grounds alone we do not believe

23  Samsung has any likelihood of success, even if this were an

24  appealable order.

25       THE COURT:  All right.

09:18:28

09:18:45

09:19:06

09:19:22

09:19:39

1    MS. NAFASH:  As far as irreparable harm -- sorry.  Go

2  ahead.

3    THE COURT:  No.  Go ahead.

4    MS. NAFASH:  Okay.  The last point, thank you.

09:19:51  5  Samsung's argument that the fees are nonrefundable, even if

6  true, is not grounds for irreparable harm here because the

7  expense of litigation is not grounds for irreparable harm.

8  That's a proposition that the Seventh Circuit has found to be

9  so fundamental to our legal system that it labeled such an

09:20:12  10  argument frivolous.

11    And while Samsung, you know, wants to point to how it

12  adds up per each arbitration, these are individual

13  arbitrations, and so taken individually, the costs are a

14  couple hundred dollars for the filing fee and then a case, a

09:20:30  15  $1400 case management fee, and a $1500 arbitrator fee per

16  claimant.

17    But the Seventh Circuit is clear that these type of

18  costs cannot equal irreparable harm.

19    THE COURT:  Okay.  I'm going to deny the motion to

09:20:51  20  stay.  Obviously, if the Seventh Circuit decides to take the

21  case, they certainly -- they would first send it back to me to

22  determine whether or not I would stay it.  But since there has

23  been a motion to stay, I'm going to deny that motion to stay.

24    It seems to me that this case is fundamentally one

09:21:17  25  that where Samsung's position as stated in its reply brief and

1    the motion to dismiss, Samsung asserts that it declined to pay

2    the arbitration fee, but it stands ready to arbitrate.

3         The plaintiff suggests that's irony.  It seems to me

4    it almost sets up or does set up a Catch 22.  Here Samsung

09:21:47    5    drafts an arbitration agreement, establishes the AAA as the

6    arbitrator, and the arbitrator must -- and then asserts that

7    the arbitrator must determine the fee issues.

8         But in order to determine the fee issues, the

9    arbitrator demands a fee deposit in advance to determine the

09:22:13    10   arbitrability.  Samsung refuses to pay the fee but will

11   arbitrate.  The arbitrator will not consider the issue to

12   arbitrate without the payment of the fee.

13        So it seems to me this is a perfect Catch 22 that

14   Samsung seeks to impose on the plaintiffs.  Accordingly, the

09:22:35    15   motion for stay is denied.

16        Thank you.

17        MS. NAFASH:  Thank you, Your Honor.

18        MR. DVORETZKY:  Thank you, Your Honor.

19        MR. MC TIGUE:  Thank you, Your Honor.

09:22:45    20        MR. MILLER:  Thanks, Your Honor.

21     (Proceedings concluded)

22              C E R T I F I C A T E
          I, Jennifer S. Costales, do hereby certify that the
23   foregoing is a complete, true, and accurate transcript of the
     proceedings had in the above-entitled case before the
24   Honorable HARRY D. LEINENWEBER, one of the judges of said
     Court, at Chicago, Illinois, on October 18, 2023.

25
                         /s/ Jennifer Costales, CRR, RMR, CRC

**DISTRICT COURT MEMORANDUM OPINION AND ORDER**

**DIST. CT. DOC. 51 (SEPT. 12, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULA WALLRICH, DANIELLE
JONES, GRANT GRINNELL, JEFFREY
BURTON, RHONDA MCCALLUM,
PROVIDENCIA VILLEGAS, and
49,980 other individuals,

               Petitioners,

          v.

SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG ELECTRONICS
CO., LTD.,

               Respondents.

Case No. 22 C 5506

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Petitioners, each Samsung device users, petitioned this Court to compel arbitration against Respondent Samsung (Dkt. No. 1; Dkt. No. 2) upon Samsung's refusal to pay filing fees. Samsung moved to dismiss the petition for improper venue (Dkt. No. 26) and opposed the merits of the petition. For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to plead proper venue in the Northern District of Illinois, and the Court grants Petitioners' Motion to Compel Arbitration (Dkt. No. 2) by ordering the remaining parties to arbitrate.

## I.  <u>BACKGROUND</u>

### A.  Parties

Petitioners are 49,986 Samsung device users who have lived in Illinois. (Pet. To Compel Arb. ("Pet.") ¶¶1, 21, 28, Dkt. No. 1; Pet. M. to Compel Arb. ("MTC"), Dkt. No. 2 at 1.) Respondents are Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co. Ltd. ("SEC") (collectively, "Samsung"). (Pet. ¶¶22-23.) SEC, a Korean corporation, is the parent company to SEA. (Pet. ¶23.) Samsung designs, manufactures, and sells devices, including smartphones and tablets. (Pet. ¶27.)

### B.  Terms

By utilizing their Samsung device, each user agreed to several Terms & Conditions ("T&C") established by Samsung. (*See* Samsung's In-Box Terms & Conditions, Pet. Ex. B, Dkt. No. 1-3; Samsung's End User License Agreement ¶16 "¶16. *Arbitration Agreement*," Pet. Ex. C, Dkt. No. 1-4; Samsung Electronics' Terms and Conditions at 6, Pet. Ex. D, Dkt. No 1-5; Samsung's online Terms & Conditions, Pet. Ex. E, Dkt. No. 1-6 (collectively, "terms" or "Arbitration Agreement").) To register a Samsung device, users must provide the company with personally identifiable information such as the user's name and zip code (Petitioners' Opposition to M. to Dismiss ("Opp. MTD"), Dkt. No. 36 at 9); *see* "Create your Samsung account,"

- 2 -

*https://account.samsung.com/accounts/v1/MBR/signUp* (last accessed July 13, 2023).

Samsung's terms stipulate alternative dispute resolution (ADR) such that "[a]ll disputes with Samsung arising in any way from these terms shall be resolved exclusively through final and binding arbitration and not by a Court or Jury." (Pet. Ex. E at 3; *see* Pet. Ex. C ¶16; Pet. ¶¶2—3.) These terms also prohibit "class action" and "combined or consolidated" disputes, instead mandating solely individual claims. (Pet. Ex. E at 3; Pet. Ex. C ¶16; *see* Pet. ¶3.)

The terms specifically delegates arbitration proceedings to the American Arbitration Association ("AAA"). "The arbitration shall be conducted according to the [AAA] Consumer Arbitration Rules" (Pet. Ex. B at 10; Pet. Ex. C ¶16). Pursuant to the AAA Consumer Arbitration Rules ("Consumer Rules" or "Rules"), an arbitrator is assigned to resolve the claims brought. (Consumer Rules, Dkt. No. 1-7.) The arbitrator is vested with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Rule R-14.)

The Rules outline the Association's fee schedule for AAA administrative proceedings. (*See* Rules at 33—40.) Rule R-6 specifies,

> The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary

- 3 -

SA21

> to cover the expense of the arbitration, including the
> arbitrator's fee, and shall render any unused money at the
> conclusion of the case.

(*Id.* at 14.) The AAA's fees were in place when Samsung initially

adopted its Arbitration Agreement in 2016, and those fees have been

reduced in the multiple case filing scenario by the AAA's adoption

of its Supplementary Rules for Multiple Case Filings ("Supplementary

Rules"), effective August 1, 2021. (Reply MTC at 2; *see also* AAA

Supplementary Rules, Response MTC Ex. 2, Dkt. No. 27-2.)

These Supplementary Rules apply when the same or coordinated

counsel files 25 or more similar demands against the same

respondents. (*See* Supplementary Rules, Dkt. No. 27-2.) Together with

the Consumer Rules, the Supplementary Rules anticipate scenarios

where either consumers or businesses cannot pay, or decline to pay,

their assigned initial administrative fees. (*See id.*) Specifically,

> If administrative fees, arbitrator compensation, and/or
> expenses have not been paid in full, the AAA may notify
> the parties in order that one party may advance the
> required payment within the time specified by the AAA.

(Supplementary Rule MC-10(d).) A party that advances fees may then

recover them in the final arbiter award. (R-44(d); *see* Opp. MTC

at 6.) If the arbitrator determines that a party's claim was filed

"for purposes of harassment or is patently frivolous," she may

allocate filing fees to the other party in the final award. (Rule R-

44(c).) Additionally,

- 4 -

SA22

> If payments due are not made by the date specified in such
> notice to the parties, the arbitrator may order the
> suspension or termination of the proceedings. If no
> arbitrator has yet been appointed, the AAA may suspend or
> terminate those proceedings. . . .

(Supplementary Rule MC-10(e)).

Neither the terms nor the AAA Rules specifically designate the

venue for arbitration. The Rules do provide:

> If an in-person hearing is to be held and if the parties
> do not agree to the locale where the hearing is to be held,
> the AAA initially will determine the locale of the
> arbitration. If a party does not agree with the AAA's
> decision, that party can ask the arbitrator, once
> appointed, to make a final determination. The locale
> determination will be made after considering the positions
> of the parties, the circumstances of the parties and the
> dispute, and the Consumer Due Process Protocol.

(Rule R-11.) (*Id.*)

## C.  Dispute

Seeking redress for alleged violations of the Illinois'

Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,*

Petitioners filed 50,000 individual arbitration demands before the

AAA on September 7, 2022. (Pet. ¶¶ 1, 11, 14 n. 2; *see* Representative

Sample of Demand, Pet. Ex. J, Dkt. No. 1-11; MTD, Dkt. No. 26 at 6,

17.) Appended to each petition was the arbitration agreement. (Dkt.

No. 35 at 6 (citing 2022.10.31 Letter from AAA to Parties, Reply MTC

Ex. A, Dkt. No. 35-1, replicated in Opp. MTC Ex. 14, Dkt. No. 27-

14.) On September 27, 2022, the AAA invoiced Petitioners for their

share of the initial administrative fees, which Petitioners

- 5 -

thereafter paid. (*Id.; see also* AAA Invoice to Claimants, Dkt. No. 1-13; Claimants Payment Confirmation, Dkt. No. 1-14.) On September 27, 2022, Samsung notified the AAA that it would not pay its share of the assessed initial administrative fees for the Illinois claimants because it found the claimant list included discrepancies such as deceased claimants and claimants who were not Illinois residents. (*See* Pet. ¶14, Ex. N, Dkt. Nos. 1, 1-15.) Samsung agreed to pay the fees for fourteen petitioners now living in California, citing California Code of Civil Procedure § 1281 *et seq.,* which provides for sanctions in event of nonpayment. (Pet. ¶14 n. 2; *see* Pet. Ex. N.)

