No. 23-2842

_____

In the

United States Court of Appeals

for the Seventh Circuit

_____

PAULA WALLRICH, ET AL.,

*Petitioners-Appellees*,

v.

SAMSUNG ELECTRONICS AMERICA, INC., ET AL.,

*Respondents-Appellants*.

_____

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:22-cv-5506
Hon. Harry D. Leinenweber, *United States District Judge*

_____

**APPELLEE'S OPPOSITION TO APPELLANTS'
MOTION TO STAY THE DISTRICT COURT'S
SEPTEMBER 12, 2023 ORDER**

_____

Jonathan Gardner
Melissa H. Nafash
Alex F. Schlow
Labaton Sucharow LLP
140 Broadway, Floor 34
New York, NY 10005

1

## PRELIMINARY STATEMENT

Appellees, by and through their attorneys, respectfully submit this memorandum in opposition to the motion of Appellants Samsung Electronics America, Inc. and Samsung Electronics Company, Ltd. (collectively, "Samsung" or "Appellants") for a stay of the order of the United States District Court for the Northern District of Illinois (Leinenweber, J.) dated September 12, 2023 (the "Order"), and for this Court to expedite its appeal thereof ("Motion").  This Court should deny Defendants' motion  for three independent reasons: (i) there is no likelihood Samsung will succeed on its appeal, (ii) the requirement that Samsung pay its contracted-for share of arbitration fees in accordance with the arbitrator's rules does not constitute irreparable harm, and (iii)  the balance of equities clearly favors allowing Appellees to advance the merits of their claims in arbitration after suffering extensive unnecessary delay.

Samsung's position is the height of hypocrisy.  Samsung, which previously successfully compelled multiple disputes in this Circuit to arbitration under the same arbitration clause at issue here, now seeks to avoid arbitration with customers who took it at its word and filed their claims before the American Arbitration Association ("AAA"), balking at the fee obligations it wrote into a contract it unilaterally imposed upon Appellees.  Samsung attempts to justify its refusal to pay arbitral fees with a tortured, unreasonable construction of AAA's fee rules that would transform

a contingency for an opposing party's refusal to pay its fees into the right for Samsung – or any party to any arbitration before AAA – to unilaterally shift its fee obligation to its opponent for any reason or for no reason whatsoever.  Now that the District Court has addressed and exposed the obvious flaws in Samsung's proposed reading of AAA's rules, Samsung insists that only a merits arbitrator has the authority to interpret those rules – a position that ignores both that AAA will not assign merits arbitrators until Samsung pays its fees and that AAA's administrative staff *already decided this issue against Samsung*.  Samsung also insists that the District Court's Order, which stayed further proceedings pending arbitration on the merits, was final and immediately appealable, despite an unambiguous pronouncement to the contrary, by the Supreme Court, in *Coinbase v. Bielski*, 599 U.S. 736 (June 23, 2023), a case it cites repeatedly in its Motion.

The only consistent aspects of Samsung's position are that Samsung does not want an adjudication of Appellees' claims on the merits and that Samsung does not want to pay any money.  In all other respects, Samsung's arguments collapse under irreconcilable contradictions, and its frantic moving of goalposts as it seeks to resolve these contradictions does not evince a likelihood of success on the merits of its appeal.

The same infirmities doom Samsung's attempt to show irreparable harm. Routine litigation costs like administrative arbitration fees *never* constitute

3

irreparable harm, as this Court has repeatedly found, even going so far as to note that the contrary position might warrant sanctions. Further, Samsung makes much of the *aggregate* amount of these fees, but it ignores both that the fees are spread among tens of thousands of individualized claims (thus totaling a few hundred dollars per claim on average) and that such individualized claims *are the only type of claim the Samsung-drafted arbitration agreement allows Appellees to bring*. Apparently wishing to avoid the potential large-scale liability of future class actions, Samsung decided to require its customers to file individualized arbitration demands instead. The individualized AAA administrative fees invoiced here are the price of that decision and paying them is not irreparable harm – it is exactly what Samsung bargained for.

