No. 23-2842

In the

# United States Court of Appeals
## for the Seventh Circuit

PAULA WALLRICH, ET AL.,

*Petitioners-Appellees*,

v.

SAMSUNG ELECTRONICS AMERICA, INC., ET AL.,

*Respondents-Appellants*.

On Appeal from the United States District Court for the
Northern District of Illinois, Case No. 1:22-cv-5506,
Hon. Harry D. Leinenweber, *United States District Judge*

## RESPONDENTS-APPELLANTS' OPENING BRIEF AND REQUIRED SHORT APPENDIX

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney
Jeremy Patashnik
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Randall W. Edwards
Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center,
 28th Floor
San Francisco, CA 94111

Shay Dvoretzky
 *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

*Counsel for Respondents-Appellants Samsung Electronics America, Inc., and Samsung Electronics, Co., Ltd. (additional counsel information on inside cover)*

*Additional counsel information continued from front cover*

Mark Howard Boyle
DONOHUE BROWN
  MATHEWSON & SMYTH LLC
131 South Dearborn Street,
  Suite 1600
Chicago, IL 60603

Ashley M. Pavel
O'MELVENY & MYERS LLP
610 Newport Center Drive,
  17th Floor
Newport Beach, CA 92660

James L. Kopecky
KOPECKY SCHUMACHER
  ROSENBURG LLC
120 North LaSalle Street,
  Suite 2000
Chicago, IL 60601

*Counsel for Respondents-Appellants Samsung Electronics America, Inc., and Samsung Electronics, Co., Ltd.*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Shay Dvoretzky    Date: 11/14/2023

Attorney's Printed Name: Shay Dvoretzky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 1440 New York Avenue, NW

Washington, DC 20005

Phone Number: (202) 371-7370    Fax Number: (202) 661-2370

E-Mail Address: shay.dvoretzky@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Samsung Electronics America, Inc. ("SEA")

 Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

 Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

     SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Parker Rider-Longmaid        Date: 11/14/2023

Attorney's Printed Name:  Parker Rider-Longmaid

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  1440 New York Avenue, NW

 Washington, DC 20005

Phone Number:  (202) 371-7061        Fax Number:  (202) 661-4061

E-Mail Address: parker.rider-longmaid@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As     Clear Form

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   Samsung Electronics America, Inc. ("SEA")

   Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

   Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and

         SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

     ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Kyser Blakely     Date: 11/14/2023

Attorney's Printed Name:  Kyser Blakely

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [ ]  **No** [✔]

Address:  1440 New York Avenue, NW

   Washington, DC 20005

Phone Number:  (202) 371-7398     Fax Number:  (202) 371-8398

E-Mail Address: kyser.blakely@skadden.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Michael W. McTigue Jr.    Date: 11/14/2023

Attorney's Printed Name: Michael W. McTigue Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000    Fax Number: (212) 735-2000

E-Mail Address: michael.mctigue@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Samsung Electronics America, Inc. ("SEA")

    Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

    Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Meredith C. Slawe    Date: 11/14/2023

Attorney's Printed Name: Meredith C. Slawe

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: One Manhattan West

    New York, NY 10001

Phone Number: (212) 735-3000    Fax Number: (212) 735-2000

E-Mail Address: meredith.slawe@skadden.com

    rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kurt Wm. Hemr          Date: 11/14/2023

Attorney's Printed Name:  Kurt Wm. Hemr

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000          Fax Number:  (212) 735-2000

E-Mail Address: kurt.hemr@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Colm P. McInerney     Date: 11/14/2023

Attorney's Printed Name: Colm P. McInerney

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes [ ]     No [✔]

Address: One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000     Fax Number: (212) 735-2000

E-Mail Address: colm.mcinerney@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)　　If the party, amicus or intervenor is a corporation:

i)　　Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jeremy Patashnik　　　　Date: 11/14/2023

Attorney's Printed Name:  Jeremy Patashnik

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　　Yes [ ]　No [✔]

Address:  One Manhattan West

New York, NY 10001

Phone Number: (212) 735-3000　　　　Fax Number:  (212) 735-2000

E-Mail Address: jeremy.patashnik@skadden.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Samsung Electronics America, Inc. ("SEA")

    Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

    Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Randall W. Edwards    Date: 11/14/2023

Attorney's Printed Name:  Randall W. Edwards

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address:  Two Embarcadero Center, 28th Floor

    San Francisco, CA 94111-3823

Phone Number: (415) 984-8700    Fax Number: (415) 984-8701

E-Mail Address: redwards@omm.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As

Clear Form

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Matthew D. Powers     Date: 11/14/2023

Attorney's Printed Name: Matthew D. Powers

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Two Embarcadero Center, 28th Floor

San Francisco, CA 94111-3823

Phone Number: (415) 984-8700     Fax Number: (415) 984-8701

E-Mail Address: mpowers@omm.com

rev. 12/19 AK

- x -

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 Samsung Electronics America, Inc. ("SEA")

 Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

 Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

 SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

   ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

 No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Jonathan D. Hacker     Date: 11/14/2023

Attorney's Printed Name:   Jonathan D. Hacker

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address:  1625 Eye Street, NW

 Washington, DC 20006-4061

Phone Number: (202) 383-5300     Fax Number: (202) 383-5414

E-Mail Address: jhacker@omm.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Samsung Electronics America, Inc. ("SEA")

Samsung Electronics Co., Ltd. ("SEC")

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Skadden, Arps, Slate, Meagher & Flom LLP; O'Melveny & Myers LLP; Donohue Brown Mathewson & Smyth LLC;

Kopecky Schumahcer Rosenburg LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

SEA is a wholly owned subsidiary of parent SEC. SEC has no parent corporation.

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No other public company owns 10% or more of SEA. No publicly held company owns 10% or more of SEC.

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Ashley M. Pavel          Date: 11/14/2023

Attorney's Printed Name: Ashley M. Pavel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: 610 Newport Center Drive, 17th Floor,

Newport Beach, CA 92660-6419

Phone Number: (949) 823-6900          Fax Number: (949) 823-6994

E-Mail Address: apavel@omm.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS .........................................i

TABLE OF AUTHORITIES.................................................................... xvii

REQUEST FOR ORAL ARGUMENT........................................... xxii

INTRODUCTION ..........................................................................1

JURISDICTIONAL STATEMENT ....................................................6

    A.    The district court had subject matter jurisdiction under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 203.............6

    B.    This Court has appellate jurisdiction under the FAA, 9 U.S.C. § 16(a)(3).......................................................................9

        1.    Section 16(a)(3) confers appellate jurisdiction to review orders compelling arbitration that resolve the dispute before the district court. ...................................9

        2.    *Green Tree* supports this Court's and other courts of appeals' rule............................................................11

        3.    This Court has jurisdiction to review the district court's order under 9 U.S.C. § 16(a)(3)..............................14

    C.    Samsung timely appealed. ...........................................15

STATEMENT OF ISSUES .............................................................16

STATEMENT OF THE CASE ........................................................16

    A.    Legal background.......................................................16

    B.    Factual and procedural background ...........................17

        1.    Samsung's arbitration agreement provides that the arbitration process is governed by the AAA Rules. .........18

# TABLE OF CONTENTS
## (continued)

**Page**

2. The AAA has complete discretion over the arbitration process, including administrative fees. ..........19

3. Appellees' counsel file 50,000 identical arbitration demands against Samsung. ...................................21

4. The AAA, applying its discretionary rules governing filing fees, closes the cases given the nonpayment of the outstanding fees *by either party*..........24

5. Appellees move to compel arbitration, and the district court compels arbitration and the payment of fees. ....................................................................26

STANDARD OF REVIEW ...................................................................30

SUMMARY OF ARGUMENT ..............................................................30

ARGUMENT......................................................................................38

I. Appellees failed to meet their evidentiary burden of showing that they had a valid arbitration agreement with Samsung. ...............38

A. The party seeking to compel arbitration has the initial burden of showing, with evidence, that the parties agreed to arbitrate. ......................................................................39

B. Appellees failed to carry their evidentiary burden, and the district court's evidence-free ruling is wrong. .....................41

1. The district court erred in compelling arbitration because Appellees offered no evidence that they agreed to arbitrate with Samsung. .....................................41

2. The district court's reasoning, which failed to apply the clear evidentiary standard, is incorrect.......................41

# TABLE OF CONTENTS
(continued)

Page

II. The district court erred in compelling arbitration and payment of fees because arbitral-fee issues are for the arbitral body, not a court, to decide—as the arbitration agreements and caselaw confirm......................................................................................46

    A. The arbitration agreements expressly commit the fee issue to the AAA and no court may rewrite the contracts..................47

        1. Courts must enforce arbitration agreements according to their terms. ......................................................47

        2. The district court rewrote the arbitration agreements' terms....................................................................47

    B. The AAA decided that Samsung was not required to pay fees, and the district court was required to respect that determination because that issue was committed to the AAA..................................................................................49

        1. Precedent makes clear that courts must respect the AAA's fee determinations under its rules.........................50

        2. The district court erred in compelling arbitration and payment of fees because the parties committed administrative-fee issues to the AAA, and the AAA declined to order payment and closed the cases..............51

    C. Fee disputes are procedural matters for arbitral bodies to decide even when the contract does not expressly say so. ........53

        1. When a contract is silent on the issue, courts presume that a procedural condition precedent is for the arbitrator, not the court. ..........................................53

        2. Administrative-fee issues are procedural questions for arbitrators, not courts. ......................................................54

# TABLE OF CONTENTS
## (continued)

Page

3. Even if the contracts were silent, the district court erred in compelling arbitration and payment of fees, because the AAA was still authorized to determine that Samsung need not pay fees. .........................................57

D. The district court's reasons for deciding the fee issue lack merit, as do Appellees' likely counterarguments.......................57

1. The district court wrongly concluded that it could decide whether Samsung must pay fees. ...........................58

2. The district court wrongly concluded, and Appellees wrongly argue, that the AAA required Samsung to pay the filing fees. .............................................58

3. The district court's reasoning and Appellees' arguments wrongly treat arbitration agreements as unconditional, when the parties bargained for arbitration *under the AAA Rules*. ..........................................61

4. The district court wrongly thought that respecting the AAA's position creates a Catch-22................................62

5. The district court erred in ruling that, absent agreement, administrative fees are substantive matters for courts to decide, rather than procedural matters for arbitral bodies to decide. ..................................63

CONCLUSION .........................................................................68

CERTIFICATE OF COMPLIANCE ....................................................70

CERTIFICATE OF SERVICE ...........................................................71

CIRCUIT RULE 30(d) CERTIFICATION...........................................72

INDEX OF REQUIRED SHORT APPENDIX....................................74

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.D. v. Credit One Bank, N.A.,*
  885 F.3d 1054 (7th Cir. 2018) ...........................................................39

*Adams v. Postmates, Inc.,*
  414 F. Supp. 3d 1246 (N.D. Cal. 2019) ..................................... 55, 65

*American International Specialty Lines Insurance Co.*
  *v. Electronic Data Systems Corp.,*
  347 F.3d 665 (7th Cir. 2003) ............................................ 9, 10, 12, 13

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................... 41, 42

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ..........................................................................16

*BG Group, PLC v. Republic of Argentina,*
  572 U.S. 25 (2014) ........................................................ 34, 37, 47, 53,
  ....................................................................... 54, 56, 63, 64, 65, 66

*Borrero v. City of Chicago,*
  456 F.3d 698 (7th Cir. 2006) .............................................................15

*Brown v. Pacific Life Insurance Co.,*
  462 F.3d 384 (5th Cir. 2006) ......................................... 11, 12, 13, 14

*Carroll v. Lynch,*
  698 F.3d 561 (7th Cir. 2012) .......................................... 4, 30, 40, 41

*Certain Underwriters at Lloyd's London v. Argonaut Insurance Co.,*
  500 F.3d 571 (7th Cir. 2007) ..............................................................6

*Chase Bank USA, N.A. v. Swanson,*
  No. 10-cv-06972, 2011 WL 529487 (N.D. Ill. Feb. 4, 2011) ................... 24, 43

*Chesapeake Appalachia, LLC v. Scout Petroleum, LLC,*
  809 F.3d 746 (3d Cir. 2016) .................................... 35, 37, 56, 57, 64

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) .............................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Croasmun v. Adtalem Global Education, Inc.*,
    No. 20-cv-1411, 2020 WL 7027726 (N.D. Ill. Nov. 30, 2020) ................. 55, 65

*Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*,
    588 F.3d 884 (5th Cir. 2009) .................................................... 6, 35, 37, 38, 55,
    ........................................................................ 56, 61, 63, 65, 66, 67

*Employers Insurance of Wausau v. El Banco de Seguros del Estado*,
    357 F.3d 666 (7th Cir. 2004) ................................................................8

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ......................................................................49

*Fisher v. University of Texas at Austin*,
    570 U.S. 297 (2013) ............................................................. 39, 41, 42

*Granite Rock Co. v. International Brotherhood of Teamsters*,
    561 U.S. 287 (2010) ........................................................................43

*Green Tree Financial Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) ............................................................ 11, 12, 13, 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ......................................................... 5, 17, 32, 33,
    ..................................................................................... 47, 48, 49, 50

*International Alliance of Theatrical Stage Employee & Moving
    Picture Technicians, Artists, & Allied Crafts of the
    United States v. InSync Show Productions, Inc.*,
    801 F.3d 1033 (9th Cir. 2015) ......................................... 10, 12, 13, 14

*International Insurance Co. v. Caja Nacional de Ahorro y Seguro*,
    293 F.3d 392 (7th Cir. 2002) ................................................................8

*Jain v. de Méré*,
    51 F.3d 686 (7th Cir. 1995) .............................................................6, 7

*James v. Hale*,
    959 F.3d 307 (7th Cir. 2020) ............................................... 26, 27, 42

# TABLE OF AUTHORITIES
(continued)

Page(s)

*K.F.C. v. Snap Inc.,*
   29 F.4th 835 (7th Cir. 2022)................................................................17

*Kass v. PayPal Inc.,*
   75 F.4th 693 (7th Cir. 2023)................................................. 4, 30, 39, 40, 41, 42

*Kindred Nursing Centers L. P. v. Clark,*
   581 U.S. 246 (2017)........................................................................16

*Lamps Plus, Inc. v. Varela,*
   139 S. Ct. 1407 (2019).................................................... 17, 47, 48, 49

*Levy v. West Coast Life Insurance Co.,*
   44 F.4th 621 (7th Cir. 2022)..............................................................15

*Lifescan, Inc. v. Premier Diabetic Services, Inc.,*
   363 F.3d 1010 (9th Cir. 2004)...................................... 33, 49, 50, 51, 52, 61, 64

*Logan v. Zimmerman Brush Co.,*
   455 U.S. 422 (1982)........................................................................55

*Lumbermens Mutual Casualty Co. v.*
   *Broadspire Management Services, Inc.,*
   623 F.3d 476 (7th Cir. 2010)................................................. 30, 34, 35, 37, 38,
   ........................................................................ 53, 54, 56, 64, 65, 66

*McClenon v. Postmates Inc.,*
   473 F. Supp. 3d 803 (N.D. Ill. 2020)...................................................... 55, 65

*Morgan v. Sundance, Inc.,*
   596 U.S. 411 (2022)............................................................... 16, 17, 46

*Napleton v. General Motors Corp.,*
   138 F.3d 1209 (7th Cir. 1998).............................................................13

*Oxford Health Plans LLC v. Sutter,*
   569 U.S. 564 (2013)............................................................ 17, 33, 50, 52

*Scherer v. Rockwell International Corp.,*
   975 F.2d 356 (7th Cir. 1992).............................................................40

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Scott v. Harris*,
550 U.S. 372 (2007).................................................................40

*Stolt-Nielsen S. A. v. AnimalFeeds International Corp.*,
559 U.S. 662 (2010).................................................................64

*Tinder v. Pinkerton Security*,
305 F.3d 728 (7th Cir. 2002) ................................................ 39, 40, 41

*Tolan v. Cotton*,
572 U.S. 650 (2014)................................................................ 39, 40

*Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.)*,
631 F.3d 869 (7th Cir. 2011) ................................................. 61, 62

*United States v. Rand*,
482 F.3d 943 (7th Cir. 2007) ..................................................67

*United Steel, Paper and Forestry, Rubber, Manufacturing,
Energy, Allied Industrial & Service Workers
International Union v. Wise Alloys, LLC*,
807 F.3d 1258 (11th Cir. 2015) ...................................... 10, 12, 13, 14

*Vaden v. Discover Bank*,
556 U.S. 49 (2009)..................................................................8

*White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*,
647 F.3d 684 (7th Cir. 2011) ...................................................8

*Wisconsin Central Limited v. TiEnergy, LLC*,
894 F.3d 851 (7th Cir. 2018) ..................................................15

*Zurich American Insurance Co. v. Watts Industries, Inc.*,
466 F.3d 577 (7th Cir. 2006) ..................................................39

**STATUTES AND TREATY**

Federal Arbitration Act,
9 U.S.C. § 1 *et seq.*.................................................... 3, 6, 7, 8, 9, 14,
........................................................................ 16, 17, 30, 47, 48, 49

9 U.S.C. § 2...........................................................................7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

9 U.S.C. § 4................................................................. 3, 8, 14 26, 30, 39, 43

9 U.S.C. § 16(a)(3) ............................................... 9, 10, 11, 12, 13, 14,15

Chapter 2, 9 U.S.C. §§ 201–208 ..............................................6, 8

9 U.S.C. § 201.............................................................................6, 7

9 U.S.C. § 202.............................................................................6, 7

9 U.S.C. § 203.............................................................................6, 7

Truth in Lending Act,
15 U.S.C. § 1601 *et seq.*................................................................ 13, 14

Equal Opportunity Credit Act,
15 U.S.C. § 1691 *et seq.*................................................................ 13, 14

Convention on the Recognition and Enforcement
of Foreign Arbitral Awards,
June 10, 1958................................................................. 6, 7, 8

**RULE**

Federal Rule of Civil Procedure 56......................................... 26, 27, 40

**OTHER AUTHORITY**

AAA, *What We Do: Mass Arbitration*,
https://www.adr.org/mass-arbitration
(last visited November 14, 2023)....................................................19

## REQUEST FOR ORAL ARGUMENT

In accordance with Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f), Respondents-Appellants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. (collectively, Samsung), respectfully request oral argument. This appeal involves important questions arising in the novel mass-arbitration context, and Appellees' counsel's conduct and the district court's order threaten to impose massive nonrefundable and unrecoverable arbitration costs on Samsung with no benefit to any party. The petition to compel arbitration is an effort to extort a settlement benefitting Appellees' lawyers. Oral argument would substantially aid the Court in its resolution of this case.

