No. 23-2842

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

PAULA WALLRICH, ET AL.,

*Petitioners-Appellees,*

v.

SAMSUNG ELECTRONICS AMERICA, INC., ET AL.,

*Respondents-Appellants.*

On Appeal from the U.S. District Court for the Northern District of Illinois, No. 1:22-cv-5506 (Hon. Harry D. Leinenweber)

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, THE CONSUMER TECHNOLOGY ASSOCIATION, THE NATIONAL RETAIL FEDERATION, THE RESTAURANT LAW CENTER, THE AMERICAN BANKERS ASSOCIATION, AND CTIA—THE WIRELESS ASSOCIATION AS *AMICI CURIAE* IN SUPPORT OF RESPONDENTS-APPELLANTS AND REVERSAL

Jennifer B. Dickey
Jonathan Urick
U.S. CHAMBER LITIGATION
  CENTER
1615 H Street, N.W.
Washington, DC 20062

*Counsel for* Amicus Curiae *The Chamber of Commerce of the United States of America*

Andrew J. Pincus
Archis A. Parasharami
Kevin S. Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

*Counsel for* Amici Curiae

[additional counsel on signature page]

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Chamber of Commerce of the United States of America, Consumer Technology Association, National Retail

    Federation, Restaurant Law Center, American Bankers Association, and CTIA - The Wireless Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Andrew J. Pincus    Date: 11/21/2023

Attorney's Printed Name: Andrew J. Pincus

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✔  **No** ☐

Address: 1999 K Street, N.W.

    Washington, DC 20006

Phone Number: 202-263-3000    Fax Number: 202-263-3300

E-Mail Address: apincus@mayerbrown.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Chamber of Commerce of the United States of America, Consumer Technology Association, National Retail

Federation, Restaurant Law Center, American Bankers Association, and CTIA - The Wireless Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Archis A. Parasharami    Date: 11/21/2023

Attorney's Printed Name: Archis A. Parasharami

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: 1999 K Street, N.W.

Washington, DC 20006

Phone Number: 202-263-3000    Fax Number: 202-263-3300

E-Mail Address: aparasharami@mayerbrown.com

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Chamber of Commerce of the United States of America, Consumer Technology Association, National Retail

Federation, Restaurant Law Center, American Bankers Association, and CTIA - The Wireless Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kevin S. Ranlett    Date: 11/21/2023

Attorney's Printed Name: Kevin S. Ranlett

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: 1999 K Street, N.W.

Washington, DC 20006

Phone Number: 202-263-3000    Fax Number: 202-263-3300

E-Mail Address: kranlett@mayerbrown.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Chamber of Commerce of the United States of America, Consumer Technology Association, National Retail

Federation, Restaurant Law Center, American Bankers Association, and CTIA - The Wireless Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Christina Luk    Date: 11/21/2023

Attorney's Printed Name: Christina Luk

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: 1999 K Street, N.W.

Washington, DC 20006

Phone Number: 202-263-3000    Fax Number: 202-263-3300

E-Mail Address: cluk@mayerbrown.com

rev. 12/19 AK

Save As       Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

  [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

 The Chamber of Commerce of the United States of America, Consumer Technology Association, National Retail

 Federation, Restaurant Law Center, American Bankers Association, and CTIA - The Wireless Association

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

 Mayer Brown LLP

(3) If the party, amicus or intervenor is a corporation:

 i) Identify all its parent corporations, if any; and

  None

 ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 N/A

Attorney's Signature: /s/ Jennifer Weinberg Date: 11/21/2023

Attorney's Printed Name: Jennifer Weinberg

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes [ ] No [✔]

Address: 1999 K Street, N.W.

 Washington, DC 20006

Phone Number: 202-263-3000  Fax Number: 202-263-3300

E-Mail Address: JLWeinberg@mayerbrown.com

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Chamber of Commerce of the United States of America

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Jennifer B. Dickey    Date: 11/21/2023

Attorney's Printed Name: Jennifer B. Dickey

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ☑

Address: U.S. Chamber Litigation Center

    1615 H Street, N.W., Washington, DC 20062

Phone Number: (202) 463-5337    Fax Number:

E-Mail Address: JDickey@uschamber.com

rev. 12/19 AK

[ Save As ]   [ Clear Form ]

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Chamber of Commerce of the United States of America

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Jonathan Urick    Date: 11/21/2023

Attorney's Printed Name: Jonathan Urick

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✔]

Address: U.S. Chamber Litigation Center

1615 H Street, N.W., Washington, DC 20062

Phone Number: (202) 463-5337    Fax Number:

E-Mail Address: JUrick@USChamber.com

rev. 12/19 AK

Save As          Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    National Retail Federation

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Stephanie Martz          Date: 11/21/2023

Attorney's Printed Name: Stephanie Martz

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ✔

Address: 1101 New York Avenue, N.W. Suite 1200

    Washington, DC 20005

Phone Number: 202-626-8106          Fax Number:

E-Mail Address: MartzS@nrf.com

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Restaurant Law Center

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Angelo I. Amador      Date: 11/21/2023

Attorney's Printed Name: Angelo I. Amador

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ✔

Address: 2055 L Street, N.W.

    Washington, DC 20036

Phone Number: 202-331-5913      Fax Number:

E-Mail Address: AAmador@restaurant.org

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Bankers Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

None

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Thomas Pinder    Date: 11/21/2023

Attorney's Printed Name: Thomas Pinder

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: 1333 New Hampshire Avenue, N.W.

Washington, DC 20036

Phone Number: (202)-663-5028    Fax Number:

E-Mail Address: tpinder@aba.com

rev. 12/19 AK

Save As        Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Paula Wallrich, et al v. Samsung Electronics America, Inc. et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    CTIA - The Wireless Association

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Mayer Brown LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        None

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Thomas C. Power      Date: 11/21/2023

Attorney's Printed Name: Thomas C. Power

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: 1400 16th Street, N.W., Suite 600

    Washington, DC 20005

Phone Number: (202) 736-3669      Fax Number:

E-Mail Address: tpower@cita.org

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. xiv

INTEREST OF THE *AMICI CURIAE* ...................................................... 1

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 4

ARGUMENT ........................................................................................ 7

I.    The District Court Improperly Assumed The Existence Of Arbitration Agreements Instead Of Requiring Petitioners To Satisfy Their Burden To Prove They Agreed To Arbitrate. .......... 7

    A.    Petitions To Compel Arbitration Are Assessed Initially Under The Summary-Judgment Standard. .......................... 9

    B.    The District Court Erred In Ruling That Petitioners Had Met Their Prima Facie Burden To Prove They Each Have An Arbitration Agreement With Samsung. ....... 11