On October 7, 2022, Petitioners, as 49,986 individual claimants, filed in this Court a Petition for an Order to compel Samsung to arbitrate. (*See* Pet.) Petitioners have not sought class certification.

In reviewing the arbitration demands at issue here, the AAA determined both the AAA Rules and the Supplementary Rules apply. (10.12.22 Letter from AAA to Parties, Opp. MTC, Ex. 3, Dkt. No. 27-3.) Pursuant to these rules, the claimants must provide to the AAA a spreadsheet that includes the claimant's name, claimant city, state, zip code, claim date, and locale state. (*See id.; see* Rule R-2; Supplementary Rule MC-2.) Claimants did so. (*See* 10.12.22 Letter.) But, consistent with Samsung's objections a couple weeks prior as to

- 6 -

certain individuals listed, the AAA found the spreadsheet contained "inaccurate/incomplete information." (*Id.*) Thus, the AAA requested a corrected spreadsheet (*id.*), thereafter provided by Petitioners (2022.10.21 Labaton Email, Dkt. No. 27-13 at 1) to the AAA's satisfaction (2022.10.31 AAA Letter, e.g., Dkt. No. 27-14; *see* Amended Claimant Spreadsheet, Exhibit D, Dkt. No. 36-4.) Aside from the 14 California claimants, 14,334 claimants listed as their claimant city an Illinois town in the Central or Southern districts of Illinois, one individual listed Brooklyn, New York, and the remainder listed a locale within the Northern District of Illinois. (*Id.*; MTD.)

The AAA issued its administrative determination on October 31, 2022, that "claimants have now met the AAA's administrative filing requirements on each of the 50,000 cases filed," and that "Samsung is now responsible for payment of the initial administrative filing fees totaling $4,125,000.00." (10.31.22 AAA Letter, Dkt. Nos. 27-14; 35-1.) On November 8, 2022, Samsung again declined to pay the initial fees. (Dkt. No. 27-15.) On November 14, the AAA notified the parties: "Based on the claimants' and Samsung's statements declining to pay Samsung's portion of the filing fees for the non-California cases, unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases." (Dkt. No. 27-16.) On November 17, 2022, Petitioners again declined to pay Samsung's fees.

- 7 -

(Dkt. No. 27-17.) On November 30, 2022, the AAA notified the parties that it had administratively closed those 49,986 claims. (Dkt. No. 27-19.) Since the AAA required the payment of initial fees to proceed, the AAA neither assigned an arbitrator to the claims, nor designated a locale for arbitration. (*See* Supplementary Rule MC-10(a); Rule R-11; *see also* Opp. MTD at 1-2; Reply MTD at 8-9.)

## II.  LEGAL STANDARD

The Court considers the parties' arguments as demanded by the respective standards.

### A.  Subject Matter Jurisdiction

A federal court must have subject matter jurisdiction to adjudicate any claim brought before it. *Mathis v. Metro. Life Ins. Co.,* 12 F.4th 658, 663 (7th Cir. 2021). Subject matter jurisdiction cannot be waived, and if the Court determines at any point that it lacks subject matter jurisdiction over the matter, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

### B.  Motion to Dismiss for Improper Venue

Pursuant to Federal Rule of Procedure 12(b)(3), this Court reviews the motion to dismiss for improper venue by "construing all facts and drawing reasonable inferences in favor of the plaintiff." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011); *see also* FED. R. CIV. P. 12(b)(3). The Court may consider

facts beyond the pleadings in its venue analysis. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005).

### C. Motion to Compel Arbitration

The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, "arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748, 752 (7th Cir. 2017) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005)).

Courts in this Circuit apply an evidentiary standard akin to that articulated in Federal Rule of Civil Procedure 56(e) for summary judgment when determining whether the parties agreed to arbitrate. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002). Thus, if the party seeking arbitration offers evidence sufficient to find the parties' agreement to arbitrate, the opposing party must demonstrate a "genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place," *Kass v. PayPal Inc.,* 2023 WL 4782930, at *5 (7th Cir. July 27, 2023). The opposing

- 9 -

party cannot "generally deny[] facts" but must identify specific evidence in the record to support its argument. *Tinder,* 305 F.3d at 735. A court may not rule on either the potential merits of the underlying claim or its arbitrability when these determinations are assigned by contract to an arbitrator, even if a court perceives frivolity. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 649-50 (2011).

### III.    <u>DISCUSSION</u>

#### A.  Subject Matter Jurisdiction

In their petition, Petitioners attribute this Court's subject matter jurisdiction to the federal question of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* pursuant to federal jurisdictional statutes, 28 U.S.C. §§ 1331 and 1367. It is not so simple.

In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006), and to declare "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston v. Ferrer,* 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984)). Pursuant to Section 4 of the FAA, aggrieved parties "may petition any United States district court which, save for such agreement, would have

jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Still, the Act remains "'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581-82 (2008) (quoting *Moses H. Cone,* 460 U.S. at 25, n. 32); *see also Badgerow v. Walters,* 142 S.Ct. 1310, 1314 (2022). An "independent jurisdictional basis" may derive from the underlying controversy. *Vaden v. Discover Bank,* 556 U.S. 49, 62, (2009)). Section 4 "instructs a federal court to 'look through' the petition to the 'underlying substantive controversy' between the parties—even though that controversy is not before the court. *Badgerow,* 142 S.Ct. 1310, 1314 (quoting *Vaden,* 556 U.S. at 62). Arbitration agreements, like this one, often involve only questions of state law. *See id.* at 1326 (Breyer, J., dissenting). Here, the action is predicated under Illinois state law, i.e., the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(b). Therefore, Petitioners' claim of subject matter jurisdiction by means of a federal question remains improper.

Nevertheless, Respondents concede a different jurisdictional basis still rooted in the FAA itself, citing *Vaden,* 556 U.S. at 59

- 11 -

n.9 (2009) and sections 202 and 203 of the FAA, "because . . . the arbitration agreement is not 'entirely between citizens of the United States'" as Respondent SEC is a South Korean corporation. (MTD, Dkt. No. 26 at 9-10 (quoting 9 U.S.C. § 202); *see* Pet. ¶23.) The Court agrees that there is jurisdiction under Chapter 2.

In 1970, the United States acceded to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, (Convention), which Congress codified by implementing Chapter 2 of the FAA, as expressed in section 201 of the FAA. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,* 140 S.Ct. 1637, 1644 (2020) ("*GE France*") (citing 84 Stat. 962 and 9 U.S.C. §§ 201-208). "Chapter 2 . . . empowers [federal] courts to compel arbitration" over actions falling under the Convention. *GE France,* 140 S.Ct. at 1644 (citing § 206 and Convention Article II(3)); *see* 9 U.S.C. § 202. An agreement "fall[s] under the Convention" when it is commercial in nature and a party is foreign. 9 U.S.C. § 202. Chapter 2 also states, "'Chapter 1 applies to actions and proceedings brought under this chapter to the extent that [Chapter 1] is not in conflict with this chapter or the Convention.'" *Id.* (quoting § 208).

Therefore, although Petitioners bring the action to compel arbitration under Section 4 in Chapter 1 of the statute, this Court maintains its subject matter jurisdiction through Chapter 2 to compel

arbitration of this commercial arbitration agreement with a foreign party.

### B.   Venue

Chapter 2, section 204 of the FAA contains its venue provision, which "supplement[s], but do[es] not supplant the general [venue] provision, [28 U.S.C. § 1391]." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 198 (2000); *see also Day v. Orrick, Herrington & Sutcliffe, LLP,* 42 F.4th 1131, 1141 (9th Cir. 2022) (Section 204 is a "permissive, supplemental venue provision in addition to the general venue provision, 28 U.S.C. § 1391."). Samsung seeks to dismiss on grounds that neither provision affords venue to this action. Petitioner argues that venue is proper under both statutes. The Court considers each path.

### 1.   *FAA Venue Provision, 9 U.S.C. § 204*

Under section 204 of the FAA, a court exercising jurisdiction under section 203 is a proper venue for an action where (1) "save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought," or (2) "the district . . . embraces the place designated in the agreement as the place of arbitration." 9 U.S.C. § 204.

As discussed, *supra*, Petitioners cannot establish the first option for venue under section 204 of the FAA because the arbitration agreement itself *is* the source of subject matter jurisdiction. Absent

- 13 -

SA31

an agreement subject to the Convention, this Court would not have jurisdiction on the underlying BIPA issue. This leaves the second option. Petitioners claim, "[v]enue is proper in this District because . . . the arbitrations were venued to take place in this District." (Pet. ¶26.) However, the numerous exhibits to this action do not show as much. Rather than designating a place of arbitration, Samsung's Arbitration Agreement simply incorporates the AAA Rules. Rule R-11 provides that if the parties do not agree to the locale for a hearing, the appointed arbitrator will determine the venue after considering the positions of the parties, dispute, and AAA due process protocol. The AAA did not appoint an arbitrator, nor determine venue of any arbitration before closing its proceedings.

For these reasons, venue does not lie in this District pursuant to the FAA.

### 2.   General Venue Statute, 28 U.S.C. § 1391

Petitioners alternatively seek to establish venue under the general venue statute, 28 U.S.C. § 1391, through § 1391(b)(2), which affords venue to "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Petitioners claim that venue lies here "because many of the Petitioners live in this District" (Pet. ¶26), and the claimants' use of their Samsung Devices in this district evidence a "substantial

part of the events giving rise" to Petitioners' claims occurring
here. (Opp. MTD, Dkt. No. 36 at 29). Petitioners assert via exhibits
that its 49,985 claimants are Illinois residents, approximately
35,651 of whom reside within the Northern District of Illinois. (*See*
Pet. Ex. A, Dkt. No. 1-1; Pet. Opp. MTD Ex. D, Dkt. No. 36-4.)
Samsung argues that because Petitioners' Exhibit D does not provide
the names associated with these claims, Petitioners failed to
identify the claimants as necessary for Samsung to form a defense.
Petitioners retort that Samsung has these names, which are listed in
the otherwise identical spreadsheet provided to the AAA. Petitioners
suggest that they omitted the names in the case filing to preserve
these claimants' privacy during the litigation. (*See* Opp. MTD, Dkt.
No. 36 at 22 n. 6.) Petitioners argue that when coupled with the
identifying information Samsung obtains from its users upon users'
registration or account creation, these cross-references offer
sufficient evidence for Samsung to identify each claimant during
arbitration. The Court agrees.