Finally, the balance of the harms here clearly favors Appellees. If a stay is denied, the only "harm" Samsung will suffer is routine litigation costs. Further, if arbitrations proceed, Samsung will be free to advance each of its (meritless) arguments before the assigned arbitrators, including its argument that its share of the fees should be borne by Appellees. It can then pursue any properly preserved argument on an appeal from a future final judgment. If a stay is granted, however, Appellees will be faced with substantial further delay before arbitrations on the merits can begin. Appellees stand to lose much more if a stay is granted than Samsung will lose if one is denied.

Samsung's Motion cannot be reconciled with applicable law, with the undisputed facts, or with Samsung's own statements and positions before the AAA and the District Court. Appellees have waited long enough. The Motion should be denied so that these claims can proceed to arbitration.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Appellees are Samsung customers who brought arbitrations against Samsung alleging that its facial recognition software violated Illinois' Biometric Information Privacy Act and seeking damages for that violation. After considerable debate between the parties before AAA, AAA concluded that Appellees had satisfied AAA's filing requirements and that "Samsung [was] responsible for payment of the initial administrative filing fee." (Dist. Ct. Dkt. No. 35-1 ("Oct. 31 AAA Letter") at 1). AAA invoiced both Samsung and Appellees for initial filing fees; Appellees paid their fees (totaling more than $2 million); Samsung did not. (Dist. Ct. ECF Nos. 1-131-14.) This forced Appellees to bring a petition in the District Court, seeking to compel Samsung to pay its fees and arbitrate Appellees' claims. (Dist. Ct. Dkt. No. 1). In the interim, specifically "[b]ecause . . . [AAA] ha[d] not received Samsung's portion of the filing fees," AAA administratively closed Appellees' arbitrations on November 28, 2022. (Dist. Ct. Dkt. No. 27-18.)

In its September 12, 2023 Order and accompanying Minute Entry (Dist. Ct. Dkt. No. 50), the District Court granted Appellees' motion to compel arbitration for

the majority of the Appellees and ordered the action "stayed pending arbitration." (Order at 18, 35; Minute Entry.)

On September 15, 2023, Samsung filed a notice of appeal of the Order and Minute entry. On September 28, 2023, this Court ordered Samsung to file a jurisdictional memorandum explaining why its appeal from the District Court's interlocutory order compelling arbitration should not be dismissed for lack of jurisdiction. Samsung filed its responsive memorandum on October 10, asserting that the District Court's Order was in fact a final order, and Appellees filed their response thereto on October 13.

On October 5, 2023, Samsung moved before the District Court for a stay of the Order pending appeal. Dist. Ct. ECF No. 61. Samsung took the position that the District Court's Order was far from final – arguing that "the [District] Court will need to superintend any further fee disputes that may arise . . . . It also may be asked to resolve many other issues . . . ." *Id.* at 14-15. On October 18, 2023, the District Court denied Samsung's stay motion, based both on the lack of merit of Samsung's appeal and on the lack of irreparable harm if a stay was not granted. *See* Motion at SA 8-9, SA 16-17.

## ARGUMENT

### I.     Applicable Standard

"A party seeking a stay must show a likelihood of success on the merits and a threat of irreparable harm absent a stay. If those criteria are satisfied, we must consider the balance of harms . . . and we must consider the public interest . . . ." *Camelot Banquet Rooms, Inc. v. United States SBA*, 14 F. 4th 624, 628 (7th Cir. 2021). Here, Samsung can show neither a likelihood of success nor irreparable harm, so this Court need not consider these remaining factors. That said, should the Court reach these additional factors, both weigh *against* granting a stay.

Further, "if as in the present case the application" for a stay pending appeal "is in effect an appeal from the district judge's denial of the stay," this court will "give the district judge's action the appropriate deference." *Lightfoot v. Walker*, 797 F.2d 505, 507 (7th Cir. 1986).

### II.     Samsung Has No Likelihood Of Success On The Merits

#### a.     Samsung Cannot Succeed On Its Purported Appeal Because The District Court's Order Is Not Appealable

Section 16 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16, governs appellate review of trial court orders deciding motions to compel arbitration. Therein, "Congress provided for immediate interlocutory appeals of orders *denying* – but not of orders *granting* – motions to compel arbitration." *Coinbase,* 143 S.Ct.