## INTRODUCTION

This appeal arises from Labaton Sucharow's ongoing attempt to shake down Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. (collectively, Samsung), and a district court order that committed legal error by permitting those abusive tactics. Labaton initiated 50,000 identical arbitration demands against Samsung on behalf of alleged owners of unspecified Samsung devices. And although the claims are frivolous, premised on demonstrably false assertions about how Samsung devices work, that was beside the point, because the claims were tools of extortion, not attempts to win on the merits. If Labaton could convince the American Arbitration Association (AAA) to go along, Labaton could threaten Samsung with more than $100 million in nonrefundable, likely unrecoverable arbitration fees. Then Labaton could demand $50 million or more as a settlement to line its lawyers' pockets to make the claims go away. Perhaps that is why Labaton did no diligence, instead filing arbitration demands on behalf of numerous individuals with threshold deficiencies, like being deceased or represented by separate counsel.

Unfortunately for Labaton, both Samsung and the AAA refused to go along with the lawyers' extortion attempt. Samsung pointed out the

deficiencies to the AAA and declined to pay the filing fees. The AAA responded, consistent with its rules, by giving Labaton the opportunity to advance the fees and proceed with the arbitrations or instead have the arbitrations dismissed so Appellees could pursue their claims in court. Of course, Labaton had no intention of proceeding on the merits in *any* forum, because its goal was simply to trigger extortionate filing fees to leverage a massive settlement for the lawyers' benefit. Indeed, when given the opportunity to proceed with arbitration for the 14 California claimants for whom Samsung paid the fees (given an onerous California law), Labaton *declined*. Actually *pursuing* claims to resolution—claims it knows lack merit—was never part of Labaton's scheme.

In response to Labaton's tactics, Samsung played by the rules the parties agreed to—assuming Appellees are all real, living Samsung-device owners (more on that dubious premise below). The arbitration agreements incorporated the AAA's rules. Those rules, in turn, give the AAA complete discretion over every administrative detail, like the payment of filing fees. Importantly, the rules address the scenario where counsel bring multiple, coordinated arbitration demands and one party chooses (for whatever reason) not to pay arbitral fees. In that event, the AAA gives the other party the

opportunity to advance payment if it wants to proceed with arbitration. If that party does not advance payment, then the AAA can decline to administer the arbitration. If that happens, then either party is free to litigate their claims in court.

Samsung followed those rules. Samsung stood ready to arbitrate if Labaton or their clients were willing to advance the administrative filing fees. But when the AAA offered Labaton that opportunity—the opportunity to arbitrate—Labaton refused. (Again, actually arbitrating was not part of the plan.) So the AAA exercised its discretion and closed the arbitrations, letting Appellees pursue their claims in court, where Samsung was willing to fight on the merits (or lack thereof) without the extortionate threat of nonrefundable mass-arbitration fees.

Labaton refused to accept the AAA's exercise of its discretion under its rules not to require Samsung to pay the fees and to close the arbitrations. Instead, Labaton asked the district court to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 4, and to require Samsung to pay those fees. The district court went along for the 35,651 claimants that had sued in the proper venue. Of course, a court can compel arbitration only when the movant proves the parties have *in fact* agreed to arbitrate, meaning

the movant must *produce some evidence* of that agreement, as this Court's precedent makes clear. But the district court took as sufficient the unverified, unsworn word of Labaton's petition on behalf of tens of thousands of claimants. The court then decided that Samsung needed to arbitrate, and it compounded the error by concluding that *it* could decide the fee question the AAA rules expressly committed to the AAA.

That was error twice over. This Court should reverse.

1.    The district court erred in ruling—based on no evidence—that Appellees met their evidentiary burden of establishing that each of them had a valid arbitration agreement with Samsung. As the party seeking to compel arbitration, Appellees had the initial burden to proffer *evidence* showing that they each agreed to arbitrate with Samsung. *See Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012); *Kass v. PayPal Inc.*, 75 F.4th 693, 703 (7th Cir. 2023). But they submitted *no* evidence to carry that burden, relying instead only on the bare allegations in their petition. The district court erred in shifting the burden to Samsung and compelling arbitration.

2.    The district court erred in compelling arbitration and ordering Samsung to pay filing fees.

**a.**     All versions of the arbitration agreements (assuming solely for sake of argument that any Appellee actually entered into one) provide that administrative fees "shall be determined according to AAA rules" or equivalent language. That means only the AAA can decide whether the parties owe administrative fees and, if so, how much they owe and when payment is due. But the district court rewrote these "clear and unmistakable" terms, *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), giving *itself* the authority to determine whether and when Samsung must pay administrative filing fees. In other words, the court rewrote the contracts. That was error.

**b.**     The district court erred in ordering Samsung to pay filing fees after the AAA had decided *not* to do so. The AAA acted well within its authority when it decided (a) not to order or otherwise require Samsung to pay the filing fees; (b) to give Appellees the option to advance the unpaid fees; and (c) to close the cases, thus triggering the right of either party to litigate the claims in court. The district court, by ordering Samsung to pay the filing fees, usurped the AAA's authority and overrode its discretionary decision.

**c.**     Even if the parties had not expressly agreed that the AAA would resolve administrative fee issues, those issues would *still* be committed to the AAA, *not* the courts, because they are procedural matters reserved exclusively for arbitral bodies and arbitrators, as the Fifth Circuit and other courts have recognized. *See, e.g.*, *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 887 (5th Cir. 2009). The district court's reasons for rejecting those decisions fail, and this Court should not create a circuit split.

## JURISDICTIONAL STATEMENT

### A.     The district court had subject matter jurisdiction under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 203.

The district court had jurisdiction under Chapter 2 of the FAA, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention). *See* 9 U.S.C. §§ 201–203; RSA11-14; Doc. 27.[*]

**1.**     Section 203 of the FAA provides "an independent grant of federal subject matter jurisdiction." *Certain Underwriters at Lloyd's London v. Argonaut Insurance Co.*, 500 F.3d 571, 581 n.9 (7th Cir. 2007). Specifically, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," and a district court has

---

[*] "RSA" is the Required Short Appendix. "_-SA" refers to the Supplemental Appendix by volume.

"jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203; *see also id.* § 201; *Jain v. de Méré*, 51 F.3d 686, 689 (7th Cir. 1995). An arbitration agreement "falls under the Convention" if the agreement "is considered as commercial" and is not "entirely between citizens of the United States." 9 U.S.C. § 202. "Commercial" refers to § 2 of the FAA, meaning it reaches "to the full extent of [Congress'] commerce power." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001). And "a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202.

    **2.**    Accepting as true only for jurisdictional purposes Appellees' allegations that they have arbitration agreements with Samsung, *but see infra* pp. 38-46, this action falls under the Convention and thus triggers jurisdiction under § 203, because the arbitration agreements are indisputably "commercial" and not "entirely between citizens of the United States." 9 U.S.C. § 202. Appellees allege that they are U.S. citizens, and Appellant Samsung Electronics Co., Ltd. (SEC), is a South Korean citizen because it is a South Korean company incorporated in Korea, with its principal place of business in Korea. *See* Doc. 27, at 4-7. Jurisdiction still exists even if SEC is deemed a partnership, limited liability company, or other unincorporated

entity with the citizenship of all its members, because SEC has Korean-citizen shareholders. *See* Doc. 27, at 7-8. Thus, the Court "need not decide" whether SEC is in fact a foreign corporation. *White Pearl Inversiones S.A. (Uruguay) v. Cemusa, Inc.*, 647 F.3d 684, 687 (7th Cir. 2011).

The Court's November 8, 2023, order requests briefing on *Vaden v. Discover Bank*, 556 U.S. 49 (2009). *Vaden* confirms the analysis above, explaining that Chapter 2 of the FAA "expressly grant[s] federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards." *Id.* at 59 n.9. *Vaden* otherwise has little relevance. *Vaden* held that under § 4 of the FAA, a district court has jurisdiction over a petition to compel arbitration only if the court would otherwise have jurisdiction over the underlying lawsuit—that is, neither § 4 nor the FAA generally confers subject matter jurisdiction. *Id.* at 58-59, 70. As the Court stressed, however, *Vaden* itself did "not implicate[]" Chapter 2 of the FAA, which "does expressly grant federal courts jurisdiction." *Id.* at 59 n.9. This Court's precedent reflects "no doubt" about that principle. *Employers Insurance of Wausau v. El Banco de Seguros del Estado*, 357 F.3d 666, 668 (7th Cir. 2004); *see International Insurance Co. v. Caja Nacional de Ahorro y Seguro*, 293 F.3d 392, 396 (7th Cir. 2002).

**B.**    **This Court has appellate jurisdiction under the FAA, 9 U.S.C. § 16(a)(3).**

This Court has appellate jurisdiction under the FAA, 9 U.S.C. § 16(a)(3), because the district court's order compelling arbitration resolved the only issue in the case and is thus a "final decision" under that statute. The Supreme Court's, this Court's, and other courts of appeals' precedent is clear on that rule. *See* Docs. 17, 19.

**1.**    **Section 16(a)(3) confers appellate jurisdiction to review orders compelling arbitration that resolve the dispute before the district court.**

Section 16(a)(3) provides that an "appeal may be taken from … a final decision with respect to an arbitration that is subject to" the FAA. 9 U.S.C. § 16(a)(3). In *American International Specialty Lines Insurance Co. v. Electronic Data Systems Corp.*, 347 F.3d 665, 668 (7th Cir. 2003), this Court reaffirmed that an order compelling arbitration is a "final decision" under 9 U.S.C. § 16(a)(3), and therefore appealable, when the sole issue before the district court was a claim for arbitration under the FAA. That is true even if the district court stays rather than dismisses the action. *Id.* The rule, without exception, is that § 16(a)(3) confers appellate jurisdiction over an order

compelling arbitration "issued in a case brought to obtain that relief and nothing else." *Id.* at 667-68.

Other courts of appeals agree. Start with the Ninth Circuit: "When the only matter before a district court is a petition to compel arbitration and the district court grants the petition, appellate jurisdiction may attach regardless of whether the district court issues a stay." *International Alliance of Theatrical Stage Employee & Moving Picture Technicians, Artists, & Allied Crafts of the United States v. InSync Show Productions, Inc.*, 801 F.3d 1033, 1040 (9th Cir. 2015). Succinctly put, "a district court presented with a petition to compel arbitration and no other claims cannot prevent appellate review of an order compelling arbitration by issuing a stay." *Id.* at 1041.

The Eleventh Circuit applies the same rule: "an order compelling arbitration triggered by a complaint seeking solely such an order is generally considered final and appealable because it 'resolves the only issue before the district court.'" *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Wise Alloys, LLC*, 807 F.3d 1258, 1266-67 (11th Cir. 2015). A stay rather than dismissal following such an order does not make the order interlocutory for the simple reason that "there [is] nothing to stay." *Id.* at 1268.

The Fifth Circuit, too, holds that when "the sole remedy sought" is arbitration, and the district court issues an "order compelling arbitration," the order is "a final appealable decision under 9 U.S.C. § 16(a)(3)" because there is "nothing left for the court to do." *Brown v. Pacific Life Insurance Co.*, 462 F.3d 384, 391 (5th Cir. 2006). A stay accompanying the order compelling arbitration is "of no moment" because "there [is] nothing left for the district court to stay." *Id.* at 391-92.

### 2. *Green Tree* supports this Court's and other courts of appeals' rule.

**a.** *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), supports the clear rule set out above. *Green Tree* held that where a district court "has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id.* at 89. *Green Tree* did not call into question the longstanding precedent—from this Court and others—that an order compelling arbitration is final in a case "in which a request to order arbitration is the sole issue before the court." *Id.* at 88. That is because the Court interpreted "final decision" in § 16(a)(3) to carry its "well-established meaning"—a decision that "ends the litigation on the merits." *Id.* at 86.

Given *Green Tree*'s narrow holding, multiple courts of appeals—including this Court—have concluded that their longstanding precedent, holding that an order compelling arbitration is final when arbitration is the only issue, "remains good law." *International Alliance*, 801 F.3d at 1040; *see American International*, 347 F.3d at 667-68; *United Steel*, 807 F.3d at 1266-67; *Brown*, 462 F.3d at 391-92.

**b.**     To be sure, *Green Tree* clarified how finality principles work under § 16(a)(3). But its effect was to *expand* the scope of "final decisions" under § 16(a)(3) to include orders compelling arbitration where the court also resolved other requests for relief. As this Court recognized, *Green Tree* explained that an order compelling arbitration, "even if entered in a case in which other relief besides the order was sought," is final if it "plainly disposed of the entire case on the merits." *American International*, 347 F.3d at 668 (quoting *Green Tree,* 531 U.S. at 86-87). *Green Tree* thus rejected the notion that an order compelling arbitration "is never final and appealable in a case in which other relief is sought." *American International*, 347 F.3d at 668. In other words, *Green Tree* clarified that the scope of "final decision" under § 16(a)(3) is *broader* than the lower courts had thought, and it rooted that understanding in "a consistent and longstanding interpretation" of the term

"final decision." 531 U.S. at 88. The Court thus held that even orders compelling arbitration in "embedded" proceedings could be final under § 16(a)(3), depending on the circumstances. *Id.* at 88-89. So, while *Green Tree* overruled certain aspects of prior decisions that had construed § 16(a)(3) *too narrowly*, *e.g.*, *Napleton v. General Motors Corp.*, 138 F.3d 1209, 1212 (7th Cir. 1998), it did "not disturb" the rule that "[w]hen the only matter before a district court is a petition to compel arbitration and the district court grants the petition, appellate jurisdiction may attach regardless of whether the district court issues a stay," *International Alliance*, 801 F.3d at 1040; *see id.* at 1040 n.4 (favorably quoting *American International*, 347 F.3d at 668); *accord United Steel*, 807 F.3d at 1267; *Brown*, 462 F.3d at 391.

Footnote 2 of *Green Tree* does not change that analysis. Footnote 2 observed that the particular order at issue "would not [have been] appealable" under § 16(a)(3) had the court "entered a stay instead of a dismissal." *Green Tree*, 531 U.S. at 87 n.2. But as the Ninth and Eleventh Circuits have explained, that footnote must be read in the context of *Green Tree* itself. *See International Alliance*, 801 F.3d at 1040-41; *United Steel*, 807 F.3d at 1269-70.

*Green Tree* involved substantive claims *in addition to* the request for arbitration. 531 U.S. at 82-83. "In *Green Tree*, the plaintiff brought claims

under the Equal Opportunity Credit Act and the Truth in Lending Act."
*United Steel*, 807 F.3d at 1270. "Simply ordering the case to arbitration," the
Eleventh Circuit explained, "did not technically dispose of the substantive
claims that the plaintiff had brought, requiring the court to proceed with
parallel litigation, stay the claims, or possibly dismiss the case." *Id.* Had the
district court "entered a stay instead of dismissing the plaintiff's claims,"
those "claims would have remained pending, rendering the district court's
order compelling arbitration interlocutory instead of final." *Id.* But that
scenario differs from a case where an "order compelling arbitration resolved
the merits of the only claim for relief advanced by any party to the action."
*Id.* In the latter scenario, "nothing remain[s] for the district court to stay,"
meaning "the order [is] final" no matter whether the court entered a stay. *Id.*;
*see also International Alliance*, 801 F.3d at 1040; *Brown*, 462 F.3d at 391-92.

### 3. This Court has jurisdiction to review the district court's order under 9 U.S.C. § 16(a)(3).

**a.** As the foregoing caselaw makes clear, the Court has jurisdiction
to review the order under § 16(a)(3). Appellees filed a petition (and motion)
to compel arbitration under § 4 of the FAA. They sought just one thing—an
order requiring Samsung to arbitrate—and they did not raise their

underlying state-law claims before the district court. *See* 1-SA21. The district court, in turn, understood that Appellees had raised only one claim for relief, and it "order[ed] the parties to arbitrate." RSA36. The court's resolution of that lone claim left nothing else for it to do. The order is "final" under § 16(a)(3), and the court's entry of a stay does not change that. *See* Doc. 17, at 3-4; Doc. 19, at 17.