        1.    The list of claimants' names and home cities. ............ 12

        2.    The AAA's administrative determination that its filing requirements were satisfied. ............................. 14

        3.    "[T]he word of over 30,000 individuals." ..................... 16

        4.    Switching the burden to Samsung. ........................... 19

    C.    Even If Petitioners Had Met Their Initial Burden, Samsung Raised A Dispute Of Material Fact That Required A Trial On Contract-Formation Issues. ............... 20

II.    The District Court's Decision Facilitates The Abusive Use Of Mass Arbitrations To Obtain Unjustified Settlements. ............... 22

    A.    Consumers, Workers, And Businesses Benefit From Individual Arbitration. .......................................... 23

    B.    Mass Arbitration Has Emerged As A Vehicle For Abusive Gamesmanship. ........................................ 25

        1.    Leveraging fee-payment provisions to coerce settlements. ....................................................... 26

# TABLE OF CONTENTS
(continued)

**Page**

2.    Abusive claimant-recruitment practices. ................... 31

CONCLUSION ....................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abernathy v. DoorDash, Inc.,*
    2019 WL 13402416 (N.D. Cal. Nov. 26, 2019) .............................. 17, 18

*Abernathy v. DoorDash, Inc.,*
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................ 18, 33

*Air-Con, Inc. v. Daikin Applied Latin Am., LLC,*
    21 F.4th 168 (1st Cir. 2021) ........................................................... 9, 19

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................. 10

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ............................................................................. 36

*Bigger v. Facebook, Inc.,*
    947 F.3d 1043 (7th Cir. 2020) ................................................ 13, 14, 22

*BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo,*
    853 F.3d1165 (10th Cir. 2017) ........................................................... 10

*Campania Mgmt. Co. v. Rooks, Pitts & Poust,*
    290 F.3d 843 (7th Cir. 2002) .............................................................. 16

*In re CenturyLink Sales Pracs. & Sec. Litig.,*
    2020 WL 3513547 (D. Minn. June 29, 2020) ..................................... 33

*Deputy v. Lehman Bros., Inc.,*
    345 F.3d 494 (7th Cir. 2003) ........................................................ 10, 22

*Dillon v. BMO Harris Bank, N.A.,*
    173 F. Supp. 3d 258 (M.D.N.C. 2016) ............................................... 18

*Goplin v. WeConnect, Inc.,*
    893 F.3d 488 (7th Cir. 2018) .............................................................. 11

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
    561 U.S. 287 (2010) ........................................................................ 15, 16

*In re Green Jacobson, P.C.*,
    911 F.3d 924 (8th Cir. 2018) ................................................................ 35

*Hesse v. Godiva Chocolatier, Inc.*,
    No. 1:19-cv-972 (S.D.N.Y. Dec. 16, 2022) ............................................ 35

*Hezi v. Celsius Holdings, Inc.*,
    No. 1:21-cv-9892 (S.D.N.Y. Nov. 22, 2022) ..................................... 34, 35

*Hines v. Overstock.com, Inc.*,
    380 F. App'x 22 (2d Cir. 2010) ............................................................ 10

*Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*,
    778 F.3d 593 (7th Cir. 2015) ..........................................................19, 20

*Howard v. Ferrellgas Partners, L.P.*,
    748 F.3d 975 (10th Cir. 2014) ......................................................... 10, 22

*In re Intuit Free File Litig.*,
    No. 3:19-cv-2546 (N.D. Cal. Dec. 7, 2020) ............................................ 33

*Janiga v. Questar Cap. Corp.*,
    615 F.3d 735 (7th Cir. 2010) ................................................................ 15

*Johnson v. Hix Wrecker Serv., Inc.*,
    651 F.3d 658 (7th Cir. 2014) ................................................................ 19

*Kass v. PayPal Inc.*,
    75 F.4th 693 (7th Cir. 2023) ........................................................ 7, 8, 22

*McGhee v. N. Am. Bancard, LLC*,
    755 F. App'x 718 (9th Cir. 2019) ......................................................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re NFL Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ........................................... 35

*Nisenbaum v. Milwaukee Cty.*,
    333 F.3d 804 (7th Cir. 2003) ............................................... 17

*Reichert v. Rapid Invs., Inc.*,
    56 F.4th 1220 (9th Cir. 2022) ............................................. 16

*Rowland v. Sandy Morris Fin. & Estate Planning Servs.,
LLC*,
    993 F.3d 253 (4th Cir. 2021) ............................................... 16

*Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*,
    256 F.3d 587 (7th Cir. 2001) ............................................... 15

*Spierer v. Rossman*,
    798 F.3d 502 (7th Cir. 2015) ......................................... 11, 21

*Tinder v. Pinkerton*,
    305 F.3d 728 (7th Cir. 2002) ........................................... 9, 10

*United States v. Fluker*,
    698 F.3d 988 (7th Cir. 2012) ......................................... 21, 22

*United States v. Stevens*,
    500 F.3d 625 (7th Cir. 2007) ......................................... 16, 17

*Zachman v. Hudson Valley Fed. Credit Union*,
    49 F.4th 95 (2d Cir. 2022) .............................................. 9, 10

**Statutes and Court Rules**

Federal Arbitration Act, 9 U.S.C. §§ 1-16 ...................................... *.passim*

    9 U.S.C. § 4 ................................................................ *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Fair Labor Standards Act .................................................................. 13

Fed. R. App. P. 29(a)(4)(E) ............................................................... 1

Fed. R. Evid. 802 ............................................................................. 13

Fed. R. Evid. 901 ............................................................................. 13

**Other Authorities**

AAA, *Consumer Arbitration Rules: Costs of Arbitration* (Aug. 1, 2023), https://bit.ly/40JCtqX ................................................... 26, 27

AAA, *Consumer Arbitration Rules*, https://bit.ly/3G9jtIU ............... 15, 27

AAA, *Mass Arbitration Supplementary Rules* (Aug. 1, 2023), https://bit.ly/3R7ZT6w ........................................................... 27

ABA Model R. of Prof. Conduct 1.4 ................................................ 32

ABA Model R. of Prof. Conduct 3.1 ................................................ 32

Christopher R. Drahozal & Samantha Zyontz, *An Empirical Study of AAA Consumer Arbitrations*, 25 Ohio St. J. on Disp. Resol. 843 (2010) .................................................... 24

Christopher R. Drahozal & Samantha Zyontz, *Creditor Claims in Arbitration and in Court*, 7 Hastings Bus. L.J. 77 (2011) ...................................................................... 24

Theodore Eisenberg et al., *Litigation Outcomes in State and Federal Courts: A Statistical Portrait*, 19 Seattle U. L. Rev. 433 (1996) .................................................................. 24