Samsung next argues, "[t]o the extent that Petitioners seek to
use their place of residence as a proxy . . . to satisfy the
'substantial events' provisions of Section 1391 in this District,
Petitioners fail to provide sufficient evidence of each Petitioner's
residence" (MTD at 15), and "[Petitioners'] speculation that all
Petitioners may have used their devices while residing in and

- 15 -

SA33

traveling throughout this District is mere guesswork" (MTD Reply, Dkt. No. 38 at 22 (citations omitted)). It is true that a plaintiff's residence alone fails to satisfy § 1391's requirements. *Ford-Reyes v. Progressive Funeral Home,* 418 F.Supp. 3d 286, 290 (N.D. Ill. 2019). Instead, this Court looks to events that constitute part of the historical predicate of Plaintiffs' suit. *See Johnson v. Creighton Univ.,* 114 F.Supp. 3d 688, 696 (N.D. Ill. 2015).

The historical predicate to Petitioner's petition for compelled arbitration includes the formation of a contract to arbitrate (upon the Petitioner's assent to Samsung's Arbitration Agreement when, *e.g.,* purchasing or activating their Samsung Device), the alleged violations that occurred during Petitioners' foreseeable use of the device, and Samsung's actions rejecting arbitration. Petitioners adequately showed that the formation of the contract and the alleged violations took place, foreseeably, in the Northern District of Illinois for most Petitioners. The Court takes judicial notice of today's norm that smartphone users use their smartphone where they live and travel and likely purchased it nearby. Drawing all reasonable inferences from Petition Exhibit D, its cross-references, and Petitioners' assertions that each claimant used their Samsung Device within the Northern District of Illinois (usage which motivated their individual arbitration claims, and by extension, the petition in this court), the approximately 35,651 Petitioners

- 16 -

SA34

residing in this district have established that this is the proper venue for their motion to compel arbitration.

Not so, however, for the 14,335 Petitioners who admittedly do not reside in this district. Petitioners fail to explain the connection between the Northern District of Illinois and the Illinois residents living outside it. Illinois is a sizeable state. For example, ten claimants list as their residence Dongola, Illinois, a town located nearly 350 miles from this Courthouse. Although Petitioners correctly point out that a "substantial part" does not require a majority and that "substantial part[s]" of the same claim can occur in multiple districts, *see Receivership Mgmt. v. AEU Holdings,* 2019 WL 4189466, at *14 (N.D. Ill. 2019), the Court recognizes no presumption that every Illinois resident conducts a substantial part – or any part – of their life in Chicagoland or this district more broadly. Thus, for those 14,335 individuals, even after drawing all reasonable inferences, Petitioners have failed to allege sufficiently that a "substantial part of the events" giving rise to the present dispute occurred in this district. § 1391(b)(2).

Petitioners argue that because Samsung admitted that this District was the proper venue in the BIPA class-action suit against Samsung in the Northern District, *G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17*,* Samsung cannot now argue to the contrary in this suit. *See* Opp. MTD at 31. But, as

- 17 -

SA35

Petitioners appear to acknowledge, the claimants in this action are not necessarily party to the other one. *See* Reply MTC at 14 ("Samsung cannot simply refuse to pay its fees in hopes of ushering Petitioners into the *G.T.* class action," implying the Plaintiffs in these two cases are not identical). Petitioners offered no authority to support their claim that a finding of proper venue in one case transfers. Nor will they find validation from this Court today. Therefore, for the approximately 14,355 non-residents of this District, Petitioners have failed to allege sufficient facts to determine that this is the proper venue for their suits.

Thus, this Court infers that for the 35,651 claimants who alleged residence within the Northern District of Illinois, a substantial part of the events giving rise to this dispute occurred in this District. Therefore, Petitioners have sufficiently established that venue lies in this district for their breach of arbitration agreement claims. The petitions as to these remaining non-resident claimants are dismissed without prejudice for improper venue.

### C.   Compel Arbitration

Before the Court considers whether to compel arbitration, the Court will explain why it can. After determining that the case warrants such an order, the Court considers whether to explicitly order the payment of fees.

Samsung declares that the Court may not compel arbitration (including its fees) because Petitioners are now entitled to proceed in Court from where Petitioners might attain an adequate remedy at law. The authorities Samsung cites, address different forms of relief than that sought here. *See United States v. Rural Elec. Convenience Co-op. Co.,* 922 F.2d 429, 432 (7th Cir. 1991) (preliminary injunction); *Unilectric, Inc. v. Holwin Corp.,* 243 F.2d 393, 396 (7th Cir. 1957) (royalties); *King Mechanism & Eng'g Co. v. W. Wheeled Scraper Co.,* 59 F.2d 546, 548 (7th Cir. 1932) (patent infringement). Because the FAA empowers this Court to compel arbitration, Samsung's arguments against specific performance remain inconsistent with the statute.

Samsung alternatively argues that this action should not continue in court. Because the AAA applied its established rules to this matter, Samsung's theory goes, the Court lacks authority to "second-guess that determination and order [the AAA] to re-open the proceedings." (Reply MTD at 8-9.) Not quite. *See McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020) (granting motion to compel arbitration after the AAA had closed the cases upon failure of parties to pay the required fees). Samsung's Arbitration Agreement requires dispute resolution "exclusively through final and binding arbitration, and not by a court or jury." (*See* Pet. Ex. E,

- 19 -

SA37

Dkt. No. 1-6 at 3.) But no "final and binding" arbitration has been had here.

The cases upon which Samsung relies are distinguishable. For instance, the Fifth Circuit in *Noble Cap Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.,* 31 F.4th 333, 336 (5th Cir. 2022), affirmed a district court's denial of a motion to compel arbitration where the claim had been terminated for failure to pay arbitral fees, because "[e]ven though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS [the ADR provider] fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.* In *Noble,* both parties had met the association's prerequisites to proceed with the arbitration, and the assigned arbitrator had already entered an Emergency Arbitrator's Award after a hearing on the merits. *Id.* at 335. It was only after the arbitration's sustaining fees went unpaid that the arbitration "officially closed." *Id.* Here, the AAA proceedings did not get that far. The cases were administratively closed on November 30, 2022, having not moved beyond the AAA's determination the claims could proceed. An arbitrator was never assigned to their dispute. Thus, our granting the motion to compel arbitration does not "second-guess" any merits determination. It simply returns the matter to the AAA so it may issue one.

- 20 -

SA38

The Court will now assess the Motion to Compel on the merits.

### 1. *Valid Agreement to Arbitrate*

The Court may only compel arbitration when the written arbitration agreement is enforceable. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see GE France,* 140 S.Ct. at 1645 (citing Convention Article II(3)); *see also* Convention Article II(1).

Petitioners claim to be Samsung device users who agreed to Samsung's drafted Arbitration Agreement. To contend Plaintiff has not met their burden to show a valid agreement to arbitrate, Samsung cites cases where the moving party failed to show the existence of *an* agreement. That is not the issue here. It remains undisputed that the arbitration agreement is written and enforceable against the parties that accede to it. Samsung's strongest argument here is that Petitioners failed to show that *each* one entered into this agreement.

In *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1051 (7th Cir. 2020), the Seventh Circuit reviewed this Court's grant of class certification when Facebook opposed the issuance of notice on the grounds that its employees entered arbitration agreements that prohibited class actions. *Id.* To support this argument, Facebook provided a template of the agreement and estimates of how many employees signed such forms. *Id.* It did not supply actual executed documents. *Id.* The Seventh Circuit directed this Court to permit the

- 21 -

parties to submit additional evidence on the agreements' existence and validity. *Id.* at 1050.

Here, the Court has more information. There is a discrete list of named Petitioners. The AAA has already reviewed Petitioners' arbitration agreements and determined that they met the filing requirements. The terms do not require signature for execution (see Pet. Opp. MTD, Dkt. No. 36 at 9); elsewhere, Samsung acknowledged that each Samsung device holder accepted Samsung's terms and conditions containing the arbitration clause when using their Samsung device. *See G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17 at 10. As discussed *supra,* the Court finds Petitioners have made a sufficient showing that they are customers. In light of the record, the Court finds a valid agreement to arbitrate between Samsung and the Petitioners who are customers.

To find that each Petitioner residing in this District is a Samsung customer, the Court must accept the word of over 30,000 individuals, some of whom may have been recruited to this action by obscure social media ads. (*See* Dkt. Nos. 27-7—27-10.) Samsung has not identified a genuine issue of fact as to any individual Petitioner. *Kass,* 2023 WL 4782930, at *5. Samsung has a customer list, against which they could compare the list of Petitioners. Samsung raised concerns about specific names to the AAA, which in turn asked Petitioners to correct their list. Petitioners did so,

and the record does not show that Samsung has raised specific concerns since. Samsung's current rejection that all Petitioners are customers is merely "denying facts," and this is not enough. *Tinder,* 305 F.3d at 735 ("Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial."); *see* FED. R. CIV. P. 56(e).

Moreover, the inquiry for purposes of providing notice involves different interests than those of whether to compel arbitration. In *Bigger,* the Court explained the inconveniences associated with providing notice of a class to many people who could eventually be found ineligible due to an arbitration agreement. 947 F.3d at 1050-51. Here, the claimants, as parties to the case, are already aware of it.

Therefore, the Court finds a valid agreement to arbitrate.

## 2.  *Dispute within the Scope of the Arbitration Agreement*

Once the court finds a valid agreement to arbitrate, the party opposing arbitration has the burden to show that the dispute falls outside the scope of the agreement. *Hoenig v. Karl Knauz Motors.,* 983 F.Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987)). Still, when parties clearly and unmistakably delegate threshold arbitrability

- 23 -

questions to an arbitrator, a court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019). The Court assesses the parties' arbitration agreement under Illinois law to determine whether there exists an enforceable delegation clause. *See Gupta v. Morgan Stanley Smith Barney, LLC,* 934 F. 3d 705, 711 (7th Cir. 2019).