7

at 1919 (June 23, 2023).   As such, "[a] pro-arbitration decision, coupled with a stay, . . . is not appealable." *Moglia v. Pac. Employers Ins. Co. of N. Am.*, 547 F.3d 835, 837 (7th Cir. 2008) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 87 (2000)).   Indeed, 9 U.S.C. § 16(b) "'positively *forbids* appeal'" of "an order staying litigation in favor of arbitration." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 500 (7th Cir. 2020) (quoting *Moglia*, 547 F.3d at 837).

Thus, Samsung has no likelihood of success on the merits of its appeal because this Court is without jurisdiction to hear it.   Samsung's arguments to the contrary are fully addressed in Appellees' October 13, 2023 response to Samsung's jurisdictional memorandum (ECF No. 18), to which the Court is respectfully referred.

### b.  Even If Appellate Jurisdiction Existed, Samsung's Appeal Would Be Unlikely To Succeed

Samsung offers three substantive arguments for its position that its appeal is likely to succeed, none of which has any merit.

### i.  Appellees Made A Sufficient Showing Of An Agreement To Arbitrate With Samsung

First, Samsung argues that the District Court's finding that Appellees met their burden to show the existence of an arbitration agreement lacked sufficient support. Motion at 1, 12-14.  Contrary to Samsung's contention, Appellees submitted specific information as to each individual Appellee's identity, undisputed evidence that AAA had accepted administration of Appellees' claims, and uncontested statements by

Samsung showing that the arbitration agreement at issue need not be signed and that every Samsung device holder accepts Samsung's terms. *See* Dist. Ct. ECF Nos. 1, 1-2 – 1-6, 36; Order at 22. Samsung did not make any specific challenge directed at any particular Appellee – instead claiming, with no evidence, that *unspecified* individuals were "deceased or already represented by other counsel." Motion at 1. But nonspecific aspersions are not legal arguments – Appellees need not respond if Samsung does not specify which Appellees its vaguely-defined issues relate to. Simply "denying facts" is not enough to defeat arbitration. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).

Similarly, Samsung now protests that it has no list of its customers (and the District Court erred in assuming to the contrary), because "individuals typically purchase Samsung devices from mobile carriers or retail stores, not from Samsung," and "individuals with Samsung devices [are not] required to create Samsung accounts to use those devices." Motion at 14. However, in opposing arbitration, Samsung claimed, as a "preliminary deficienc[y] with the claimant information," the presence of "Claimants who Samsung has no record of ever being a customer or owning any of the devices at issue." Dist. Ct. ECF No. 27 at 14.

Thus, Samsung's position before the District Court was that, if it had no record of a given Appellee, this was a meaningful indicator that such an Appellee did not own a Samsung device. Now, after the District Court relied on these assertions,

Samsung claims that such a lack of records is not unusual, and indeed *might be expected* for the "typical" Samsung device owner. Motion at 14.

Regardless of what Samsung's records contain, this discrepancy weighs strongly against any likelihood of success on the merits of Samsung's appeal, because "[a] party cannot complain of [purported] errors which it committed, invited, induced the court to maker, or to which it consented;" "[w]hen error is invited, not even plain error permits reversal." *Wharton v. Furrer*, 620 Fed. Appx. 546, 548 (7th Cir. 2015).

In any event, as the District Court recognized, Samsung has asserted in other actions that by opening a Galaxy device's packaging, using the device, or accessing Samsung's online platform, a customer agrees to Samsung's various Terms & Conditions including the End User License Agreement. *See, e.g., Vasadi v. Samsung Elecs. Am., Inc.,* No. 2:21-cv-10238 (D.N.J. July 12, 2021) ECF No. 16; *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. 16-cv-1953 DMG (KKX), 2020 WL 6528422, at *5 (C.D. Cal. Oct. 20, 2020) (same); *G.T. v. Samsung Elecs. Am., Inc.*, 1:21-cv-04976 (N.D. Ill. Oct. 29, 2021), ECF No. 17 (same). Regardless of where a Samsung device was purchased, the box and its contents remain the same, and everyone who opened such a box agreed to those terms. Under these circumstances, Appellees amply demonstrated the existence of agreements to arbitrate their claims with Samsung.

### ii. The District Court Did Not Overstep Its Bounds In Ordering Samsung To Pay Its Arbitration Fees

Samsung also claims that it is likely to succeed because the District Court supposedly overstepped by deciding the issue of Samsung's fee obligations, an issue for the arbitrator. Samsung seems unbothered by the irony of making this argument as the party that refused to pay its fees, thus preventing merits arbitrators from being appointed to decide *any* issues.