**b.**    This Court has jurisdiction under § 16(a)(3) despite the absence of a "separate document," *Wisconsin Central Limited v. TiEnergy, LLC*, 894 F.3d 851, 854 (7th Cir. 2018), memorializing the fact that "the judgment really is final," *Borrero v. City of Chicago*, 456 F.3d 698, 699-700 (7th Cir. 2006). Again, there is nothing left for the district court to do. The order compelling arbitration "makes it clear that the district court was finished with the case," "so [this Court] may proceed." *Levy v. West Coast Life Insurance Co.*, 44 F.4th 621, 625 (7th Cir. 2022). *See generally* Doc. 17.

**C.    Samsung timely appealed.**

On September 12, 2023, the district court granted Appellees' motion to compel arbitration and ordered Samsung to pay filing fees. RSA36. On September 15, 2023, Samsung timely filed its notice of appeal. 9-SA2417.

## STATEMENT OF ISSUES

**1.**     Whether the district court erred in ruling, based on no evidence, that Appellees met their evidentiary burden to establish that they each had a valid arbitration agreement with Samsung.

**2.**     Whether the district court erred in resolving the administrative-fee dispute given that (a) the parties expressly agreed that administrative fees "shall be determined according to AAA rules," 5-SA1162; (b) the AAA exercised its discretion over administrative fees by declining to order or otherwise require Samsung to pay the filing fees and instead closing the arbitrations, thus freeing the parties to litigate in court; and (c) administrative fees are core procedural matters for arbitral bodies and arbitrators to decide, as the Fifth Circuit and other courts have held.

## STATEMENT OF THE CASE

### A.     Legal background

"Arbitration is a matter of contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011), and the FAA "requires courts to place arbitration agreements 'on equal footing with all other contracts,'" *Kindred Nursing Centers L. P. v. Clark*, 581 U.S. 246, 248 (2017). This equal-footing principle is key: Congress enacted the FAA "to make 'arbitration agreements as enforceable

as other contracts, but not more so.'" *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* Therefore, "a court may not devise novel rules to favor arbitration over litigation." *Id.*

Courts must enforce provisions in arbitration agreements according to their terms, *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415-16 (2019), especially terms delegating issues to an arbitral body, *Henry Schein*, 139 S. Ct. at 527. For instance, although a court must always decide "the contract-formation issue," parties "may delegate *all other issues* … to the arbitrator," *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (emphasis added), and "a court possesses no power" to "override the contract," *Henry Schein*, 139 S. Ct. at 529. Nor may a court second-guess an arbitral determination when it is the arbitral body's decisionmaking that the parties "bargained for." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

## B.    Factual and procedural background

Appellees invoke arbitration agreements that they claim (without evidence) they entered into with Samsung. Solely for purposes of this appeal, Samsung assumes that, *if* Appellees have arbitration agreements with

Samsung, *but see infra* pp. 38-46, the agreements are those attached to Appellees' petition. *See, e.g.*, 5-SA1161-63.

### 1. Samsung's arbitration agreement provides that the arbitration process is governed by the AAA Rules.

"Samsung designs, manufactures, and sells devices, including smartphones and tablets." RSA3. Under the arbitration agreements attached to the petition, when an individual purchases or uses a Samsung device, they agree to arbitrate "all disputes" with "Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product." 5-SA1162. Samsung device owners also agree not to join a "class action" or any other "combined or consolidated" dispute. *Id.*; *see also* RSA4.

The arbitration agreements attached to the petition specify that every arbitration "shall be conducted according to [AAA rules]." 5-SA1162. The agreements give the arbitrator the authority to "decide all issues of interpretation and application of [the arbitration agreement]." *Id.* They also specify when certain fees and costs, like attorneys' fees and expert witness fees, may be awarded. *Id.* "Administrative … and arbitrator fees," on the other hand,

"shall be determined according to AAA rules" when the "total damage claims … exceed \$5,000.00." *Id.*

### 2. The AAA has complete discretion over the arbitration process, including administrative fees.

In certain consumer arbitrations, including the arbitrations underlying this case, *see* 5-SA1266, the AAA applies the Consumer Arbitration Rules, *see* 5-SA1164-1212, and the Supplementary Rules for Multiple Case Filings, *see* 5-SA1254-64 (collectively, the AAA Rules). The Supplementary Rules, now known as the "Mass Arbitration Supplementary Rules," reflect "the AAA's commitment to addressing the unique challenges and complexities associated with handling mass arbitrations"—Labaton's tactic here—"and demonstrate[] the organization's dedication to staying current and adapting to the ever-changing landscape of alternative dispute resolution." AAA, *What We Do: Mass Arbitration*, https://www.adr.org/mass-arbitration (last visited November 14, 2023). The AAA "developed" the mass arbitration rules "to streamline the administration of large volume filings" and "provide parties and their representatives with an efficient and economical path toward the resolution of multiple individual disputes." 5-SA1257. As explained in detail below (at 20-21), the rules contain a protocol for when one

party declines to pay fees: the other party can advance the fees, but if they choose not to, then the AAA may suspend or terminate the arbitrations. 5-SA1263. Should the AAA close the arbitrations, then, under the Consumer Arbitration Rules, either side may proceed on the merits in court. 5-SA1263.

The AAA Rules make clear that "[t]he AAA has the discretion to apply or not to apply the [AAA Rules]." 5-SA1170; *see also* 5-SA1258. That "discretion" extends to "all AAA administrative fees," like "filing fees, case management fees and hearing fees." 5-SA1198. For example, "the AAA retains the discretion to interpret and apply [the] fee schedule to a particular case or cases." *Id.* It may "defer or reduce the consumer's administrative fees." 5-SA1177. And the "AAA, in its sole discretion, may consider an alternative payment process for multiple case filings." 5-SA1200. ("Multiple case filings" are when, as here, the same or coordinated counsel files 25 or more similar demands against the same respondents. *See* 5-SA1258.) In short, the AAA Rules give "the AAA"—including the "Case Administrator … assigned to handle the administrative aspects of the case"—full discretion over "administrative fees." 5-SA1198, 5-SA1208.

Discretion aside, the default AAA rules governing administrative fees are simple. Take filing fees: each party has certain pre-determined filing-fee

obligations and those fees are nonrefundable. 5-SA1197-1201. "Filing fees are non-refundable," the AAA Rules explain, even if "the cases are closed due to settlement or withdrawal." 5-SA1200.

Sometimes, parties do not pay the filing fees (or other administrative fees). But the AAA Rules address that scenario, too, specifically in the context of multiple case filings. In the event of nonpayment, "the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA." 5-SA1263. If another party advances payment, the arbitration will proceed and the advancing party, if successful in arbitration, may recover the fees from the other party in the final arbitration award. *See* 5-SA1192. But if the fees are not paid—by any party—before an arbitrator is appointed, "the AAA may suspend or terminate those proceedings." 5-SA1263; *see* 5-SA1196. "Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution." 5-SA1174.

### 3. Appellees' counsel file 50,000 identical arbitration demands against Samsung.

Appellees' counsel, Labaton, simultaneously filed 50,000 individual claims with the AAA as part of a scheme to extract a massive settlement from

Samsung. *See* RSA6; Dist. Ct. Doc. 27, at 6-13. After an unsuccessful mediation, Labaton "immediately threatened … to file 50,000 demands for arbitration with the AAA absent an offer from Samsung to pay Labaton Sucharow at least $50 million. Samsung refused to acquiesce," Doc. 27-11 at 2, so Labaton followed through. It filed 50,000 arbitration demands to trigger escalating nonrefundable arbitration fees that could top $100 million. *See* Doc. 28, at 12 (calculation). It sought "to bury Samsung under the weight of hundreds of millions of dollars in arbitration fees" and use that financial "leverage" to "pressure" Samsung into settling for $50 million or more. Dist. Ct. Doc. 26, at 1.

Each demand was identical, alleging the same state-law violations and seeking "at least $15,000" in "statutory damages." 5-SA1246. While each claimant parroted the same allegation that they were a Samsung device owner, *see, e.g.*, 5-SA1214 ¶ 1, not one provided evidence for that assertion. Instead, Labaton simply provided the AAA with a spreadsheet containing each claimant's name, address, and contact information. *See* 5-SA1267; RSA7-8. Labaton also made demands on behalf of individuals with threshold issues concerning their ability to obtain relief, such as being deceased or being represented by different counsel. *See* Dist. Ct. Doc. 27, at 14 (listing

various deficiencies); *see also* Dist. Ct. Doc. 65, at 14 n.8 (providing examples of the dual-representation issue). Other claimants submitted duplicate claims. *See* 2-SA445 (three Deonta Daniels from Chicago Heights); 4-SA1064 (two Charlean Garrisons from Joliet); 4-SA1134 (two Mark D'Arienzos from Skokie). Still other claimants appeared to be fictitious, uninvestigated, or otherwise erroneously entered. *See, e.g.*, 1-SA96 (Bluff Master); 1-SA80 (Vain Exp); 1-SA33 (Lornabridges Bridges); 4-SA1153 (Gl Williams).

Based on a sampling of the data that Labaton submitted to the AAA, Samsung told the AAA that it had "serious concerns about the accuracy and integrity" of the 50,000 arbitration demands and flagged several issues. 5-SA1251. The AAA, like Samsung, identified "inaccurate and/or incomplete information" in the claimants' filing materials. 5-SA1266. Such information included incomplete addresses and names that appeared to be fake, like "Full Chck." 5-SA1267. "There [were] numerous additional cases with the same or similar inaccurate/incomplete information." 5-SA1266. The AAA thus ordered the claimants to either correct the defects or withdraw their claims. *Id.* Labaton submitted a revised spreadsheet, but still did not provide any evidence that each claimant was a Samsung device owner subject to a valid arbitration agreement with Samsung. *See* RSA8 (citing 5-SA1279).

Those issues did not prevent the AAA from determining that the claimants had "met the AAA's administrative filing requirements," 5-SA1269, for the simple but important reason that the AAA does not require claimants to prove with evidence *at filing* that they are bound by a valid arbitration agreement. The AAA instead requires claimants to simply attach an arbitration agreement to their demand *without proof* that they are bound by it. Thus, when the AAA decided that the claimants "had satisfied the requisite filing requirements," it "did not speak to whether a valid arbitration agreement existed between the parties." *Chase Bank USA, N.A. v. Swanson,* No. 10-cv-06972, 2011 WL 529487, at *2 n.2 (N.D. Ill. Feb. 4, 2011).

### 4. The AAA, applying its discretionary rules governing filing fees, closes the cases given the nonpayment of the outstanding fees *by either party*.

Labaton paid the claimants' portion of the filing fees. *See* RSA6-7. Samsung paid the filing fees for the California residents' claims given unique obligations under California law. RSA7. But Samsung elected not to pay the nonrefundable filing fees for the other claimants, which totaled more than $4 million, because (i) the AAA Rules anticipate and address nonpayment in multiple case filings and (ii) the demands were frivolous because they rested on demonstrably false claims about how Samsung devices operate, like

whether Samsung possesses or collects biometric data from the Gallery App (an application storing photos and videos), *see* 5-SA1232—it does not. *See* 5-SA1251-53; 5-SA1272-73. Samsung made clear, however, that it "will partic-ipate" in arbitration should the claimants advance the unpaid fees, consistent with the AAA Rules. 5-SA1253; 5-SA1272-73. Samsung also stood ready to defend against the claims in court—where other counsel already have filed a putative class action on identical issues. *See G.T. v. Samsung Electronics America, Inc.*, No. 1:21-cv-4976 (N.D. Ill.).

Labaton responded just a day later, purportedly on behalf of each of the 50,000 claimants. It "decline[d] Samsung's invitation" and instead asked the AAA to "issue an invoice to Samsung or, if the AAA believes Samsung's statement is sufficient regarding its refusal to pay the business fees," to "close the cases so Claimants can proceed to court." Dist. Ct. Doc. 1-16, at 2.

The AAA noted that Samsung invoked the AAA Rules and opted not to pay the outstanding filing fees. *See* 5-SA1275. But the AAA did not *order* or otherwise *require* Samsung to pay those fees. It instead recognized that the claimants could advance "Samsung's portion of the filing fees so that the matters may proceed." *Id.* While the AAA acknowledged that the claimants had declined to advance the fees, it gave them one last opportunity to do

so—*i.e.*, to pursue arbitration. *Id.* Labaton again declined, instead asking the AAA to stay the arbitrations while they sought an order from a federal court compelling Samsung to arbitrate and pay the filing fees. *See* 5-SA1278. The AAA rejected the stay request and exercised its discretion to close the 49,986 non-California claims, *see* RSA8-9, triggering the right of "either party" to "submit its dispute to the appropriate court for resolution," 5-SA1275.

### 5. Appellees move to compel arbitration, and the district court compels arbitration and the payment of fees.

**a.** Labaton filed a joint petition and motion to compel arbitration under 9 U.S.C. § 4 for Appellees. They asked the district court to order Samsung to arbitrate and pay the filing fees. *See* 1-SA12-22; Dist. Ct. Doc. 2. Mirroring their filings with the AAA, Appellees failed to provide the district court with any evidence supporting the allegation that they each were a Samsung device owner subject to a valid arbitration agreement with Samsung. Labaton instead attached "a discrete list" with alleged personal information for each claimant. RSA23; *see* 1-SA23–4SA-1160. And although Labaton labeled the petition "verified," 1-SA12, it was not. No Appellee swore under penalty of perjury that the petition's allegations (or its attachments) were true. Appellees thus failed to convert anything in the petition

into evidentiary material under Federal Rule of Civil Procedure 56. *See James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020).

Notably, other law firms subsequently filed a petition to compel arbitration of the same claims against Samsung on behalf of hundreds of the same petitioners. *See Hoeg v. Samsung Electronics America*, 1:23-cv-1951 (N.D. Ill.). Samsung noted the issue before the district court here, explaining that at least 241 of the 1,028 *Hoeg* petitioners (23%) were also *Wallrich* petitioners. Dist. Ct. Doc. 40, at 3. Petitioner overlap also appears to be an issue in *Allen and 4,128 Other Individuals v. Motorola Mobility, LLC*, 2023-CH-09116 (Ill. Cir. Ct., Cook County), a case Labaton has just filed raising similar merits claims on behalf of alleged users of Motorola phones—many of whom also (and improbably) appear to be Appellees here claiming to use Samsung phones (based on first- and last-name comparison of petitioner lists, 890 of the 4,130 *Motorola* petitioners (21.5%) appear to be *Wallrich* petitioners).

Samsung argued, as relevant here, that (a) each Appellee failed to carry their evidentiary burden of showing that they had a valid arbitration agreement with Samsung; and (b) the district court cannot order Samsung to pay the filing fees because the arbitration agreements commit that issue to the AAA; the issue is a procedural matter for arbitral bodies, not courts,

to decide; and the AAA did not require Samsung to pay the fees. *See* Dist. Ct. Docs. 26-27.

**b.**     After dismissing 14,335 petitioners' claims for lack of venue, *see* RSA14-19, the district court ordered Samsung to arbitrate the remaining 35,651 disputes and pay the filing fees, *see* RSA2, RSA36.

As relevant here, the court first ruled that Appellees met their burden of showing that they each had an arbitration agreement with Samsung. *See* RSA22-24. The court did not cite *any* evidence supporting that ruling. It instead accepted as true the petition's unverified and unattested "word of over 30,000 individuals, some of whom may have been recruited to this action by obscure social media ads." RSA23. The court also relied on (i) the "discrete list of named [claimants]" attached to the petition; (ii) the AAA's determination that Appellees had met the *administrative* filing requirements; and (iii) Samsung's acknowledgement — in a different case involving different individuals — that real Samsung device owners who do in fact use their devices are bound by an arbitration agreement. *Id.* Lastly, the court (mistakenly) thought that "Samsung [had] a customer list" that it could use to determine whether each Appellee was in fact bound by an arbitration agreement; for

support, the court merely said that Samsung had previously "raised concerns about specific names to the AAA." *Id.*

Proceeding to the merits, the district court concluded that Samsung breached the arbitration agreements by invoking the AAA Rules and not paying the filing fees. *See* RSA26-30. The court also ruled that *it* could order Samsung to pay the filing fees, reasoning that fee disputes are "issues of substantive arbitrability … for a court to decide," not "issues of procedural arbitrability" for an arbitrator to decide. RSA31. The court acknowledged that its ruling on the fee issue is contrary to decisions from within and outside this Circuit, including the Fifth Circuit. *See* RSA32-33.

**c.**     On September 26, 2023, soon after the district court compelled arbitration, Labaton filed arbitration demands on behalf of 35,610 Appellees. (For reasons unknown to Samsung, Labaton did not file arbitration demands for the other 41 Appellees.) On October 5, 2023, Samsung sought a stay pending appeal in the district court, *see* Dist. Ct. Doc. 61, which the court denied on October 18, 2023, *see* 9-SA2433. On October 25, 2023, Samsung moved this Court to stay the order pending appeal and to expedite the appeal. Doc. 21. The Court granted both requests on November 8, 2023, *see* Doc. 29.