Ernst & Young, *Outcomes of Arbitration: An Empirical Study of Consumer Lending Cases* (2005) .................................. 24

10A Federal Practice & Procedure (Supp. 2023) .............................. 19

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Henry J. Friendly, *Federal Jurisdiction: A General View* (1973)......................................................................................... 30

J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283 (2022)..................................................................................... 31

Nam D. Pham & Mary Donovan, *Fairer, Faster, Better III: An Empirical Assessment of Consumer and Employment Arbitration* (Mar. 2022), https://bit.ly/3SK7QwA .............................. 23

Amanda Robert, *Amazon Drops Arbitration Requirement After Facing 75,000 Demands*, ABA J. (June 2, 2021), https://bit.ly/3URJuTj ......................................................... 28

U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration Shakedown: Coercing Unjustified Settlements* (Feb. 2023), https://bit.ly/3qTzu1q............................................ *passim*

Andrew Wallender, *Uber Settles 'Majority' of Arbitrations for at Least $146M*, Bloomberg Law (May 9, 2019), https://bit.ly/3z5E0LD........................................................ 28

Stephen J. Ware, *The Centrist Case for Enforcing Adhesive Arbitration Agreements*, 23 Harv. Negotiation L. Rev. 29, 85 (2017)................................................................... 25

Ross Weiner, *The Increasing Danger of Fraudulent Claims in Class Action Settlements*, New York L. J. (July 26, 2023), https://bit.ly/3SLkNto ........................................... 35

## INTEREST OF THE *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.

The Consumer Technology Association is North America's largest technology trade association. Its over 1,300 U.S. members are the world's leading innovators—from startups to global brands—helping support more than 18 million American jobs.

The National Retail Federation is the world's largest retail trade association, representing stores, wholesalers, chain restaurants, and internet retailers from more than 45 countries. Retail is the nation's largest private-sector employer, supporting one in four U.S. jobs—approximately 52 million workers.

---

[1]   No counsel for a party authored this brief in whole or in part, and no person, aside from the *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties consented to the filing of this brief.

1

The Restaurant Law Center is the only independent public policy organization that specifically represents the interests of the foodservice industry in the courts. This industry includes one million restaurants and other foodservice outlets employing nearly 16 million people; it is the nation's second largest private-sector employer.

The American Bankers Association is the principal national trade association of the financial services industry. It is the voice for the nation's $23.7 trillion banking industry, which is composed of small, regional, and large banks that together employ more than 2.1 million people.

CTIA—The Wireless Association represents the United States telecommunications industry and the companies throughout the mobile ecosystem that enable Americans to a 21st-century connected life. Its members include wireless carriers, device manufacturers and suppliers, as well as app producers and content creators. CTIA vigorously advocates at all levels of government for policies that foster continued wireless innovation and investment.

*Amici* regularly file briefs in cases, like this one, that raise issues of importance to the nation's business community. Many of their

members regularly rely on consumer and workplace arbitration agreements because resolving disputes through arbitration is fast, fair, inexpensive, and less adversarial than litigation in court.

But these benefits of arbitration are being placed at risk. The recent rise of abusive mass arbitrations subverts arbitration agreements by using them to extract blackmail settlements untethered to the claims' merits. The decision below both illustrates and amplifies these risks.

The district court glossed over the most important question in considering the petition to compel arbitration—whether each claimant seeking to compel arbitration entered into an arbitration agreement. By relieving petitioners of their well-settled obligation to prove the existence of arbitration agreements, the district court's approach facilitates the use of highly-questionable claims, and the associated arbitration fees, to coerce a settlement.

That abuse of the arbitration process undermines the purpose of the Federal Arbitration Act ("FAA")—promoting the use of arbitration. If permitted to persist, some companies will abandon arbitration, notwithstanding its benefits to consumers, workers, and companies, and other companies will face unjustified costs that will be passed along to

consumers through higher prices and to workers through lower wages. Accordingly, *amici* have a strong interest in this case and in reversal of the judgment below.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

To make arbitration attractive for consumers and workers, fairness rules adopted by major arbitration providers require businesses to pay nearly all of the costs of an arbitration. These subsidies are part of why arbitration is fair and effective in resolving disputes that are too small to litigate in court.

But some lawyers have cynically sought to leverage those subsidies to force companies to pay blackmail settlements, regardless of the merit of the underlying claims. These lawyers amass as many claimants as possible, usually through social-media advertisements boasting of large potential payouts. They then threaten to file a huge number of identical arbitration claims.

If those arbitrations are filed at once, the company will face an astronomical bill—due immediately—for tens of millions of dollars in arbitration fees. These fees are assessed on a per-case basis, due upon the filing of the arbitration demands, and nonrefundable. The lawyers'

strategy is to make it too expensive for a company to have even a chance to defend itself; the only choice is to settle—even if the underlying claim has no merit.

The engine that drives this abusive practice is the number of claimants. To inflate that number, some lawyers cut corners when recruiting claimants, by, for example, skipping due diligence into whether their clients are actually customers of the company—and thus whether the clients can invoke arbitration agreements in the first place. Some lawyers use misleading ads that can cause claimants to believe that they are simply participating in a class action rather than bringing their own claim as a party in arbitration. And some lawyers use engagement letters that purport to waive the client's right to be informed of and make decisions regarding settlement.

A recent report by the Chamber's Institute for Legal Reform explains the serious danger posed by these abusive tactics. *See* U.S. Chamber of Commerce Institute for Legal Reform, *Mass Arbitration*

*Shakedown: Coercing Unjustified Settlements* (Feb. 2023), https://bit.ly/3qTzu1q (*Mass Arbitration Shakedown*).[2]

The district court's order here, if allowed to stand, facilitates this abuse. Normally, if one party refuses to arbitrate, a federal court will require the party seeking to compel arbitration to prove the existence of an arbitration agreement. This Court has held that the proof submitted in support of the request to compel arbitration is assessed initially under the summary-judgment standard. If that evidence would allow a reasonable fact-finder to conclude that the parties agreed to arbitration, then the party resisting arbitration must show disputed issues of material fact. If a dispute exists, a trial is required.

The district court gave only lip service to that standard. It excused petitioners from proving that they each have an arbitration agreement with Samsung. Instead, it relied on a list of claimants prepared by petitioners' counsel. Even if counsel had authenticated the list (they didn't), a lawyer's list is not evidence that the claimants have arbitration agreements. And the court discounted Samsung's showing that there

---

[2] Some of the lawyers submitting this brief authored the Chamber report.