Petitioners argue, and Samsung does not meaningfully dispute, that through text such as, "The arbitrator shall decide all issues of interpretation and application of this Agreement" (Pet. Exs. B-E), Samsung's arbitration agreement delegates questions regarding its scope to an arbitrator. The Court agrees with this interpretation of the plain language. *See Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 66, 72 (2010) (holding that language, "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator). Additionally, many courts have held that reference to or incorporation of AAA rules – which the agreement here references – constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator. *See Tel. Invs. USA, Inc. v. Lumen Techs., Inc.,* 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (collecting cases).

Samsung argues that petitioning on behalf of nearly 50,000 petitioners violates the Arbitration Agreement's collective action waiver. Whether the mass filings are indeed appropriate under the arbitration agreement in light of its class action waiver provision is clearly a question of scope. Thus, because the parties both agreed to delegate enforceability questions to the arbitrator and incorporated the AAA rules in the arbitration agreement, the question of whether Petitioners' mass filings violate the Arbitration Agreement remains for an arbitrator, not this Court. *See Henry Schein,* 139 S.Ct. at 530; *see also McClenon,* 473 F.Supp. 3d at 811–12.

The question of arbitrability of Petitioners' underlying BIPA claims reaches the same result. Samsung insinuates that Petitioner's claims are frivolous and for that reason Samsung should be entitled to evade arbitration. The U.S. Supreme Court said otherwise: "[The FAA] contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text." *Henry Schein,* 139 S. Ct. at 530.

Therefore, the Court resolves this element in favor of arbitration.

### 3.  *Refusal to Arbitrate*

The Court now turns to whether Samsung's refusal to pay the AAA's fees for each individual claimant constitutes a breach of its

own arbitration agreement. Determining that it does, the Court then considers whether its order to compel arbitration should specify fee payment.

Under the FAA, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," in the event of "failure, neglect, or refusal" of the non-moving party to arbitrate. 9 U.S.C.A. § 4.

Samsung sets forth interweaving arguments: Samsung's refusal to pay fees was not a breach; Petitioners waived their right to arbitrate thus relieving Samsung of responsibility; and the AAA enjoys sole authority to determine a resolution regarding fees. Petitioners argue that Samsung's failure to pay constitutes a breach that this Court must remedy by ordering Samsung to take effective action to arbitrate.

Samsung asserts that it "declined to pay the arbitral fees but stood ready to arbitrate." (Reply MTD at 4.) That is a contradictory position. Arbitration was conditioned on the payment of the AAA's assessed fees, per Samsung's own Arbitration Agreement. The AAA's Consumer Rules establish that "the AAA may *require* the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration," (Rule R-6 (emphasis added)), and the AAA did this. (*See* ex. 27-14 ("Samsung is

- 26 -

SA44

now *responsible for* payment of the initial administrative filing fees totaling $4,125,000.00") (emphasis added).)

Samsung retorts that because the AAA rules anticipated non-payment, *see e.g.,* Supplementary Rule 10(d), Samsung's actions were acceptable. But the fact that Petitioners had the option to pay Samsung's fees does not negate the reality that those fees were deemed Samsung's responsibility by the AAA. A rule's mere anticipation of violations thereof does not render violations permissible. If so, this justice system in which we operate would make a lot less sense.

Samsung goes on to argue that Petitioners had a choice "between (i) advancing the filing fees and seeking to recoup them in the arbitration and (ii) permitting the arbitral cases to be closed and proceeding in court," and because they failed to pay Samsung's fees, Petitioners' waived their right to compel arbitration. (Reply MTD, Dkt. No. 38 at 15.) Samsung thus concludes that Petitioners "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1714 (2022).

The Court disagrees. In *Morgan,* the defendants litigated in court for nearly eight months after the suit's filing before moving to stay the litigation and compel arbitration. *Id.* at 1711. Here, Petitioners immediately moved to compel arbitration when Samsung

expressed its refusal to pay the fees. This is after Petitioners had sent Samsung notices of intent to arbitrate, filed complaints in the forum agreed upon by the Arbitration Agreement, and satisfied their AAA-dictated financial responsibilities by paying their own filing fees.

Samsung's reference to *Cota v. Art Brand Studios, LLC,* 21-cv-1519 (LJL), 2021 U.S. Dist. LEXIS 199325, at *46 (S.D.N.Y. Oct. 15, 2021), also misses the mark. In *Cota,* the district court denied the defendant art studio company's motion to compel arbitration after the defendants refused to pay AAA arbitration fees for the plaintiff artists. *Id.* But in that case, both parties consistently paid the AAA's initial fees to allow the claims to be heard by the arbitrator panel. *Id.* at 14. Only after receiving significantly larger invoices for subsequent final fees, the plaintiffs notified the AAA they were unable to pay due to financial hardship, then the AAA offered to the defendants the option to cover those costs to keep the arbitration alive. *Id.* at 27. But here, Samsung declined to pay its share of the arbitration fees, not because of financial hardship, but because of its own independent determination of deficiencies within Petitioners' claims, even after Petitioners corrected them to AAA's satisfaction. Samsung also declined to pay the fees from the beginning, unlike the party in *Cota* that initially paid the fees in a showing of good faith.

- 28 -

SA46

Given the AAA's own determination that the claimants met the AAA's administrative filing requirements and Petitioners' own compliance with its filing and financial requirements based on the AAA's rules and procedures, Petitioners' refusal to meet Samsung's financial obligations does not constitute a waiver to compel arbitration. Plaintiff's conduct has consistently aligned with their right to arbitrate. At least, Defendant has not shown otherwise.

### *4. Fees*

Finally, the Court turns to whether to compel Samsung to pay fees. Other courts have observed "no totally satisfactory solution" to a party's nonpayment of its share of arbitration fees. *Lifescan,* 363 F.3d at 1013.

Samsung argues that because the AAA's rules include provisions regarding the payment of fees, and the parties elected to grant the AAA discretionary authority regarding the implementation of those rules, the AAA enjoys sole authority to determine a resolution to Samsung's shirked fee responsibilities. In other words, the Court should treat this like it treated the class action waiver.

In *Howsam v. Dean Witter Reynolds, Inc.,* the Supreme Court distinguished between procedural and substantive questions of arbitrability. 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.") The Court

- 29 -

SA47

concluded that the ADR tribunal's time-bar rule was akin to a "waiver, delay, or a like defense" and was thus procedural, for an arbitrator. *Id.* at 85 (cleaned up). The *Howsam* Court looked to comments to the Revised Uniform Arbitration Act ("RUAA"), modeled to incorporate FAA jurisprudence, providing, " 'in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' " *Id.,* (quoting RUAA § 6, comment 2, 7 U.L.A., at 13 (emphasis in *Howsam*). Here, the parties disagree that they are bound by the Arbitration Agreement to pay the filing fee, therefore, it is for this Court to decide "whether the parties are bound" to do so. *Id.* at 84.

Indeed, the filing fee is more substantial than a time limit. The AAA, commonsensically, requires fees to perform its services. The AAA can validly refuse to conduct arbitrations without payment, as it did here. To expect it to perform its arbitral services regarding payment without payment places undue burden on a non-breaching party, either the AAA or the claimants, to front the costs. If this Court merely orders arbitration but not the payment of fees, the AAA might seek payment from Petitioners with the expectation that Petitioners will invoice Samsung for this payment. (See Rule R-

- 30 -

SA48

2 (a)(3), Dkt. No. 1-7.) For what it is worth, the Court understands that Samsung – who has argued neither inability to pay nor unconscionability – can also recoup its fees if Petitioners' claims are as "harass[ing]" or "frivolous" as it contends (see Rule R-44 (c)), but the Court has not been convinced that Petitioners are able to lend over $4,000,000 while the dispute pends.

The Court also remains unpersuaded by courts that have compelled arbitration yet declined to extend the ruling to payment of arbitration fees in distinguishable cases. In *Croasmun v. Adtalem Glob. Educ., Inc.,* Judge Lefkow declined to compel arbitral fees upon finding "no indication that JAMS [the arbitration tribunal] will not resolve the fees issue if asked." 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020). However, the court invited the parties to "return to this court for resolution" if JAMS declined to arbitrate without the payment of fees, explaining that the petitioners "should not face checkmate." *Id.*

A few months earlier, in *McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020), Judge Rowland granted the petitioners' motion to compel after the AAA closed the claims for Postmates' failure to pay fees. Yet, she stopped short of ordering Postmates to pay all fees, citing an on-going case against the same defendant in California, *Adams v. Postmates, Inc.,* 414 F.Supp. 3d 1246, 1255 (N.D.

Cal. 2019), and *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.,* 588 F.3d 884, 887 (5th Cir. 2009).

In *Dealer Computer,* 588 F.3d at 887, cited approvingly by *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.,* 623 F.3d 476, 482 (7th Cir. 2010), the Fifth Circuit reversed a district court's order of payment of arbitral fees where the respondent appeared unable to pay them, while the petitioner had the means. *Dealer Computer Servs.,* 588 F.3d at 888 n.3. The court explained,

> A difficult situation might be presented if [the respondent] could afford to put up its part of the arbitral fee attributable to its counterclaim, and [the petitioner] was not financially able to put up the entire thus enhanced fee (although being able to put up what the fee would have been without such enhancement), and the arbitral panel refused [the petitioner's] request to proceed on its claims . . . However, we are not faced with any such case.

*Id.* This Court faces such a case.

In any event, when the Fifth Circuit in *Dealer Computer* observed, "payment of fees seems to be a procedural condition precedent set by the AAA," it looked to AAA Rules R-52 and R-54, which fall under the "General Procedural Rules" chapter of the Consumer Rules. *Id.* at 887. The Rules, since updated, still list Rules R-52 and R-54 within the "General Procedural Rules" chapter. Rule R-52 now is titled, "Serving of Notice and AAA and Arbitrator Communications," and Rule R-54 is "Remedies for Nonpayment." (*See* AAA Rules, Dkt. No. 1-7.) The rules for payment of fees themselves are contained in other chapters that lack the word "procedure."

- 32 -

SA50

(*Compare* "Cost of Arbitration" and "AAA Administrative Fees" *with* "Hearing Procedures" and "Procedures for the Resolution of Disputes through Document Submission," AAA Rules, Dkt. No. 1-7.)