Regardless, Samsung's position is incorrect. As discussed above, AAA *did* make an administrative decision —that Samsung owed the invoiced administrative fees. Further, as the District Court correctly found, the question of whether Samsung must pay its fees is inherently substantive, because it determines "whether the parties can exercise their right to arbitrate at all." Order at 34.

In arguing that the fee requirement at issue here constituted a procedural issue delegated to the arbitrator, Samsung relies on a small collection of inapposite decisions, chief among them the Fifth Circuit's opinion in *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009.) According to Samsung, this decision held that the issue of whether the parties owed administrative fees was always a procedural one, relegated to the arbitrator, and a contrary decision here would "create a circuit split." Motion at 4.

11

This substantially overstates the holding of *Dealer Computer*, where the party that refused to pay "is and was financially unable to do so." 588 F.3d at 888 n.3. The Fifth Circuit expressly distinguished this fact pattern from the "difficult situation" which "might be presented if [a party] *could* afford to put up its part of the arbitral fee" but refused to do so, and noted that it was "not faced with any such case." *Id.* As the District Court correctly found, however, it was faced with such a case. Order at 32.

Indeed, as the District Court expertly explained, *Dealer Computer's* holding was also based on reference to

> AAA Rules R-52 and R-54, which fall under the "General Procedural Rules" chapter of the Consumer Rules. Id. at 887. The Rules[have] since [been] updated . . . .The rules for payment of fees themselves are [now] contained in other chapters that lack the word "procedure."

Order at 32-33 (citations omitted). Thus, both the underlying facts and the rules at issue here differ materially from those at issue in *Dealer Computer*, and the Fifth Circuit's conclusion would not control the case before this Court even if it were binding in the Seventh Circuit.

The District Court's decision to order fees is consistent with recent decisions from multiple courts addressing arbitration fees in similar scenarios. In *Croasmun v. Adtalem Global Educ., Inc.*, 2020 U.S. Dist. LEXIS 223076, No. 20 C 1411, (N.D. Ill. Nov. 20, 2020), the District Court (Lefkow, J.), though declining to order the

payment of arbitration fees, noted that, unlike here where AAA has already decided the fee issue *against* Samsung, "there is no indication that JAMS will not resolve the fees issue if asked. If, however, JAMS declines to take jurisdiction without payment of its fees, petitioners should not face checkmate. Rather, the parties may return to this court for resolution of the [fee dispute]." *Id.* at *10; *see also, e.g., Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020) ("[Defendant] here . . . faced with having to actually honor its side of the bargain," for thousands of arbitrations, "now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, [Defendant] never expected that so many would actually seek arbitration."); *Uber Tech. Inc. v. American Arbitration Assn., Inc.*, 204 A.D.3d 506, 510 (N.Y. App. Div. 2022) ("While Uber is trying to avoid paying the arbitration fees associated with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision.").

Nor is this result altered because Samsung posits its opponents' legal claims lack merit. The FAA "contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

### iii.  The District Court Did Not Contradict AAA In Ordering Samsung To Pay Its Arbitration Fees

Samsung contends that the District Court erred "in ordering Samsung to pay administrative filing fees after the AAA had decided *not* to order Samsung to pay those fees."  (Motion at 4; emphasis in original.)  This argument lies somewhere on a spectrum between desperate hair-splitting and outright misrepresentation.  AAA administrators, not being courts, may not have issued anything denominated as an "order," requiring Samsung to pay, but AAA did *expressly* find that "Samsung is . . . responsible for payment of the initial administrative filing fees," and invoiced Samsung for those fees.  Oct. 31 AAA Letter at 1.  It is difficult to imagine a more direct, unambiguous mandate – according to AAA, Samsung was "responsible for payment," it did not pay, and AAA closed the arbitrations specifically because it "ha[d] not received Samsung's portion of the filing fees." (Dist. Ct. Dkt. No.  27-18.)