## STANDARD OF REVIEW

This Court reviews an order compelling arbitration, like a summary judgment ruling, de novo, reviewing any factual findings (if making factual findings is proper, *but see infra* pp. 39-41) for clear error. *Lumbermens Mutual Casualty Co. v. Broadspire Management Services, Inc.*, 623 F.3d 476, 480-81 (7th Cir. 2010); *Carroll*, 698 F.3d at 563-64.

## SUMMARY OF ARGUMENT

**I.**　　The district court erred in ruling—based on no evidence—that Appellees had met their evidentiary burden to establish that they each had a valid arbitration agreement with Samsung.

**A.**　　Whether the parties have agreed to arbitrate is an evidentiary question under the FAA, 9 U.S.C. § 4, and this Court's clear caselaw. The burden of proffering evidence starts with the party seeking to compel arbitration—here, Appellees—and shifts to the nonmoving party—*i.e.*, Samsung—only after the moving party "puts forth *evidence* showing the absence of a genuine dispute of material fact." *Carroll*, 698 F.3d at 564 (emphasis added); *see Kass*, 75 F.4th at 703.

**B.　1.**　　Appellees failed to meet their evidentiary burden of showing that they each agreed to arbitrate with Samsung. They did not submit

*any* evidence. Instead, they rested on the bare allegations in the petition. Not a single Appellee provided a sworn statement stating who they were and what Samsung device they supposedly used. Given the burden of proof, no court may blindly accept as true Appellees' unsubstantiated allegations, which are not evidence. But that is exactly what the district court did, *see* RSA23, so this Court should reverse.

**2.**      The district court gave several reasons for its evidence-free ruling. Each fails. For example, because the AAA does not require claimants to prove *at filing* that they are bound by an arbitration agreement, the AAA's determination that Appellees had met the administrative *filing* requirements says nothing about whether the parties agreed to arbitrate. Additionally, the district court erroneously believed that Samsung had an exhaustive list of device owners that it could use to determine whether each Appellee had in fact agreed to arbitrate. It does not. But whether that is true is irrelevant because, again, *Appellees* bore the initial burden of proof and they did nothing to carry it. In other words, the district court excused Appellees from satisfying their burden and demanded that Samsung respond to a record devoid of evidence. What is more, the district court cited *nothing* for its belief that Samsung had a full list of device owners. And there is nothing to cite,

because no such list exists. Individuals typically purchase Samsung devices from third parties, like mobile carriers or retailers, and because device owners are not required to register their devices with Samsung, Samsung does not have a comprehensive list of every device owner.

**II.**    The district court also erred in compelling arbitration and ordering Samsung to pay filing fees because administrative-fee issues are for the arbitral body, not a court, to decide—as the arbitration agreements and caselaw confirm. The AAA declined to require Samsung to pay the fees, instead closing the arbitrations after giving claimants an opportunity to advance the fees—an opportunity Labaton refused.

**A.**    The arbitration agreements—assuming Appellees have shown that they each agreed to arbitrate (and they have not)—expressly commit the filing-fee issue to the AAA and no court may rewrite those terms. A court reversibly errs when it rewrites an arbitration agreement. *See Henry Schein*, 139 S. Ct. at 529. Here, the alleged contracts provide that administrative fees "shall be determined according to AAA rules." 5-SA1162. The district court rewrote those clear and unmistakable terms, ruling that *it* had the authority to decide whether and when Samsung had to pay administrative fees. That was error. The arbitration agreements pick the rules governing

administrative fees—contractually choosing the AAA Rules, not judge-made rules—and those Rules give the AAA full discretion over every aspect of administrative fees. No court may "override" that bargained-for commitment of administrative-fee issues to the AAA. *Henry Schein*, 139 S. Ct. at 529.

**B.**    The AAA did not decide that Samsung was required to pay fees. It instead closed the cases and let them proceed on the merits in court given the nonpayment by either party. Specifically, the AAA decided (a) not to order or require Samsung to pay the filing fees; (b) to give Appellees the option to advance the unpaid fees; and (c) to close the cases, rather than stay them, thus triggering the right of either party to sue in the appropriate court for resolution. Under the plain language of the AAA Rules incorporated into the contracts, the AAA acted "well within [its] discretion" in reaching that conclusion, and the district court was required to respect it. *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004). In ruling that Samsung *had* to pay fees, the district court ignored the AAA's discretionary decision. That was error because no court may second-guess an arbitral determination when it is the arbitral body's decisionmaking that the parties "bargained for." *Oxford Health Plans*, 569 U.S. at 569.

**C.**     Even if the contracts were silent on the administrative-fee issue, the district court's ruling that it could decide the fee question would still be incorrect, because administrative fees are core procedural matters for arbitral bodies and arbitrators to decide, as the Fifth Circuit and other courts have held.

**1.**     When a contract is silent, courts presume that "procedural" questions are for arbitral bodies and "substantive" questions are for courts. *Lumbermens*, 623 F.3d at 480-81. Procedural arbitrability questions include "the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate." *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014) (quotation marks omitted). Substantive arbitrability questions, by contrast, tend to concern "*whether there is a contractual duty to arbitrate at all.*" *Id.; see id.* at 34.

**2.**     Administrative fees are conditions precedent to arbitration, meaning they are committed to arbitral bodies, not courts. Such fees present issues that must be addressed before the arbitral proceedings begin or proceed. They are thus "conditions precedent to an obligation to arbitrate," which courts may not address. *BG Group,* 572 U.S. at 35. Here, that means

only the AAA may decide the fee issue, like whether the parties owe them and, if so, how much is owed and when payment is due.

Appellate courts agree on this issue. In *Dealer Computer Services*, which likewise involved AAA rules, the Fifth Circuit broadly held that "[p]ayment of fees is a procedural condition precedent that the trial court should not review." 588 F.3d at 887. This Court has cited *Dealer Computer Services* with approval, specifically its holding that administrative fees are procedural matters for arbitral bodies to decide. *See Lumbermens*, 623 F.3d at 482. The Third Circuit has similarly recognized, specifically with respect to the AAA, that administrative arbitral fees are "basic procedural issues that … 'the parties would likely expect the arbitrator to decide.'" *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 762 (3d Cir. 2016).

**3.**     These principles make clear that fee issues would be for the AAA even if the arbitration agreements did not say so. Because the AAA did not require Samsung to pay fees and instead closed the arbitrations after Labaton refused to advance payment, the district court had no power to compel arbitration and payment of fees.

**D.**     The district court's reasons for deciding the fee issue and Appellees' likely counterarguments lack merit.

**1.** The district court wrongly concluded that it could decide whether Samsung must pay fees despite recognizing (as Samsung argued) that the contracts incorporated rules committing fee issues to the AAA. The court simply asserted, without grappling with the AAA Rules' language, that it could decide the issue itself.

**2.** The district court concluded, and Appellees contend, that the AAA required Samsung to pay the fees, so the district court was just enforcing that judgment. That is incorrect. The AAA exercised its discretion by deciding (a) not to order or otherwise require Samsung to pay the filing fees; (b) to give Appellees the option to advance the unpaid fees if they really wanted to arbitrate; and (c) to close the cases, triggering the right of either party to submit the underlying merits dispute to the appropriate court for resolution.

**3.** The district court and Appellees treat the contracts as unconditional agreements to arbitrate. That is wrong. The agreements make clear that arbitration must proceed *pursuant to the AAA Rules*, which can put the parties back in court if the fees go unpaid. That is precisely how the AAA interpreted and applied the AAA Rules. Appellees may dislike how the

AAA exercised its discretion. But as *Dealer Computer Services* explained, their "remedy lies with the [AAA]," not the courts. 588 at 888.

4.    The district court concluded that Samsung's position created "a Catch 22" leaving Appellees nowhere to pursue their claims. 9-SA2432. That, too, is wrong. The result the parties got is the one they bargained for: Labaton failed to advance the fees for Appellees when given the opportunity, and the AAA sent them back to court, where they can pursue their claims (as other individuals are currently doing in another lawsuit).

5.    The district court's ruling—that administrative fees are substantive matters for courts to decide—is wrong and incompatible with *Dealer Computer Services*, *Lumbermens*, and *Chesapeake Appalachia*.

*First*, the district court incorrectly reasoned that administrative fees must be substantive given their role in arbitration. The court itself recognized that administrative fees "start" the arbitration process and that arbitration was "conditioned on the payment of the AAA's assessed fees." RSA27, RSA35. Those are hallmark characteristics of "a procedural condition precedent to arbitration"—determining "*when* the contractual duty to arbitrate arises, not *whether* there is [one]." *BG Group*, 572 U.S. at 35.

*Second*, the district court overlooked the fact that the AAA has total discretion over administrative fees, including whether, when, and how much fees are due. This discretion highlights a critical flaw in the court's logic. If administrative fees are substantive, as the court stated, then the AAA should not decide them. *Lumbermens,* 623 F.3d at 481. But the district court's reasoning produces the "strange" outcome of dividing the same issue (administrative arbitral fees) "between the court and the arbitrator," *id.*, because the court did not suggest that it would determine *the amount* due (clearly a procedural question for the AAA). The court offered no reason to treat the timing of fees as substantive and their amount as procedural.

*Lastly*, the district court's reasons for departing from established caselaw fail. *Dealer Computer Services* did not turn on liquidity to pay or chapter headings in AAA rules. The district court suggested no reason this Court should not follow the Fifth Circuit.

## ARGUMENT

### I.    Appellees failed to meet their evidentiary burden of showing that they had a valid arbitration agreement with Samsung.

Appellees bore the burden of showing that they each had a valid arbitration agreement with Samsung. But they submitted *no evidence*. The

district court nevertheless found a valid arbitration agreement between Samsung and every Appellee. That ruling cannot stand.

### A. The party seeking to compel arbitration has the initial burden of showing, with evidence, that the parties agreed to arbitrate.

To compel arbitration, a court must find "an agreement to arbitrate," *Zurich American Insurance Co. v. Watts Industries, Inc.*, 466 F.3d 577, 580 (7th Cir. 2006), and "the party seeking to compel arbitration … ha[s] the burden of showing" that the parties have in fact agreed to arbitrate, *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018). That is because whether the parties agreed to arbitrate is a question of fact, meaning that if there is a material dispute, the question is for a jury. *See* 9 U.S.C. § 4. Accordingly, pretrial disputes about the existence of an arbitration agreement are governed by the same standard governing summary judgment. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). Thus, the party seeking to compel arbitration—here, Appellees—must identify "sufficient evidence" that the parties agreed to arbitrate. *Fisher v. University of Texas at Austin*, 570 U.S. 297, 314 (2013) (summary judgment); *Kass*, 75 F.4th at 703 (arbitration). In assessing that showing, a court must draw all "reasonable inferences" from "the evidence" "in favor of the nonmoving party"—here, Samsung. *Tolan v.*

*Cotton*, 572 U.S. 650, 660 (2014) (summary judgment); *see also Kass*, 75 F.4th at 700 (arbitration).

Just as in summary judgment proceedings, the party moving to compel arbitration bears the initial burden of proof: "Once the moving party puts forth *evidence* showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide *evidence* of specific facts creating a genuine dispute." *Carroll*, 698 F.3d at 564 (emphases added); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (recognizing that the moving party carries the initial burden of proof under Federal Rule of Civil Procedure 56); *Scherer v. Rockwell International Corp.*, 975 F.2d 356, 360 (7th Cir. 1992) (same). Whether the parties are bound by a valid arbitration agreement is thus an *evidentiary* question—the burden of proffering evidence starts with the party seeking to compel arbitration and shifts to the nonmoving party only after the moving party carries its evidentiary burden.

This well-established order of operations is critical because it puts in context the statement that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Tinder*, 305 F.3d at 735. The moving party does not trigger that second-level

standard unless it "puts forth *evidence* showing the absence of a genuine dispute of material fact." *Carroll*, 698 F.3d at 564 (emphasis added).

**B.      Appellees failed to carry their evidentiary burden, and the district court's evidence-free ruling is wrong.**

**1.      The district court erred in compelling arbitration because Appellees offered no evidence that they agreed to arbitrate with Samsung.**

Appellees put forth *no evidence*—no affidavit, declaration, or other proof—showing that each of them is a Samsung device owner bound by an arbitration agreement with Samsung. Because Appellees failed entirely to carry their evidentiary burden, the district court erred in finding, based on no evidence, "a valid agreement to arbitrate." RSA24. The court thus erred in compelling arbitration and ordering Samsung to pay fees.

**2.      The district court's reasoning, which failed to apply the clear evidentiary standard, is incorrect.**

The district court gave several reasons for its evidence-free finding. Each lacks merit.

**a.**      The district court thought that it "must accept" the unverified and unattested "word of over 30,000 individuals." RSA23. But a motion to compel arbitration is akin to a motion for summary judgment, not a motion to dismiss. *Tinder*, 305 F.3d at 735. The court therefore erred in accepting

Appellees' allegations as true, *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), rather than determining whether Appellees proffered "sufficient evidence" to support those allegations, *Fisher*, 570 U.S. at 314; *see Kass*, 75 F.4th at 703. And *allegations* are all that Appellees have. Appellees' counsel labeled the petition "verified," 1-SA12, but no *Appellee* swore under penalty of perjury that the petition's allegations or its attachments were true. That is unsurprising given that some claimants, like "Full Chck," *see* 5-SA1266, are likely fictitious (showing that Labaton did not investigate its allegations), and others (possibly without their knowledge) were simultaneously being represented by other counsel in *Hoeg*, a separate action seeking to compel arbitration against Samsung on the same underlying claims. *Supra* p. 27. Appellees thus failed to convert the petition and its attachments into evidence. *See James,* 959 F.3d at 314.

The district court also relied on "a discrete list of named [claimants]," RSA23, attached to the petition, *see* 1-SA23. But that list is not evidence because, again, no Appellee swore under penalty of perjury that they are a real person with a Samsung device and a valid arbitration agreement. *See James,* 959 F.3d at 314. And the list could not carry Appellees' burden even if it *were* evidence, because it simply contains each claimant's purported personal

information (*i.e.*, name and city of residence). Information about one's identity is not evidence that one agreed to arbitrate, much less with Samsung about a particular device.

**b.**    The district court also relied on the AAA's determination that Appellees had met the administrative filing requirements. RSA23. But as explained, *supra* p. 24, the AAA's filing-requirement determination says nothing about whether the parties agreed to arbitrate, because the AAA does not require claimants to establish *at filing* that they are bound by an arbitration agreement. It instead requires claimants to simply attach an arbitration agreement to their demand *without proof* that they are bound by it. *See, e.g., Chase Bank USA,* 2011 WL 529487, at *2 n.2 (explaining that the AAA's filing-requirement determination says nothing about "whether a valid arbitration agreement existed between the parties"). What is more, the question whether the parties agreed to arbitrate at all is a question for the court (and, if necessary, a jury), not the arbitrator. 9 U.S.C. § 4; *see Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010).

**c.**    The district court relied on Samsung's acknowledgement—in a different case involving different individuals—that an owner of a particular Samsung device is bound by an arbitration agreement. RSA23. The alleged

Samsung device owner in a *different* case has nothing to do with the alleged Samsung device owners in *this* case. Moreover, the fundamental problem with the district court's reliance on this assertion is that it assumes the answer to the evidentiary question whether each Appellee *is* a Samsung device owner. Again, Appellees have not submitted any evidence that each one of them owns a Samsung device. Arguing that device owners are subject to arbitration agreements does not establish that Appellees *are* device owners.

**d.**     The district court thought that "Samsung [had] a customer list" that it could use to determine whether each Appellee was bound by an arbitration agreement. To support that notion, the court said that Samsung had previously "raised concerns about specific names to the AAA." RSA23. That was error for three reasons.

*First*, whether Samsung had a complete device-owner list is irrelevant because *Appellees* bore the initial burden of proof, which they did not carry. The district court prematurely (and wrongly) shifted the evidentiary burden to Samsung.

*Second*, Samsung did not raise concerns about *specific claimants* to the AAA. It instead flagged several *issues* that plagued the arbitration demands. *See* 5-SA1252. And there were several. Just to name a few, Labaton submitted

(a) duplicate claims for the same claimants, (b) claims on behalf of fictitious or deceased individuals, and (c) claims on behalf of individuals already represented by other counsel. *See supra* pp. 22-23.

*Third*, Samsung does not have a comprehensive "customer list." RSA23. Individuals typically buy Samsung devices from third parties, like mobile carriers or retailers. Because Samsung device owners are not required to register their devices, Samsung does not have a list of every device owner. The district court cited nothing supporting its contrary finding. If the court relied on Samsung's identification of issues plaguing the arbitration demands to conclude that Samsung had a comprehensive customer list, the court's error is readily explained: Samsung identified those issues by sampling the information that *Appellees submitted* to the AAA. *See* 5-SA1251. And if the court relied on Appellees' observation that Samsung device owners who register their devices provide Samsung with their personal information (*e.g.*, name, email, zip code, and date of birth, *see* Dist. Ct. Doc. 36, at 9 & n.4), the problem is likewise evident: not every owner registers their device.

In sum, established caselaw shows that Appellees bore the burden of submitting *evidence* showing that they each had a valid arbitration agreement with Samsung. Because they submitted no such evidence, the district

court's evidentiary ruling is wrong. To make matters worse, by compelling arbitration without evidence of valid arbitration agreements, the district court in effect "devise[d] [a] novel rule[] to favor arbitration over litigation"—something it clearly cannot do. *Morgan*, 596 U.S. at 418.