6

were serious problems with the list; according to Samsung, the claimants' initial list included individuals who were "deceased," had "fictitious personal information," and "submitted multiple demands under different names" (Dkt. 26 at 1)—meaning that at least some claimants likely weren't Samsung customers *at all*.

By relieving petitioners of their burden of proof, the district court's approach all but guarantees that fraudulent arbitrations will be initiated. That result undermines both the FAA's purpose of promoting arbitration and respect for the legal system as a whole. It also hurts consumers, because it discourages businesses from offering generous arbitration and pre-arbitration dispute-resolution programs, which make it possible for consumers to pursue claims that otherwise could not be brought in court as a practical matter because of the costs and burdens of litigating in that forum. The ruling below should be reversed.

## ARGUMENT

### I.   The District Court Improperly Assumed The Existence Of Arbitration Agreements Instead Of Requiring Petitioners To Satisfy Their Burden To Prove They Agreed To Arbitrate.

"Because arbitration agreements are contracts, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kass v. PayPal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (cleaned

7

up). The FAA makes this requirement explicit, stating that the court must be "satisfied that the making of the agreement . . . is not in issue" before "mak[ing] an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. Put simply, courts must determine—based on evidence— that an arbitration agreement was formed before compelling arbitration.

The rise of abusive mass arbitrations necessitates close attention to this requirement. Because the coercive pressure to settle results from the timing and amount of arbitration fees, which are assessed on a per-claimant basis, lawyers have a strong incentive to pursue a large quantity of claims without regard to their quality. As a result, the set of "claimants" often includes many individuals who never entered into an arbitration agreement—including some who weren't even customers of the target company. *See* pages 31-35, *infra*.

The court adjudicating a request to compel arbitration is the primary bulwark against the use of these wholly illegitimate claims to fuel abusive mass arbitrations designed to coerce settlements.

The district court here abdicated its responsibility to undertake this inquiry.

## A.     Petitions To Compel Arbitration Are Assessed Initially Under The Summary-Judgment Standard.

Section 4 of the FAA outlines the procedures that courts must follow to ensure that the threshold requirement for compelling arbitration—existence of a binding arbitration agreement—has been satisfied: "The court shall hear the parties, and upon being satisfied that the making of the agreement  . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. "If the making of the arbitration agreement . . . *be in issue*, the court *shall proceed summarily to the trial thereof*." *Id.* (emphasis added). And "[w]here such an issue is raised, the party alleged to be in default" can "demand a jury trial of such issue[.]" *Id.*

Although the "FAA does not expressly identify the evidentiary standard" for petitions and motions to compel arbitration, this Court, as well as other courts of appeals, has held that the "summary judgment" standard applies. *Tinder v. Pinkerton*, 305 F.3d 728, 735 (7th Cir. 2002); *see also*, *e.g.*, *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174 (1st Cir. 2021) (citing cases).

Under that standard, the "party seeking arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made."

*Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022). This requires submission of evidence sufficient to allow "reasonable jurors [to] find by a preponderance of the evidence" that the parties had entered into an arbitration agreement. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Put another way, "a party seeking to invoke FAA § 4 must make a prima facie initial showing that an agreement to arbitrate exist[s.]" *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010); *see also*, *e.g.*, *McGhee v. N. Am. Bancard, LLC*, 755 F. App'x 718, 720 (9th Cir. 2019); *BOSC, Inc. v. Bd. of Cty. Comm'rs of Cty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).

If that initial burden is satisfied, the burden then shifts to the party opposing arbitration to "identify a triable issue of fact concerning the existence of the agreement." *Tinder*, 305 F.3d at 735. Evidence sufficient to dispute a material fact puts "the making of the agreement . . . in issue," and the FAA directs that the court "shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 509-10 (7th Cir. 2003); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978-79 (10th Cir. 2014). At trial, the party invoking arbitration

"b[ears] the burden" to prove that the arbitration agreement exists. *Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018).

Here, the district court failed to follow these established procedures when it compelled arbitration.

## B. The District Court Erred In Ruling That Petitioners Had Met Their Prima Facie Burden To Prove They Each Have An Arbitration Agreement With Samsung.

Petitioners needed to show that, with respect to the existence of an arbitration agreement, no "material fact" was disputed and each petitioner was "entitled to judgment as a matter of law." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). They failed to do so; indeed, they failed to adduce any particularized evidence that each petitioner is a Samsung customer who had entered into an arbitration agreement with the company.

The district court specified four reasons why it believed petitioners had carried their burden:

(1) petitioners submitted "a discrete list of named Petitioners";

(2) the American Arbitration Association ("AAA") "determined that they met [its] filing requirements";

11

(3) the district court believed that it must "accept the word of over

    30,000 individuals"; and

(4) Samsung failed to contest every name on the list.

Dkt. 51 at 22. Each reason is plainly insufficient as a matter of law.

## 1. The list of claimants' names and home cities.

The first item referenced by the court below is the "discrete list of Petitioners"—by first and last name and home city (but not full street address)—that petitioners' counsel had submitted to the AAA and attached to the petition to compel arbitration. Dkt. 51 at 22.

But that list doesn't come close to admissible evidence proving that the listed individuals are actual Samsung customers who agreed to arbitrate. The petition describes it as a list of Samsung Galaxy "purchasers" (Pet. ¶ 28), but it is an unadorned spreadsheet of names and cities, without even the source of the underlying information. Neither the list nor the petition contains competent evidence confirming that any individual actually owns one of Samsung's devices, and neither shows how any individual agreement to arbitrate was formed.

And plaintiffs' counsel did not provide an authenticating declaration to explain how the list of names was prepared. The

spreadsheet therefore is inadmissible under Federal Rules of 802 and 901 and accordingly cannot provide competent evidence of the existence of any arbitration agreements.

The district court's reliance on the list as evidence of 30,000 arbitration agreements therefore contravenes the very decision of this Court that the court cited, *Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020).

In that case, the question was whether notice of an FLSA collective action could be issued to employees who had agreed to arbitrate. *Id.* at 1047. This Court held that notice should not be issued to those employees, and that "[t]he employer seeking to exclude employees from receiving notice has the burden to show, by the preponderance of the evidence, the existence of a valid arbitration agreement for *each* employee it seeks to exclude from receiving notice." *Id.* at 1050 (emphasis added).

This Court explained that a court need not "simply take an employer at its word when it says certain employees entered valid arbitration agreements." *Id.* at 1051. Instead, the Court remanded, requiring "additional evidence" as to who did or did not enter into "valid arbitration agreements." *Id.*

Both *Bigger* and this case involve the same question—the proof needed to demonstrate that an arbitration agreement exists—and the same principles apply; it doesn't matter that the factual issue there arose in a somewhat different context. Under *Bigger*, the district court here erred in "tak[ing]" petitioners "at [their] word." *Id*. And if the district court here were correct, *Bigger* would have come out the other way and simply "take[n] the employer at its word" that specific employees were bound by arbitration agreements without the need for "additional evidence." *Id*.