Nevertheless, the determination of "procedural" is "difficult." *See Romspen Mortg. Ltd. P'ship v. BGC Holdings LLC – Arlington Place One,* 20 F.4th 359, 369 (7th Cir. 2021). Federal courts adjudicating claims through pendant jurisdiction classify as substantive rather than procedural issues that are bound up in the rights of the forum. *See USA Gymnastics v. Liberty Ins. Underwriters, Inc.,* 46 F.4th 571, 580 (7th Cir. 2022); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) (and its progeny). For example, attorney's fees are typically substantive. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 (1975). On the other hand, federal procedural rules obliging an answer to a complaint dictate that a party who "defaults" on their defense faces a detriment; but allowing "default" by unpaid fees here might well benefit Samsung. *See* Alexi Pfeffer-Gillett, *Unfair by Default: Arbitration's Reverse Default Judgment Problem*, 171 U. PA. L. REV. 459, 488 (2023). If anything, allowing that to stand would be making special procedural rules for arbitration – which the courts cannot do. *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1713 (2022).

Whether from the perspective of the judiciary or through the lens of the AAA, this Court does not see filing fees as procedural

- 33 -

SA51

in this case. The fees are bound up in the right to arbitrate that
the ADR tribunal governs. Unlike the time limit rule in *Howsman* that
delineates when parties can arbitrate or the collective action
provision that might instruct how, the filing fee rule affects
whether the parties can exercise their right to arbitrate at all.
Money is the means of dispute resolution, and the way to start this
process. Fees are not something the Court can "jigger" to promote or
disfavor arbitration. *Johnson v. Mitek Sys., Inc.,* 55 F.4th 1122,
1124 (7th Cir. 2022). If it could, it might suggest a more modest
figure.

Samsung was surely thinking about money when it wrote its Terms
& Conditions. The company may not have expected so many would seek
arbitration against it, but neither should it be allowed to "blanch[]
at the cost of the filing fees it agreed to pay in the arbitration
clause." *Abernathy v. Doordash, Inc.,* 438 F.Supp. 3d 1062, 1068 (N.D.
Cal. 2020) (describing the company's refusal to pay fees associated
with its own-drafted arbitration clause as "hypocrisy" and "irony
upon irony").

Alas, Samsung was hoist with its own petard. *See Nat'l Ass'n of
Regul. Util. Comm'rs v. U.S. Dep't of Energy,* 736 F.3d 517, 520 (D.C.
Cir. 2013); William Shakespeare, *Hamlet,* Act III, Scene 4. As a New
York court recently stated in a mass arbitration case involving Uber,
"While Uber is trying to avoid paying the arbitration fees associated

- 34 -

SA52

with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision." *Uber Tech., Inc. v. American Arbitration Assn., Inc.,* 204 A.D.3d 506, 510 (N.Y. App. Div. 2022). Samsung made the same business decision here, and for better or for worse, the time calls for Samsung to pay for it.

### IV.    CONCLUSION

For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to allege proper venue in the Northern District of Illinois. The Court grants Petitioner's Motion to Compel Arbitration (Dkt. No. 2) by ordering the parties to arbitrate, specifically ordering Samsung to pay its fee so they can.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 9/12/2023


- 35 -

**SAMSUNG'S ARBITRATION AGREEMENT**

**DIST. CT. DOC. 1-4 (OCT. 29, 2021)**

# EXHIBIT C

16.  **ARBITRATION AGREEMENT.**

This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung. Opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product.

You and Samsung each agree that, subject to Samsung's right to apply for injunctive remedies set forth in Paragraph 15 above, all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury. Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action. The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at adr.org or by calling the AAA at 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act. The laws of the State of New York, without reference to its choice of law principles, shall govern the interpretation of the Agreement and all disputes that are subject to this Agreement. The arbitrator shall decide all issues of interpretation and application of this Agreement.

For any arbitration in which your total damage claims, exclusive of attorney fees and expert witness fees, are $5,000.00 or less ("Small Claim"), the arbitrator may, if you prevail, award your reasonable attorney fees, expert witness fees and costs as part of any award, but may not grant Samsung its attorney fees, expert witness fees or costs unless it is determined that the claim was brought in bad faith. In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and Samsung shall pay the remainder of such fees. Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules. In a Large Claim case, the arbitrator may grant to the prevailing party, or apportion among the parties, reasonable attorney fees, expert witness fees and costs to the extent allowed by the applicable law. Judgment may be entered on the arbitrator's award in any court of competent jurisdiction.

This Agreement also applies to claims against Samsung's employees, representatives, parents, and other affiliates if any such claim relates to or arises

from the EULA, Standard Limited Warranty, or the Product's sale, condition or performance.

**You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "EULA Arbitration Opt Out." You must include in the opt out e-mail (a) your name and address; (b) the date on which the Product was purchased; (c) the Product model name or model number; and (d) the IMEI or MEID or Serial Number, as applicable, if you have it (the IMEI or MEID or Serial Number can be found (i) on the Product box; (ii) on the Product information screen, which can be found under "Settings;" (iii) on a label on the back of the Product beneath the battery, if the battery is removable; and (iv) on the outside of the Product if the battery is not removable).**

Alternatively, you may opt out by calling 1-800-SAMSUNG (726-7864) no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product and providing the same information. These are the only two forms of notice that will be effective to opt out of this Agreement. Opting out of this Agreement will not affect in any way the benefits to which you would otherwise be entitled, including the benefits of the Standard Limited Warranty.

**AMERICAN ARBITRATION ASSOCIATION**

**CONSUMER ARBITRATION RULES**

**DIST. CT. DOC. 1-7 (OCT. 29, 2021)**

# EXHIBIT F



# Consumer Arbitration Rules



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014
Costs of Arbitration Amended and Effective November 1, 2020

# Table of Contents

Introduction ................................................................ 6

About the AAA................................................................ 6

The Arbitrator................................................................ 7

The AAA's Consumer Arbitration Rules ........................................ 7

Availability of Mediation through AAA Mediation.org ........................... 7

Administrative Fees .......................................................... 7

Arbitrator's Fees ............................................................ 8

Notification ................................................................ 8

Filing a Case and Initial AAA Administrative Steps............................ 9

R-1. Applicability (When the AAA Applies These Rules) ........................ 9

R-2. Starting Arbitration under an Arbitration Agreement in a Contract ........ 11

R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause ........... 13

R-4. AAA Administrative Fees .............................................. 13

R-5. Neutral Arbitrator's Compensation ..................................... 14

R-6. Depositing Neutral Arbitrator's Compensation with the AAA ............... 14

R-7. Expenses ............................................................. 14

R-8. Changes of Claim ..................................................... 14

R-9. Small Claims Option for the Parties ................................... 15

R-10. Administrative Conference with the AAA ............................... 15

R-11. Fixing of Locale (the city, county, state, territory and or country where the
arbitration will take place).................................................. 15

R-12. Business Notification and Publicly-Accessible Consumer Clause Registry....... 16

R-13. AAA and Delegation of Duties......................................... 17

R-14. Jurisdiction ......................................................... 17

Appointing the Arbitrator .................................................. 18

R-15. National Roster of Arbitrators......................................... 18

R-16. Appointment from National Roster .................................... 18

R-17. Number of Arbitrators ............................................... 18

R-18. Disclosure .......................................................... 18

R-19. Disqualification of Arbitrator ........................................ 19

R-20. Vacancies .......................................................... 19

SA61

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . . 20

R-22. Exchange of Information between the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . . . 21

R-25. Representation of a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-26. Setting the Date, Time, and Place (the physical site of the hearing within
the designated locale) of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-27. Written Record of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-28. Interpreters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-32. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other . . . . . . . . 25

Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-37. Interim Measures (a preliminary decision made by the arbitrator involving
part or all of the issue(s) in dispute in the arbitration) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . . 26

Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-40. Closing of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-41. Reopening of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors . . . . . . 29

Post Hearing........................................................... 30
R-48. Release of Documents for Judicial Proceedings  ............................ 30
R-49. Applications to Court and Exclusion of Liability  ............................ 30

General Procedural Rules ....................................................... 31
R-50. Waiver of Rules ...................................................... 31
R-51. Extensions of Time  ................................................... 31
R-52. Serving of Notice and AAA and Arbitrator Communications.................. 31
R-53. Interpretation and Application of Rules  ................................... 32
R-54. Remedies for Nonpayment  ............................................. 32
R-55. Declining or Ceasing Arbitration.......................................... 32

Costs of Arbitration........................................................... 33

AAA Administrative Fees ....................................................... 34
(i) Filing Fees*........................................................... 34
(ii) Case Management Fees ................................................. 36
(iii) Hearing Fees ......................................................... 36

Neutral Arbitrator's Compensation .............................................. 37

Reallocation of Arbitrator Compensation, AAA Administrative Fees
and Certain Expenses ......................................................... 38

Hearing Room Rental.......................................................... 38

Abeyance Fee................................................................ 38

Expenses ................................................................... 39

Consumer Clause Review and Registry Fee....................................... 39

AAA Mediation Fees for Multiple Consumer Case Filings  ......................... 39

AAA Administered Settlement Approval Process for Multiple
Consumer Case Filings  ....................................................... 40

Fees for Additional Services  ................................................... 40

Procedures for the Resolution of Disputes through Document
Submission ................................................................. 41
D-1. Applicability........................................................... 41
D-2. Preliminary Management Hearing ........................................ 41
D-3. Removal from the Procedures ........................................... 41
D-4. Time of Award......................................................... 42

SA63

Glossary of Terms ............................................................... 43

    Administrator ............................................................... 43

    ADR Agreement ............................................................. 43

    ADR Process ................................................................ 43

    ADR Program ............................................................... 43

    Arbitration ................................................................. 43

    Arbitration Agreement ...................................................... 44

    Arbitrator .................................................................. 44

    Case Administrator ......................................................... 44

    Claimant ................................................................... 44

    Demand for Arbitration (also referred to as "Demand")............................ 44

    Documents-Only Arbitration ................................................. 45

    Independent ADR Institution ................................................. 45

    In-Person Hearing .......................................................... 45

    Mediation .................................................................. 45

    Neutral .................................................................... 45

    Party....................................................................... 45

    Parties ..................................................................... 46

    Opposing Party ............................................................. 46

    Respondent ................................................................ 46

    Telephone Hearing ......................................................... 46

# Consumer Arbitration Rules

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule,* and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol.*

## About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

### The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

### The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

### Availability of Mediation through AAA Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.aaamediation.org.**

### Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

SA66

### Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

### Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

- notify the Association of its intention to do so, and

- provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

SA67

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

   **1)**  have specified that these *Consumer Arbitration Rules* shall apply;

   **2)**  have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the Consumer Arbitration Rules;

   **3)**  the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

   **4)**  the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules.*

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements

- Telecommunications (cell phone, ISP, cable TV) agreements

- Leases (residential, automobile)

- Automobile and manufactured home purchase contracts

- Finance agreements (car loans, mortgages, bank accounts)

- Home inspection contracts

- Pest control services

- Moving and storage contracts

- Warranties (home, automobile, product)

- Legal funding

- Health and fitness club membership agreements

- Travel services

- Insurance policies

- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts

- Real estate purchase and sale agreements

- Condominium or homeowner association by-laws

- Business insurance policies (including crop insurance)

- Commercial loan and lease agreements

- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules*. The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol*. Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer*

SA69

*Arbitration Rules.* If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

## R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

(3) If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

- A copy of the court order

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

(b) The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

(c) The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

- in writing,

- sent to the AAA, and

- sent to the claimant at the same time.