Samsung's argument to the contrary is that its outright refusal to pay these invoiced fees is "exactly what [it is] allowed to do under the [AAA] rules," based on a provision that provides a fallback *option* for a party faced with an adversary who cannot pay. Motion at 1; *see* AAA, Supplementary Rules for Multiple Case Filings, Rule MC-10(d), *reproduced at* SA118 ("If administrative fees . . . have not been paid in full, the AAA may notify the parties in order that one party *may* advance the

required payment . . . .") (emphasis added). According to Samsung, because AAA offered Appellees this fallback option, and because it administratively closed Appellees' arbitrations after Appellees declined, it was *Appellees* – the only parties here who *did* pay their fees – who refused to arbitrate, while Samsung "stood ready." Motion at 1-2.

It is worth considering just how absurd Samsung's position here has become. First, in drafting the relevant arbitration agreement, Samsung imposed a class action waiver and individualized arbitration on all its customers as the sole available avenue for dispute resolution. Order at 22 (citing *G.T. v. Samsung Electronics America*, Inc., No. 1:21-cv-04976, ECF No. 17 at 10). Both the language of that agreement and the AAA rules it incorporates unambiguously state that Samsung is responsible for its share of arbitration fees. *See* SA56 ("arbitrator fees for arbitrations in which your total damage claims. . . exceed $5,000.00 . . . shall be determined according to AAA rules;") AAA Consumer Arbitration Rules, Costs of Arbitration, at SA93 ("The business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements,"); SA95 (noting filing fees to be charged to a business for a "multiple case filing" such as this one).

Next, Samsung compelled numerous disputes to arbitration under these clauses, including at least two in the Seventh Circuit. *See Taylor*, 2018 U.S. Dist. LEXIS 13865; *McNamara*, 2014 U.S. Dist. LEXIS 155520 (N.D. Ill. Nov. 3, 2014).

Then, when Appellees here sought to begin *their* cases in arbitration, Samsung refused to pay, and asserted that if Appellees did not want to pick up Samsung's tab, they had waived arbitration and must proceed in court. Finally, when Appellees went to court to compel arbitration, Samsung claimed it "stood ready to arbitrate," but would not pay the fees.

Throughout this protracted cavalcade of inconsistencies, Samsung has offered no substantive justification for why it is *entitled* to refuse to pay what it agreed to pay. Samsung, a multinational conglomerate with billions in quarterly revenue, would simply *prefer* not to pay. Samsung asked the District Court, and now asks this Court, to place responsibility for its unjustified refusal onto its *opponents*.

If Samsung were correct, the opportunities for bad-faith gamesmanship would be manifold. The defendant in any dispute arguably subject to AAA arbitration, if sued in court, could first move to compel arbitration, then refuse to pay any arbitral fees on the basis that AAA's rules allow for its opponent to advance those fees. Under Samsung's logic, this would not constitute a waiver of arbitration by the nonpaying defendant. A plaintiff who could not afford to advance those fees would be left in procedural limbo, compelled to arbitrate, but with arbitration indefinitely stalled by an opponent the law says has not waived arbitration despite nonpayment.

Samsung's position would also defang the FAA's enforcement mechanism. By Samsung's logic, a Court could "make an order directing" an intransigent party "to

proceed to arbitration in accordance with the terms of the agreement" – unless the terms in question related to the payment of fees. 9 U.S.C. § 4. If an unwilling litigant compelled to arbitration could stymie that arbitration simply by refusing to pay fees, and thus have their dispute returned to court, what would an order under § 4 of the FAA ever accomplish other than delay or increased expense for the party seeking validation of a conceded right to arbitrate? By Samsung's reasoning, any party seeking arbitration must expect to pay *all* fees – its own and its opponent's – or waive its right to arbitrate, no matter what its contract or the arbitral forum's rules might say. Samsung has no likelihood of success on such a nonsensical overhaul of established law governing arbitration.

### III.    Samsung Cannot Show Any Risk Of Irreparable Injury

Samsung asserts it will suffer irreparable injury if it pays AAA's fees, because AAA's fees are "nonrefundable." Motion at 1, 2, 5, 7, 9, 22, 23. Samsung is incorrect. "[T]he expense of litigation is not 'irreparable injury.'" *Sherwood*, 587 F.3d at 844. Indeed, this Court has *expressly* applied this common-sense rule  to arbitration fees:

> Where's the irreparable injury? If [Respondent] loses in the arbitration, the [Petitioner] will seek to enforce its victory; [Respondent] can defend on the theory that it had not agreed to arbitrate this kind of dispute. . . . All [Respondent] could lose from the delay **is the cost of presenting the arguments to the arbitrator, and it has long been established that the expense of adjudication is not irreparable injury. . . . So fundamental is this**