## II.   The district court erred in compelling arbitration and payment of fees because arbitral-fee issues are for the arbitral body, not a court, to decide—as the arbitration agreements and caselaw confirm.

The district court erred in resolving the fee dispute for three reasons.

*First*, the arbitration agreements expressly commit administrative-fee issues to the AAA and no court may rewrite the contracts. (Again, Appellees have offered no evidence that they have arbitration agreements.) *Second*, the AAA, applying its own rules, decided that Samsung was not required to pay fees and closed the cases given the nonpayment by either party. The district court was required to respect that determination. *Third*, even if the contracts were silent on the fee issue, administrative fees are quintessential "procedural" matters for arbitral bodies, not courts, to decide, as caselaw from the Fifth Circuit and other courts makes clear. Each counterargument offered by the district court or Appellees fails.

**A.     The arbitration agreements expressly commit the fee issue to the AAA and no court may rewrite the contracts.**

A court may not rewrite an arbitration agreement. Here, the district court ruled that it could compel Samsung to pay filing fees. *See* RSA30-36. That ruling rewrites the (alleged) arbitration agreements, which provide that administrative filing fees "shall be determined according to AAA rules." 5-SA1162. The Court should reverse.

**1.     Courts must enforce arbitration agreements according to their terms.**

"Where ordinary contracts are at issue, it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." *BG Group*, 572 U.S. at 33-34. Thus, consistent with the equal-footing principle, *supra* pp. 16-17, courts must enforce every provision delegating an issue to an arbitral body according to its terms. *See Henry Schein*, 139 S. Ct. at 528-29; *Lamps Plus*, 139 S. Ct. at 1415-16. "[A] court possesses no power" to "override the contract" and decide an issue that the parties expressly delegated to an arbitral body. *Henry Schein*, 139 S. Ct. at 529.

**2.     The district court rewrote the arbitration agreements' terms.**

By ordering Samsung to pay administrative filing fees, the Court rewrote the arbitration agreements, violating one of the most fundamental

principles governing arbitration under the FAA. (Solely for purposes of this appeal, Samsung assumes that, *if* Appellees have arbitration agreements with Samsung, *but see supra* pp. 38-46, the agreements are those attached to Appellees' petition. *See, e.g.*, 5-SA1161-63.)

The arbitration agreements provide: "*Administrative*, facility and arbitrator *fees* for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ('Large Claim') *shall be determined according to AAA rules*." 5-SA1162 (emphases added). "Administrative fees" include "filing fees." *See* 5-SA1198; *see also* 5-SA1192, 5-SA1202. And each Appellee sought "at least $15,000" in "statutory damages." 5-SA1246. Under the contracts' plain terms, the parties expressly committed administrative-fee issues to the AAA (again, assuming that each Appellee has a valid arbitration agreement with Samsung). Thus, the AAA "shall" decide whether the parties owe administrative fees and, if so, how much they owe and when payment is due. 5-SA1162.

The district court rewrote these "clear and unmistakable" terms, *Henry Schein*, 139 S. Ct. at 530, giving *itself* the authority to determine whether and when Samsung must pay administrative filing fees. *See* RSA30-36. That was error. The parties specified "the rules" governing administrative fees, *Lamps*

*Plus*, 139 S. Ct. at 1416—the AAA Rules, not judge-made rules. "The parties

thus incorporated the AAA Rules into their agreement." *Lifescan*, 363 F.3d at

1012. And the AAA Rules give the AAA full discretion over every aspect of

administrative fees. *Supra* pp. 20-21; *see also Lifescan*, 363 F.3d at 1012 (AAA

Rules "give[] arbitrators broad discretion to allocate fees and expenses

among the parties."). No court may "override" the parties' agreement to

commit administrative-fee issues (and discretion over such issues) to the

AAA, *Henry Schein*, 139 S. Ct. at 529, because the FAA "rigorously" and "ab-

solutely" protects bargained-for terms of arbitration, *Epic Systems Corp. v.

Lewis*, 138 S. Ct. 1612, 1621 (2018), and courts must remain "[f]aithful to the

statute," *Lifescan*, 363 F.3d at 1012. The district court rewrote the contracts, in

violation of established Supreme Court precedent. And, as explained below,

the district court's resolution of the question committed to the AAA was the

exact opposite of the AAA's resolution of that question.

### B.    The AAA decided that Samsung was not required to pay fees, and the district court was required to respect that determination because that issue was committed to the AAA.

The AAA acted well within its authority when it decided not to order

Samsung to pay the administrative fees. As explained, the contracts commit-

ted that authority to the AAA, *supra* pp. 47-49; as discussed below, so do

background arbitration principles, *infra* pp. 53-57. By ordering Samsung to pay those fees, the district court usurped the AAA's authority and overrode its decision.

### 1. Precedent makes clear that courts must respect the AAA's fee determinations under its rules.

Just as courts "may not override" contractual terms committing issues to an arbitral body, *Henry Schein*, 139 S. Ct. at 529, "courts have no business overruling" an arbitral determination when it is the arbitral body's decisionmaking that the parties "bargained for" and the arbitral body acted within "the scope of [its] contractually delegated authority," *Oxford Health Plans*, 569 U.S. at 569, 573.

The Ninth Circuit's decision in *Lifescan* is instructive. *Lifescan* refused to second-guess the AAA's determination to "suspend[] the proceedings" given the nonpayment of fees *by either party*, because the parties agreed to "leave" "the apportionment of fees" "up to the arbitrators," which acted "well within their discretion" expressly vested in them by the AAA's rules. 363 F.3d at 1011, 1013. The arbitration agreement at issue in *Lifescan*, like the agreements here, "incorporate[d] the rules of the AAA, which … cover[ed] the apportionment of fees" and gave the AAA "discretion" and "flexibility"

to determine whether, when, and how much fees are due. *Id.* at 1013. Indeed, as the Ninth Circuit observed, "the AAA *may* require a deposit as it deems necessary." *Id.* at 1012. That is precisely what the AAA did. It invoiced each party for administrative fees, but one party "could not afford to pay." *Id.* Accordingly, and consistent with its rules, the AAA exercised its discretion "by allowing the arbitration to proceed on the condition that [the other party] advance the remaining fees." *Id.* at 1012-13. The other party "refused," so the AAA "suspended the proceedings." *Id.* at 1011. *Lifescan* honored that discretionary decision, ordering the district court to "dismiss the petition," because the arbitration "proceeded pursuant to the parties' agreement and the rules they incorporated." *Id.* at 1013.

> **2.** **The district court erred in compelling arbitration and payment of fees because the parties committed administrative-fee issues to the AAA, and the AAA declined to order payment and closed the cases.**

As in *Lifescan*, the parties committed administrative-fee issues to the AAA (assuming each Appellee is bound by an arbitration agreement), and the AAA acted well within its discretion by deciding (a) not to order or otherwise require Samsung to pay the filing fees; (b) to give Appellees the option to advance the unpaid fees; and (c) to close the cases, rather than stay

them, thus triggering the right of either party to sue in the appropriate court for resolution, *supra* pp. 25-26. (Again, as the district court recognized, a putative class of Samsung device owners is currently litigating claims similar to Appellees'. *See* RSA18 (referencing *G.T.*, No. 1:21-cv-4976 (N.D. Ill.)).)

By ruling that Samsung *had* to pay AAA filing fees—a decision that the AAA *did not* make—the district court ignored the AAA's interpretation and application of its own rules. In other words, it improperly second-guessed the AAA's discretion, which is vested in it by the arbitration agreements, *supra* pp. 47-49, and background principles committing administrative fees to arbitral bodies, *infra* pp. 53-57. Again, the arbitration agreements "leave" administrative-fee issues "up to" the AAA, *Lifescan*, 363 F.3d at 1013, and the AAA Rules give the AAA discretion over every aspect of administrative fees, including whether to "apply [the] fee schedule to a particular case," 5-SA1198. The AAA exercised its discretion, administering Appellees' arbitration demands "pursuant to the parties' agreement and the rules they incorporated." *Lifescan*, 363 F.3d at 1013. Because that discretion is precisely what the parties "bargained for," no court may second-guess it. *Oxford Health Plans*, 569 U.S. at 569, 573.

### C.   Fee disputes are procedural matters for arbitral bodies to decide even when the contract does not expressly say so.

Even if the (alleged) arbitration agreements were silent on the fee issue, the district court's conclusion that *it* could order Samsung to pay filing fees would still be incorrect. Well-reasoned caselaw shows that administrative fees are procedural matters for arbitral bodies to decide, not substantive matters for courts to decide.

#### 1.   When a contract is silent on the issue, courts presume that a procedural condition precedent is for the arbitrator, not the court.

When a contract does not specify "whether a particular matter is primarily for arbitrators or for courts to decide," "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Group*, 572 U.S. at 33-35. Put differently, "procedural" arbitrability questions are presumptively for arbitrators, and "substantive" arbitrability questions are presumptively for courts. *Lumbermans*, 623 F.3d at 480-81.

Procedural arbitrability questions come in many forms. They "include claims of 'waiver, delay, or a like defense to arbitrability,'" as well as "the satisfaction of prerequisites such as time limits, notice, laches, estoppel, and

other conditions precedent to an obligation to arbitrate." *BG Group*, 572 U.S. at 35 (quotation marks omitted). For example, this Court has "held that the question of whether an arbitration agreement forbade consolidated arbitration was a procedural one for the arbitrator to answer." *Lumbermans*, 623 F.3d at 481. Substantive arbitrability questions, on the other hand, tend to concern "*whether* there is a contractual duty to arbitrate at all." *BG Group*, 572 U.S. at 35; *see also id.* at 34. For instance, a "court should decide whether an arbitration clause applied to a party who 'had not personally signed' the document containing it." *Id.* at 34.

### 2. Administrative-fee issues are procedural questions for arbitrators, not courts.

Administrative fees, like filing fees, are conditions precedent to arbitration, meaning they are presumptively committed to arbitral bodies, not courts. Such fees present issues that must be addressed before for the arbitral proceedings begin or continue. Administrative fees are thus "conditions precedent to an obligation to arbitrate." *Id.* at 35. They are "procedural gateway matters" that courts have no authority to address. *Id.* at 34-35 (emphasis omitted). Here, that means only the AAA may decide whether the parties

owe administrative fees and, if so, how much they owe and when payment
is due.

Courts within and outside this Circuit agree—administrative fees are
conditions precedent to arbitration and thus fall into the "procedural"
bucket of issues that must be decided by arbitral bodies, not courts. *See Dealer
Computer Services*, 588 F.3d at 887-88; *McClenon v. Postmates Inc.*, 473
F. Supp. 3d 803, 812 (N.D. Ill. 2020); *Croasmun v. Adtalem Global Education,
Inc.*, No. 20-cv-1411, 2020 WL 7027726, at \*4 (N.D. Ill. Nov. 30, 2020); *Adams
v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1255 (N.D. Cal. 2019); *cf. Logan v. Zim-
merman Brush Co.*, 455 U.S. 422, 437 (1982) (describing litigation "filing fees"
as "procedural requirements").

Take the Fifth Circuit's decision in *Dealer Computer Services*, which also
involved the AAA. 588 F.3d at 888-89. The Fifth Circuit held that the trial
court erred in ordering a party "to pay its share of the deposit" for the arbi-
tration. *Id.* at 885. The court underscored that "[p]ayment of fees is a
procedural condition precedent that the trial court should not review." *Id.* at
887. That is because, the court explained, the AAA has full "discretion" with
respect to administrative fees—not only may it direct one party to advance
the other party's fees, it also may decide whether to proceed with arbitration

or suspend the arbitration absent full payment. *See id.* at 887-88. Payment of administrative fees thus "determines *when* the contractual duty to arbitrate arises, not *whether* there is [one]." *BG Group*, 572 U.S. at 35.

This Court has cited *Dealer Computer Services* with approval. In *Lumbermens*, the question was whether a party had met a precondition to arbitration, specifically whether it had sufficiently notified the other party about its grievances. 623 F.3d at 477. That issue was "procedural," the court held, because it was "a condition precedent to arbitration," meaning no court had authority to resolve it. *Id.* at 481. To support that holding, *Lumbermens* twice cited *Dealer Computer Services*. *See id.* at 482-83. As *Lumbermens* put it, *Dealer Computer Services* stands for the notion that "payment of fees is [a] question of procedural condition precedent to arbitration that is for [an] arbitrator, not a court, to decide." *Id.* at 482 (parenthetically describing *Dealer Computer Services*, 588 F.3d at 887).

The Third Circuit's decision in *Chesapeake Appalachia* also aligns with *Dealer Computer Services*. *Chesapeake Appalachia* involved the AAA and determined that the arbitral body's rules "do not mention either class arbitration or the question of class arbitrability." 809 F.3d at 762. In reaching that conclusion, the court explained how the AAA rules "address various *procedural*

matters," including "the administrative filing fee" and similar requirements *Id.* (emphasis added). Such preconditions to arbitration, the court said, are "basic procedural issues that … 'the parties would likely expect the arbitrator to decide.'" *Id.*

> **3. Even if the contracts were silent, the district court erred in compelling arbitration and payment of fees, because the AAA was still authorized to determine that Samsung need not pay fees.**

Basic arbitration principles make clear that fee issues are for the AAA to decide even if the contracts did not expressly commit them to the AAA (though the contracts do exactly that, *supra* pp. 47-49). And because the AAA did *not* require Samsung to pay fees and instead closed the arbitrations after Labaton refused to pay, the district court had no power to compel arbitration and payment of fees. *Supra* pp. 49-52.

> **D. The district court's reasons for deciding the fee issue lack merit, as do Appellees' likely counterarguments.**

The district court's reasons for ignoring both the contracts and background law's commitment of fee issues to the AAA fail. Appellees counterarguments likewise lack merit.

### 1.    The district court wrongly concluded that it could decide whether Samsung must pay fees.

The district court acknowledged Samsung's argument that because the AAA Rules are incorporated into the contracts, "the AAA enjoys sole authority to determine" fee issues. RSA30. But it then proceeded to ignore the language of the AAA Rules. Instead, it concluded that because "the parties disagree that they are bound by the Arbitration Agreement to pay the filing fee," the court had to decide that issue. RSA31. That was error. As explained (at 47-49, 53-57), both the AAA Rules incorporated into the contracts and background arbitration principles committed that question to the AAA.

### 2.    The district court wrongly concluded, and Appellees wrongly argue, that the AAA required Samsung to pay the filing fees.

The district court concluded that the AAA ordered Samsung to pay the filing fees, RSA27-28, and Appellees have likewise argued that the AAA ordered or otherwise required Samsung to pay the filing fees, such that the district court simply gave effect to the AAA's judgment. *See* Doc. 24, at 11, 14. The court's and Appellees' reasoning ignores what the AAA actually did.

The AAA invoiced each party for administrative fees. *See* 5-SA1248 (invoice to Appellees); 5-SA1268 (letter invoice to Samsung). In the invoice to

Samsung, the AAA said only that "Samsung is now responsible for payment of the initial administrative filing fees." 5-SA1269. Samsung then informed the AAA that it would pay the fees for the California residents' claims, and that "[p]ursuant to the AAA Rules and procedures, [it] respectfully declines to pay filing fees" for the non-California claimants. 5-SA1273. The AAA acknowledged that Samsung invoked the AAA Rules and "decline[d] to submit [its] portion of the filing fees" for the non-California-residents' claims. *See* 5-SA1275. But as explained, the AAA did not order or otherwise require Samsung to pay those filing fees. It instead recognized that the claimants could advance "Samsung's portion of the filing fees so that the matters may proceed." *Id.* The claimants refused to advance the fees and proceed with arbitration, asking instead for the AAA to stay the proceedings while they petitioned a federal court to order Samsung to arbitrate and pay the fees. *See* 5-SA1278. The AAA, in response, closed the claims given the nonpayment *by either party*, *see* RSA8-9, triggering the right of "either party" to "submit its dispute to the appropriate court for resolution," 5-SA1275.

In short, the AAA administered Appellees' arbitration demands pursuant to the AAA Rules, which the arbitration agreements expressly incorporate, without requiring Samsung to pay the filing fees. *Supra* pp. 49-

52. The AAA exercised its delegated discretion by deciding (a) not to order or otherwise require Samsung to pay the fees; (b) to give Appellees the option to advance the unpaid fees if they wanted to arbitrate; and (c) to close the cases, triggering the right of either party to submit its dispute to the appropriate court for resolution.

The AAA's denial of Appellees' request to stay the arbitral proceedings pending resolution of their petition in federal court confirms that the AAA did not order or otherwise require Samsung to pay filing fees. If, as Appellees claim, the AAA thought that it had ordered or demanded Samsung to pay the fees, then presumably the AAA would have stayed the proceedings rather than close them; that would have been the most logical and efficient solution. Also, the AAA presumably would have indicated, consistent with the AAA Rules, that it would "decline to administer future consumer arbitrations with [Samsung]." 5-SA1197. But the AAA did none of those things. There is thus no basis for concluding that the district court, by ordering Samsung to pay the filing fees, simply gave effect to a prior AAA decision.

### 3. The district court's reasoning and Appellees' arguments wrongly treat arbitration agreements as unconditional, when the parties bargained for arbitration *under the AAA Rules*.

The district court's reasoning and Appellees' arguments both rest on the notion that the parties entered into unconditional agreements to arbitrate. In the district court's words, for example, "[t]he fees are bound up in the right to arbitrate." RSA35. That view is mistaken.