### 2. The AAA's administrative determination that its filing requirements were satisfied.

The district court also erred by relying on the fact that "[t]he AAA has already reviewed Petitioners' arbitration agreements and determined that they met the filing requirements." Dkt. 51 at 21.

The AAA's administrative determination that its filing requirements have been satisfied does not require or even include a finding that the claimant has a valid arbitration agreement. Under the AAA rules, the only requirements for filing an arbitration are

(a) submission of a Demand for Arbitration and a copy of the purported arbitration agreement; and (b) payment of the filing fee.[3]

Moreover, the AAA intake staff does not assess the validity of the arbitration agreement at the filing stage. The AAA rules specify that the arbitrator will "rule" on "any objections" as to the "validity of the arbitration agreement"—and the arbitrator is not appointed until after the administrative filing requirements have been met.[4]

More fundamentally, as a legal matter, the "threshold question" of whether "a contract [for arbitration] exists" is one "the court must decide." *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010). For example, "[a] person whose signature was forged has never agreed to anything . . . . [I]t is a situation in which no contract came into being; and as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator." *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 591 (7th Cir. 2001). This rule is "well settled." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S.

---

[3] AAA, *Consumer Arbitration Rules*, R-2(a), https://bit.ly/3G9jtIU.

[4] *Id.* R-14(a), R-16(a).

15

287, 296 (2010).[5] Accordingly, the district court erred by treating the AAA's administrative determinations as evidence of petitioners' purported arbitration agreements.

### 3.    "[T]he word of over 30,000 individuals."

The district court next stated that, even though "some [individuals] may have been recruited to this action by obscure social media ads," it "must accept the word of over 30,000 individuals" that they had agreed to arbitrate with Samsung. Dkt. 51 at 22. This, too, was error.

The court never heard from any of the petitioners. *Not one* submitted a declaration to attest to being a Samsung Galaxy owner who sought arbitration.

The court appeared to rely on a representation by petitioners' counsel. But "it is universally known that statements of attorneys are not evidence." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir. 2002). Similarly, "arguments in a . . . brief, unsupported by

---

[5]    *See also*, *e.g.*, *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1226-27 (9th Cir. 2022) (challenge to "contract *formation*" is "a matter to be determined by a court"); *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021).

documentary evidence, are *not* evidence." *United States v. Stevens*, 500 F.3d 625, 628 (7th Cir. 2007).

True, counsel also put its statements in the petition, which it labeled a "Verified Petition," but no petitioners signed verifications. *See* Dkt. 1. And "[a]llegations in a complaint are not evidence." *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 810 (7th Cir. 2003).

Because petitioners failed to submit declarations attesting that they are Samsung Galaxy owners who agreed to arbitrate, they failed to meet their initial burden to prove that they each had an arbitration agreement to enforce.

That is the conclusion reached by another court confronted with a similar list of claimants.

In *Abernathy v. DoorDash, Inc.*, 2019 WL 13402416 (N.D. Cal. Nov. 26, 2019), a petition to compel arbitration was supported, as here, by a bare list of 5,879 individual petitioners' names. Their counsel contended that the list was proof that each had provided deliveries through the DoorDash platform—and therefore had agreed with DoorDash to arbitrate disputes.

The *Abernathy* court ordered that "[b]efore the Court can grant injunctive relief compelling arbitration as to any petitioner, there must be a sworn declaration from that petitioner at least setting forth his or her name and the identifying information he or she used to register with DoorDash, the approximate dates of service, and at least referencing in an ascertainable way the specific arbitration agreement he or she clicked through." *Id.* at *1. "This must be done," the court added, "by someone with first-hand knowledge, which means the petitioner himself or herself must sign." *Id.*; *see also Abernathy v. DoorDash, Inc.,* 438 F. Supp. 3d 1062, 1065 (N.D. Cal. 2020) (refusing to compel arbitration for claimants who didn't provide the required declarations).

Similarly, in *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258 (M.D.N.C. 2016), the court denied a motion to compel arbitration because the testimony of a declarant purporting to authenticate the arbitration agreement without personal knowledge was "neither competent nor credible" and hence "inadmissible." *Id.* at 264, 269, 272.

By contrast, petitioners here submitted nothing at all—not witness statements and no declarations (inadmissible or otherwise). The court below erred in failing to recognize petitioners' failure of proof.

18

#### 4.   Switching the burden to Samsung.

The final reason advanced by the district court—that Samsung had not identified every petitioner with whom it did not have an arbitration agreement (Dkt. 51 at 22)—also fails. That rationale "impermissibly put the burden of disproving the existence of a valid arbitration agreement on . . . the non-moving party." *Air-Con*, 21 F.4th at 176.

Because the FAA and this Court's decisions make clear that petitioners bear the burden of proving that an arbitration agreement exists, the district court could not offload that obligation onto Samsung. "A party opposing summary judgment does not have to rebut factual propositions on which the movant bears the burden of proof and that the movant has not properly supported in the first instance." *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 662 (7th Cir. 2014); *see also* 10A Federal Practice & Procedure § 2727.1 (Supp. 2023).

That principle applies to a motion or petition to compel arbitration. The movant or petitioner bears the burden of proving the existence of an arbitration agreement. And "[i]f the movant has failed to make this initial showing, the court is obligated to deny [the] motion"—not grant it. *Hotel*

*71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015).[6]

In sum, the district court erred in holding that petitioners had met their prima facie burden to prove that they each had agreed to arbitrate with Samsung.

### C. Even If Petitioners Had Met Their Initial Burden, Samsung Raised A Dispute Of Material Fact That Required A Trial On Contract-Formation Issues.

Because petitioners failed to carry their prima facie burden, the district court's decision must be reversed. But even if petitioners had satisfied their initial burden, the district court erred at the second step of the analysis in holding that Samsung had not raised a dispute of material fact. Dkt. 51 at 22.

To the contrary, Samsung raised multiple disputes of material fact about the list of claimants.

The initial list of claimants submitted by petitioners' counsel contained glaring errors. According to Samsung, the list included

---

[6] If a defendant moves to compel arbitration in response to a plaintiff's complaint, sometimes the defendant can satisfy its burden by pointing to a plaintiff's concession or incorporation by reference to the arbitration agreement in the complaint. But that situation is not presented here.