(d) The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

SA71

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

### R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

- be in writing (electronic communication is acceptable);
- be signed by both parties;
- briefly explain the dispute;
- list the names and addresses of the consumer and the business;
- specify the amount of money involved;
- specify the requested location for the hearing if an in-person hearing is requested; and
- state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

### R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

### R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

### R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counterclaim may only be considered if the arbitrator allows it.

SA73

### R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

### R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

### R-11. Fixing of Locale (the city, county, state, territory and or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.

SA74

### R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1.  notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2.  provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to that clause is only an administrative determination by the AAA and cannot be

relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/consumerclauseregistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/consumerclauseregistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

### R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-14. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

**(a)** If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

**(b)** If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

**(c)** Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

  **(1)** any bias;

  **(2)** any financial interest in the result of the arbitration;

  **(3)** any personal interest in the result of the arbitration; or

  **(4)** any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

SA77

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

### R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

**(1)** partiality or lack of independence;

**(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

**(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified.  After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

### R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

SA78

## Pre-Hearing Preparation

### R-21. Preliminary Management Hearing with the Arbitrator

**(a)** If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

**(b)** During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

**(c)** The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

### R-22. Exchange of Information between the Parties

**(a)** If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

    **1)** specific documents and other information to be shared between the consumer and business, and

    **2)** that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

**(b)** Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

**(c)** No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

**(d)** The arbitrator has authority to resolve any disputes between the parties about exchanging information.

### R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

**(a)** an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

SA79

**(b)** to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically-stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

## R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

## R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

### R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

**(1)**  respond promptly to the arbitrator when he or she asks what dates the parties
are available to have the hearings;

**(2)**  cooperate in the scheduling of the hearing on the earliest possible date; and

**(3)**  follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

### R-27. Written Record of Hearing

**(a)**  If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

**(b)**  No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

**(c)**  The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

**(d)**  The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

### R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

SA81

### R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

SA82

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

**(a)** The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

**(c)** The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

**(d)** The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

**(e)** The parties may agree in writing to waive oral hearings.

### R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

### R-34. Evidence

**(a)** The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

**(c)** The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

### R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

**(a)** The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

**(b)** If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

### R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and the AAA will notify the parties. Any party who would like to be present at the

SA84

inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

### R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

### R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

### R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

**(a)** Any award shall be in writing and executed in the form and manner required by law.

**(b)** The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

Rules Amended and Effective September 1, 2014. Costs of Arbitration Amended and Effective November 1, 2020.

CONSUMER **27**

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

### R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

### R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

### R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

SA87

### R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

Rules Amended and Effective September 1, 2014. Costs of Arbitration Amended and Effective November 1, 2020.

CONSUMER **29**

SA88

## Post Hearing

### R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

### R-49. Applications to Court and Exclusion of Liability

**(a)** No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

SA89

## General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

**(a)** Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

**(c)** Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

**(d)** A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

**(e)** A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

### R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

### R-54. Remedies for Nonpayment

**(a)** If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

**(b)** Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

**(c)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(d)** If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

### R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

SA91

## Costs of Arbitration

Where the AAA determines that a business's failure to pay their portion of arbitration costs is a violation of the *Consumer Arbitration Rules,* the AAA may decline to administer future consumer arbitrations with that business.

| Party | Desk/Documents-Only Arbitration | In-Person, Virtual or Telephonic Hearing Arbitration |
|---|---|---|
| Individual | **Single Consumer Case Filing Fee:** $200<br><br>**Multiple Consumer Case Filing Fee:** $100 or $50 per case depending on tier<br><br>$0 if Case Filed by Business | **Single Consumer Case Filing Fee:** $200<br><br>**Multiple Consumer Case Filing Fee:** $100 or $50 per case depending on tier<br><br>$0 if Case Filed by Business |
| Business | **Single Consumer Case Filing Fee:** $300 for 1 or $425 for 3 arbitrators is due once the individual claimant meets the filing requirements; $500 for 1 arbitrator or $625 for 3 arbitrators if Case Filed by Business is due at the time the arbitration is filed.<br><br>**Multiple Consumer Case Filing Fee:** $300, $225, $150, or $75 per case depending on tier, due once the individual claimant meets the filing requirements; Business must pay both the Individual's Filing Fee and Business's Filing Fee if the case is filed by Business, due at the time the arbitration is filed.<br><br>**Case Management Fee:** $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed and must be paid prior to the arbitrator appointment process.<br><br>**Arbitrator Compensation:** $1,500 per case* | **Single Consumer Filing Fee:** $300 for 1 or $425 for 3 arbitrators is due once the individual claimant meets the filing requirements; $500 for 1 arbitrator or $625 for 3 arbitrators if Case Filed by Business is due at the time the arbitration is filed.<br><br>**Multiple Consumer Case Filing Fee:** $300, $225, $150, or $75 per case depending on tier, due once the individual claimant meets the filing requirements; Business must pay both the Individual's Filing Fee and Business's Filing Fee if the case is filed by Business, due at the time the arbitration is filed.<br><br>**Case Management Fee:** $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed and must be paid prior to the arbitrator appointment process.<br><br>**Hearing Fee:** $500<br><br>**Arbitrator Compensation:** $2,500 per day of hearing* per arbitrator |

| Party | Desk/Documents-Only Arbitration | In-Person, Virtual or Telephonic Hearing Arbitration |
|---|---|---|
| | *A Desk/Documents-Only Case will not exceed document submissions of more than 100 pages in total and 7 total hours of time for the arbitrator to review the submissions and render the Award.<br><br>Beyond 100 pages and 7 hours of time, the business will be responsible for additional arbitrator compensation at a rate of $300 per hour. Arbitrator compensation is not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous. | *The arbitrator compensation encompasses one preliminary conference, one day of in-person, virtual or telephonic hearing, and one final award. For cases with additional procedures, such as multiple telephone conferences, motion practice, post-hearing briefing, interim or partial awards, awards containing findings of fact and conclusions of law, or other processes not provided for in the Rules, the business will be responsible for additional arbitrator compensation. Arbitrator compensation is not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous. |

## AAA Administrative Fees

In cases where the business is the filing party, either as the claimant or filing on behalf of the individual, the business shall be responsible for all administrative fees that includes, filing fees, case management fees and hearing fees charged by the AAA.

Arbitrator compensation is not included as a part of the AAA's administrative fees.

Note that with regard to all AAA administrative fees, the AAA retains the discretion to interpret and apply this fee schedule to a particular case or cases.

### (i) Filing Fees*

The business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements, even if the matter is settled or withdrawn.

There shall be no filing fee charged for a counterclaim.

*Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)

*Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective May 1, 2020)*

A. Single Consumer Case Filing:

In cases before a single arbitrator where the individual is the Claimant, a **non-refundable**\*\* filing fee, capped in the amount of $200, is payable in full by the individual when a case is filed unless the parties' agreement provides that the individual pay less. A **non-refundable** filing fee in the amount of $300 is payable by the business once the individual claimant meets the filing requirements, unless the parties' agreement provides that the business pay more.

In cases before three or more arbitrators, where the individual is the Claimant, a **non-refundable**\*\* filing fee capped in the amount of $200 is payable in full by the individual when a case is filed, unless the parties' agreement provides that the individual pay less. A **non-refundable** filing fee in the amount of $425 is payable by the business once the individual claimant meets the filing requirements, unless the parties' agreement provides that the business pay more.

In cases where the business is the Claimant, the business shall be responsible for all filing fees. The **non-refundable** filing fee is $500 for a single arbitrator or $625 for 3 arbitrators.

*\*\*In the event the single consumer case filing is closed due to non-payment of initial filing fees by the business the AAA will return any filing fee received from the individual.*

B. Multiple Consumer Case Filings:

These multiple consumer case filings fees will apply to all cases when the American Arbitration Association (AAA) determines in its sole discretion that the following conditions are met:

a. Twenty-five (25) or more similar claims for arbitration or mediation are filed,

b. Claims are against or on behalf of the same party or parties, and

c. Counsel for the parties is consistent or coordinated across all cases.

SA94

All fees listed below are **non-refundable\*\*\*** and will be assessed to the parties as described below, unless the clause provides that the individual pay less or the clause provides that the business is responsible for the entire fee.

*\*\*\*In the event any multiple case filings are closed due to non-payment of filing fees by the business, the AAA will return any filing fees received from the individuals. Filing fees are non-refundable in the event the cases are closed due to settlement or withdrawal.*

AAA, in its sole discretion, may consider an alternative payment process for multiple case filings.

**Filing Fees For Cases Filed by the Individuals:**

AAA reserves the right to determine what tier of fees applies to multiple cases filed subsequent to the initial filing.

For multiple case filings that contain more than 500 cases, each tier will be applied to the number of cases that fall within that tier.

|  | First 500 Cases | Cases 501 to 1,500 | Cases 1,501 to 3,000 | Cases 3,001 and beyond |
|---|---|---|---|---|
| Individual filing fee per case | $100 | $50 | $50 | $50 |
| Business filing fee per case | $300 | $225 | $150 | $75 |

(ii) Case Management Fees

A non-refundable case management fee of $1,400 for 1 arbitrator or $1,775 for 3 arbitrators will be assessed to the business and must be paid prior to the arbitrator appointment process.

(iii) Hearing Fees

For telephonic hearings, virtual hearings or in-person hearings held, a Hearing Fee of $500 is payable by the business. If a case is settled or withdrawn prior to

the hearing taking place, the Hearing Fee will be refunded, or cancelled if not yet paid. However, if the AAA is not notified of a cancellation at least two business days before a scheduled hearing, the Hearing Fee will remain due and will not be refunded.