> *principle that we have held it sanctionably frivolous to
> seek an anti-arbitration injunction.*

*AT&T Broadband, LLC v. IBEW*, 317 F. 3d 758, 762 (7th Cir. 2003) (emphasis added) (collecting cases); *see also, e.g., Trustmark Ins. Co. v. John Hancock Life Ins. Co.,* 631 F.3d 869, 872 ( "the out-of-pocket costs of paying the arbitrators" is not irreparable harm); *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1277 (7th Cir. 1987) ("monetary loss is not 'irreparable injury'"); *Graphic Communs. Union, Local No. 2 v. Chicago Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985) ("[T]he cost of the arbitration, . . .  does not show irreparable harm.   Otherwise every order to arbitrate would be deemed to create irreparable harm."")

     None of Samsung's authority requires a different result.  In *Illinois League of Advocates for the Developmentally Disabled v. Illinois Department of Human Servs.*, 803 F.3d 872 (7th Cir. 2015), this Court affirmed the *denial* of a preliminary injunction that, if granted, would have required the Illinois Department of Human Services to continue to operate a large developmental center for the benefit of a handful of residents – "like trying to maintain a 100-room hotel only one room of which is occupied." *Id.* at 876-77.  The costs there that "could not be recouped" were the costs of continuing to operate the facility under those circumstances, costs not at issue in the underlying litigation seeking injunctive relief. *Id.*

     *Palmer v. City of Chicago*, 806 F. 2d 1316 (7th Cir. 1986), decided an interlocutory appeal under the collateral order doctrine. *Id.* at 1318-19.  It dealt with

an interim fee award payable to "a 'revolving fund' of prisoners and defendants," any member of which "might very well no longer be a party, . . ., might be insolvent, [or] might have disappeared'" by the time of a final appeal. *Id.* at 1320. None of this applies to Appellees here, and this Court has since constrained *Palmer* to situations where "the prospects for recoupment . . . [a]re very slight, or even nil." *In re Devlieg, Inc.*, 56 F.3d 32, 34 (7th Cir. 1995). Where, as here, concerns that fees cannot be recouped are "entirely conjectural," there is no irreparable harm. *Id.*

That Samsung may not be able to obtain a refund directly from AAA does not alter the conclusion. As the District Court recognized, AAA rules explicitly allow for the awarding of filing fees against an Appellee if Samsung can prove to the arbitrator that Appellees' claims are as frivolous as it asserts. *See* AAA Consumer Arbitration Rules, R-44(c).

Samsung also offers speculation about what its *future* fees *might* amount to if it arbitrates with Appellees. *See* Motion at 24 (collecting cases). However, Samsung's assertions that it *"*may end up [paying] over $100 million[] in *nonrefundable . . . * fees," Motion at 22, are wholly speculative – Samsung asserts without proof that later fees "may" rise to that level. Harm such as this, even if it were not fully compensable by monetary damages, would be "too speculative to be irreparable." *Halczenko v. Ascension Health, Inc.*, 37 F. 4th 1321, 1325 (7th Cir 2022).

19

Beyond this, Samsung (correctly) cites several cases holding the expenses of an arbitration do not constitute irreparable harm and attempts to distinguish them on the basis that they dealt with the costs of *single* arbitrations rather than multiple ones. *See* Motion at 23-24, *citing Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.)*, 631 F.3d 869, 872 (7th Cir. 2011); *Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co.*, 779 F.2d 13, 15 (7th Cir. 1985); *PaineWebber Inc. v. Farnam*, 843 F.2d 1050, 1051-53 (7th Cir. 1988); and *Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc.*, 841 F.2d 163, 164 (7th Cir. 1988).

This is a distinction without a difference. Though represented by the same counsel, Appellees are individuals, seeking individual arbitrations of individual claims. Each individual arbitration requires payment of fees specific to it, and the fees of any single arbitration are no greater than those at issue in the cases cited by Samsung. Under these cases, each Appellee considered individually would defeat Samsung's stay request for want of irreparable harm. *See Trustmark*, 631 F.3d at 872 *Graphic Communications Union*, 779 F.2d at 15; *PaineWebber Inc.*, 843 F.2d at 1051-53; *Classic Components Supply*; 841 F.2d at 164. Why should the result be different – and each Appellee's rights to bring their claims thus harder to enforce – solely because a large number of them sought relief simultaneously? Samsung has

20

cited no authority for the proposition that the standard governing irreparable harm changes because more claimants than expected have sought arbitration.