The arbitration agreements make clear that the parties agreed to arbitrate *pursuant to the AAA Rules*, which can put the parties back in court if the fees go unpaid. That is precisely how the AAA interpreted and applied the AAA Rules. *Supra* pp. 49-52. Appellees may dislike how the AAA exercised its discretion. But as *Dealer Computer Services* explained, their "remedy lies with the [AAA]," not the courts. 588 F.3d at 888. The parties got what they bargained for—an avenue to arbitrate their claims pursuant to the AAA Rules, which give the AAA full discretion over administrative filing fees—and no court may second-guess whether the AAA reasonably exercised that discretion. *Cf. Lifescan*, 363 F.3d at 1011-13. Because the AAA "is entitled to follow its own view about the meaning of [the AAA Rules]," given its full discretion over the Rules, "it need not knuckle under to the district [court's]"

contrary and unauthorized understanding. *Trustmark Insurance Co. v. John Hancock Life Insurance Co. (U.S.A.)*, 631 F.3d 869, 874-75 (7th Cir. 2011). That is especially true given that the courthouse doors remain open whenever fees go unpaid and where the AAA, as a result of the nonpayment *by either party*, chooses not to proceed. *See* 5-SA1174.

### 4. The district court wrongly thought that respecting the AAA's position creates a Catch-22.

In denying a stay pending appeal, the district court reasoned that not requiring Samsung to pay the filing fees "set[s] up a Catch 22" by allowing Samsung to require arbitration but stymie the arbitrator's ability to do so by not paying the filing fees. 9-SA2432. The flaws in that reasoning are twofold. *First*, the AAA *did* decide the fee issue—claimants could advance the fees, or the arbitrations would be closed. That was the result the parties bargained for by incorporating the AAA Rules, which give the AAA discretion to make exactly that determination in a mass arbitration. *Supra* pp. 49-52. *Second*, the court's reasoning suggests that Appellees and other parties will be unable to pursue their claims on the merits. But that is false. Under the AAA's decision, Appellees can pursue their claims in court. The reason they are not is that Labaton cannot shake Samsung down in federal court, where it cannot

trigger many millions of dollars in recurring, nonrefundable fees with no connection to the merits of the case.

> ### 5. The district court erred in ruling that, absent agreement, administrative fees are substantive matters for courts to decide, rather than procedural matters for arbitral bodies to decide.

Absent an agreement on the matter, fee disputes are procedural matters for arbitral bodies to decide. *Supra* pp. 53-57. The district court's contrary ruling is wrong, both doctrinally and conceptually, and its attempt to distinguish the Fifth Circuit's decision in *Dealer Computer Services* based on a supposed minor factual difference fails. This Court should join the Fifth Circuit, not create a circuit split.

**a.** The district court wrongly reasoned that administrative fees must be substantive given their role in arbitration: "Money is the means of dispute resolution, and the way to start this process." RSA35. The court's recognition that administrative fees *start* the arbitration process confirms that they are "a procedural condition precedent to arbitration." *BG Group*, 572 U.S. at 35. Indeed, the court elsewhere recognized that "[a]rbitration was *conditioned* on the payment of the AAA's assessed fees." RSA27 (emphasis added). Under the district court's own logic, administrative fees determine

"when the arbitration may begin, … not whether it may occur or what its substantive outcome will be on the issues in dispute." *BG Group*, 572 U.S. at 35-36. Administrative fees are therefore "procedural." *Id.* at 35.

The fact that administrative fees may be necessary for arbitration does not change anything. That is because courts presume that parties to "an arbitration agreement implicitly authorize the arbitrator to adopt such *procedures* as are *necessary* to give effect to the … agreement." *Stolt-Nielsen S. A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684-85 (2010) (emphases added). Administrative fees may be necessary, but that does not transform them from "basic procedural issues," *Chesapeake Appalachia*, 809 F.3d at 762, to substantive issues. The district court did not cite any authority supporting the notion that issues necessary for arbitration are automatically substantive issues for courts to decide. There is none.

**b.** While the district court said that *it* cannot "jigger" administrative fees, RSA35, it overlooked the fact that *the AAA* has that discretion. *Supra* pp. 20-21, 49-52; *Lifescan*, 363 F.3d at 1012-13. The AAA's discretion highlights a critical flaw in the district court's logic. If administrative fees are substantive, as the court ruled, then the AAA should *not* decide them. *Lumbermens*, 623 F.3d at 481. But that would turn the AAA Rules on their head,

not only because the Rules expressly commit administrative fees to the AAA, *see supra* pp. 47-49, but also because the Rules specifically address administrative fees, *see, e.g.*, 5-SA1197-1201. Here, the district court tried to split the difference, ruling that Samsung *had* to pay filing fees *now* without addressing *the amount* due. But as *Lumbermens* recognized, "[i]t would be strange to divide these largely overlapping [issues] between the court and the arbitrator." *Lumbermens*, 623 F.3d at 481. There is no basis to treat one matter, like the timing of administrative fees, as substantive and another matter, like the amount of administrative fees, as procedural. The result is that the district court is telling Samsung to pay what the AAA says, even when the AAA says Samsung need not pay.

**c.**    The district court's reasons for departing from established caselaw fail. *See* RSA32-34.

*First*, the district court appeared to rely on Samsung's ability to pay filing fees to distinguish *Dealer Computer Services*, where the nonpaying party did not. RSA33-34; *see also* RSA32-33 (discussing *Croasmun*, 2020 WL 7027726, at *4, *McClenon*, 473 F. Supp. 3d at 812, and *Adams*, 414 F. Supp. 3d at 1255). That factual nuance makes no difference to the legal principle established by Supreme Court and this Court's precedent: a condition

precedent to arbitration is a procedural matter for arbitral bodies to decide—period. *See BG Group*, 572 U.S. at 34-35; *Lumbermans*, 623 F.3d at 480-82. As the Supreme Court explained, "a 'condition precedent' determines what must happen before 'a contractual duty arises' but does not 'make the *validity* of the contract depend on its happening.'" *BG Group*, 572 U.S. at 35. Just so with administrative fees. That is why *Dealer Computer Services* held, and *Lumbermans* acknowledged, that "payment of fees is [a] question of procedural condition precedent to arbitration that is for [an] arbitrator, not a court, to decide." *Lumbermans*, 623 F.3d at 482 (citing *Dealer Computer Services*, 588 F.3d at 887). The mere happenstance that the nonpaying party in one case has the means to pay does not—indeed, cannot—transform a condition precedent to arbitration into something that affects "whether there is a contractual duty to arbitrate at all." *BG Group*, 572 U.S. at 35 (emphasis omitted). The district court thus erred in thinking that *Dealer Computer Services* can be distinguished on its facts.

*Second*, the district court appeared to think that the placement of the AAA rules on fees under the headings "Costs of Arbitration" and "AAA Administrative fees," *i.e.*, in "chapters that lack the word 'procedure,'" meant

that the rules could not be procedural. RSA33-34; *see* 5-SA1197-98. That reasoning makes no sense.

*Dealer Computer Services* did not rely on the chapter headings in ruling that the AAA rules give the AAA full discretion over administrative fees, including their payment (and nonpayment), as "a procedural condition precedent that the trial court should not review." 588 F.3d at 887-88. The Fifth Circuit reached that holding based on what the rules say; because the rules clearly give the AAA full discretion over administrative fees, including their payment (and nonpayment), *id.* at 888, the Fifth Circuit had no reason to think that the chapter headings would somehow affect the substance of the AAA rules.

That makes sense, because chapter headings shed little light on the question whether administrative fees are procedural or substantive. While a heading or "title can inform the meaning of ambiguous text, it is well-settled that it does not 'limit the plain meaning of the text.'" *United States v. Rand*, 482 F.3d 943, 947 (7th Cir. 2007). And when the AAA Rules are read as a whole, it is plain that administrative fees are part of the arbitration *process*, because payment of such fees determines whether the arbitral proceedings may begin or continue.

## CONCLUSION

The Court should reverse, because the district court (1) erred in ruling that Appellees met their evidentiary burden to establish that they each had a valid arbitration agreement with Samsung; and (2) erred by resolving the fee dispute.

Dated: November 14, 2023

Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney
Jeremy Patashnik
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Randall W. Edwards
Matthew D. Powers
O'MELVENY & MYERS LLP
Two Embarcadero Center,
  28th Floor
San Francisco, CA 94111

Mark Howard Boyle
DONOHUE BROWN
  MATHEWSON & SMYTH LLC
131 South Dearborn Street,
  Suite 1600
Chicago, IL 60603

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Kyser Blakely
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Jonathan D. Hacker
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006

Ashley M. Pavel
O'MELVENY & MYERS LLP
610 Newport Center Drive,
  17th Floor
Newport Beach, CA 92660

James L. Kopecky
KOPECKY SCHUMACHER
  ROSENBURG LLC
120 North LaSalle Street,
  Suite 2000
Chicago, IL 60601

*Counsel for Respondents-Appellants Samsung Electronics America, Inc.,
and Samsung Electronics Co., Ltd.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because, as calculated by Microsoft Word, it contains 13,994 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: November 14, 2023

*/s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Respondents-Appellants*
*Samsung Electronics America, Inc.,*
*& Samsung Electronics Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2023, I electronically filed the foregoing brief and the following Required Short Appendix with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 14, 2023          */s/ Shay Dvoretzky*
                                  Shay Dvoretzky

                                  *Counsel for Respondents-Appellants*
                                  *Samsung Electronics America, Inc.,*
                                  *& Samsung Electronics Co., Ltd.*

# CIRCUIT RULE 30(d) CERTIFICATION

In accordance with Circuit Rule 30(d), I hereby certify that all materials required by Circuit Rule 30(a) and (b) are included in the Required Short Appendix and the Supplemental Appendix.

Dated: November 14, 2023          */s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Respondents-Appellants*
*Samsung Electronics America, Inc.,*
*& Samsung Electronics Co., Ltd.*

[This page is intentionally left blank]

# INDEX OF REQUIRED SHORT APPENDIX

**Page**

District Court Memorandum Opinion and Order,
    Dist. Ct. Doc. 51 (Sept. 12, 2023) ........................................................RSA1

**DISTRICT COURT MEMORANDUM OPINION AND ORDER**

**DIST CT. DOC. 51 (SEPT. 12, 2023)**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAULA WALLRICH, DANIELLE
JONES, GRANT GRINNELL, JEFFREY
BURTON, RHONDA MCCALLUM,
PROVIDENCIA VILLEGAS, and
49,980 other individuals,

                Petitioners,

        v.

SAMSUNG ELECTRONICS AMERICA,
INC. and SAMSUNG ELECTRONICS
CO., LTD.,

                Respondents.

Case No. 22 C 5506

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Petitioners, each Samsung device users, petitioned this Court to compel arbitration against Respondent Samsung (Dkt. No. 1; Dkt. No. 2) upon Samsung's refusal to pay filing fees. Samsung moved to dismiss the petition for improper venue (Dkt. No. 26) and opposed the merits of the petition. For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to plead proper venue in the Northern District of Illinois, and the Court grants Petitioners' Motion to Compel Arbitration (Dkt. No. 2) by ordering the remaining parties to arbitrate.

## I.  <u>BACKGROUND</u>

### A.  Parties

Petitioners are 49,986 Samsung device users who have lived in Illinois. (Pet. To Compel Arb. ("Pet.") ¶¶1, 21, 28, Dkt. No. 1; Pet. M. to Compel Arb. ("MTC"), Dkt. No. 2 at 1.) Respondents are Samsung Electronics America, Inc. ("SEA") and Samsung Electronics Co. Ltd. ("SEC") (collectively, "Samsung"). (Pet. ¶¶22-23.) SEC, a Korean corporation, is the parent company to SEA. (Pet. ¶23.) Samsung designs, manufactures, and sells devices, including smartphones and tablets. (Pet. ¶27.)

### B.  Terms

By utilizing their Samsung device, each user agreed to several Terms & Conditions ("T&C") established by Samsung. (*See* Samsung's In-Box Terms & Conditions, Pet. Ex. B, Dkt. No. 1-3; Samsung's End User License Agreement ¶16 "¶16. *Arbitration Agreement*," Pet. Ex. C, Dkt. No. 1-4; Samsung Electronics' Terms and Conditions at 6, Pet. Ex. D, Dkt. No 1-5; Samsung's online Terms & Conditions, Pet. Ex. E, Dkt. No. 1-6 (collectively, "terms" or "Arbitration Agreement").) To register a Samsung device, users must provide the company with personally identifiable information such as the user's name and zip code (Petitioners' Opposition to M. to Dismiss ("Opp. MTD"), Dkt. No. 36 at 9); *see* "Create your Samsung account,"

*https://account.samsung.com/accounts/v1/MBR/signUp* (last accessed July 13, 2023).

Samsung's terms stipulate alternative dispute resolution (ADR) such that "[a]ll disputes with Samsung arising in any way from these terms shall be resolved exclusively through final and binding arbitration and not by a Court or Jury." (Pet. Ex. E at 3; *see* Pet. Ex. C ¶16; Pet. ¶¶2—3.) These terms also prohibit "class action" and "combined or consolidated" disputes, instead mandating solely individual claims. (Pet. Ex. E at 3; Pet. Ex. C ¶16; *see* Pet. ¶3.)

The terms specifically delegates arbitration proceedings to the American Arbitration Association ("AAA"). "The arbitration shall be conducted according to the [AAA] Consumer Arbitration Rules" (Pet. Ex. B at 10; Pet. Ex. C ¶16). Pursuant to the AAA Consumer Arbitration Rules ("Consumer Rules" or "Rules"), an arbitrator is assigned to resolve the claims brought. (Consumer Rules, Dkt. No. 1-7.) The arbitrator is vested with "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Rule R-14.)

The Rules outline the Association's fee schedule for AAA administrative proceedings. (*See* Rules at 33—40.) Rule R-6 specifies,

> The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary

- 3 -

RSA4

> to cover the expense of the arbitration, including the arbitrator's fee, and shall render any unused money at the conclusion of the case.

(*Id.* at 14.) The AAA's fees were in place when Samsung initially adopted its Arbitration Agreement in 2016, and those fees have been reduced in the multiple case filing scenario by the AAA's adoption of its Supplementary Rules for Multiple Case Filings ("Supplementary Rules"), effective August 1, 2021. (Reply MTC at 2; *see also* AAA Supplementary Rules, Response MTC Ex. 2, Dkt. No. 27-2.)

These Supplementary Rules apply when the same or coordinated counsel files 25 or more similar demands against the same respondents. (*See* Supplementary Rules, Dkt. No. 27-2.) Together with the Consumer Rules, the Supplementary Rules anticipate scenarios where either consumers or businesses cannot pay, or decline to pay, their assigned initial administrative fees. (*See id.*) Specifically,

> If administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA.

(Supplementary Rule MC-10(d).) A party that advances fees may then recover them in the final arbiter award. (R-44(d); *see* Opp. MTC at 6.) If the arbitrator determines that a party's claim was filed "for purposes of harassment or is patently frivolous," she may allocate filing fees to the other party in the final award. (Rule R-44(c).) Additionally,

- 4 -

RSA5

> If payments due are not made by the date specified in such notice to the parties, the arbitrator may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the AAA may suspend or terminate those proceedings. . . .

(Supplementary Rule MC-10(e)).

Neither the terms nor the AAA Rules specifically designate the venue for arbitration. The Rules do provide:

> If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the Consumer Due Process Protocol.

(Rule R-11.) (*Id.*)

### C. Dispute

Seeking redress for alleged violations of the Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,* Petitioners filed 50,000 individual arbitration demands before the AAA on September 7, 2022. (Pet. ¶¶ 1, 11, 14 n. 2; *see* Representative Sample of Demand, Pet. Ex. J, Dkt. No. 1-11; MTD, Dkt. No. 26 at 6, 17.) Appended to each petition was the arbitration agreement. (Dkt. No. 35 at 6 (citing 2022.10.31 Letter from AAA to Parties, Reply MTC Ex. A, Dkt. No. 35-1, replicated in Opp. MTC Ex. 14, Dkt. No. 27-14.) On September 27, 2022, the AAA invoiced Petitioners for their share of the initial administrative fees, which Petitioners

- 5 -

thereafter paid. (*Id.; see also* AAA Invoice to Claimants, Dkt. No. 1-13; Claimants Payment Confirmation, Dkt. No. 1-14.) On September 27, 2022, Samsung notified the AAA that it would not pay its share of the assessed initial administrative fees for the Illinois claimants because it found the claimant list included discrepancies such as deceased claimants and claimants who were not Illinois residents. (*See* Pet. ¶14, Ex. N, Dkt. Nos. 1, 1-15.) Samsung agreed to pay the fees for fourteen petitioners now living in California, citing California Code of Civil Procedure § 1281 *et seq.,* which provides for sanctions in event of nonpayment. (Pet. ¶14 n. 2; *see* Pet. Ex. N.)

On October 7, 2022, Petitioners, as 49,986 individual claimants, filed in this Court a Petition for an Order to compel Samsung to arbitrate. (*See* Pet.) Petitioners have not sought class certification.