"deceased individuals, individuals with fictitious personal information, individuals who are in bankruptcy, and individuals who submitted multiple demands under different names." Dkt. 26 at 1. Although petitioners revised their list, these inaccuracies reveal the list's inherent unreliability as a whole—casting it into doubt *as to each* petitioner.

Moreover, the court's belief that Samsung could have done more to challenge the remaining names on the list rests on the erroneous assumption that Samsung has an exhaustive and accurate list of device purchasers, against which it may compare the list of petitioners. As Samsung explains, "[i]ndividuals typically buy Samsung devices from third parties, like mobile carriers or retail stores," and because "Samsung device owners are not required to register their devices, Samsung does not have a list of every device owner." Op. Br. 45.

Because the summary-judgment standard required evidence to be taken in the light most favorable to Samsung (*Spierer*, 798 F.3d at 507), the district court erred in holding that Samsung had not raised a triable issue. Indeed, a reasonable jury could find, on the basis of these defects, that the list is so unreliable that it fails to prove that any of the petitioners are Samsung Galaxy owners. *See United States v. Fluker*, 698

F.3d 988, 999 (7th Cir. 2012) ("the task of deciding the evidence's true authenticity and probative value is left to the jury"). And Section 4 of the FAA requires that this dispute be fully explored and resolved at trial. *See* 9 U.S.C. § 4; *see also*, *e.g.*, *Kass*, 75 F.4th at 705 (ordering trial under 9 U.S.C. § 4); *Howard*, 748 F.3d at 984.

At a minimum, Samsung raised an issue warranting further inquiry. As this Court has explained, when a party opposing a motion to compel arbitration raises questions "concerning the validity" of a "signature" on the arbitration agreement, the defendant "must be given the opportunity to conduct limited discovery" on that issue. *Deputy*, 345 F.3d at 511; *see also*, *e.g.*, *Bigger*, 947 F.3d at 1047.

Given the seriousness of the questions Samsung has raised—and the deficiencies in petitioners' showings—the district court should have required additional proof from (and allowed additional inquiries of) the petitioners.

## II.  The District Court's Decision Facilitates The Abusive Use Of Mass Arbitrations To Obtain Unjustified Settlements.

This case is one example of a growing phenomenon: the abusive use of mass arbitrations to coerce settlements without regard to the claims' merits. The district court's approach—essentially relieving petitioners of

their obligation to prove the existence of arbitration agreements—is particularly concerning because, if permitted to stand, it will compound the harm of this abusive practice. And that threatens to deprive consumers, workers, companies, and courts of the significant benefits provided by resolution of disputes through arbitration.

### A. Consumers, Workers, And Businesses Benefit From Individual Arbitration.

Multiple studies confirm that consumers who arbitrate fare at least as well, if not better, than ones who litigate in court. A recent study released by the Chamber's Institute for Legal Reform surveyed more than 41,000 consumer arbitration cases and 90,000 consumer litigation cases resolved between 2014 to 2021 and found that:

- Consumers who initiate cases were over 12% more likely to win in arbitration than in court;[7]

---

[7] Nam D. Pham & Mary Donovan, *Fairer, Faster, Better III: An Empirical Assessment of Consumer and Employment Arbitration* 4-5 (Mar. 2022), https://bit.ly/3SK7QwA (41.7% in arbitration compared to 29.3% in court).

- The median monetary award for consumers who prevailed in arbitration was *more than triple* what consumers received in cases won in court;[8] and

- On average, arbitration of consumer disputes is more than 25% faster than litigation in court.[9]

Prior studies similarly report that consumers in arbitration fare at least as well as consumers in court.[10]

The use of arbitration also provides businesses with significant incentives to invest in robust pre-arbitration dispute resolution practices to address consumers' concerns *before* any arbitration is initiated. Companies heavily subsidize most or all costs of arbitration, and it is thus in their interest to make claimants with legitimate concerns whole—or more than whole—before a demand is filed and the business incurs the

---

[8] *Id.* at 4-5 ($20,356 in arbitration compared to $6,669 in court).

[9] *Id.* at 4-5 (321 days in arbitration compared to 439 days in court).

[10] *See, e.g.*, Christopher R. Drahozal & Samantha Zyontz, *Creditor Claims in Arbitration and in Court*, 7 Hastings Bus. L.J. 77, 80 (2011); Christopher R. Drahozal & Samantha Zyontz, *An Empirical Study of AAA Consumer Arbitrations*, 25 Ohio St. J. on Disp. Resol. 843, 896-904 (2010); Ernst & Young, *Outcomes of Arbitration: An Empirical Study of Consumer Lending Cases* (2005); Theodore Eisenberg et al., *Litigation Outcomes in State and Federal Courts: A Statistical Portrait*, 19 Seattle U. L. Rev. 433, 437 (1996).

24

associated arbitration fees. And companies often do just that. *See Mass Arbitration Shakedown*, *supra*, at 9.

Consumers who have disputes with businesses are not the only beneficiaries of arbitration. Because arbitration reduces the cost of dispute resolution, it also reduces the company's overall cost of doing business. The forces of market competition then cause these savings to be passed along to consumers in the form of lower prices and to employees in the form of higher wages.[11] Without arbitration, there are no savings, and the result is higher prices and lower wages. And the ripple effects of these changes are felt throughout the economy.

### B. Mass Arbitration Has Emerged As A Vehicle For Abusive Gamesmanship.

There has been a dramatic increase in abusive mass arbitrations designed to coerce a settlement, regardless of the underlying merits, through the threat of extortionate arbitration fees. *See Mass Arbitration Shakedown*, *supra*, at 18-19.

---

[11] Stephen J. Ware, *The Centrist Case for Enforcing Adhesive Arbitration Agreements*, 23 Harv. Negotiation L. Rev. 29, 85, 113 (2017) ("[S]tandard economic analysis suggests that enforcement of adhesive consumer arbitration agreements tends over time to lower the prices of the goods and services consumers buy.").

This abusive tactic rests on two factors: unfairly exploiting companies' obligation to pay arbitration fees and the use of questionable claimant-recruiting practices.

### 1. Leveraging fee-payment provisions to coerce settlements.

Many arbitration agreements select the AAA as the third-party administrator for consumer arbitrations. The AAA is generally recognized to employ fair procedures for the selection of arbitrators and has a strong roster of experienced, neutral lawyers, including former judges, who serve as arbitrators.