There is no AAA hearing fee for an Administrative Conference (see R-10).

## Neutral Arbitrator's Compensation

The business shall pay the arbitrator's compensation unless the individual, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation.

- **Desk/Documents-Only Arbitration** – Arbitrators serving on a desk/documents-only arbitration will receive compensation at a rate of $1,500 per case. A desk/documents-only arbitration will not exceed document submissions of more than 100 pages in total and 7 total hours of time for the arbitrator to review the submissions and render the Award. Beyond 100 pages and 7 hours of time, the business will be responsible for additional arbitrator compensation at a rate of $300 per hour.

- **In-Person, Virtual or Telephonic Hearing Arbitration** – Arbitrators serving on an in-person, virtual or telephonic hearing arbitration case will receive compensation at a rate of $2,500 per day of hearing per arbitrator. The arbitrator compensation encompasses one preliminary conference, one day of in-person, virtual or telephonic hearing, and one final award. For cases with additional procedures, such as multiple telephone conferences, motion practice, post-hearing briefing, interim or partial awards, awards containing findings of fact and conclusions of law, or other processes not provided for in the Rules, the business will be responsible for additional arbitrator compensation.

Once a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half of the arbitrator compensation rate. Once evidentiary hearings are held or all parties' documents are submitted for a desk/documents-only arbitration, the arbitrator is entitled to the full amount of the arbitrator compensation rate.

For in-person, virtual or telephonic hearing arbitrations, if an evidentiary hearing is cancelled fewer than 2 business days before the hearing, the arbitrator is entitled to receive compensation at the first day of hearing rate.

Any determination by the AAA on whether the business will be responsible for additional arbitrator compensation is in the sole discretion of the AAA and such decision is final and binding.

## Reallocation of Arbitrator Compensation, AAA Administrative Fees and Certain Expenses

Arbitrator compensation, expenses, and administrative fees (which include Filing Fees, Case Management Fees and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

## Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms for rent in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

## Abeyance Fee

(i) For Single Consumer Case Filing

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $500. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed. All filing requirements, including payment of filing and other administrative fees, must be met before a matter may be placed in abeyance.

(ii) For Multiple Consumer Case Filings

Should the cases be stayed to allow for settlement negotiations or for any other reason, including judicial intervention, the AAA shall assess a single, **non-refundable** administrative fee of $2,500 for the stayed cases, and an additional, single, non-refundable administrative fee of $2,500 for the stayed cases every six months the cases are held in abeyance. All abeyance fees are to be paid by the business. All filing requirements, including payment of filing and other administrative fees, must be met before a matter may be placed in abeyance.

## Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

## Consumer Clause Review and Registry Fee

Please note that all fees described below are **non-refundable.**

For businesses submitting a clause, the cost of reviewing the clause and maintaining that clause on the Registry is $500. A yearly Registry fee of $500 will be charged to maintain each clause on the Registry for each calendar year thereafter.

If the AAA receives a demand for consumer arbitration arising from an arbitration clause that was not previously submitted to the AAA for review and placement on the Registry, the business will incur an additional $250 fee for the AAA to conduct an immediate review of the clause.

Any subsequent changes, additions, deletions, or amendments to a currently registered arbitration agreement must be submitted for review and a review fee of $500 will be assessed at that time.

## AAA Mediation Fees for Multiple Consumer Case Filings

For cases that are determined by the AAA to fall under the Multiple Consumer Case Filing fees section of this Costs of Arbitration fee schedule, the cost of mediation is based on the hourly or daily mediation rate published on the mediator's AAA profile. In addition, the administrative fee for AAA to initiate the mediation process for the multiple consumer case filings is $10,000 plus $75 per hour for each hour billed by the mediator. The business shall be responsible for these administrative fees, unless the parties agree otherwise.

The $10,000 mediation initiation fee is due prior to the appointment of the mediator. If mediation is commenced after multiple consumer case filings have been filed, and the parties agree to stay the arbitrations to pursue mediation, any unpaid arbitration related administrative filing fees will become due if the arbitration process starts again. If the arbitration related administrative filing fees

Rules Amended and Effective September 1, 2014. Costs of Arbitration Amended and Effective November 1, 2020.

CONSUMER   **39**

are paid prior to the parties commencing mediation, then the AAA may, in its
sole discretion, determine to waive the $10,000 mediation initiation fee.

## AAA Administered Settlement Approval Process for Multiple Consumer Case Filings

For cases that are determined by the AAA to fall under the Multiple Consumer
Case Filing fees section of this Costs of Arbitration fee schedule, where by law,
court order and/or party agreement, the parties require a third party neutral to
review and approve settlements, the fee for the AAA to provide administrative
services for the purposes of a neutral to review and approve settlements is a flat
rate of $3,250 plus $2,500 every six months thereafter that the cases remain open.
The compensation of the neutral is $2,500. The business is responsible for all
AAA fees and compensation referenced in this section.

## Fees for Additional Services

The AAA reserves the right to assess additional administrative fees for services
performed by the AAA beyond those provided for in the *Consumer Arbitration
Rules* and which may be required by the parties' agreement or stipulation.

SA99

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/ telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the Procedures for the Resolution of Disputes through Document Submission (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

Rules Amended and Effective September 1, 2014. Costs of Arbitration Amended and Effective November 1, 2020.

CONSUMER   **41**

SA100

### D-4. Time of Award

**(a)** The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

**(b)** The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(c)** The award is subject to all other provisions of these Rules that pertain to awards.

SA101

## Glossary of Terms

### Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

SA102

### Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

### Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

### Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

### Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

### Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about

SA103

the dispute, the parties involved and what the claimant wants as a result of the arbitration.

### Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No in-person or telephone hearing is held.

### Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

### In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In-Person Hearing is not as formal as going to court.

### Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

### Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

### Party

The party is the person(s) or business that is involved in the dispute in the arbitration process. Usually, these are the people or businesses that have an arbitration agreement between them that specifies that a dispute should be resolved by arbitration.

### Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

### Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

### Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.

SA105

© 2020 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the
American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.
Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.
Please contact 800.778.7879 or websitemail@adr.org for additional information.



800.778.7879 | websitemail@adr.org | adr.org

**AMERICAN ARBITRATION ASSOCIATION**

**SUPPLEMENTARY RULES FOR MULTIPLE CASE FILINGS**

**DIST. CT. DOC. 27-2 (DEC. 5, 2022)**

# EXHIBIT 2

# Supplementary Rules for Multiple Case Filings



AMERICAN ARBITRATION ASSOCIATION®

Rules Effective August 1, 2021

Available online at **adr.org**

SA110

# Table of Contents

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

MC-1. Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

MC-2. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

MC-3. Serving of Documents, Notices, and Communications . . . . . . . . . . . . . . . . . . . . . . .   5

MC-4. Answers, Counterclaims, and Amended Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

MC-5. Fixing of Locale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

MC-6. Challenges to Initial Administrative Determinations . . . . . . . . . . . . . . . . . . . . . . . . .   6

MC-7. Appointment of Merits Arbitrator(s) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

MC-8. Scheduling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

MC-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

MC-10. Administrative Fees and Compensation and Expenses of the Arbitrator(s). . . .   9



# Supplementary Rules for Multiple Case Filings

## Introduction

The American Arbitration Association® (AAA®) developed these *Supplementary Rules for Multiple Case Filings* (Supplementary Rules) to streamline the administration of large volume filings involving the same party, parties, and party representative(s), or related party, parties and party representative(s) for disputes where the *Employment/Workplace Fee Schedule* or the *Consumer Fee Schedule* apply. Parties to other types of arbitration may also opt into these Supplementary Rules. These Supplementary Rules, including Section MC-1(g), are intended to provide parties and their representatives with an efficient and economical path toward the resolution of multiple individual disputes.

Parties are encouraged to agree to additional processes that make the resolution of Multiple Case Filings more efficient, such as:

- An agreed-upon Scheduling Order setting forth deadlines across multiple cases, including those for submission of documents and witness lists, completion of discovery, and filing of motions.

    - Where the parties can agree on the Scheduling Order, they should consult with the arbitrator as to whether a Preliminary Management Conference between the parties and the arbitrator is necessary.

    - Eliminating the need for a separate Preliminary Management Conference in each case can significantly impact time to resolution of the case.

- An agreement to appoint a special master to oversee procedural issues common to the cases, such as discovery, choice of law, and statute of limitations.

- An agreement that cases be heard on the documents, rather than by in-person, telephone, or videoconference hearings.

- An agreement to assign multiple cases to a single arbitrator, making the scheduling of conferences and hearings more efficient. Each case will still be heard and decided individually by the arbitrator.

- An agreement on the form of award.

- An agreement limiting briefs, motions, and discovery requests.

- An agreement allowing testimony via affidavit or recorded deposition, rather than requiring live witness testimony.

## MC-1. Applicability

**(a)** The AAA may apply these Supplementary Rules to any group of cases defined as Multiple Case Filings in Section MC-1(b) below for disputes where the *Employment/Workplace Fee Schedule* or the *Consumer Fee Schedule* apply. The AAA's determination to apply these Supplementary Rules shall be final, unless a party seeks review of that determination by a Process Arbitrator, as provided for in Section MC-6. These Supplementary Rules supplement any other AAA rules applicable to the disputes. Where inconsistencies exist among these Supplementary Rules and other AAA rules, these Supplementary Rules shall govern.

**(b)** For the purpose of these Supplementary Rules, Multiple Case Filings are defined as:

**i.** twenty-five or more similar Demands for Arbitration (Demand(s)) filed against or on behalf of the same party or related parties,

**ii.** where representation of the parties is consistent or coordinated across the cases.

**(c)** These Supplementary Rules apply whenever 25 or more similar Demands for Arbitration are filed, whether or not such cases are filed simultaneously.

**(d)** The Supplementary Rules are to be applied as described in Sections MC-1 through MC-10. Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern.

**(e)** Parties to Multiple Case Filings are encouraged to agree to processes for the efficient resolution of those cases. Any such agreement must be in writing and should address the matters set forth in Sections MC-1 through MC-9 of these Supplementary Rules. In the absence of a post-dispute agreement as to any issue covered by these Supplementary Rules, the Supplementary Rules shall apply.