To be clear, this result is of Samsung's making. Appellees brought their claims individually rather than on a class or consolidated basis because the Samsung-drafted arbitration agreement *requires them to do so* – it specifically mandates that these disputes must be arbitrated on an individual basis, and that "[a]ny such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and . . . shall not under any circumstances proceed as part of a class action." SA56. If Samsung was concerned with the expense of defending a large number of individual claims, it could and should have rethought its decision to prohibit class actions and joinder. The foreseeable consequences of Samsung's own business decisions are not irreparable harm.

## IV.    The Remaining Equitable Factors Weigh Against A Stay

As set forth above, because Samsung cannot show a likelihood of success or irreparable injury, this Court need not consider a balancing of the harms or the public interest. *Camelot Banquet Rooms,* 14 F. 4th at 628. To the extent it does so, however, the balance of harms favors Appellees.

If a stay is granted, Appellees will be faced with substantial further delay before they can even *begin* arbitrations of the merits of their claims while Samsung pursues its frivolous appeal. By contrast, the only "harm" Samsung will suffer is

fulfilling its own obligations in a contract it wrote and imposed upon its customers. "[T]he cost of presenting the arguments to the arbitrator . . . is not irreparable injury," *AT&T Broadband,* 808 F.2d at 1277, but "justice delayed is justice denied." *Hinkle by Hinkle v. Henderson*, 135 F.3d 521, 523 (7th Cir. 1998) (disapproving "unnecessarily protracted court proceedings"). Indeed, "[e]ven as justice delayed may amount to justice denied, so it is with arbitration." *Tyco Int'l (U.S.) Ltd. V. Swartz*, 422 F.3d 41, 46 (1st Cir. 2005).

The public interest similarly favors Appellees. The general public has an interest in "seeing that commercial agreements are enforced according to their terms," Motion at 5, and that interest includes discouraging defendants like Samsung from utilizing superior resources and dilatory tactics to avoid adjudicating the merits of claims they forced into arbitration through contracts of adhesion. *See, e.g., Abernathy*, 438 F. Supp. 3d at 1068 (noting "hypocrisy" of Doordash refusing to pay the fees associated with an arbitration clause it drafted); *Uber Tech., Inc.* 204 A.D.3d at 510 (refusing to relieve Uber from the consequences of its "business decision" to require individualized arbitration of claims, and noting that "AAA's fees are directly attributable to that decision."); *cf.* Cal. Code Civ. P. §§ 1281.97-99 (a company's failure to timely comply with its fee obligations in a consumer arbitration agreement is a material breach of that agreement justifying imposition of mandatory sanctions). Thus, the public interest weighs heavily against the grant of a stay here.

**V.    This Court Should Only Grant Expedited Treatment Of Samsung's Appeal If It Grants Samsung The Requested Stay**

Given the lack of merit of Samsung's appeal (and the substantial doubt that this Court has jurisdiction to hear it prior to a final judgment), Appellees do not believe an expedited hearing of Samsung's appeal is warranted in the absence of a stay. However, should this Court grant the stay requested by Samsung, Appellees do not oppose expedited treatment of its appeal, so that any further delay to be suffered by Appellees before their claims are arbitrated may be minimized.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that this Court deny Samsung's Motion in its entirety. However, should this Court grants Samsung's application for a stay, Appellees do not object to expedited hearing of Samsung's appeal.

Dated: November 2, 2023

Respectfully submitted,

LABATON SUCHAROW LLP

/s/ Jonathan Gardner
Jonathan Gardner
Melissa H. Nafash
Alex F. Schlow
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
jgardner@labaton.com
mnafash@labaton.com

aschlow@labaton.com
*Counsel for Petitioners-Appellees*

CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2023, I electronically filed the foregoing Opposition to Respondents-Appellants' Motion to Stay the District Court's September 12, 2023 Order with the Clerk for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 2, 2023                    /s/ Jonathan Gardner
                                           Jonathan Gardner

                                           *Counsel for Petitioners-Appellees*