In reviewing the arbitration demands at issue here, the AAA determined both the AAA Rules and the Supplementary Rules apply. (10.12.22 Letter from AAA to Parties, Opp. MTC, Ex. 3, Dkt. No. 27-3.) Pursuant to these rules, the claimants must provide to the AAA a spreadsheet that includes the claimant's name, claimant city, state, zip code, claim date, and locale state. (*See id.; see* Rule R-2; Supplementary Rule MC-2.) Claimants did so. (*See* 10.12.22 Letter.) But, consistent with Samsung's objections a couple weeks prior as to

- 6 -

certain individuals listed, the AAA found the spreadsheet contained "inaccurate/incomplete information." (*Id.*) Thus, the AAA requested a corrected spreadsheet (*id.*), thereafter provided by Petitioners (2022.10.21 Labaton Email, Dkt. No. 27-13 at 1) to the AAA's satisfaction (2022.10.31 AAA Letter, e.g., Dkt. No. 27-14; *see* Amended Claimant Spreadsheet, Exhibit D, Dkt. No. 36-4.) Aside from the 14 California claimants, 14,334 claimants listed as their claimant city an Illinois town in the Central or Southern districts of Illinois, one individual listed Brooklyn, New York, and the remainder listed a locale within the Northern District of Illinois. (*Id.*; MTD.)

The AAA issued its administrative determination on October 31, 2022, that "claimants have now met the AAA's administrative filing requirements on each of the 50,000 cases filed," and that "Samsung is now responsible for payment of the initial administrative filing fees totaling $4,125,000.00." (10.31.22 AAA Letter, Dkt. Nos. 27-14; 35-1.) On November 8, 2022, Samsung again declined to pay the initial fees. (Dkt. No. 27-15.) On November 14, the AAA notified the parties: "Based on the claimants' and Samsung's statements declining to pay Samsung's portion of the filing fees for the non-California cases, unless we hear otherwise prior to November 16, 2022, the AAA will close all non-California cases." (Dkt. No. 27-16.) On November 17, 2022, Petitioners again declined to pay Samsung's fees.

- 7 -

(Dkt. No. 27-17.) On November 30, 2022, the AAA notified the parties that it had administratively closed those 49,986 claims. (Dkt. No. 27-19.) Since the AAA required the payment of initial fees to proceed, the AAA neither assigned an arbitrator to the claims, nor designated a locale for arbitration. (*See* Supplementary Rule MC-10(a); Rule R-11; *see also* Opp. MTD at 1-2; Reply MTD at 8-9.)

## II.  <u>LEGAL STANDARD</u>

The Court considers the parties' arguments as demanded by the respective standards.

### A.  Subject Matter Jurisdiction

A federal court must have subject matter jurisdiction to adjudicate any claim brought before it. *Mathis v. Metro. Life Ins. Co.,* 12 F.4th 658, 663 (7th Cir. 2021). Subject matter jurisdiction cannot be waived, and if the Court determines at any point that it lacks subject matter jurisdiction over the matter, it must dismiss the action. FED. R. CIV. P. 12(h)(3).

### B.  Motion to Dismiss for Improper Venue

Pursuant to Federal Rule of Procedure 12(b)(3), this Court reviews the motion to dismiss for improper venue by "construing all facts and drawing reasonable inferences in favor of the plaintiff." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011); *see also* FED. R. CIV. P. 12(b)(3). The Court may consider

- 8 -

RSA9

facts beyond the pleadings in its venue analysis. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005).

### C.  Motion to Compel Arbitration

The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, "arbitration should be compelled if three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *Scheurer v. Fromm Family Foods LLC,* 863 F.3d 748, 752 (7th Cir. 2017) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005)).

Courts in this Circuit apply an evidentiary standard akin to that articulated in Federal Rule of Civil Procedure 56(e) for summary judgment when determining whether the parties agreed to arbitrate. *Tinder v. Pinkerton Sec.,* 305 F.3d 728, 735 (7th Cir. 2002). Thus, if the party seeking arbitration offers evidence sufficient to find the parties' agreement to arbitrate, the opposing party must demonstrate a "genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place," *Kass v. PayPal Inc.,* 2023 WL 4782930, at *5 (7th Cir. July 27, 2023). The opposing

- 9 -

party cannot "generally deny[] facts" but must identify specific evidence in the record to support its argument. *Tinder,* 305 F.3d at 735. A court may not rule on either the potential merits of the underlying claim or its arbitrability when these determinations are assigned by contract to an arbitrator, even if a court perceives frivolity. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 649-50 (2011).

### III.   <u>DISCUSSION</u>

### A.   Subject Matter Jurisdiction

In their petition, Petitioners attribute this Court's subject matter jurisdiction to the federal question of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* pursuant to federal jurisdictional statutes, 28 U.S.C. §§ 1331 and 1367. It is not so simple.

In 1925, Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 443 (2006), and to declare "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston v. Ferrer,* 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984)). Pursuant to Section 4 of the FAA, aggrieved parties "may petition any United States district court which, save for such agreement, would have

jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Still, the Act remains "'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis." *Hall St. Assocs., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 581–82 (2008) (quoting *Moses H. Cone,* 460 U.S. at 25, n. 32); *see also Badgerow v. Walters,* 142 S.Ct. 1310, 1314 (2022). An "independent jurisdictional basis" may derive from the underlying controversy. *Vaden v. Discover Bank,* 556 U.S. 49, 62, (2009)). Section 4 "instructs a federal court to 'look through' the petition to the 'underlying substantive controversy' between the parties—even though that controversy is not before the court. *Badgerow,* 142 S.Ct. 1310, 1314 (quoting *Vaden,* 556 U.S. at 62). Arbitration agreements, like this one, often involve only questions of state law. *See id.* at 1326 (Breyer, J., dissenting). Here, the action is predicated under Illinois state law, i.e., the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/15(b). Therefore, Petitioners' claim of subject matter jurisdiction by means of a federal question remains improper.

Nevertheless, Respondents concede a different jurisdictional basis still rooted in the FAA itself, citing *Vaden,* 556 U.S. at 59

n.9 (2009) and sections 202 and 203 of the FAA, "because . . . the arbitration agreement is not 'entirely between citizens of the United States'" as Respondent SEC is a South Korean corporation. (MTD, Dkt. No. 26 at 9-10 (quoting 9 U.S.C. § 202); *see* Pet. ¶23.) The Court agrees that there is jurisdiction under Chapter 2.

In 1970, the United States acceded to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, (Convention), which Congress codified by implementing Chapter 2 of the FAA, as expressed in section 201 of the FAA. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC,* 140 S.Ct. 1637, 1644 (2020) ("*GE France*") (citing 84 Stat. 962 and 9 U.S.C. §§ 201–208). "Chapter 2 . . . empowers [federal] courts to compel arbitration" over actions falling under the Convention. *GE France,* 140 S.Ct. at 1644 (citing § 206 and Convention Article II(3)); *see* 9 U.S.C. § 202. An agreement "fall[s] under the Convention" when it is commercial in nature and a party is foreign. 9 U.S.C. § 202. Chapter 2 also states, "'Chapter 1 applies to actions and proceedings brought under this chapter to the extent that [Chapter 1] is not in conflict with this chapter or the Convention.'" *Id.* (quoting § 208).

Therefore, although Petitioners bring the action to compel arbitration under Section 4 in Chapter 1 of the statute, this Court maintains its subject matter jurisdiction through Chapter 2 to compel

arbitration of this commercial arbitration agreement with a foreign party.

## B.  Venue

Chapter 2, section 204 of the FAA contains its venue provision, which "supplement[s], but do[es] not supplant the general [venue] provision, [28 U.S.C. § 1391]." *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 198 (2000); *see also Day v. Orrick, Herrington & Sutcliffe, LLP,* 42 F.4th 1131, 1141 (9th Cir. 2022) (Section 204 is a "permissive, supplemental venue provision in addition to the general venue provision, 28 U.S.C. § 1391."). Samsung seeks to dismiss on grounds that neither provision affords venue to this action. Petitioner argues that venue is proper under both statutes. The Court considers each path.

### 1.  *FAA Venue Provision, 9 U.S.C. § 204*

Under section 204 of the FAA, a court exercising jurisdiction under section 203 is a proper venue for an action where (1) "save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought," or (2) "the district . . . embraces the place designated in the agreement as the place of arbitration." 9 U.S.C. § 204.

As discussed, *supra*, Petitioners cannot establish the first option for venue under section 204 of the FAA because the arbitration agreement itself *is* the source of subject matter jurisdiction. Absent

- 13 -

an agreement subject to the Convention, this Court would not have jurisdiction on the underlying BIPA issue. This leaves the second option. Petitioners claim, "[v]enue is proper in this District because . . . the arbitrations were venued to take place in this District." (Pet. ¶26.) However, the numerous exhibits to this action do not show as much. Rather than designating a place of arbitration, Samsung's Arbitration Agreement simply incorporates the AAA Rules. Rule R-11 provides that if the parties do not agree to the locale for a hearing, the appointed arbitrator will determine the venue after considering the positions of the parties, dispute, and AAA due process protocol. The AAA did not appoint an arbitrator, nor determine venue of any arbitration before closing its proceedings.

For these reasons, venue does not lie in this District pursuant to the FAA.

### 2. General Venue Statute, 28 U.S.C. § 1391

Petitioners alternatively seek to establish venue under the general venue statute, 28 U.S.C. § 1391, through § 1391(b)(2), which affords venue to "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Petitioners claim that venue lies here "because many of the Petitioners live in this District" (Pet. ¶26), and the claimants' use of their Samsung Devices in this district evidence a "substantial

- 14 -

part of the events giving rise" to Petitioners' claims occurring here. (Opp. MTD, Dkt. No. 36 at 29). Petitioners assert via exhibits that its 49,985 claimants are Illinois residents, approximately 35,651 of whom reside within the Northern District of Illinois. (*See* Pet. Ex. A, Dkt. No. 1-1; Pet. Opp. MTD Ex. D, Dkt. No. 36-4.) Samsung argues that because Petitioners' Exhibit D does not provide the names associated with these claims, Petitioners failed to identify the claimants as necessary for Samsung to form a defense. Petitioners retort that Samsung has these names, which are listed in the otherwise identical spreadsheet provided to the AAA. Petitioners suggest that they omitted the names in the case filing to preserve these claimants' privacy during the litigation. (*See* Opp. MTD, Dkt. No. 36 at 22 n. 6.) Petitioners argue that when coupled with the identifying information Samsung obtains from its users upon users' registration or account creation, these cross-references offer sufficient evidence for Samsung to identify each claimant during arbitration. The Court agrees.

Samsung next argues, "[t]o the extent that Petitioners seek to use their place of residence as a proxy . . . to satisfy the 'substantial events' provisions of Section 1391 in this District, Petitioners fail to provide sufficient evidence of each Petitioner's residence" (MTD at 15), and "[Petitioners'] speculation that all Petitioners may have used their devices while residing in and

- 15 -

traveling throughout this District is mere guesswork" (MTD Reply, Dkt. No. 38 at 22 (citations omitted)). It is true that a plaintiff's residence alone fails to satisfy § 1391's requirements. *Ford-Reyes v. Progressive Funeral Home,* 418 F.Supp. 3d 286, 290 (N.D. Ill. 2019). Instead, this Court looks to events that constitute part of the historical predicate of Plaintiffs' suit. *See Johnson v. Creighton Univ.,* 114 F.Supp. 3d 688, 696 (N.D. Ill. 2015).

The historical predicate to Petitioner's petition for compelled arbitration includes the formation of a contract to arbitrate (upon the Petitioner's assent to Samsung's Arbitration Agreement when, *e.g.,* purchasing or activating their Samsung Device), the alleged violations that occurred during Petitioners' foreseeable use of the device, and Samsung's actions rejecting arbitration. Petitioners adequately showed that the formation of the contract and the alleged violations took place, foreseeably, in the Northern District of Illinois for most Petitioners. The Court takes judicial notice of today's norm that smartphone users use their smartphone where they live and travel and likely purchased it nearby. Drawing all reasonable inferences from Petition Exhibit D, its cross-references, and Petitioners' assertions that each claimant used their Samsung Device within the Northern District of Illinois (usage which motivated their individual arbitration claims, and by extension, the petition in this court), the approximately 35,651 Petitioners

- 16 -

residing in this district have established that this is the proper venue for their motion to compel arbitration.

Not so, however, for the 14,335 Petitioners who admittedly do not reside in this district. Petitioners fail to explain the connection between the Northern District of Illinois and the Illinois residents living outside it. Illinois is a sizeable state. For example, ten claimants list as their residence Dongola, Illinois, a town located nearly 350 miles from this Courthouse. Although Petitioners correctly point out that a "substantial part" does not require a majority and that "substantial part[s]" of the same claim can occur in multiple districts, *see Receivership Mgmt. v. AEU Holdings,* 2019 WL 4189466, at *14 (N.D. Ill. 2019), the Court recognizes no presumption that every Illinois resident conducts a substantial part – or any part – of their life in Chicagoland or this district more broadly. Thus, for those 14,335 individuals, even after drawing all reasonable inferences, Petitioners have failed to allege sufficiently that a "substantial part of the events" giving rise to the present dispute occurred in this district. § 1391(b)(2).

Petitioners argue that because Samsung admitted that this District was the proper venue in the BIPA class-action suit against Samsung in the Northern District, *G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17, Samsung cannot now argue to the contrary in this suit. *See* Opp. MTD at 31. But, as

- 17 -

Petitioners appear to acknowledge, the claimants in this action are not necessarily party to the other one. *See* Reply MTC at 14 ("Samsung cannot simply refuse to pay its fees in hopes of ushering Petitioners into the *G.T.* class action," implying the Plaintiffs in these two cases are not identical). Petitioners offered no authority to support their claim that a finding of proper venue in one case transfers. Nor will they find validation from this Court today. Therefore, for the approximately 14,355 non-residents of this District, Petitioners have failed to allege sufficient facts to determine that this is the proper venue for their suits.

Thus, this Court infers that for the 35,651 claimants who alleged residence within the Northern District of Illinois, a substantial part of the events giving rise to this dispute occurred in this District. Therefore, Petitioners have sufficiently established that venue lies in this district for their breach of arbitration agreement claims. The petitions as to these remaining non-resident claimants are dismissed without prejudice for improper venue.

### C.  Compel Arbitration

Before the Court considers whether to compel arbitration, the Court will explain why it can. After determining that the case warrants such an order, the Court considers whether to explicitly order the payment of fees.

Samsung declares that the Court may not compel arbitration (including its fees) because Petitioners are now entitled to proceed in Court from where Petitioners might attain an adequate remedy at law. The authorities Samsung cites, address different forms of relief than that sought here. *See United States v. Rural Elec. Convenience Co-op. Co.,* 922 F.2d 429, 432 (7th Cir. 1991) (preliminary injunction); *Unilectric, Inc. v. Holwin Corp.,* 243 F.2d 393, 396 (7th Cir. 1957) (royalties); *King Mechanism & Eng'g Co. v. W. Wheeled Scraper Co.,* 59 F.2d 546, 548 (7th Cir. 1932) (patent infringement). Because the FAA empowers this Court to compel arbitration, Samsung's arguments against specific performance remain inconsistent with the statute.

Samsung alternatively argues that this action should not continue in court. Because the AAA applied its established rules to this matter, Samsung's theory goes, the Court lacks authority to "second-guess that determination and order [the AAA] to re-open the proceedings." (Reply MTD at 8-9.) Not quite. *See McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020) (granting motion to compel arbitration after the AAA had closed the cases upon failure of parties to pay the required fees). Samsung's Arbitration Agreement requires dispute resolution "exclusively through final and binding arbitration, and not by a court or jury." (*See* Pet. Ex. E,

Dkt. No. 1-6 at 3.) But no "final and binding" arbitration has been had here.

The cases upon which Samsung relies are distinguishable. For instance, the Fifth Circuit in *Noble Cap Fund Mgmt., L.L.C. v. US Cap. Glob. Inv. Mgmt., L.L.C.,* 31 F.4th 333, 336 (5th Cir. 2022), affirmed a district court's denial of a motion to compel arbitration where the claim had been terminated for failure to pay arbitral fees, because "[e]ven though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS [the ADR provider] fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.* In *Noble,* both parties had met the association's prerequisites to proceed with the arbitration, and the assigned arbitrator had already entered an Emergency Arbitrator's Award after a hearing on the merits. *Id.* at 335. It was only after the arbitration's sustaining fees went unpaid that the arbitration "officially closed." *Id.* Here, the AAA proceedings did not get that far. The cases were administratively closed on November 30, 2022, having not moved beyond the AAA's determination the claims could proceed. An arbitrator was never assigned to their dispute. Thus, our granting the motion to compel arbitration does not "second-guess" any merits determination. It simply returns the matter to the AAA so it may issue one.

- 20 -

The Court will now assess the Motion to Compel on the merits.

### *1. Valid Agreement to Arbitrate*

The Court may only compel arbitration when the written arbitration agreement is enforceable. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4); *see GE France,* 140 S.Ct. at 1645 (citing Convention Article II(3)); *see also* Convention Article II(1).

Petitioners claim to be Samsung device users who agreed to Samsung's drafted Arbitration Agreement. To contend Plaintiff has not met their burden to show a valid agreement to arbitrate, Samsung cites cases where the moving party failed to show the existence of *an* agreement. That is not the issue here. It remains undisputed that the arbitration agreement is written and enforceable against the parties that accede to it. Samsung's strongest argument here is that Petitioners failed to show that *each* one entered into this agreement.