The AAA consumer fee schedule results in potentially enormous fees: if a customer requests a hearing (even a telephonic or Zoom hearing), a company must pay $4,775 in AAA fees per case, win or lose.[12] And the lion's share of these fees must be paid almost immediately after

---

[12] *See* AAA, *Consumer Arbitration Rules: Costs of Arbitration* (Aug. 1, 2023), https://bit.ly/40JCtqX. Specifically, the business would pay the business's $375 filing fee, a $1,400 case-management fee, a $500 hearing fee, and an arbitrator fee of $2,500 per day of hearing. *Id.* at 1. If a business agrees to pay the consumer's $225 filing fee, the total goes up to $5,000 per case.

the arbitration is filed.[13] In a mass arbitration, the AAA only slightly reduces the initial filing fees and leaves the other fees unchanged, gradually lowering the business's cost per case to $4,500—or $3,000 if the consumers request to dispense with hearings.[14]

By contrast, the fee obligation under the AAA fee schedule for consumers is minimal. To ensure that invoking arbitration is not burdensome to consumers, the AAA rules limit the consumer's share of arbitration fees to $225.[15]

The fees imposed on companies become astronomical when aggregated to threaten a mass arbitration filing of tens of thousands of claims. This gigantic payment obligation—which the business must pay before it can verify whether the claimant is a bona fide party to an

---

[13] The filing fees and sometimes the arbitrator fees are charged as soon as the case is accepted for administration, and the case-management fee is charged as soon as the AAA deems the case ready for arbitrator selection. AAA, *Consumer Arbitration Rules: Costs of Arbitration*, *supra*.

[14] The AAA has adopted procedural rules governing mass arbitrations, but those rules do not address or reduce the fees that a business owes for each arbitration. *See* AAA, *Mass Arbitration Supplementary Rules* (Aug. 1, 2023), https://bit.ly/3R7ZT6w.

[15] *See* AAA, *Consumer Arbitration Rules: Costs of Arbitration*, *supra*.

arbitration agreement with the business, much less offer any defense to the claims—creates leverage to force blackmail settlements.

Consider a business threatened with 50,000 mass arbitrations—which is the number of arbitrations originally filed against Samsung (Dkt. 27 at 11-23) and fewer than the number that Uber (60,000)[16] and Amazon (75,000)[17] faced. Under the AAA's current fee schedule, if the claimants request telephonic or Zoom hearings, the business's costs relatively early in the process—before any arbitrations on the merits begin—would be well over $200 million. And the business faces the risk that it would be required to pay this amount *even if it later won every case* (and—under the district court's order—even if the claimants were not in fact customers of the company or failed to show up to the hearing).

Plaintiffs' lawyers know that tens of thousands of arbitrations will not be conducted immediately and simultaneously. They could not appear in each of those cases, and arbitration providers could not process them or provide arbitrators to decide them. Here, Plaintiffs' counsel did not

---

[16] Andrew Wallender, *Uber Settles 'Majority' of Arbitrations for at Least $146M*, Bloomberg Law (May 9, 2019), https://bit.ly/3z5E0LD.

[17] Amanda Robert, *Amazon Drops Arbitration Requirement After Facing 75,000 Demands*, ABA J. (June 2, 2021), https://bit.ly/3URJuTj.

even move forward with the handful of California cases for which arbitration fees had been paid—and thus were poised to move forward in arbitration. Op. Br. 2. That fact proves the point: the sole reason for the threat of simultaneous filing is to coerce a settlement.

Businesses face substantial risks if they refuse to pay the fees or seek to delay payment until after verifying the claims' legitimacy. As this case reveals, the plaintiffs' firm might seek to force the business to pay the fees. And the AAA warns that if a business fails to make fee payments that the AAA has concluded the business is obligated to pay, the AAA "may decline to administer future consumer arbitrations with that business," which could end the company's arbitration program.[18]

Plaintiffs' law firms have exploited these dynamics to try to achieve quick and lucrative settlements. After all, a business facing the threat of $200 million in AAA fees may find it difficult to reject a $20 million settlement demand, even if the underlying claims are meritless. Here, Samsung has explained that the settlement demand before filing the 50,000 arbitrations was $50 million. Dkt. 27 at 12. And petitioners' counsel told Samsung that they had rounded up another 50,000

---

[18] AAA, *Consumer Arbitration Rules*, *supra*.

claimants for a second round of arbitrations if Samsung didn't settle. *Id.* at 16.

These facts illustrate the economic pressure of mass arbitrations, which is even greater than the pressure imposed by class actions, which Judge Friendly famously recognized can lead to "blackmail settlements."[19]

Today, for plaintiffs' firms threatening mass arbitrations, blackmail settlements are the entire point. "[A]busive mass arbitrations are a 21st-century equivalent of the abusive class actions that characterized the last part of the 20th century—claims that can be brought solely for the purpose of extracting a settlement unrelated to the merits by leveraging the threat of huge costs."[20]

Georgetown Professor J. Maria Glover has stated candidly—after interviewing plaintiffs' lawyers who originated the strategy—that "[t]he mass-arbitration model operates on its ability to impose significant *in terrorem* settlement pressure" through the imposition of "astounding"

---

[19] Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973).

[20] *Mass Arbitration Shakedown*, *supra*, at 5.

fees that "can spell financial catastrophe for a potential defendant."[21] She concluded that the settlement pressure imposed by a mass arbitration—even one asserting "more dubious claims"—can be *greater* than from a certified class action.[22]

### 2. Abusive claimant-recruitment practices.

The coercive leverage from a threatened mass arbitration stems from the amount of arbitration fees that the target company will be obligated to pay—and that turns entirely on the number of claims the plaintiff's lawyer is able to threaten. The more claims, the greater the threat. Because arbitration providers require payment without any vetting of the legitimacy of the claim—without even proof that the claimant is a customer of the target company—plaintiffs' lawyers have a powerful incentive to focus on the quantity of claims regardless of their quality. That reality is spawning disturbing abuses in the claimant-recruitment process.

---

[21] J. Maria Glover, *Mass Arbitration*, 74 Stan. L. Rev. 1283, 1345, 1349, 1380 (2022).

[22] *Id.* at 1350; *see also id.* at 1352 ("Simply put, mass arbitration shows that when it comes to *in terrorem* effects[,]" "the leverage of a large number of individual arbitrations can sometimes *exceed* the leverage created by aggregate proceedings.").

Unlike class actions, where plaintiffs' lawyers predominantly communicate with a few named plaintiffs to initiate a case, and the subsequent court-supervised class-certification process provides certain guarantees about the characteristics of unnamed class members, mass arbitrations require individualized vetting and attention from plaintiffs' lawyers for each claim that they file (or threaten to file).

Plaintiffs' lawyers *should* be vetting their clients to ensure that they have a basis for presenting a claim for resolution by arbitration and communicating with their clients throughout the process—indeed, those steps are mandated by the rules of professional conduct.