**(f)** If, within 30 calendar days after the AAA's commencement of administration, a party seeks judicial intervention with respect to cases to which these Supplementary Rules apply and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration of such cases for 60 calendar days to permit the party to obtain a stay of arbitration from the court.

**(g)** In its sole discretion, the AAA has the authority to interpret and apply these Supplementary Rules. The AAA will make initial determinations with respect to administrative issues where necessary in order to apply these Supplementary Rules.

## MC-2. Filing Requirements

A separate Demand for Arbitration must be filed in each individual case. The filing party shall adhere to the filing requirements set forth in the applicable rules. Each Demand must include complete contact information for all parties and representatives. When the AAA determines that the filing requirements have been met, it shall notify the parties.

As part of the filing requirements, the filing party shall submit a fully completed *Multiple Case Filings Intake Data Spreadsheet* (Spreadsheet), which is available at www.adr.org, at the time a Multiple Case Filing reaches the 25-case threshold, and shall update such Spreadsheet as additional cases are filed. This Spreadsheet must also be provided to opposing parties at the same time it is provided to the AAA. The AAA may also require the filing party to submit the Demands for Arbitration, and any other documents submitted with the Demands, in an electronic format. The AAA will advise the filing party when and in what manner those materials shall be submitted.

## MC-3. Serving of Documents, Notices, and Communications

**(a)** For all purposes in accordance with these Supplementary Rules, the parties shall accept documents, notices, and communications pertaining to each Multiple Case Filing via single, combined, electronic communication from the AAA. The AAA will determine when separate documents, notices, and communications are required.

**(b)** Service of documents, notices, and communications pertaining to Multiple Case Filings will be effected via electronic means, such as a file transfer protocol administered by the AAA or the AAA WebFile® platform. Parties providing service of documents, notices, and communications must simultaneously notify opposing parties in writing that the documents, notices, or communications have been submitted.

## MC-4. Answers, Counterclaims, and Amended Claims

**(a)** A respondent may file an Answer and/or Counterclaim as set forth in the applicable rules; however, the deadline for filing an Answer shall be 45 calendar days from the date the AAA confirms the filing requirements have been met.

**(b)** With the exception of the initial filings required under Section MC-2, where party submissions are substantially similar across a Multiple Case Filing, the submission may be filed in a single document and need not be filed separately in each individual case.

    **i.** Any party submission filed in this manner shall also include correspondence advising, by case number, to which cases the submission relates.

ii.   Any dispute over whether a party's submission is substantially similar will
initially be determined by the AAA, subject to a final determination by a
Process Arbitrator, as provided for in Section MC-6.

## MC-5. Fixing of Locale

Where in-person hearings are required, and in the absence of party agreement,
the AAA will identify one or more locales where hearings may take place. In any
such determination, the AAA will consider the positions of the parties; relative
ability of the parties to travel; and factors such as the location of performance of
the agreement, the location of witnesses and documents, relative costs, and the
location of any prior court proceedings, among other factors presented by the
parties.

## MC-6. Challenges to Initial Administrative Determinations

**(a)** After all filing requirements have been met, including payment of the AAA's initial
administrative fees, and prior to the appointment of arbitrators to determine
the merits (the Merits Arbitrator(s)), any party may notify the AAA and opposing
parties in writing that the party disagrees with the AAA's initial determination as to
any administrative issue(s).

**(b)** Upon receipt of a party's written notice of disagreement with an administrative
determination made by the AAA with respect to a particular Multiple Case Filing,
and if the parties do not agree to mediate such issue(s), or if such mediation is
unsuccessful, the AAA in its sole discretion may decide whether or not to appoint
an arbitrator (the Process Arbitrator) to hear and determine the administrative
issue(s) for all of the cases included in the Multiple Case Filing affected by such
administrative issue(s).

**(c)** There shall be one Process Arbitrator. If the parties have not appointed a Process
Arbitrator and have not agreed to a process for appointing the Process Arbitrator,
the Process Arbitrator shall be administratively appointed by the AAA, unless the
AAA, in its sole discretion, elects to simultaneously send to each party an identical
list of names from which to select a single arbitrator by the process described in
Section MC-7(a) below.

**(d)** Only administrative issues may be submitted to the Process Arbitrator for
determination. Administrative issues include:

**i.**   AAA filing requirements;

**ii.**   allocation of payment advances on administrative fees, arbitrator compensation,
and/or expenses;

**iii.**   determining the applicable AAA rules that will govern the individual disputes;

**iv.**   any other issue the parties wish to submit by agreement; and

**v.**   any other administrative issue arising out of the nature of the Multiple Case
Filings.

**(e)** The Process Arbitrator is subject to requirements in the applicable rules pertaining to disclosure and disqualification.

**(f)** The Process Arbitrator shall have the power to rule on the Process Arbitrator's own jurisdiction and shall resolve any disputes over the applicability of this Section MC-6.

**(g)** The Process Arbitrator shall make rulings on the basis of written submissions unless the Process Arbitrator determines that a telephone or videoconference hearing is necessary.

**(h)** The ruling of the Process Arbitrator shall contain the reasons for such ruling and shall be rendered no later than 30 calendar days from the date the Process Arbitrator set for receipt of the final document submissions, or, if the Process Arbitrator set a hearing, no later than 30 calendar days from the close of the hearing. The AAA may extend the time limit for the rendering of the Process Arbitrator's ruling only in unusual and extreme circumstances.

**(i)** The Process Arbitrator's authority shall cease upon the rendering of the Process Arbitrator's ruling, except that after the Process Arbitrator has rendered a ruling, if new and different administrative issues arise upon which the parties disagree, the AAA may re-appoint the same Process Arbitrator to rule on such new and different administrative issues.

**(j)** Rulings by the Process Arbitrator will be final and binding upon the parties and Merits Arbitrator(s) where the Merits Arbitrator(s) is appointed after the appointment of the Process Arbitrator. Administrative issues arising in individual cases after a Merits Arbitrator(s) has been appointed may be decided by the Merits Arbitrator(s).

**(k)** Rulings by the Process Arbitrator will be final and binding upon the parties and Merits Arbitrator(s) with respect to subsequently filed cases that the AAA determines to be part of the same Multiple Case Filing.

**(l)** Absent agreement of all parties, the Process Arbitrator shall not be appointed as the Merits Arbitrator for any of the cases in the same Multiple Case Filing.

## MC-7. Appointment of Merits Arbitrator(s)

The parties may mutually agree upon a process for selection of the arbitrator(s) to determine the merits (the Merits Arbitrator(s)), and the AAA will facilitate any such selection process. The arbitrator selection process may include the use of the AAA arbitrator search platform when the AAA deems it practical to provide and permits its use. Parties are encouraged to consider assigning multiple proceedings to a single, mutually agreeable Merits Arbitrator. Absent a contractual process or party agreement, the AAA shall have the authority to apply the following process:

**(a)** The AAA shall compile a roster of arbitrators for the purpose of identifying arbitrators who may be appointed to cases or groups of cases in Multiple Case

Filings. The AAA may submit a list of proposed arbitrators to the parties to any Multiple Case Filing. The parties are encouraged to agree to arbitrators from this list and to advise the AAA of their agreement. If the parties are unable to agree upon arbitrators, each party shall have 14 calendar days from the list transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. To ensure an appropriate number of arbitrators remain available for appointment, the AAA may limit the number of strikes.

**(b)** If for any reason appointments cannot be made from the submitted lists or if the AAA determines the number of cases is too numerous for use of lists, the AAA shall have the authority to administratively appoint Merits Arbitrator(s).

**(c)** To facilitate arbitrator selection, to satisfy the parties' desired arbitrator qualifications, if the number of individual cases exceeds the number of qualified arbitrators in the locale, or in any other circumstance determined by the AAA to warrant such action, the AAA may assign multiple cases to a single Merits Arbitrator, who will decide each case on its own merits.

**(d)** Arbitrators appointed pursuant to Section MC-7 are subject to the disclosure and disqualification procedures set forth in the applicable AAA rules.

## MC-8. Scheduling

Preliminary Management Conferences and hearings will be scheduled in a manner consistent with the expeditious nature of arbitration. The parties are encouraged to agree on a streamlined procedure for scheduling conferences and hearings. Absent such agreement of the parties, conferences and hearings may be scheduled in any fashion deemed appropriate by the AAA or the arbitrator(s). The AAA or the arbitrator(s) may schedule the Preliminary Management Conference without first consulting with the parties, although either party may request that it be rescheduled. To avoid delay in the administration of the cases, the AAA may require that representatives provide availability via an automated or another electronic scheduling method and that they be available for blocks of hours or days at a time.

## MC-9. Mediation

Within 120 calendar days from the established due date for the Answer, the parties shall initiate a global mediation of the Multiple Case Filings pursuant to the applicable AAA mediation procedures or as otherwise agreed to by the parties. The mediator shall be administratively appointed by the AAA unless the parties agree on a mediator. The mediation shall take place concurrently with the arbitrations and shall not act as a stay of the arbitration proceedings, unless agreed to by the parties. Any party may unilaterally opt out of mediation upon

SA117

written notification to the AAA and the other parties to the arbitration. Unless agreed by all parties and the mediator, the mediator shall not be appointed as an arbitrator for any of the cases in the same Multiple Case Filing.

## MC-10. Administrative Fees and Compensation and Expenses of the Arbitrator(s)

**(a)** Administrative fees will be billed according to the applicable Multiple Case Filings Administrative Fee Schedule. Administrative fees, as well as arbitrator compensation and expense deposits, are due on or before the deadline established by the AAA. Neither settlement nor withdrawal of any individual claim or group of multiple cases shall result in extension of payment due dates or waiver of administrative fees. Administrative fees, as well as arbitrator compensation and expenses, for each Multiple Case Filing will be billed and must be paid prior to the AAA completing the applicable administrative procedures.

**(b)** Invoices provided by the AAA to the parties for payment of fees and arbitrator compensation and expenses may be in consolidated format for each Multiple Case Filing.

**(c)** Compensation of the Process Arbitrator will be at the rate set forth on the Process Arbitrator's resume. Merits Arbitrator(s) shall be compensated pursuant to the rules and fee schedules applicable to the individual cases.

**(d)** If administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA.

**(e)** If payments due are not made by the date specified in such notice to the parties, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate those proceedings. The AAA may also decline to administer future arbitrations with the parties involved.

*© 2021 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*