In *Bigger v. Facebook, Inc.,* 947 F.3d 1043, 1051 (7th Cir. 2020), the Seventh Circuit reviewed this Court's grant of class certification when Facebook opposed the issuance of notice on the grounds that its employees entered arbitration agreements that prohibited class actions. *Id.* To support this argument, Facebook provided a template of the agreement and estimates of how many employees signed such forms. *Id.* It did not supply actual executed documents. *Id.* The Seventh Circuit directed this Court to permit the

- 21 -

RSA22

parties to submit additional evidence on the agreements' existence and validity. *Id.* at 1050.

Here, the Court has more information. There is a discrete list of named Petitioners. The AAA has already reviewed Petitioners' arbitration agreements and determined that they met the filing requirements. The terms do not require signature for execution (see Pet. Opp. MTD, Dkt. No. 36 at 9); elsewhere, Samsung acknowledged that each Samsung device holder accepted Samsung's terms and conditions containing the arbitration clause when using their Samsung device. *See G.T. v. Samsung Electronics America, Inc.,* No. 1:21-cv-04976, ECF No. 17 at 10. As discussed *supra,* the Court finds Petitioners have made a sufficient showing that they are customers. In light of the record, the Court finds a valid agreement to arbitrate between Samsung and the Petitioners who are customers.

To find that each Petitioner residing in this District is a Samsung customer, the Court must accept the word of over 30,000 individuals, some of whom may have been recruited to this action by obscure social media ads. (*See* Dkt. Nos. 27-7—27-10.) Samsung has not identified a genuine issue of fact as to any individual Petitioner. *Kass,* 2023 WL 4782930, at *5. Samsung has a customer list, against which they could compare the list of Petitioners. Samsung raised concerns about specific names to the AAA, which in turn asked Petitioners to correct their list. Petitioners did so,

and the record does not show that Samsung has raised specific concerns since. Samsung's current rejection that all Petitioners are customers is merely "denying facts," and this is not enough. *Tinder,* 305 F.3d at 735 ("Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial."); *see* Fed. R. Civ. P. 56(e).

Moreover, the inquiry for purposes of providing notice involves different interests than those of whether to compel arbitration. In *Bigger,* the Court explained the inconveniences associated with providing notice of a class to many people who could eventually be found ineligible due to an arbitration agreement. 947 F.3d at 1050-51. Here, the claimants, as parties to the case, are already aware of it.

Therefore, the Court finds a valid agreement to arbitrate.

### 2. Dispute within the Scope of the Arbitration Agreement

Once the court finds a valid agreement to arbitrate, the party opposing arbitration has the burden to show that the dispute falls outside the scope of the agreement. *Hoenig v. Karl Knauz Motors.,* 983 F.Supp. 2d 952, 962 (N.D. Ill. 2013) (citing *Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-27 (1987)). Still, when parties clearly and unmistakably delegate threshold arbitrability

- 23 -

questions to an arbitrator, a court "possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S.Ct. 524, 530 (2019). The Court assesses the parties' arbitration agreement under Illinois law to determine whether there exists an enforceable delegation clause. *See Gupta v. Morgan Stanley Smith Barney, LLC,* 934 F. 3d 705, 711 (7th Cir. 2019).

Petitioners argue, and Samsung does not meaningfully dispute, that through text such as, "The arbitrator shall decide all issues of interpretation and application of this Agreement" (Pet. Exs. B-E), Samsung's arbitration agreement delegates questions regarding its scope to an arbitrator. The Court agrees with this interpretation of the plain language. *See Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 66, 72 (2010) (holding that language, "Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator). Additionally, many courts have held that reference to or incorporation of AAA rules – which the agreement here references – constitutes clear and unmistakable evidence to delegate arbitrability to an arbitrator. *See Tel. Invs. USA, Inc. v. Lumen Techs., Inc.,* 2022 WL 2828751, at *4 (N.D. Ill. July 20, 2022) (collecting cases).

Samsung argues that petitioning on behalf of nearly 50,000 petitioners violates the Arbitration Agreement's collective action waiver. Whether the mass filings are indeed appropriate under the arbitration agreement in light of its class action waiver provision is clearly a question of scope. Thus, because the parties both agreed to delegate enforceability questions to the arbitrator and incorporated the AAA rules in the arbitration agreement, the question of whether Petitioners' mass filings violate the Arbitration Agreement remains for an arbitrator, not this Court. *See Henry Schein,* 139 S.Ct. at 530; *see also McClenon,* 473 F.Supp. 3d at 811–12.

The question of arbitrability of Petitioners' underlying BIPA claims reaches the same result. Samsung insinuates that Petitioner's claims are frivolous and for that reason Samsung should be entitled to evade arbitration. The U.S. Supreme Court said otherwise: "[The FAA] contains no 'wholly groundless' exception, and we may not engraft our own exceptions onto the statutory text." *Henry Schein,* 139 S. Ct. at 530.

Therefore, the Court resolves this element in favor of arbitration.

### 3.  *Refusal to Arbitrate*

The Court now turns to whether Samsung's refusal to pay the AAA's fees for each individual claimant constitutes a breach of its

own arbitration agreement. Determining that it does, the Court then considers whether its order to compel arbitration should specify fee payment.

Under the FAA, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement," in the event of "failure, neglect, or refusal" of the non-moving party to arbitrate. 9 U.S.C.A. § 4.

Samsung sets forth interweaving arguments: Samsung's refusal to pay fees was not a breach; Petitioners waived their right to arbitrate thus relieving Samsung of responsibility; and the AAA enjoys sole authority to determine a resolution regarding fees. Petitioners argue that Samsung's failure to pay constitutes a breach that this Court must remedy by ordering Samsung to take effective action to arbitrate.

Samsung asserts that it "declined to pay the arbitral fees but stood ready to arbitrate." (Reply MTD at 4.) That is a contradictory position. Arbitration was conditioned on the payment of the AAA's assessed fees, per Samsung's own Arbitration Agreement. The AAA's Consumer Rules establish that "the AAA may *require* the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration," (Rule R-6 (emphasis added)), and the AAA did this. (*See* ex. 27-14 ("Samsung is

- 26 -

now *responsible for* payment of the initial administrative filing fees totaling $4,125,000.00") (emphasis added).)

Samsung retorts that because the AAA rules anticipated non-payment, *see e.g.,* Supplementary Rule 10(d), Samsung's actions were acceptable. But the fact that Petitioners had the option to pay Samsung's fees does not negate the reality that those fees were deemed Samsung's responsibility by the AAA. A rule's mere anticipation of violations thereof does not render violations permissible. If so, this justice system in which we operate would make a lot less sense.

Samsung goes on to argue that Petitioners had a choice "between (i) advancing the filing fees and seeking to recoup them in the arbitration and (ii) permitting the arbitral cases to be closed and proceeding in court," and because they failed to pay Samsung's fees, Petitioners' waived their right to compel arbitration. (Reply MTD, Dkt. No. 38 at 15.) Samsung thus concludes that Petitioners "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1714 (2022).

The Court disagrees. In *Morgan,* the defendants litigated in court for nearly eight months after the suit's filing before moving to stay the litigation and compel arbitration. *Id.* at 1711. Here, Petitioners immediately moved to compel arbitration when Samsung

- 27 -

expressed its refusal to pay the fees. This is after Petitioners had sent Samsung notices of intent to arbitrate, filed complaints in the forum agreed upon by the Arbitration Agreement, and satisfied their AAA-dictated financial responsibilities by paying their own filing fees.

Samsung's reference to *Cota v. Art Brand Studios, LLC,* 21-cv-1519 (LJL), 2021 U.S. Dist. LEXIS 199325, at *46 (S.D.N.Y. Oct. 15, 2021), also misses the mark. In *Cota,* the district court denied the defendant art studio company's motion to compel arbitration after the defendants refused to pay AAA arbitration fees for the plaintiff artists. *Id.* But in that case, both parties consistently paid the AAA's initial fees to allow the claims to be heard by the arbitrator panel. *Id.* at 14. Only after receiving significantly larger invoices for subsequent final fees, the plaintiffs notified the AAA they were unable to pay due to financial hardship, then the AAA offered to the defendants the option to cover those costs to keep the arbitration alive. *Id.* at 27. But here, Samsung declined to pay its share of the arbitration fees, not because of financial hardship, but because of its own independent determination of deficiencies within Petitioners' claims, even after Petitioners corrected them to AAA's satisfaction. Samsung also declined to pay the fees from the beginning, unlike the party in *Cota* that initially paid the fees in a showing of good faith.

- 28 -

Given the AAA's own determination that the claimants met the AAA's administrative filing requirements and Petitioners' own compliance with its filing and financial requirements based on the AAA's rules and procedures, Petitioners' refusal to meet Samsung's financial obligations does not constitute a waiver to compel arbitration. Plaintiff's conduct has consistently aligned with their right to arbitrate. At least, Defendant has not shown otherwise.

### 4. Fees

Finally, the Court turns to whether to compel Samsung to pay fees. Other courts have observed "no totally satisfactory solution" to a party's nonpayment of its share of arbitration fees. *Lifescan,* 363 F.3d at 1013.

Samsung argues that because the AAA's rules include provisions regarding the payment of fees, and the parties elected to grant the AAA discretionary authority regarding the implementation of those rules, the AAA enjoys sole authority to determine a resolution to Samsung's shirked fee responsibilities. In other words, the Court should treat this like it treated the class action waiver.

In *Howsam v. Dean Witter Reynolds, Inc.,* the Supreme Court distinguished between procedural and substantive questions of arbitrability. 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.") The Court

- 29 -

concluded that the ADR tribunal's time-bar rule was akin to a "waiver, delay, or a like defense" and was thus procedural, for an arbitrator. *Id.* at 85 (cleaned up). The *Howsam* Court looked to comments to the Revised Uniform Arbitration Act ("RUAA"), modeled to incorporate FAA jurisprudence, providing, " 'in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as *time limits,* notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.' " *Id.,* (quoting RUAA § 6, comment 2, 7 U.L.A., at 13 (emphasis in *Howsam*). Here, the parties disagree that they are bound by the Arbitration Agreement to pay the filing fee, therefore, it is for this Court to decide "whether the parties are bound" to do so. *Id.* at 84.

Indeed, the filing fee is more substantial than a time limit. The AAA, commonsensically, requires fees to perform its services. The AAA can validly refuse to conduct arbitrations without payment, as it did here. To expect it to perform its arbitral services regarding payment without payment places undue burden on a non-breaching party, either the AAA or the claimants, to front the costs. If this Court merely orders arbitration but not the payment of fees, the AAA might seek payment from Petitioners with the expectation that Petitioners will invoice Samsung for this payment. (See Rule R-

- 30 -

2 (a)(3), Dkt. No. 1-7.) For what it is worth, the Court understands that Samsung – who has argued neither inability to pay nor unconscionability – can also recoup its fees if Petitioners' claims are as "harass[ing]" or "frivolous" as it contends (see Rule R-44 (c)), but the Court has not been convinced that Petitioners are able to lend over $4,000,000 while the dispute pends.

The Court also remains unpersuaded by courts that have compelled arbitration yet declined to extend the ruling to payment of arbitration fees in distinguishable cases. In *Croasmun v. Adtalem Glob. Educ., Inc.,* Judge Lefkow declined to compel arbitral fees upon finding "no indication that JAMS [the arbitration tribunal] will not resolve the fees issue if asked." 2020 WL 7027726, at *4 (N.D. Ill. Nov. 30, 2020). However, the court invited the parties to "return to this court for resolution" if JAMS declined to arbitrate without the payment of fees, explaining that the petitioners "should not face checkmate." *Id.*

A few months earlier, in *McClenon v. Postmates Inc.,* 473 F.Supp. 3d 803, 812 (N.D. Ill. 2020), Judge Rowland granted the petitioners' motion to compel after the AAA closed the claims for Postmates' failure to pay fees. Yet, she stopped short of ordering Postmates to pay all fees, citing an on-going case against the same defendant in California, *Adams v. Postmates, Inc.,* 414 F.Supp. 3d 1246, 1255 (N.D.

- 31 -

RSA32

Cal. 2019), and *Dealer Computer Servs., Inc. v. Old Colony Motors, Inc.,* 588 F.3d 884, 887 (5th Cir. 2009).

In *Dealer Computer,* 588 F.3d at 887, cited approvingly by *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.,* 623 F.3d 476, 482 (7th Cir. 2010), the Fifth Circuit reversed a district court's order of payment of arbitral fees where the respondent appeared unable to pay them, while the petitioner had the means. *Dealer Computer Servs.,* 588 F.3d at 888 n.3. The court explained,

> A difficult situation might be presented if [the respondent] could afford to put up its part of the arbitral fee attributable to its counterclaim, and [the petitioner] was not financially able to put up the entire thus enhanced fee (although being able to put up what the fee would have been without such enhancement), and the arbitral panel refused [the petitioner's] request to proceed on its claims . . . However, we are not faced with any such case.

*Id.* This Court faces such a case.

In any event, when the Fifth Circuit in *Dealer Computer* observed, "payment of fees seems to be a procedural condition precedent set by the AAA," it looked to AAA Rules R-52 and R-54, which fall under the "General Procedural Rules" chapter of the Consumer Rules. *Id.* at 887. The Rules, since updated, still list Rules R-52 and R-54 within the "General Procedural Rules" chapter. Rule R-52 now is titled, "Serving of Notice and AAA and Arbitrator Communications," and Rule R-54 is "Remedies for Nonpayment." (*See* AAA Rules, Dkt. No. 1-7.) The rules for payment of fees themselves are contained in other chapters that lack the word "procedure."

- 32 -

RSA33

(*Compare* "Cost of Arbitration" and "AAA Administrative Fees" *with* "Hearing Procedures" and "Procedures for the Resolution of Disputes through Document Submission," AAA Rules, Dkt. No. 1-7.)

Nevertheless, the determination of "procedural" is "difficult." *See Romspen Mortg. Ltd. P'ship v. BGC Holdings LLC – Arlington Place One,* 20 F.4th 359, 369 (7th Cir. 2021). Federal courts adjudicating claims through pendant jurisdiction classify as substantive rather than procedural issues that are bound up in the rights of the forum. *See USA Gymnastics v. Liberty Ins. Underwriters, Inc.,* 46 F.4th 571, 580 (7th Cir. 2022); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) (and its progeny). For example, attorney's fees are typically substantive. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 259 (1975). On the other hand, federal procedural rules obliging an answer to a complaint dictate that a party who "defaults" on their defense faces a detriment; but allowing "default" by unpaid fees here might well benefit Samsung. *See* Alexi Pfeffer-Gillett, *Unfair by Default: Arbitration's Reverse Default Judgment Problem*, 171 U. Pa. L. Rev. 459, 488 (2023). If anything, allowing that to stand would be making special procedural rules for arbitration – which the courts cannot do. *Morgan v. Sundance, Inc.,* 142 S.Ct. 1708, 1713 (2022).

Whether from the perspective of the judiciary or through the lens of the AAA, this Court does not see filing fees as procedural

in this case. The fees are bound up in the right to arbitrate that the ADR tribunal governs. Unlike the time limit rule in *Howsman* that delineates when parties can arbitrate or the collective action provision that might instruct how, the filing fee rule affects whether the parties can exercise their right to arbitrate at all. Money is the means of dispute resolution, and the way to start this process. Fees are not something the Court can "jigger" to promote or disfavor arbitration. *Johnson v. Mitek Sys., Inc.,* 55 F.4th 1122, 1124 (7th Cir. 2022). If it could, it might suggest a more modest figure.

Samsung was surely thinking about money when it wrote its Terms & Conditions. The company may not have expected so many would seek arbitration against it, but neither should it be allowed to "blanch[] at the cost of the filing fees it agreed to pay in the arbitration clause." *Abernathy v. Doordash, Inc.,* 438 F.Supp. 3d 1062, 1068 (N.D. Cal. 2020) (describing the company's refusal to pay fees associated with its own-drafted arbitration clause as "hypocrisy" and "irony upon irony").

Alas, Samsung was hoist with its own petard. *See Nat'l Ass'n of Regul. Util. Comm'rs v. U.S. Dep't of Energy,* 736 F.3d 517, 520 (D.C. Cir. 2013); William Shakespeare, *Hamlet,* Act III, Scene 4. As a New York court recently stated in a mass arbitration case involving Uber, "While Uber is trying to avoid paying the arbitration fees associated

- 34 -

with 31,000 nearly identical cases, it made the business decision to preclude class, collective, or representative claims in its arbitration agreement with its consumers, and AAA's fees are directly attributable to that decision." *Uber Tech., Inc. v. American Arbitration Assn., Inc.,* 204 A.D.3d 506, 510 (N.Y. App. Div. 2022). Samsung made the same business decision here, and for better or for worse, the time calls for Samsung to pay for it.

### IV.   CONCLUSION

For the reasons stated herein, the Court grants in part Samsung's Motion to Dismiss (Dkt. No. 26) by dismissing the action as to the 14,335 Petitioners who have failed to allege proper venue in the Northern District of Illinois. The Court grants Petitioner's Motion to Compel Arbitration (Dkt. No. 2) by ordering the parties to arbitrate, specifically ordering Samsung to pay its fee so they can.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 9/12/2023

- 35 -