For example, lawyers may not "bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so." ABA Model R. of Prof. Conduct 3.1. Accordingly, they must "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions." Rule 3.1, cmt. 2. The rules also require communication between lawyers and their clients. *See*, *e.g.*, Rule 1.4.

But recent experience suggests that at least some plaintiffs' lawyers are not following these requirements. *See Mass Arbitration Shakedown*, *supra,* at 30-40. As noted above, Samsung has raised issues suggesting that petitioners' counsel failed to vet its clients adequately. *See* Op. Br. 22-23, 42-43.

Nor is this case an isolated one. For example, in a mass arbitration involving Intuit, plaintiffs' counsel had to drop thousands of arbitration claims because, according to Intuit's counsel, it turns out their clients were not in fact customers of Intuit or had never incurred the disputed charge.[23]

These incidents aren't unique. Even the limited publicly available information about filed or threatened mass arbitrations shows that other targeted companies have had similar experiences.[24] This pattern

---

[23] *See* Dkt. 192 ¶¶ 21-22, *In re Intuit Free File Litig.*, No. 3:19-cv-2546 (N.D. Cal. Dec. 7, 2020).

[24] *See, e.g.*, *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 3513547, at *2-3 (D. Minn. June 29, 2020) (after mass arbitration claimants were selected solely "based on their responses to questionnaires," defendant "could not identify any potential customer account that could be connected with some" claimants, with some even "claim[ing] to receive services at addresses in states in which [the defendant] does not provide services"); *Abernathy*, 438 F. Supp. 3d at 1065 (869 arbitration claimants failed to provide sufficient evidence to

33

confirms that neither judges nor lawyers can blindly trust the unverified information typed into online forms by strangers recruited to be claimants.

There is further evidence that online claimant-recruitment efforts are vulnerable to bogus claims—and therefore that claimants' counsel must scrutinize these submissions carefully: The high rate of fraudulent online claims in class settlements. For example, last year, a consumer class-action settlement let class members submit claims for up to $20 online without proof of purchase or even higher amounts with proof of purchase.[25] The claims administrator found that 49 percent of claims were fraudulent: "209,642" were obvious duplicates, but another "658,719" were more clever fakes, because although the claimant information differed, the claims were submitted using "a single internet protocol address" or "known fraudulent email domains" or sought

---

allow the court to find that they had arbitration agreements with defendant).

[25] *See* Dkt. 33 at 2, *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-9892 (S.D.N.Y. Nov. 22, 2022).

payment to "the same digital payment account"—and sometimes faked proof of purchase.[26]

Similarly, 47 percent of submissions in a recent class settlement involving Godiva were fraudulent, with many of the fake claims originating from a "bot" hosted in a "foreign country."[27] "Submission of fraudulent claims to class settlements is, unfortunately, a documented phenomenon." *In re NFL Players' Concussion Injury Litig.*, 307 F.R.D. 351, 414 (E.D. Pa. 2015) (citing additional examples).[28]

The fraud occurring in connection with class-action settlements is certain to be mirrored in the mass-arbitration context. If anything, the problem is likely to be worse, because neither claims administrators nor courts are policing the issue—as the decision below underscores. And the failure to engage in appropriate verification harms everyone: not just businesses but consumers as well—and the integrity of the legal system.

---

[26] Dkt. 54 ¶¶ 20-23, *Hezi v. Celsius Holdings, Inc.*, *supra* (Dec. 16, 2022).

[27] Dkt. 155 at 1-2, *Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-cv-972 (S.D.N.Y. Dec. 16, 2022).

[28] *See also*, *e.g.*, *In re Green Jacobson, P.C.*, 911 F.3d 924, 929 (8th Cir. 2018) (addressing $5.8 million claim for losses to "class settlement fund" from "fraudulently submitted" claim); Ross Weiner, *The Increasing Danger of Fraudulent Claims in Class Action Settlements*, New York L. J. (July 26, 2023), https://bit.ly/3SLkNto.

\* \* \* \*

In short, the mass-arbitration business model works all too well—blackmail settlements are being paid, and as a result, mass arbitrations are multiplying.[29]

Businesses are employing different approaches to counter this abusive practice and enable the resolution of claims based on their merits rather than the coercive threat of massive fees.[30] Not surprisingly, the lawyers bringing abusive mass arbitrations are challenging every effort to promote merits-based resolution—they are happy with the status quo. But the FAA affords "parties discretion in designing arbitration processes" that are "tailored to the type of dispute." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Of course, critical to any solution is proper application by courts of the FAA's basic prerequisite for an order compelling arbitration—proof of the existence of an arbitration agreement—in the mass-arbitration context. The district court failed to do that here.

---

[29] *See Mass Arbitration Shakedown*, *supra*, at 19-20.

[30] *See id.* at 47-59 (discussing approaches).

## CONCLUSION

The district court's order compelling arbitration and requiring Samsung to pay the costs of arbitration should be reversed.

Dated: November 21, 2023

Jennifer B. Dickey
Jonathan Urick
U.S. CHAMBER LITIGATION
    CENTER
1615 H Street, N.W.
Washington, DC 20062

*Counsel for* Amicus Curiae *The
    Chamber of Commerce of the
    United States of America*

Stephanie Martz
NATIONAL RETAIL FEDERATION
1101 New York Avenue, N.W.
    Suite 1200
Washington, DC 20005

*Counsel for* Amicus Curiae
    *National Retail Federation*

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Avenue,
    N.W.
Washington, DC 20036

*Counsel for* Amicus Curiae
    *American Bankers Association*

Respectfully submitted,

/s/ *Andrew J. Pincus*
Andrew J. Pincus
Archis A. Parasharami
Kevin S. Ranlett
Christina Luk*
Jennifer Weinberg*
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000
apincus@mayerbrown.com

* Application for admission to
    practice before the Court
    forthcoming

*Counsel for* Amici Curiae

Angelo I. Amador
RESTAURANT LAW CENTER
2055 L Street, N.W.
Washington, DC 20036

*Counsel for* Amicus Curiae
    *Restaurant Law Center*

Thomas C. Power
CTIA—THE WIRELESS
    ASSOCIATION
1400 16th Street, N.W., Suite 600
Washington, DC 20005

*Counsel for* Amicus Curiae
    *CTIA—The Wireless
    Association*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief:

(i)    complies with the type-volume limitations of Rule 32(a)(7)(B) and Circuit Rule 32(c) because it contains 6,859 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and Circuit Rule 32(b) and the type-style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word and is set in Century Schoolbook 14-point font.

/s/ Andrew J. Pincus
Andrew J. Pincus
*Counsel for* Amici Curiae

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on November 21, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew J. Pincus*
Andrew J. Pincus
*Counsel for* Amici Curiae