No. 23-2842

# In the United States Court of Appeals for the Seventh Circuit

PAULA WALLRICH, DANIELLE JONES, GRANT GRINNELL, JEFFREY BURTON, and RHONDA MCCALLUM,
*Petitioners-Appellees*,

v.

SAMSUNG ELECTRONICS AMERICA, INCORPORATED and SAMSUNG ELECTRONICS COMPANY, LIMITED,
*Respondents-Appellants*.

On Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:22-cv-05506 (The Hon. Harry D. Leinenweber)

## BRIEF OF PETITIONERS-APPELLEES

JONATHAN GARDNER
MELISSA H. NAFASH
JONATHAN D. WAISNOR
ALEX F. SCHLOW
SHANNON K. TULLY
LABATON SUCHAROW LLP
140 Broadway, 34th Floor
New York, NY 10005
(212) 907-0700

DEEPAK GUPTA
MATTHEW W.H. WESSLER
THOMAS SCOTT-RAILTON
STEFANIE OSTROWSKI
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*deepak@guptawessler.com*

December 12, 2023

*Counsel for Petitioners-Appellees*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Wallrich v. Samsung

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Paula Wallrich, Danielle Jones, Grant Grinnell, Jeffrey Burton, Rhonda, McCallum

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Labaton Sucharow LLP, Gupta Wessler LLP

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

        N/A

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/ Matthew W.H. Wessler     Date: 12/12/2023

Attorney's Printed Name: Matthew W.H. Wessler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐   No ☑

Address: 2001 K Street, NW, Suite 850 North, Washington, DC 20006

Phone Number: (202) 888-1741      Fax Number:

E-Mail Address: matt@guptawessler.com

rev. 12/19 AK

Save As          Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-2842

Short Caption: Wallrich v. Samsung

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Paula Wallrich, Danielle Jones, Grant Grinnell, Jeffrey Burton, Rhonda McCallum

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Labaton Sucharow LLP, Gupta Wessler LLP

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

N/A

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Thomas Scott-Railton      Date: 12/12/2023

Attorney's Printed Name: Thomas Scott-Railton

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [ ]  **No** [✔]

Address: 2001 K Street, NW, Suite 850 North, Washington, DC 20006

Phone Number: (202) 888-1741      Fax Number:

E-Mail Address: thomas@guptawessler.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-2842

Short Caption: Wallrich v. Samsung

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Paula Wallrich, Danielle Jones, Grant Grinnell, Jeffrey Burton, Rhonda, McCallum

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Labaton Sucharow LLP, Gupta Wessler LLP

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

       N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Stefanie Ostrowski     Date: 12/12/2023

Attorney's Printed Name: Stefanie Ostrowski

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address: 2001 K Street, NW, Suite 850 North, Washington, DC 20006

Phone Number: (202) 888-1741     Fax Number:

E-Mail Address: steffi@guptawessler.com

rev. 12/19 AK

# **TABLE OF CONTENTS**

Table of authorities..................................................................................iv

Introduction .......................................................................................... 1

Jurisdictional statement ........................................................................4

Standard of review.................................................................................5

Statement of issues.................................................................................5

Statement of the case .............................................................................6

    A.    Samsung requires its customers to resolve any disputes through individual arbitration before the AAA and categorically forbids class actions. ...........................................................................6

    B.    The AAA establishes rules that contemplate large-scale individualized arbitrations. ...........................................................7

    C.    The claimants provide notice of their claims to Samsung and engage in pre-arbitration discussion and mediation. ............................9

    D.    Consistent with Samsung's contractual mandate, the claimants file individual arbitration demands with the AAA. ............................. 11

    E.    Samsung refuses to pay its arbitration fees based on its own evaluation of the merits and its internal records that it won't disclose. ................................................................................12

    F.    The AAA vets the claimants' filings, ordering the claimants to cure their filings and substantively respond to Samsung's allegations, which they do. ..................................................14

    G.    The AAA determines that the claimants satisfied their filing requirements and invoices Samsung for its portion of the fees under the AAA rules. ...........................................................14

    H.    Samsung continues to refuse to pay the fees assessed by the AAA under the AAA rules. ..................................................15

I.    The district court compels arbitration, requires Samsung to pay its filing fees, and stays the case pending future disputes. ....................17

J.    Samsung appeals the district court's order staying the case ...............18

Summary of argument.................................................................................19

Argument......................................................................................................21

I.    This Court lacks appellate jurisdiction. ...............................................21

    A.    Under the FAA, "an appeal may not be taken" from an order "granting a stay" and "compelling arbitration.".............21

    B.    After *Green Tree*, the relevant jurisdictional distinction is between dismissals and stays—not between "independent" and "embedded" actions..................................22

    C.    Other circuits' cases do not support jurisdiction here. .............30

    D.    Because the district court stayed (rather than dismissed) this action, Samsung's appeal is prohibited. .............................31

II.   Samsung failed to raise a genuine dispute of material fact as to the existence of an arbitration agreement for any individual claimant.................................................................................33

    A.    A motion to compel arbitration is a summary proceeding where courts have wide latitude to consider a range of evidence ...................................................................................34

    B.    While the claimants pointed to record documents as to each individual, Samsung responded with only unsubstantiated assertions about all of the claimants. ..............36

III.  The district court properly compelled Samsung to arbitrate and to pay the filing fees required by the AAA to begin the arbitrations. ..........................................................................44

    A.    The district court correctly found that the AAA had allocated "Samsung's portion" of the fees to Samsung. ...........45

B.      The district court properly compelled arbitration under
        section 4 and ordered Samsung to pay its fees as
        determined by the AAA. ........................................................... 53

Conclusion ......................................................................................................... 58

# TABLE OF AUTHORITIES

## Cases

*Abernathy v. DoorDash,*
    438 F. Supp. 3d 1062 (N.D. Cal. 2020) .................................................................. 50

*Accenture v. Spreng,*
    647 F.3d 72 (2d Cir. 2011) ................................................................................. 27, 32

*Adair Bus Sales v. Blue Bird,*
    25 F.3d 953 (10th Cir. 1994) ...................................................................................... 26

*Adams v. Postmates,*
    414 F. Supp. 3d 1246 (N.D. Cal. 2019) ..................................................................... 50

*American International Specialty Lines v. Electronic Data Systems,*
    347 F.3d 665 (7th Cir. 2003) ............................................................................... 28, 29

*Apache Bohai v. Texaco China, B.V.,*
    330 F.3d 307 (5th Cir. 2003) ..............................................................26, 27, 30, 31

*Arthur Andersen v. Carlisle,*
    556 U.S. 624 (2009) ............................................................................................. 26, 31

*ATAC v. Arthur Treacher's,*
    280 F.3d 1091 (6th Cir. 2002) ............................................................................ 26, 31

*Ball v. Tesla Motors,*
    2022 WL 16627493 (7th Cir. 2022) .......................................................................... 21

*Barnes v. City of Centralia,*
    943 F.3d 826 (7th Cir. 2019) .................................................................................... 34

*BG Group v. Republic of Argentina,*
    572 U.S. 25 (2014) .............................................................................................. 53, 54

*Bigger v. Facebook,*
    947 F.3d 1043 (7th Cir. 2020) .................................................................................. 40

*Blackwater Security Consulting v. Nordan,*
    2008 WL 8884112 (4th Cir. 2008) ...................................................................... 25, 31

*Brown v. Dillard's,*
   430 F.3d 1004 (9th Cir. 2005) ............................................................. 50

*Brown v. Pacific Life Insurance,*
   462 F.3d 384 (5th Cir. 2006) ............................................................... 30

*Dealer Computer Services v. Old Colony Motors,*
   588 F.3d 884 (5th Cir. 2009) ...........................................................51, 52

*Espinoza v. Galardi South Enterprises,*
   2017 WL 9511098 (S.D. Fla. 2017)................................................ 50, 54, 57

*Freeman v. SmartPay Leasing,*
   771 F. App'x 926 (11th Cir. 2019) ....................................................... 50

*Goodall-Sanford v. United Textile Workers of America,*
   353 U.S. 550 (1957) ........................................................................... 30

*Green Tree Financial-Alabama v. Randolph,*
   531 U.S. 79 (2000) ..................................................................... *passim*

*Igasaki v. Illinois Department of Financial & Professional Regulation,*
   988 F.3d 948 (7th Cir. 2021) ............................................................... 35

*In re Facebook Biometric Information Privacy Litigation,*
   2020 WL 4818608 (N.D. Cal. 2020) ...................................................... 9

*In re Tyco International Ltd. Securities Litigation,*
   422 F.3d 41 (1st Cir. 2005)................................................................. 36

*International Alliance of Theatrical Stage Employee & Moving Picture*
   *Technicians, Artists, & Allied Crafts v. InSync Show Productions,*
   801 F.3d 1033 (9th Cir. 2015)............................................................... 31

*INTL FCstone Financial v. Jacobson,*
   950 F.3d 491 (7th Cir. 2020) .......................................................... *passim*

*Lamps Plus v. Varela,*
   139 S. Ct. 1407 (2019) ...................................................................24, 32

*Lifescan v. Premier Diabetic Services,*
   363 F.3d 1010 (9th Cir. 2004) ............................................................. 51

*Lumbermens Mutual Casualty v. Broadspire Management Services*,
    623 F.3d 476 (7th Cir. 2010) ................................................................. 5, 55, 57

*Matsushita Electric Industrial v. Zenith Radio*,
    475 U.S. 574 (1986) ........................................................................................ 40

*McClenon v. Postmates*,
    473 F. Supp. 3d 803 (N.D. Ill. 2020) ..................................................... 50

*Moglia v. Pacific Employers Insurance*,
    547 F.3d 835 (7th Cir. 2008) ........................................................... *passim*

*Morales v. Trans World Airlines*,
    504 U.S. 374 (1992) ........................................................................................ 26

*Napleton v. General Motors*,
    138 F.3d 1209 (7th Cir. 1998) ........................................................ 23, 27, 28

*Postmates v. 10,356 Individuals*,
    2021 WL 540155 (C.D. Cal. 2021) ........................................................ 50

*Preferred Care of Delaware v. Hopkins*,
    845 F.3d 765 (6th Cir. 2017) ..................................................................... 22

*Pre-Paid Legal Services v. Cahill*,
    786 F.3d 1287 (10th Cir 2015) ........................................................... 50, 54

*Psara Energy, Ltd. v. Advantage Arrow Shipping*,
    946 F.3d 803 (5th Cir. 2020) .................................................................... 30

*Rosenbach v. Six Flags Entertainment*,
    129 N.E.3d 1197 (Ill. 2019) ......................................................................... 9

*Salim Oleochemicals v. M/V Shropshire*,
    278 F.3d 90 (2d Cir. 2002) ........................................................................ 27

*Sigler v. GEICO Casualty*,
    967 F.3d 658 (7th Cir. 2020) ..................................................................... 49

*Sink v. Aden Enterprises*,
    352 F.3d 1197 (9th Cir. 2003) ........................................................ 50, 54, 57

*Sosa v. Onfido,*
  600 F. Supp. 3d 859 (N.D. Ill. 2022) .......................................................... 9

*Tillman v. Tillman,*
  825 F.3d 1069 (9th Cir. 2016) ..............................................................51, 52

*Tinder v. Pinkerton Security,*
  305 F.3d 728 (7th Cir. 2002) ............................................... 20, 34, 39, 40

*United States v. Gonzales,*
  520 U. S. 1 (1997) ....................................................................................... 26

*United States v. Johnson,*
  529 U.S. 53 (2000) ...................................................................................... 23

*United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied*
  *Industrial and Service Workers International Union AFL-CIO-CLC v.*
  *Wise Alloys,*
  807 F.3d 1258 (11th Cir. 2015) ........................................................... 30, 31

*Vaden v. Discover Bank,*
  556 U.S. 49 (2009) ......................................................................................... 4

*Woods v. City of Chicago,*
  234 F.3d 979 (7th Cir. 2000) .................................................................... 35

*Wragg v. Village of Thornton,*
  604 F.3d 464 (7th Cir. 2010) .................................................................... 35

*Zurich American Insurance v. Watts Industries,*
  466 F.3d 577 (7th Cir. 2006) ................................................... 20, 53, 55

## Statutes & Rules

9 U.S.C. § 3 ....................................................................................................... 32

9 U.S.C. § 4 ................................................................................................ *passim*

9 U.S.C. § 16 .............................................................................................. *passim*

Illinois' Biometric Information Privacy Act,
  740 ILCS 14/15 ............................................................................................. 9

Fed. R. Civ. P. 56 .................................................................. 35, 39, 41, 42

7th Cir. R. 28 ............................................................................. 4

**Other Authorities**

American Arbitration Association,
   *Consumer Mass Arbitration* ............................................................. 11

American Arbitration Association,
   *Employment Arbitration Rules & Mediation Procedures* ................................. 49

End User License Agreement for Samsung Software (Nov. 16,
   2016) .......................................................................................... 13

*How Has Mass Arbitration Evolved and Where Is It Going?: Interview
   with Neil B. Currie of the American Arbitration Association*, Today's
   *General Counsel*, Oct. 2023 ............................................................... 7

Pamela Mathy,
   *Appealability of District Court Orders Staying Court Proceedings
   Pending Arbitration*, 63 Marq. L. Rev. 31 (1979) ....................................... 27

Alexi Pfeffer-Gillett,
   *Unfair by Default*, 171 U. Pa. L. Rev. 459 (2023) ..................................... 54

Charles A. Wright & Arthur R. Miller,
   Fed. Prac. & Proc. Civ. (4th ed. 2023) ................................................. 35

Charles A. Wright & Arthur R. Miller,
   Fed. Prac. & Proc. Jurisdiction (3d ed. 2023) ......................................... 27

## INTRODUCTION

Samsung, one of the world's largest smartphone and tablet manufacturers, imposes an arbitration contract on anyone who owns or uses a Samsung device, requiring them to resolve any disputes through individual arbitration and categorically forbidding class actions. The claimants in this case are Paula Wallrich and thousands of other Illinois residents who use Samsung devices. When they learned that their Samsung devices were extracting their biometric information, in violation of Illinois law, they followed the terms of their contracts to the letter. They each filed individualized arbitration demands before the American Arbitration Association, whose rules expressly allow large-scale individualized arbitrations involving thousands of consumers. The AAA rules required the claimants to provide $2.5 million in filing fees along with a significant amount of information about each claimant. The claimants did so.

When the AAA concluded that the claimants had met their filing requirements, it determined that Samsung owed $4 million in filing fees. But Samsung refused to pay. The company had unilaterally chosen the AAA as the forum. The AAA rules setting out large-scale arbitrations, filing requirements, and filing fees were matters of public record. And for years, Samsung has aggressively fought any attempt by consumers to bring lawsuits outside of arbitration, especially class actions. But all of a sudden, Samsung wanted out of the contracts it had drafted.

The company justified its refusal to pay its fees by claiming that it had records in its possession suggesting that some unspecified fraction of the claimants weren't Samsung customers, had participated in too many lawsuits, or were deceased. Yet Samsung never named a single claimant with any of these supposed issues, nor did it ever provide the records in its possession. Samsung also reached the convenient conclusion that Ms. Wallrich and others' claims were frivolous—though if that proved true, Samsung could recover its filing fees under AAA rules. Even when the claimants provided more information in response to the AAA's requests, Samsung wouldn't budge. The AAA closed the arbitrations "due to non-payment of filing fees by the business," because it hadn't "received Samsung's portion of the filing fees."

When the claimants went to district court to compel arbitration, the court saw through Samsung's attempts to obstruct the proceedings that its own contracts required. In the court's view, Samsung's insinuations, based on records the company wouldn't disclose, failed to show any genuine dispute of material fact as to whether Ms. Wallrich or any other individual claimant uses a Samsung device. The district court therefore compelled arbitration and stayed the case pending future disputes over arbitration fees—which were not unlikely, given Samsung's proclivity for refusing to pay its fees based on its own say-so. In so ruling, the district court joined the uniform consensus of courts that have refused to allow companies to escape the filing fees set out by arbitration contracts that they themselves drafted.

At each stage of this case, Samsung has loudly criticized the conduct of the claimants and their counsel. Overheated rhetoric aside, this appeal presents three straightforward legal questions: First, is there appellate jurisdiction over the district court's order compelling arbitration and staying the case? (There isn't). Second, were Samsung's hazy allegations based on the company's undisclosed records sufficient to raise a genuine dispute of material fact? (They weren't). Third, was Samsung allowed to refuse to pay its share of the filing fees allocated by the AAA, effectively terminating the underlying arbitrations? (It wasn't).

Because jurisdiction over this interlocutory appeal is expressly prohibited by statute, this Court should dismiss Samsung's appeal. If it does not, however, the district court's thorough decision should be affirmed. The company will have several further opportunities before the AAA to raise its arguments about the claimants' filings and the merits of their claims. After all, that is what Samsung's contract calls for. This Court should reject Samsung's attempts to play by different rules than the ones it imposes on all of its customers.

## JURISDICTIONAL STATEMENT

Samsung's jurisdictional statement is neither complete nor correct. "Whenever some issues or parties remain before the district court," a jurisdictional statement must contain "enough information to enable the court to determine whether the order is appealable." 7th Cir. R. 28(a)(3)(iv). "Appeals from orders granting or staying arbitration," in particular, "require careful exposition." *Id.*

Here is the fact most relevant to jurisdiction: On September 12, 2023, the district court issued an order that compelled the parties to arbitration and ordered the "[c]ase stayed pending arbitration." 1-SA-10; Dkt. 50.[1] Samsung neither cites nor quotes this stay order. Under 9 U.S.C. § 16(b), "an appeal may not be taken" from an order that compels arbitration and stays the case. Samsung does not cite or discuss § 16(b) or any of this Court's cases interpreting it. *See INTL FCstone Fin. v. Jacobson*, 950 F.3d 491 (7th Cir. 2020); *Moglia v. Pac. Emps. Ins.*, 547 F.3d 835 (7th Cir. 2008). As further explained in Part I of our argument, Samsung's appeal must be dismissed.

The claimants agree with Samsung that the district court had subject-matter jurisdiction over this case falling within the New York Convention, *see Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009), and that Samsung timely appealed.

---

[1] Filings in the district court will be cited as "Dkt.," while those before this Court will be cited as "ECF."

## STANDARD OF REVIEW

This Court "review[s] a district court's decision to compel arbitration de novo, and any findings of fact for clear error." *Lumbermens Mut. Cas. v. Broadspire Mgmt. Servs.*, 623 F.3d 476, 480 (7th Cir. 2010).

## STATEMENT OF ISSUES

**1.** The Federal Arbitration Act provides that "an appeal may not be taken from an interlocutory order" "granting a stay of any action" or "compelling arbitration." 9 U.S.C. § 16(b). The district court's order compels arbitration and stays the case pending arbitration. Does this Court lack jurisdiction?

**2.** Faced with the claimants' showing that they are Samsung device users, Samsung never identified any issue with any specific claimant and instead relied on general allegations about unspecified claimants, based on documents the company didn't produce. Was the district court correct that this failed to raise a genuine dispute of material fact?

**3.** After Samsung refused to pay "Samsung's portion of the filing fees," the AAA "closed [the arbitrations] due to non-payment of filing fees by the business." 5-SA1275. Was the district court correct that Samsung's actions constituted a "refusal" to arbitrate under 9 U.S.C. § 4?

## STATEMENT OF THE CASE

**A.    Samsung requires its customers to resolve any disputes through individual arbitration before the AAA and categorically forbids class actions.**

Samsung has drafted its contracts to ensure that people who purchase or use its devices, which include cell phones and tablets, must arbitrate any legal claims they may have against the company.[2] Samsung's contract purports to bind a customer the minute they "[o]pen[] the Product packaging," "use [] the Product," or retain it. 5-SA1162. That is true not just for a customer who purchases the phone; it applies to anyone who uses or receives the device. *Id.* The arbitration clause requires that "all disputes … relating in any way to or arising in any way" from the device must be resolved "exclusively through final and binding arbitration, and not by a court or jury." *Id.* And no claim under "any circumstances" may "proceed as part of a class action." *Id.* Instead, "[t]he arbitration shall be conducted before a single arbitrator" and "according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes." *Id.*

Samsung has not been shy about enforcing its arbitration clauses. This includes recently arguing that an eleven-year-old girl was bound by its arbitration requirement. Def.'s Mot. Compel Arbitration at 2, *G.T. v. Samsung Elecs. Am.*, No. 1:21-

---

[2] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this brief.

cv-04976 (N.D. Ill. Oct. 29, 2011) ("Plaintiffs cannot use G.T.'s status as a minor to avoid the Arbitration Agreement. If G.T. set up the phone, she is bound under equitable principles because she has not disaffirmed the contract"). Samsung has also touted that the "broad language" of its arbitration contract is "even more expansive" than other companies' contracts. *Id.* at 18.

### B.    The AAA establishes rules that contemplate large-scale individualized arbitrations.

Large-scale individualized arbitrations are nothing new—the "AAA has a long history of administering" them.[3] And the AAA Consumer Arbitration Rules that Samsung selected expressly contemplate large-scale requests for arbitration by thousands of individual consumers. 5-SA1200.

Those Consumer Arbitration Rules provide for both a "Single Consumer Case Filing" and "Multiple Consumer Case Filings." 5-SA1199. Multiple Consumer Case Filings involve 25 or more individual consumers, represented by the same counsel, seeking arbitration against the same party. *Id.* The rules specifically provide for arbitrations involving over 3,000 consumers. 5-SA1200. In such arbitrations, filing fees are significantly discounted for both sides. *Id.* The AAA "fee schedule … shall apply for all fees charged during the administration of the case," with a limited

---

[3] *See, e.g.*, *How Has Mass Arbitration Evolved and Where Is It Going?: Interview with Neil B. Currie of the American Arbitration Association*, Today's *Gen. Couns.*, Oct. 2023, at 14, 15, https://perma.cc/SN7V-B6LK.

exception: "The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees." 5-SA1177.

In addition to the general Consumer Arbitration Rules, the AAA provides Supplementary Rules for Multiple Case Filings. 5-SA1255. Under these rules, "[a] separate Demand for Arbitration must be filed in each individual case," "[e]ach Demand must include complete contact information for all parties," and this information must be collected in a spreadsheet. 5-SA1259. Consumers must submit their filings and pay their fees. "The business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements." 5-SA1198.

In a number of large-scale individualized arbitrations, companies have refused to pay their filing fees based on their unilateral determination that the filings are faulty or the cases are frivolous. *See infra* 50. The AAA created a streamlined process for such threshold disputes. "After all filing requirements have been met, including payment of the AAA's initial administrative fees," a party can request a Process Arbitrator who is empowered to adjudicate issues relating to filing requirements, administrative fees, and "other administrative issue[s] arising out of the nature of the Multiple Case Filings." 5-SA1260.

The AAA rules also provide for cases where a party fails to pay its share of the fees. Under both the Consumer Arbitration Rules and the Supplementary Rules, if

one party has failed to pay its share of the fees, "the AAA may notify the parties in order that one party may advance the required payment." 5-SA1263; *see also* 5-SA1196. If the filing fees are not paid, "the arbitrator may order the suspension or termination of the proceedings." 5-SA1263; *see also* 5-SA1196. Filing fees are generally nonrefundable, but "[i]n the event any multiple case filings are closed due to non-payment of filing fees by the business, the AAA will return any filing fees received from the individuals." 5-SA1200.

### C.   The claimants provide notice of their claims to Samsung and engage in pre-arbitration discussion and mediation.

Paula Wallrich is a resident of Darien, Illinois, who owns a Samsung device. 1-SA24; 5-SA1214. She used that device to take pictures of herself, but unbeknownst to her, Samsung was scanning her face and extracting, collecting, and storing her biometric data. 5-SA1226-43. This violated Illinois' Biometric Information Privacy Act (BIPA). 740 ILCS 14/15(b).[4]

---

[4] Although irrelevant to this appeal, Samsung repeatedly asserts that the claims here are "frivolous." Samsung Br. 1, 24. That is a merits issue for the AAA, but it is also wrong. Samsung's *only* basis for pronouncing the claims "frivolous" is an affidavit by Samsung's own employee that the claimants thoroughly rebutted below, pointing out that it admitted that the company unlawfully extracts biometric information based on users' face scans. Dkt. 1-10 at 1-2. And it bears noting that Facebook recently reached a $650 million settlement for similar BIPA claims in a class action (in which Labaton Sucharow was among counsel for the plaintiffs), belying the notion that such claims are only viable if a company is threatened with arbitration fees. *See In re Facebook Biometric Info. Priv. Litig.*, 2020 WL 4818608, at *2 (N.D. Cal. 2020). BIPA creates the "strongest possible incentive[s]" to protect "an

Because Samsung's facial recognition technology is embedded in every Samsung device—of which Samsung has sold billions—the number of people affected was quite large. 5-SA1215. Ms. Wallrich and other claimants retained Labaton Sucharow LLP, a nationally recognized law firm with expertise in both large-scale litigation and BIPA.[5]

Under Samsung's contract, these consumers had only one avenue available to them: individual arbitration before the AAA. Indeed, at the same time, Samsung was asking a federal court to dismiss a class action and compel arbitration, arguing that "all disputes arising in any way from the use of the [device] must be resolved through individual arbitration." *See* Mot. at 1, *G.T.,* No. 1:21-cv-04976.[6]

---

individual's unique biometric identifiers," which cannot be changed if compromised or misused." *Rosenbach v. Six Flags Ent.*, 129 N.E.3d 1197, 1206-07 (Ill. 2019). Courts routinely reject companies' arguments that their extraction and use of biometric information fall outside BIPA's scope. *See, e.g.*, *Sosa v. Onfido*, 600 F. Supp. 3d 859, 871-73 (N.D. Ill. 2022).

[5] Despite Samsung's attempts to make this case about the claimants' counsel, this appeal isn't about Labaton Sucharow. In any event, Labaton is proud of the reputation it has built over six decades. *See, e.g.*, Tr. at 24-25, *Middlesex Cnty. Ret. Sys. v. Monster*, No. 1:07-cv-2237 (S.D.N.Y. June 14, 2007) (statement of Rakoff, J.) ("[T]he Labaton firm is very well known to its courts for the excellence of its representation."); Tr. at 4, *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex. June 29, 2017) (statement of Ellison, J.) ("In a difficult case like this I feel … very gratified to have some of the nation's best lawyers working on it.").

[6] Samsung withdrew its motion to compel in *G.T.* four days before it refused to pay its fees in this case. *See* Notice of Withdrawal of Mot. Compel Arbitration, *G.T. v. Samsung Elecs. Am.*, No. 1:21-cv-04976 (N.D. Ill. Sept. 23, 2022); 5-SA-1251.

Before filing their individual demands for arbitration, however, the claimants engaged in months of pre-arbitration discussion and mediation. After the claimants provided Samsung notice, the parties agreed upon a tolling agreement and the claimants held off initiating arbitrations. 1-SA14. The parties then attempted mediation before the Hon. James F. Holderman (ret.), but this was unsuccessful. *Id.*

### D. Consistent with Samsung's contractual mandate, the claimants file individual arbitration demands with the AAA.

With mediation stalled, the claimants sought recourse to the sole forum available to them: They each filed individualized demands for arbitration with the AAA. 1-SA13-14. Each consumer's demand included a statement that they were "a natural person who owns a Samsung Galaxy Device and has taken photographs of themselves, including photographs of [their] face"; that they "own[] a Samsung Device and ha[ve] stored photos in the Gallery App"; that they did not consent to Samsung's "use, collection, and storage" of their "biometric data"; but that when they "uploaded photos," Samsung nevertheless collected and used their "biometric identifiers." Dkt. 1-11 at 1, 29-30. Each claimant was required to submit a copy of the arbitration contract that Samsung had imposed upon the purchase or use of their Samsung devices.[7] The claimants also filed a spreadsheet in which each claimant

---

[7] *Consumer Mass Arbitration*, Am. Arbitration Ass'n, https://perma.cc/BW5B-X6YD.

provided their name, address, and contact information. *See* 9-SA2288-2416 (list with personally identifying information redacted).

On September 27, the AAA invoiced the claimants for their share of the filing fees, which amounted to $2.525 million. 5-SA1249. The claimants paid the same day. 1-SA15; Dkt. 1-13, 1-14.

### E.    Samsung refuses to pay its arbitration fees based on its own evaluation of the merits and its internal records that it won't disclose.

Samsung, however, preferred not to. Even before the AAA had made its fee determination for Samsung, the company sent a letter stating that it "w[ould] not be paying the Business Filing Fees in connection with the Demands." 5-SA1251-53. These "Business Filing Fees" are a reference to the AAA's fee schedule, which Samsung knew applied because it was incorporated into the arbitration agreement that Samsung drafted. 5-SA1162.

Samsung justified its refusal by asserting that it was "in possession of information *suggesting*" that *some* of the demands for arbitration "do not involve proper Claimants." 5-SA1251-52 (emphasis added). This undisclosed information supposedly suggested that an unspecified number of unidentified claimants were "deceased," had filed too many cases, or had criminal histories. 5-SA1252. Samsung did not explain why it had failed to identify, for example, a single supposedly

deceased claimant. Nor did the company explain how this would render a BIPA claim invalid, as the individual's estate could pursue it on their behalf.

Samsung further asserted that, based on its review of "Samsung's own records," "Samsung has no record" of some unspecified fraction of the claimants "ever being a customer or owning any of the devices at issue." 5-SA1251-52. According to Samsung, this indicated that these individuals were not "proper Claimants." 5-SA1251. Samsung has a wealth of customer information because creating a "Samsung Account" was "require[d]" to use "[m]any" of the company's "applications and services," including some that come with the device.[8] And "[t]o register a Samsung device, users must provide the company with personally identifiable information such as the user's name and zip code." RSA3. Despite this, Samsung failed to identify a single individual who was supposedly not in its records. Nor did Samsung explain why it hadn't provided the records.

While Samsung only claimed to have discovered issues with some claimants, it refused to pay fees for all of them. Samsung additionally argued that all of the claimants would "waive arbitration" unless they paid *Samsung's* share of the filing fees. 5-SA1253. The claimants, in response, "decline[d] Samsung's invitation to pay

---

[8]     End User License Agreement for Samsung Software, https://www.samsung.com/sg/Legal/SamsungLegal-EULA/ (Nov. 16, 2016) [https://web.archive.org/web/20221207122914/https://www.samsung.com/sg/Legal/SamsungLegal-EULA/]; *see also* 5-SA1233 (citing EULA).

Samsung's fees" and requested that the AAA either: (1) "issue an invoice to Samsung," or, (2) if "the AAA believes Samsung's statement is sufficient regarding its refusal to pay the business fees, close the cases so Claimants can proceed to court" to compel arbitration. Dkt. 1-16.

### F.    The AAA vets the claimants' filings, ordering the claimants to cure their filings and substantively respond to Samsung's allegations, which they do.

In response to Samsung's concerns, the AAA carefully reviewed the claimants' submissions. After identifying issues with certain individual claimants' data, primarily related to addresses, the AAA directed the claimants to cure the issues and provide a separate "substantive response" to Samsung's allegations. 5-SA1266-67.

The claimants satisfied both of the AAA's instructions.  They provided a letter responding to Samsung's vague accusations. Dkt. 27-13 at 1. They then provided a revised spreadsheet of claimant information. *Id.* This spreadsheet no longer included certain names, such as "Full Chck," which Samsung nonetheless continues to cite before this Court. Samsung Br. 42; *see also* 1-SA23-1160.

### G.    The AAA determines that the claimants satisfied their filing requirements and invoices Samsung for its portion of the fees under the AAA rules.

On October 31, having reviewed the claimants' revised spreadsheet and substantive response, the AAA determined that *all* of the claimants had satisfied the AAA's filing requirements. 5-SA1269-1270.

As AAA rules required, the AAA determined that because "the claimants' filing requirements have been met," "Samsung is now responsible for payment of the initial administrative filing fees totaling $4,125,000.00." 5-SA1269; *see also* 5-SA1198, 1263. These fees were calculated under a schedule that AAA rules state "will be assessed to the parties." 5-SA1200. The AAA said that its letter constituted an invoice and that "[p]ayment from the Business is due upon receipt." 5-SA1269. Thus, *after* Samsung asserted it would decline to pay its share of the fees, and further asserted that under the AAA's rules these fees should instead be the claimants' responsibility, the AAA determined that those fees were Samsung's responsibility. 5-SA1269.

The AAA's letter also explained that if Samsung had further challenges to the claimants' filings, it could pay its fees and seek an adjudication of those disputes before a Process Arbitrator. 5-SA1260, 1269.

### H.    Samsung continues to refuse to pay the fees assessed by the AAA under the AAA rules.

Samsung still refused to pay.[9]

**1.** This time, Samsung had even less to say about the sufficiency of the claimants' filings. The company had previously declared that "Samsung expects that further deficiencies with the Claimants will be identified" as the company continued to review its "own records." 5-SA1251-52. Yet when the time came, Samsung declined

---

[9] Samsung paid fees for the 14 California claimants because California law would penalize Samsung for failing to pay its share of the filing fees. 5-SA1253.

to do so: "While Samsung maintains that the 50,000 claimants … did not, in fact, satisfy the AAA's administrative filing requirements, that issue need not be addressed in this letter." 5-SA1272.

Samsung based its refusal on its own determination that "[t]hese demands are frivolous and have been brought in arbitration for an improper purpose." 5-SA1273. Yet the AAA's rules set out the remedy for such a situation: a company can recover its filing fees if the arbitrator determines that an arbitration was frivolous or brought for an improper purpose. 5-SA1192.

**2.** The AAA reiterated that these fees were Samsung's responsibility. On November 14, the AAA stated that Samsung "declines to submit *their portion* of the filings fees on the 50,000 Individual Claimants that met the AAA's filing requirements." 5-SA1275 (emphasis added). The AAA also noted that Samsung's portion of the fees would go unpaid because "the claimants decline[d] paying *Samsung's portion* of the filing fees." *Id.* (emphasis added). Since the AAA was not in receipt of "*Samsung's portion* of the filing fees for the non-California cases," they would be closed. *Id.* (emphasis added).

The AAA further determined that it would reimburse the claimants' fees because, under its rules, "in the event any multiple case filings are closed *due to non-payment of filing fees by the business*, the AAA will return any filing fees received from the individuals." *Id.* (emphasis added). The AAA reiterated in an email that it would be

administratively closing the cases because it "ha[d] not received *Samsung's portion* of the filing fees for these matters." Dkt. 27-18 (emphasis added). The AAA also granted the unopposed request to place the 14 California arbitrations in abeyance. *Id.* [10]

### I.    The district court compels arbitration, requires Samsung to pay its filing fees, and stays the case pending future disputes.

Having no further recourse before the AAA, the claimants filed a petition to compel arbitration in federal court. The claimants also asked the court to order Samsung to pay the company's share of the fees as determined by the AAA, as was necessary for the arbitrations to actually commence.

Samsung, in response, claimed that its refusal to pay its filing fees was not a refusal to arbitrate, while continuing to press its argument that the claimants had waived their own right to arbitrate by refusing to pick up Samsung's tab. Dkt. 27 at 23-31. Samsung also asserted that the district court lacked the authority to compel Samsung to pay its share of the filing fees. *Id.* In addition, Samsung filed a motion to dismiss the petition for improper venue. Dkt. 26.

The district court dismissed without prejudice the claimants residing outside of the Northern District of Illinois. RSA19. It then granted the remaining 35,610

---

[10] Samsung now points to the claimants' request to stay these cases to cast aspersions on their BIPA claims. Samsung Br. 1-2. Yet if Samsung were so certain that these claims "lack merit," it could have objected to the stay and gone to the merits. *Id.*

claimants' motion to compel arbitration and ordered the action "stayed pending arbitration." RSA19, 36; Dkt. 50. The district court ordered Samsung to pay its filing fees, now nearly a year overdue. RSA36. The company had made the "business decision" to require individualized arbitrations under the AAA rules, "and for better or for worse, the time calls for Samsung to pay for it." *Id.*

### J.     Samsung appeals the district court's order staying the case

Samsung appealed to this Court, and this Court ordered Samsung to file a jurisdictional memorandum explaining why its appeal should not be dismissed. ECF 5 (citing 9 U.S.C. § 16(b) and *Moglia*, 547 F.3d at 837). Samsung also sought a stay pending appeal. Dkt. 61. Samsung warned that if arbitration were to proceed, "the [District] Court will need to superintend any further fee disputes that may arise … [and] may be asked to resolve many other issues." Dkt. 61 at 14-15. The district court denied Samsung's motion.  Dkt. 68; 9-SA2419-32. Samsung renewed its motion in this Court, which granted the motion and required the parties to further brief appellate jurisdiction. ECF 29.

Following the district court's order, the 35,610 remaining claimants again filed demands for arbitration with the AAA. On November 13, as a result of this Court's November 8 order, the AAA stayed administration of the re-filed claims.

18

## SUMMARY OF ARGUMENT

**I.** Under the FAA, "an appeal may not be taken" from an order that "compel[s] arbitration" and "stay[s] any action." 9 U.S.C. § 16(b). Thus, when a court enters "a stay instead of a dismissal," that order is "not [] appealable." *Green Tree Fin.-Ala. v. Randolph*, 531 U.S. 79, 87 n.2 (2000); *see Moglia*, 547 F.3d at 837 ("A pro-arbitration decision, coupled with a stay (rather than a dismissal) of the suit, is not appealable … Indeed, 9 U.S.C. § 16(b) positively *forbids* appeal."). The district court compelled arbitration and stayed this case. RSA2, 36; 1-SA10. Without acknowledging § 16(b), Samsung seeks to evade the statute by resurrecting a distinction between "independent" and "embedded" actions that *Green Tree* interred. *Compare* 531 U.S. at 87, *with* Samsung Br. 9. Samsung's appeal should be dismissed.

**II.** If the Court reaches the merits, it should affirm the district court's conclusion that Samsung failed to raise a genuine dispute of material fact that would warrant denying any specific claimants' individual petition to compel arbitration. The claimants pointed to materials in the record showing that they are Samsung users. Samsung responded with general, unsubstantiated allegations about unspecified claimants based on records that it wouldn't disclose—allegations already addressed by the AAA. "Samsung ha[d] not identified a genuine issue of fact as to any *individual* [claimant]," having failed to "identify specific evidence in the record demonstrating a material factual dispute for trial." RSA23-24 (quoting *Tinder v.*

19

*Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

**III.** The district court correctly found that Samsung's refusal to pay its filing fees, as determined by the AAA, was a "refusal … to arbitrate" under 9 U.S.C § 4. Even after Samsung refused to pay its filing fees, the AAA stated that Samsung was "responsible" for them. 5-SA1269. When the AAA still "ha[d] not received Samsung's portion of the filing fees," ECF 27-18, the arbitrations were "closed due to non-payment of filing fees by the business." 5-SA1275. At no point did the AAA place responsibility for "Samsung's portion" on the claimants. Samsung's arguments about what is or isn't solely within the province of the AAA are thus beside the point. The FAA requires *courts* to determine if there was "a refusal … to proceed to arbitration." *Zurich Am. Ins. v. Watts*, 466 F.3d 577, 580 (7th Cir. 2006). In adjudicating that question, the district court deferred to the AAA's fee determination. If Samsung wants to argue that a court faced with a "refusal" can't compel arbitration and order payment of fees assessed by the arbitrator, that is wrong. Section 4 *requires* a court to compel arbitration, and incidental to this, a judge may issue "case-management orders" such as an order to "pay arbitrators." *Moglia*, 547 F.3d at 837-38.

**ARGUMENT**

**I.     This Court lacks appellate jurisdiction.**

**A.     Under the FAA, "an appeal may not be taken" from an order "granting a stay" and "compelling arbitration."**

Samsung's appeal is expressly prohibited by statute. Under the FAA, "an appeal may not be taken" from a decision that compels arbitration and stays (rather than dismisses) a case. 9 U.S.C. § 16(b). "Except as otherwise provided in [28 U.S.C. § 1292(b)]," the statute forbids appeals from interlocutory orders "granting a stay of any action," "directing arbitration to proceed," or "compelling arbitration." *Id.* The district court here denied Samsung's motion to dismiss certain claims, compelled those claims to arbitration, and stayed the case. RSA2, 36; 1-SA10; Dkt. 50. And Samsung neither sought nor obtained certification under 28 U.S.C. § 1292(b). So, under § 16(b)'s plain terms, "an appeal may not be taken."

This straightforward reading of § 16(b) comports with circuit precedent. "A pro-arbitration decision, coupled with a stay (rather than a dismissal) of the suit, is not appealable … Indeed, 9 U.S.C. § 16(b) positively *forbids* appeal.'" *Moglia*, 547 F.3d at 837. The Court applied that same rule three years ago: "Here, defendants appeal a pro-arbitration decision in a stayed lawsuit without a § 1292(b) certification … Therefore, defendants present the same type of appeal considered—and rejected— in *Moglia*." *FCstone*, 950 F.3d at 500-01; *see also Ball v. Tesla Motors*, 2022 WL 16627493 (7th Cir. 2022).

Three days after the appeal was docketed, this Court issued an order bringing its precedent to Samsung's attention. Dkt. 5. Yet Samsung's ten-page jurisdictional statement doesn't mention it. Br. 6-16. Nor does it cite or discuss 9 U.S.C. § 16(b). Samsung claims (at 10-11) that three out-of-circuit cases support its right to appeal. But it neglects to mention that none involved stays under the FAA. Samsung also fails to acknowledge the obvious reason for the stay here: so that the district court may referee any continuing disputes over fees—which may very well recur given Samsung's proclivity to obstruct the process based on its unilateral determinations about the claimants' cases. Samsung was more forthcoming below, acknowledging that the district court "will need to superintend any further fee disputes that may arise during the [] arbitrations." Dkt. 61 at 14-15.

**B.    After *Green Tree*, the relevant jurisdictional distinction is between dismissals and stays—not between "independent" and "embedded" actions.**

When it amended the FAA to add § 16 in 1988, Congress replaced a confusing patchwork with clear jurisdictional rules to "precisely regulate[] the kinds of arbitration-related decisions a litigant may appeal." *Preferred Care of Del. v. Hopkins*, 845 F.3d 765, 768 (6th Cir. 2017). The statute "permits review" (in § 16(a)) "of orders that interfere with arbitration," but it "prohibits appeals" (in § 16(b)) from "orders that favor arbitration, such as those 'granting' stays in favor of arbitration." *Id.*

"When a district court directs arbitration and stays the proceedings, the only exception to § 16(b) is an appeal by permission under § 1292(b)." *Id. at* 770 (quoting *Moglia*, 547 F.3d at 838). Without acknowledging § 16(b), Samsung effectively seeks an atextual exception from it—a request this Court should greet with caution: "The proper inference ... is that Congress considered the issue of exceptions and ... limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000). Recharacterizing a stay as a "final decision," as Samsung does, too easily circumvents the statute—"§ 16(b) prevents litigants from using [the final-judgment rule] to get review of orders staying litigation in favor of arbitration." *Moglia*, 547 F.3d at 838.

Samsung's argument goes like this: Notwithstanding § 16(b)(1)'s bar on appeals from stay orders, an exception should be made for stays issued in what the courts used to call "independent" actions (where requests to compel arbitration are the sole issue before the court) as opposed to "embedded" actions (where requests to compel arbitration are accompanied by other claims). *See Napleton v. Gen. Motors*, 138 F.3d 1209, 1211 (7th Cir. 1998) (describing this distinction). On this view, a stay will be appealable whenever it is issued in an independent action—that is, whenever "the sole issue before the district court [is] a claim for arbitration under the FAA." Samsung Br. 9. Because the claimants here sought "an order requiring Samsung to arbitrate" (an independent action) and didn't file an action "rais[ing] their underlying state-law

claims" (an embedded action), Samsung says the stay is a "final decision" under §
16(a)(3) and "the court's entry of a stay does not change that." Samsung Br. 14-15.

**1.** Samsung's argument is squarely foreclosed by *Green Tree Financial-Alabama v.
Randolph*, 531 U.S. 79 (2000). *Green Tree* held that the relevant jurisdictional dividing
line under § 16(a) and § 16(b) is *not* between so-called "independent" and "embedded"
actions, as many lower courts had held, but between dismissals (which are
appealable) and stays (which aren't). *Id.* at 87-89 & n.2.

*First*, the Supreme Court "disagree[d]" with the notion that "the distinction
between independent and embedded proceedings and its consequences for finality
were so firmly established at the time of § 16's enactment that we should assume
Congress meant to incorporate them into § 16(a)(3)." *Id.* at 88. The Court clarified
that "the plain language of the [statute] does not suggest that Congress intended to
incorporate the rather complex independent/embedded distinction, and its
consequences for finality, into 16(a)(3)." *Id.* at 88-89.

*Second*, having rejected this distinction, the Court rested its holding on the
traditional meaning of "final decision." An order compelling arbitration and
entering a judgment of dismissal was a "final decision" as traditionally understood
because it "left no part of [the case] pending before the court"—it "disposed of the
entire case" and left "the court nothing to do but execute the judgment." *Id.* at 86.

24

But when a court enters "a stay instead of a dismissal," that order is "not []
appealable." *Id.* at 87 n.2 (citing 9 U.S.C. § 16(b)(1)).

Both aspects of *Green Tree* doom Samsung's appeal. *Green Tree* stands for the
proposition that where, as here, a district court has "entered a stay instead of
dismissing the case," the appeal is "barred by 9 U.S.C. § 16(b)(1)." *Lamps Plus v. Varela*,
139 S. Ct. 1407, 1414 n.1 (2019) (citing *Green Tree*); *see Moglia*, 547 F.3d at 837 (same).

Samsung tries to limit *Green Tree* to its facts, arguing that a stay would only
have been unappealable there because it was an embedded proceeding. Samsung
Br. 13 ("*Green Tree* involved substantive claims in addition to the request for
arbitration."). But nothing in *Green Tree* suggests that appealability turns on this
distinction. And it makes no sense to read it that way. After all, the Court rejected
that very distinction as atextual. *See Blackwater Sec. Consulting v. Nordan*, 2008 WL
8884112, at *3 (4th Cir. 2008) (rejecting this "factual distinction"). While Samsung
savvily avoids using "independent/embedded" terminology, its argument amounts
to the same thing. *Compare Green Tree*, 531 U.S. at 87 (defining the
independent/embedded distinction as turning on whether a request for arbitration
is "the sole issue before the court"), *with* Samsung Br. 9 (arguing that jurisdiction
turns on whether a request for arbitration is "the sole issue before the district court").

**2.** Traditional tools of statutory construction also foreclose Samsung's attempt
to rewrite the FAA. The statute prohibits an appeal from an order "granting *a* stay

of *any* action under section 3 of this title." 9 U.S.C. § 16(b) (emphasis added). On Samsung's theory, however, the statute bars only appeals from orders granting *some* stays under section 3, for *some* reasons, in *some* actions (those where arbitration isn't "the sole issue before the court," Samsung Br. 9). But the Supreme Court has held the opposite: It has read § 16's "clear and unambiguous terms" to apply categorically, regardless of the reasons for a stay pending arbitration, emphasizing that the statute "unambiguously makes the underlying merits irrelevant." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627-28 (2009). And Congress knows that "the word 'any' has an expansive meaning." *United States v. Gonzales*, 520 U. S. 1, 5 (1997). Its use here further confirms that Congress chose not to "incorporate the rather complex independent/embedded distinction." *Green Tree*, 531 U.S. at 88-89. Moreover, the general provision on final decisions shouldn't be read to trump the specific provision on stays. *See Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992).

Even if § 16(b)(1) didn't exist, a stay order still wouldn't satisfy § 16(a)(3)'s finality requirement—the sole basis for Samsung's argument. As this Court has held, when the district court has "kept the lawsuit open" with a stay, § 16(a)(3) offers no "jurisdictional foothold." *FCStone*, 950 F.3d at 501. When a district court enters a stay "pending arbitration," as it did here (Dkt. 50)—it expressly leaves a "part of it pending before the court." *Green Tree*, 531 U.S. at 86. Unlike a dismissal, "a stay, by definition, constitutes a postponement of proceedings, not a termination, and thus

lacks finality." *Apache Bohai v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003). So, "although it may be true that in some instances the entry of a stay disposes of most or all issues, that fact alone does not render it the functional equivalent of a dismissal." *Id.* A stay "suggests that the district court perceives that it might have more to do than execute the judgment." *ATAC v. Arthur Treacher's*, 280 F.3d 1091, 1099 (6th Cir. 2002); *see also Adair Bus Sales v. Blue Bird*, 25 F.3d 953, 955 (10th Cir. 1994) ("[T]he presence of issues other than the dispute's arbitrability is inherent" in a § 3 stay). For these reasons, a stay does not come within the "longstanding meaning" of "final decision." *Green Tree*, 531 U.S. at 86; *see* 15A Wright & Miller, Fed. Prac. & Proc. Jurisdiction § 3914.13 (3d ed. 2023) ("Ordinarily the decision is not final, whether it grants or denies the stay.").[11]

**3.** In *Green Tree*'s wake, the circuits have fallen in line: They recognize that "[a]n arbitration order entering a stay, as opposed to a dismissal, is not an appealable final order." *Apache*, 330 F.3d at 309. This Court's "sister circuits" further hold that "finality requires a dismissal." *Accenture LLP v. Spreng*, 647 F.3d 72, 76 n.3 (2d Cir. 2011). ("[W]e will abide by both the letter and spirit of *Green Tree* and require an official dismissal of all claims before reviewing an order to compel arbitration."). And the

---

[11] Well before § 16, the "Supreme Court and the lower federal courts [had] uniformly held that district court orders staying …. proceedings pending arbitration are interlocutory and thus are not appealable under section 1291." Mathy, *Appealability of District Court Orders Staying Court Proceedings Pending Arbitration*, 63 Marq. L. Rev. 31, 33 (1979).

circuits universally recognize that *Green Tree*'s repudiation of the independent/embedded distinction "displaces" contrary circuit precedent. *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) (Sotomayor, J.).

This circuit is no different. Before *Green Tree*, the independent-embedded distinction had "a talismanic significance in [this Court's] jurisprudence," *Napleton*, 138 F.3d at 1211. But not everyone agreed. In Judge Wood's view, the distinction's "Byzantine complexity" ignored the "crucial difference" between stays and dismissals: a dismissal leaves nothing "pending on the district court's docket," in contrast with "an order staying proceedings (which is certainly not appealable, see 9 U.S.C. 16(b)(1))." *Id.* at 1215, 1217 (Wood, J., dissenting). Her view prevailed: *Green Tree* singled out *Napleton* for abrogation. 531 U.S. at 87 n.3.

That's why this Court's post-*Green Tree* cases don't turn on the distinction Samsung presses. In *FCStone*, this Court held that § 16(b)(1) barred an appeal from a stay order in an "independent" action—an "action claiming the parties must arbitrate their disputes." 950 F.3d at 494. "The district court kept the lawsuit open to address arbitration-related issues," *id.* at 501—just as the district court did here. The inquiry didn't turn on whether there were additional claims left unresolved, what the district court's reasons were, or on any other considerations outside § 16(b)'s text. Instead, the rule under § 16(b) is simple, as all jurisdictional rules should be: because the "defendants appeal[ed] a pro-arbitration decision in a stayed lawsuit without a §

28

1292(b) certification," the case "presented the *same type of appeal* considered—and rejected—in *Moglia*." *Id.* at 500-01 (emphasis added).

Samsung's argument depends not only on ignoring precedent but on reviving decisions repudiated by *Green Tree*. That's why Samsung (at 9) needs to characterize Judge Posner's opinion in *American International Specialty Lines v. Electronic Data Systems*, 347 F.3d 665, 668 (7th Cir. 2003), as having "reaffirmed" its preferred rule. It did no such thing. The holding was that a party hadn't forfeited its right to object to arbitration because, years earlier, it had "made a bona fide effort to obtain appellate review" of an order compelling arbitration by requesting a final order from the district court, which never ruled on it. *Id.* at 669. In a passage on the tangled procedural history, Judge Posner speculated about whether an earlier "ambiguous" order, which dismissed the case but seemed to retain jurisdiction, would have been appealable. *Id.* at 668. He observed that two pre-*Green Tree* opinions had "suggested" that, if a court retains jurisdiction in an independent action solely to enforce the arbitral award, "the order to arbitrate is final (final enough might the better way to put it)." *Id.* But Judge Posner didn't reach a firm conclusion: "If this is right," and he ventured that "it does seem sensible," then the order at issue in the long-dismissed appeal would've been "appealable." *Id.*

It's no wonder that cases like *Moglia* and *FCStone*, which straightforwardly apply § 16(b)(1), don't cite *American International* as creating the atextual carve-out that Samsung seeks.

### C.    Other circuits' cases do not support jurisdiction here.

Lacking a firm foothold in the statutory text or controlling precedents, Samsung cites three cases from the Fifth, Ninth, and Eleventh Circuits. Samsung Br. 10-11. But none holds that § 16(b)(1) bars appeals from an order compelling arbitration and staying proceedings under the FAA.

**1.** The Fifth Circuit has "repeatedly held that an arbitration order entering a stay, as opposed to a dismissal, is not an appealable order." *Psara Energy, Ltd. v. Advantage Arrow Shipping*, 946 F.3d 803, 807 (5th Cir. 2020); *see Apache*, 330 F.3d at 309 ("[A] stay, by definition … lacks finality," regardless of whether "the entry of the stay disposes of most or all issues."). Samsung cites *Brown v. Pacific Life Insurance*, 462 F.3d 384 (5th Cir. 2006), but that case deemed § 16(b)(1) inapplicable because "the district court did not issue" a stay under the FAA—only "ongoing state proceedings" were stayed. *Id.* at 392-93 (citing 28 U.S.C. § 2283).

**2.** Samsung's remaining cases arose under the Labor Management Relations Act, not the FAA. Jurisdiction rested on the labor-specific doctrine of *Goodall-Sanford v. United Textile Workers of America*, 353 U.S. 550 (1957), which makes orders compelling arbitration immediately appealable via 28 U.S.C. § 1291. *See United Steel, Paper &*

*Forestry Workers Int'l Union v. Wise Alloys*, 807 F.3d 1258, 1267 (11th Cir. 2015); *Int'l All. of Theatrical Stage Emp. v. InSync*, 801 F.3d 1033, 1036-38 (9th Cir. 2015). The FAA, of course, gives the opposite command. *Compare* 9 U.S.C. § 16(b)(2), (3), *with Goodall-Sanford*, 353 U.S. at 551 ("Nor need we consider cases … holding that an order directing arbitration under the [FAA] is not appealable. The right enforced here is one [under the LMRA]."). As *United Steel* recognized, "the text of the [FAA] provides no basis for applying it in [a] LMRA case either directly or by analogy" so FAA precedents are "simply not instructive." 807 F.3d at 1268.[12]

### D. Because the district court stayed (rather than dismissed) this action, Samsung's appeal is prohibited.

There's no denying that the district court stayed this case pending arbitration. 1-SA10. Under § 16(b)(1), that's enough to foreclose jurisdiction. *See, e.g., Apache*, 330 F.3d at 309; *ATAC*, 280 F.3d at 1099; *Blackwater*, 2008 WL 888412, at * 5. What matters is the *fact* that the district court compelled arbitration and stayed the case—not its reasons for doing so. Here, as in *FCStone*, the district court "stay[ed] the case, but did not explain the terms or purpose of the stay." *FCStone*, 950 F.3d at 498.[13] No matter.

---

[12] *International Alliance v. InSync Show Productions* further suggested that, "[w]hether we apply the FAA or look to it for guidance, we would reach the same result." 801 F.3d 1033, 1040 (9th Cir. 2015). The Ninth Circuit hasn't relied on this dictum outside the LMRA context.

[13] *Compare* Minute Order, *INTL FCStone Fin. v. Jacobson*, No. 1:19-cv-01438, Dkt. 100 (N.D. Ill. Aug. 27, 2019) (minute order: "[c]ase is stayed"), *with* 1-SA10, Dkt. 50 (minute order: "[c]ase stayed pending arbitration").

Jurisdiction under § 16 turns on the statute's "clear and unambiguous terms," "regardless of whether the litigant is in fact eligible for a stay." *Arthur Andersen*, 556 U.S. at 627–28 (2009). "The jurisdictional statute here unambiguously makes the underlying merits irrelevant"—instead, "[j]urisdiction over the appeal … must be determined by focusing on the category of [the] order." *Id.* That categorical language is triggered when a court grants "a" stay under the FAA of "any action," precluding a judicially created exception based on the reason for the stay or the nature of the action. Where a court has "entered a stay instead of dismissing the case," the appeal is "barred by 9 U.S.C. § 16(b)(1)." *Lamps Plus*, 139 S. Ct. at 1414 n.1.

As it happens, though, the district court had good reasons to enter its stay. The parties are in the midst of a hotly contested, evolving dispute over Samsung's refusal to arbitrate—specifically, its steadfast refusal to pay its share of the filing fees for thousands of arbitrations before the AAA based on the company's unilateral determinations that filing requirements were not met and that the claims lacked merit. Under the circumstances, it was sensible for the district court to retain jurisdiction. Section 3 of the FAA instructs district courts to lift a stay pending arbitration when a party is in "default in proceeding with such arbitration." 9 U.S.C. § 3. Samsung may well refuse again to pay arbitration fees, prompting the district court to lift the stay, direct Samsung to "pay [the] arbitrators," and ensure that the proceedings are not "dragged out interminably." *Moglia*, 547 F.3d at 838. Indeed,

Samsung has "admit[ted] that it contemplate[d] further proceedings before the district court." *Accenture*, 647 F.3d at 76. In briefing below, Samsung acknowledged (in protest) that the district court "will need to superintend any further fee disputes that may arise during the [] arbitrations" and "also may be asked to resolve many other issues" that may arise before the AAA. Dkt. 61 at 14-15.

Because the FAA provides that "an appeal may not be taken" from orders compelling arbitration and granting a stay, Samsung's appeal must be dismissed.

## II.  Samsung failed to raise a genuine dispute of material fact as to the existence of an arbitration agreement for any individual claimant.

If this Court does reach the merits, it should affirm: The district court correctly compelled arbitration because Samsung failed to raise a genuine dispute of material fact as to whether any individual claimant uses a Samsung device. The record shows that the claimants brought individual demands as users of such devices, provided significant identifying information, and underwent official and adversarial vetting before the AAA. During this process, Samsung had multiple opportunities to contest that any given claimant uses a Samsung device. Yet Samsung opted instead to rely on innuendo about unspecified claimants, based on information that the company has in its possession but has never disclosed. That is insufficient to defeat a motion to compel arbitration.

Samsung made a strategic decision to withhold the information in its consumer records. This had benefits for Samsung, since this information would presumably reveal that tens of thousands of the claimants use Samsung devices. But there was a risk that the AAA and then the district court would reject unsubstantiated allegations. That is what happened. Samsung should not be allowed to escape the consequences of its strategic choices, any more than it should be allowed to escape the arbitration contract it drafted.

## A. A motion to compel arbitration is a summary proceeding where courts have wide latitude to consider a range of evidence

Under the FAA, "[a] district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735. Only "if the district court determines that the making of the arbitration agreement is seriously disputed" must the court "proceed summarily to the trial thereof." *Id.* (quoting 9 U.S.C. § 4). While the statute does not specify the standard, courts "have analogized the standard to that required of a party opposing summary judgment under Rule 56(e);" "the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists." *Id.* This means that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Id.* Nor is the existence of "some metaphysical doubt as to the material facts" enough. *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019).

As Samsung recognizes, section 4 thus establishes a burden-shifting framework. Samsung Br. 39-40. The party seeking arbitration must come forward with evidence that the parties agreed to arbitrate. Then the party opposing arbitration must demonstrate a genuine dispute of material fact based on something more than general denials or "metaphysical doubts."

The analogy to summary judgment also indicates that district courts have broad leeway as to the record evidence they may consider. "Sworn testimony is not the only basis on which summary judgment may be granted." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Facts may be supported by a broad range of "materials in the record," including a non-exhaustive list of "depositions, documents, electronically stored information, affidavits or declarations, stipulations … , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Further, "[i]f a party … fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Thus, "[t]he court and the parties have great flexibility with regard to the evidence that may be used." 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2721 (4th ed. 2023).[14]

---

[14] One of Samsung's *amici* now argues that certain record materials were inadmissible under the Federal Rules of Evidence. *See* Br. of Chamber of Commerce 13-14. Yet even "documents inadmissible under the evidence rules may be considered by the court if not challenged" below. Wright & Miller, Fed. Prac. & Proc. Civ. § 2722.

This streamlined procedure makes sense in light of the FAA's goals. "Arbitration is supposed to be a quick and cheap substitute for litigation." *Moglia*, 547 F.3d at 838. Allowing one party to delay arbitration through vague objections would undermine this. After all, "as justice delayed may amount to justice denied, so it is with arbitration." *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir. 2005).

## B. While the claimants pointed to record documents as to each individual, Samsung responded with only unsubstantiated assertions about all of the claimants.

The dispute here is narrow. Samsung doesn't deny that users of Samsung devices are bound by the company's arbitration agreement. Nor could Samsung make such an argument with a straight face, as it has regularly argued the opposite in court. So the only question here is whether the claimants provided sufficient evidence that they use Samsung devices. The district court correctly held that the claimants satisfied this burden and Samsung had failed to raise a genuine dispute of material fact as to any individual claimant.

**1.** Samsung does not deny that every single claimant submitted, through counsel, a demand for arbitration stating they are "a natural person who owns a Samsung Galaxy Device and has taken photographs of themselves." Dkt. 1-11 at 1; *see*

---

Samsung didn't raise any admissibility challenge below, so it can't do so now. *See Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 955 (7th Cir. 2021). And a court can review evidence whose "substance would be admissible," even if "the form produced at summary judgment [is] not [] admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010).

*also* Dkt. 1-11 at 29-30. Each claimant also provided their full name, home address, phone number, email address, and a copy of the arbitration contracts to which they had agreed in using their Samsung devices. *See supra* 11-12.

**2.** The record also contains ample evidence of the official and adversary vetting before the AAA, which further substantiated the claimants' submissions.

**2.a.** In response to the claimants' individualized arbitration demands, Samsung provided nothing but innuendo based on internal records that the company won't disclose. Samsung now claims that it identified issues "by sampling the information that *Appellees submitted* to the AAA." Samsung Br. 45. That characterization is, at best, misleading. "[B]ased on our review of *Samsung's own records*," the company told the AAA, there were an unspecified number of "Claimants who Samsung has no record of ever being a customer or owning any of the devices at issue." 5-SA1251-52 (emphasis added).

Samsung also protests that its customer records are not comprehensive, asserting without citation that "not every owner registers their device." Samsung Br. 45. But Samsung previously argued that if someone didn't show up in the company's records this indicated that they were not "proper" claimants. 5-SA1251-52. Samsung also strongly incentivizes people to register. *See supra* 13. More fundamentally, this still doesn't justify Samsung's failure to identify a single claimant—out of tens of thousands—who didn't show up in its records. Samsung has never explained why it

refused to provide information entirely within its possession. But it's presumably because these records would show that thousands of the claimants own Samsung devices and that Samsung has known this the whole time—meaning that the company had no credible basis for arguing otherwise.

As to Samsung's other concerns, the company again said only that it had information "suggesting" that some unspecified claimants had died, had criminal histories, had previously participated in litigation, etc. 5-SA1252.

**2.b.** Even then, the record shows that the AAA took Samsung's allegations seriously and performed its own review, which actually identified issues with specific claimant information, mostly having to do with addresses. 5-SA1266-67. At the AAA's request, the claimants then cured this information and provided a "substantive response" to Samsung's allegations. *See* 5-SA1267; Dkt. 27-13.

As a result of this vetting, the claimants had provided considerable information about each individual claimant. Take Ms. Wallrich. The AAA (and Samsung) had her full name, her home address, the city in which she lived, her phone number, and her email address. The AAA had her demand for arbitration stating that she was a Samsung device user who had used that device to take photos of herself. The AAA had a copy of her arbitration agreement. Samsung, for its part, had not provided the AAA with any specific evidence about whether *Ms. Wallrich* owned a Samsung device.

**2.c.** The AAA then determined that the claimants had satisfied their burden in the forum that Samsung had selected, based on the rules that Samsung had selected. 5-SA1269. Samsung dismisses this as a mere formality. But, if anything, the record shows more individualized vetting by the AAA than by Samsung. And if Samsung actually had evidence in its possession indicating that specific claimants were not device owners, it could have challenged the AAA's determination before a Process Arbitrator. *See supra* 8. Instead, Samsung refused to even address the issue. 5-SA1272-73.

**3.** When the claimants filed a petition to compel arbitration as users of Samsung devices and cited to this record evidence, 1-SA-12-17, Samsung just pointed back to its earlier allegations before the AAA and the concerns voiced by the AAA— *before* the claimants had addressed these issues. Dkt. 26 at 19. Samsung thus failed once again to offer any evidence showing that any specific claimant was not a Samsung user, and under Rule 56(e), "merely 'denying facts' … is not enough." RSA24 (citing *Tinder*, 305 F.3d at 735). Indeed, Samsung never even denied that any particular claimant had a Samsung device. And "fail[ure] to properly address another party's assertion of fact" allows a court to "consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

**4.** On this record, the district court determined that the claimants "have made a sufficient showing that they are customers." RSA23. By this point, the record

contained the following: (a) each claimant had filed a demand for arbitration stating that they are the owner of a Samsung device, along with significant amounts of identifying information; (b) this information was subject to official and adversarial vetting, in which both the AAA and Samsung raised issues that the claimants addressed; (c) Samsung—despite claiming that it had records of its customers against which it could compare the list of claimants—failed repeatedly to identify a single claimant out of tens of thousands who was not in those records; and (d) after the claimants satisfied the requirements of the forum that Samsung selected, the company declined to provide any further basis for its allegations or challenge the claimants' filings. Even if any particular material in the record was insufficient on its own, the record taken as a whole was enough to meet the claimants' initial burden in a summary proceeding to compel arbitration.

**4.a.** In the face of this evidence, "Samsung ha[d] not identified a genuine issue of fact as to any *individual* [claimant]," having failed to "identify specific evidence in the record demonstrating a material factual dispute for trial" as to any particular person. RSA23-24 (emphasis added) (quoting *Tinder*, 305 F.3d at 735). Samsung may have raised "some metaphysical doubt" that any given claimant does

not own a Samsung device, but that is not enough. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 586 (1986).[15]

Return to Ms. Wallrich. She'd submitted a demand in arbitration stating that she is a Samsung device user, along with a copy of her arbitration agreement. She'd provided her phone number and her address. Neither the AAA nor Samsung ever raised any issues with her particular filing. Samsung never said she was fictitious or that she didn't show up in the company's records. All the company ever said was that it had hidden information that some unspecified number of claimants represented by the same law firm might have issues of that kind. That was insufficient to deny Ms. Wallrich her day in arbitration.

**4.b.** Samsung now suggests that "[t]he district court prematurely (and wrongly) shifted the evidentiary burden to Samsung" by considering the company's failure to identify specific issues with any individual claimant. Samsung Br. 44. But reviewing record evidence of what occurred before the AAA *prior* to the motion compel was not shifting any burden. The district court therefore appropriately considered that after the claimants brought claims in arbitration as Samsung device

---

[15] The district court also correctly distinguished *Bigger v. Facebook*, 947 F.3d 1043 (7th Cir. 2020), where, in a different procedural posture, this Court determined that it was insufficient for a company to merely provide template arbitration forms and estimates of the number of employees who had signed such forms. *Id.* at 1048. The claimants here have provided individualized information, including copies of arbitration contracts. RSA22-23.

users, the company repeatedly failed to provide evidence that any single claimant didn't own a Samsung device. Indeed, in asking whether a party has refused to arbitrate, section 4 contemplates that a court adjudicating a motion to compel will review what occurred in an arbitration. 9 U.S.C. § 4. Nor is it inappropriate for a court to consider a party's failure to properly respond in determining whether a fact is undisputed. Fed. R. Civ. P. 56(e)(2).

**4.c.** Before this Court, Samsung—at long last—tries to identify issues with certain specific claimants. Yet some of those names were removed after the AAA raised concerns, before the claimants filed their motion to compel arbitration. *See supra* 14. Others are a person who goes by their first initials, Samsung Br. 23 ("Gl Williams"), or just a typo, *id.* ("Lornabridges Bridges"), as Samsung presumably knows from the refiled arbitration demands. And the company has never once backed up its marquee claim that some of the claimants are "deceased." Samsung Br. 1, 22, 45. As to the claim that Samsung identified specific individuals posing a dual-representation issue, Samsung's only citation appears to be its brief on a separate motion about reassigning a separate case. Samsung Br. 27 (citing Dkt. 40). And as Samsung is aware—and as the district court was aware at the time it decided the motion to compel—this issue was satisfactorily resolved shortly thereafter via a protocol involving the claimants, counsel, and the other firm. Dkt. 42.

More fundamentally, Samsung already had multiple opportunities in multiple fora to raise issues with specific claimants. If Samsung had done so, maybe the court might have found a genuine dispute of material fact as to these individuals. Or maybe the court would have required the claimants to produce further evidence. Fed. R. Civ. P. 56(e)(1). But Samsung didn't. And it is telling that even now, the best Samsung can do is flyspeck a few names out of tens of thousands, including issues that were already resolved or that weren't issues in the first place. As Samsung presumably knows, the refiled requests for arbitration before the AAA included only one Deonta Daniels, one Charlean Garrison, one Mark D'Arienzo, and no Bluff Master. Samsung Br. 23. The claimants have systematically addressed the specific issues identified by the AAA and Samsung.

**5.** Finally, an affirmance here won't foreclose Samsung from further challenging specific claimants. Samsung could still seek a Process Arbitrator. 5-SA1269. If any claimants haven't used Samsung devices, the company would easily prevail on the merits of their BIPA claims. And if any claims were filed for a frivolous or improper purpose, Samsung can recover its fees. 5-SA1192. This all just highlights the inappropriateness of Samsung's approach. If the company had legitimate concerns about the claimants or their claims, the proper path—under the rules that Samsung selected—was for Samsung to pay its filing fees and raise those disputes before the AAA.

43

**6.** Nonetheless, if this Court concludes that the claimants have not provided enough record evidence that an agreement to arbitrate existed, a limited remand would be appropriate to allow the district court to consider further evidence from the claimants. While a remand would further delay a proceeding that has already been prolonged by Samsung's refusal to pay filing fees and to provide anything but the vaguest descriptions of its own information about its own customers, the claimants stand ready and willing to provide any further evidence that this Court might require.

## III. The district court properly compelled Samsung to arbitrate and to pay the filing fees required by the AAA to begin the arbitrations.

After carefully reviewing the record, the district court found that Samsung had refused to pay its share of the filing fees as determined by the AAA. This was a "refusal … to arbitrate" under the FAA, which required the district court to compel arbitration. 9 U.S.C. § 4. Because Samsung's refusal to arbitrate consisted of its refusal to pay the fees necessary to start arbitration, the district court correctly ordered Samsung to pay so that the arbitrations could actually begin.

Samsung's counterarguments boil down to fighting the facts. The AAA clearly stated that the arbitrations were "closed due to non-payment of filing fees by the business," 5-SA1275—that is, because it "ha[d] not received Samsung's portion of the filing fees." ECF 27-18. But on Samsung's telling, the AAA absolved Samsung from

44

paying its share of the fees. And because the claimants were unwilling to pay Samsung's bill, Samsung says, they were responsible for the AAA closing the arbitrations. That is simply not what happened.

Below, Samsung argued that because the claimants didn't pay Samsung's fees, *the claimants* had waived their right to arbitrate. The district court didn't buy it and Samsung doesn't press that argument before this Court. But its current argument cashes out the same way: Because the claimants declined to pay Samsung's fees, they lost their right to compel arbitration.

And to the extent that Samsung wishes to argue that *even if* the AAA required Samsung to pay its fees, the district court lacked the authority to compel arbitration or order fees, that would also be wrong. When uncooperative parties "refuse[e] … to arbitrate," the FAA gives courts the power to issue "order[s] directing" them back into arbitration. 9 U.S.C. § 4. This includes the power to order compliance with the arbitrators' requirements for the arbitration to take place, which means that courts may order a party to "pay arbitrators." *Moglia*, 547 F.3d at 837-38.

### A.    The district court correctly found that the AAA had allocated "Samsung's portion" of the fees to Samsung.

The district court correctly found that Samsung's portion of the fees "were deemed Samsung's responsibility by the AAA." RSA28. That is consistent with the facts, AAA rules, and common sense.

**1.** At each step, the AAA made clear that, consistent with the plain text of AAA rules, Samsung was responsible for the business's share of the filing fees.

*First*, after Samsung initially refused to pay the filing fees, the AAA determined that the company was "responsible for payment of the initial administrative filing fees totaling $4,125,000.00" and invoiced Samsung. 5-SA1269. That's because "the business's share of the filing fees is due as soon as the AAA confirms in writing that the individual filing meets the filing requirements." 5-SA1198. And "AAA fees *shall* be paid in accordance" with its fee schedule. 5-SA1177 (emphasis added).

*Second*, the AAA explained that, if Samsung was unhappy with the fee decision, it could pay its initial filing fees and seek a Process Arbitrator. 5-SA1260, 1269.

*Third*, after Samsung again refused to pay, the AAA stated that Samsung had "decline[d] to submit *their portion* of the filings fees," that "the claimants decline paying *Samsung's portion* of the filing fees," and that the AAA was closing the arbitrations "due to non-payment of filing fees *by the business*." 5-SA1275 (emphases added).

*Fourth*, the AAA reiterated in a follow-up email that it would be administratively closing the cases because it "ha[d] not received *Samsung's portion* of the filing fees for these matters." ECF 27-18 (emphasis added).

This record cannot be squared with Samsung's assertion that the AAA "decided that Samsung was not required to pay fees." Samsung Br. 46. The AAA's

communications and its rules point in the same direction: Samsung owed "Samsung's portion" of the filing fees. This straightforward conclusion is consistent with what the AAA explained when another large company sought to evade its administrative fees under its own arbitration contract. The AAA noted that its fee schedule "requires payment by the corporate party" of certain administrative fees. AAA Aff. at 14, *Uber Techs., Inc. v. Am. Arbitration Ass'n*, No. 2021-03782 (N.Y. App. Div. Oct. 28, 2021). Yet

> when AAA invoiced Uber …, Uber *refused to pay the invoice*. Uber thus placed AAA in a difficult position. Under AAA's Consumer Arbitration Rules, Uber is *required* to pay the Case Management Fee at the time when arbitrator appointment is ready to proceed.

*Id.* at 14 (emphases added).

**3.** Nor did the AAA somehow place the responsibility for Samsung's fees on the claimants. The idea that the AAA "closed the cases given the nonpayment by either party," Samsung Br. 46, runs headlong into the AAA's statement that the arbitrations were "closed due to non-payment of filing fees *by the business*." 5-SA1275 (emphasis added).

**3.a.** Samsung points to the AAA's general discretion to decide that certain rules do not apply, reduce fees for a consumer's economic hardship, and set up an alternative payment process. Samsung Br. 20. But the AAA never decided that its rules didn't apply. It expressly applied its Consumer Arbitration and Multiple Case

Filings rules. 5-SA1266. Nor did the AAA set up some different payment process or treat Samsung as an indigent consumer.[16]

**3.b.** Samsung also relies heavily on MC-10(d), which provides that, in the event of nonpayment, "the AAA may notify the parties in order that one party *may* advance the required payment." 5-SA1263 (emphasis added). This is a red herring.

Yet the AAA never cited MC-10(d). 5-SA1275. Only Samsung did, in support of its now-discarded argument that the claimants would waive their right to arbitrate if they didn't pay Samsung's fees. 5-SA1272. The closest thing Samsung offers is a line in one AAA letter stating that because the claimants had declined to pay "Samsung's portion" of the fees necessary to begin arbitration, arbitration would not begin. 5-SA1275. Samsung characterizes this as a determination that the claimants were also responsible for Samsung's fees.

But whether or not the AAA had this rule in mind, Samsung's argument conflates responsibility and causation. It's true that, causally speaking, if the claimants had paid Samsung's fees, the fees wouldn't have gone unpaid. But that doesn't mean the AAA determined that the claimants were *responsible* for Samsung's

---

[16] Samsung posits that because the AAA didn't stay the arbitrations, this shows that it didn't owe its fees, because otherwise a stay would have been "logical." Samsung Br. 60. But the AAA's decision just reflected that the parties couldn't agree on a stay. Dkt. 27-18. Samsung also points out that the AAA didn't exercise its discretion to bar Samsung from AAA arbitrations. Samsung Br. 60. But the whole problem was that the claimants weren't able to get Samsung to arbitrate.

fees. Indeed, if the claimants had been responsible for the closure of arbitration, their fees would be "non-refundable." 5-SA1200. But because the cases were "closed due to non-payment of filing fees by the business," the claimants got their money back. 5-SA1275.

Judge Leinenweber put it succinctly: Just because the claimants "had the option to pay Samsung's fees does not negate the reality that those fees were deemed Samsung's responsibility by the AAA" as "[a] rule's mere anticipation of violations thereof does not render violations permissible." RSA28. The fact that a party "may" choose to cover the full fees does not excuse the nonpaying party's violation. *See Sigler v. GEICO Cas.*, 967 F.3d 658, 661 (7th Cir. 2020) ("'[M]ay' is a permissive term" that "by definition, does not command anyone to do anything."). This contrasts with other AAA fee rules. 5-SA1177 ("The fee schedule … *shall* apply for all fees charged" and "AAA fees *shall* be paid in accordance with the Costs of Arbitration section." (emphases added)).

**4.** Adopting Samsung's theory would lead to jarring results. AAA rules for arbitrations across the board—not just large-scale individualized arbitrations—provide that in the event of non-payment, one party "may" advance the other party's fees to keep the arbitration going. *See* 5-SA1196, 1263; Am. Arb. Ass'n, *Employment Arbitration Rules & Mediation Procedures* 26, https://perma.cc/HX7S-HCPS. On Samsung's reading, employees or consumers wishing to avoid arbitration could

49

simply refuse to pay their fees, and unless the business fronted the fees, the case would proceed in court. This would be particularly harmful for small businesses. And it would create an end-run around decades of arbitration jurisprudence, allowing parties to "thwart arbitration by unilateral refusal to cooperate." *Moglia*, 547 F.3d at 836. This Court should "decline to adopt a rule that would encourage [parties] to refuse to participate in properly initiated arbitration proceedings." *Brown v. Dillard's*, 430 F.3d 1004, 1012 (9th Cir. 2005).

It is unsurprising that Samsung cites no court to have rewarded intentional refusals to pay by granting the nonpaying party the forum of its choice. To the contrary, courts consistently penalize willful refusals to pay, holding that this constitutes a refusal to arbitrate, a default, or a waiver. *See, e.g.*, *Freeman v. SmartPay Leasing*, 771 F. App'x 926, 933 (11th Cir. 2019) (waiver); *Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir 2015) (default); *Sink v. Aden Enters.*, 352 F.3d 1197, 1199-1200 (9th Cir. 2003) (same); *Espinoza v. Galardi S. Enters.*, 2017 WL 9511098, at *1-3 (S.D. Fla. 2017) (refusal). This includes the many courts that have compelled arbitration when a company refused to pay its share of the filing fees under its own arbitration contract. *See Postmates v. 10,356 Individuals*, 2021 WL 540155, at *3-4, *12 (C.D. Cal. 2021); *Abernathy v. DoorDash*, 438 F. Supp. 3d 1062, 1068 (N.D. Cal. 2020); *Adams v. Postmates*, 414 F. Supp. 3d 1246, 1250, 1252 n.2 (N.D. Cal. 2019), *aff'd*, 823 F. App'x 535

(9th Cir. 2020); *McClenon v. Postmates*, 473 F. Supp. 3d 803, 806-07, 812 (N.D. Ill. 2020); *Espinoza*, 2017 WL 9511098, at *3.

**5.** The out-of-circuit cases that Samsung cites are not to the contrary. These cases involved parties that could no longer afford their fees, which courts have consistently distinguished from a willful refusal to pay.

Both *Lifescan v. Premier Diabetic Services*, 363 F.3d 1010 (9th Cir. 2004), and *Dealer Computer Services v. Old Colony Motors*, 588 F.3d 884 (5th Cir. 2009), involved parties in arbitration that ran out of money. The AAA "changed their [fee] order" and requested that the solvent party advance the full fees to continue. *Lifescan*, 363 F.3d at 1011-12; *see also Dealer Computer*, 588 F.3d at 886. The solvent party instead sought to compel arbitration. These courts concluded that compelling arbitration would be inconsistent with the AAA's decision about how to handle the difficult situation when one party no longer has the means to pay. *Lifescan*, 363 F.3d at 1013; *Dealer Computer*, 588 F.3d at 888. In these specific circumstances, compelling arbitration was inappropriate because an indigent party's inability to keep paying fees was not "'failure, neglect, or refusal' … to arbitrate." *Lifescan*, 363 F.3d at 1013 (quoting § 4).

It makes sense that courts wouldn't try to force indigent parties back into arbitrations they can't afford. The Supreme Court has expressed concern about forcing parties to arbitrate when they can't afford it. *See, e.g.*, *Green Tree*, 531 U.S. at

92. Yet even in this context, both *Lifescan* and *Dealer Computer* acknowledged that their approach was not "totally satisfactory." 363 F.3d at 1013; 588 F.3d at 888.

No surprise then, that the Ninth Circuit has since explained that *Lifescan* does not stand for the proposition "that parties may refuse to arbitrate by *choosing* not to pay for arbitration." *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016). To the contrary, if a party "refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration under the FAA's provision allowing such an order in the event of a party's 'failure, neglect, or refusal' to arbitrate." *Id.* And *Dealer Computer* itself is carefully cabined, distinguishing the case before it from the "difficult situation" where "[respondent] *could* afford to put up its part of the arbitral fee," yet refused to do so, "*and* [petitioner] was *not* financially able to put up the entire … fee." 588 F.3d at 888 n.3.

Taken together, the case law reflects a dividing line. A willful refusal to pay one's filing fees is a refusal to arbitrate. An inability to pay is not. This Court should therefore follow the lead of the Fifth and Ninth Circuits and decline to expand *Lifescan* or *Dealer Computer* to this case where every material fact is inverted. First, unlike parties that had been paying their fees in good faith up until the point when they could no longer do so, "Samsung … declined to pay the fees from the beginning." RSA29. Second, Samsung is a multi-billion-dollar corporation that willfully refused to pay, not an indigent consumer or insolvent business. Third, the

district court concluded that Samsung had made no showing that the claimants could shoulder $4 million on top of the $2.5 million they had already paid. RSA32.

## B. The district court properly compelled arbitration under section 4 and ordered Samsung to pay its fees as determined by the AAA.

Samsung protests that the district court "usurped the AAA's authority and overrode its decision" by reaching a different conclusion from the AAA about fees. Samsung Br. 47, 50. But because the AAA required Samsung to pay its share of the fees, this argument that the district court exceeded its authority is beside the point.

If, however, Samsung wishes to take the position that a district court cannot compel arbitration when a party has refused to pay its filing fees as determined by the AAA, that would be wrong. Samsung's refusal to pay its fees was a "refusal" to arbitrate under the FAA. Under section 4, the district court was required to compel arbitration. And this order would have been toothless if Samsung could keep refusing to pay its fees.

**1.** Before granting a motion to compel arbitration, the FAA requires courts to determine whether a party has shown: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich*, 466 F.3d at 580. In determining whether Samsung had refused to proceed to arbitration, the district court deferred to the AAA's fee determination. It neither rewrote the contract nor usurped the AAA's authority.

It is true that, under the contract, "fees … shall be determined according to AAA rules." 5-SA1162. And it is true that, in the first instance, "courts presume that the parties intend arbitrators, not courts, to *decide* disputes about the meaning and application of particular procedural preconditions for the use of arbitration." *BG Grp. v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (emphasis added).

But the district court didn't "decide" who was responsible for the fees—the AAA did. The district court merely determined that Samsung had refused to pay those fees and that this was a "refusal" to arbitrate under section 4. Courts routinely decide whether a party's failure to pay its arbitration fees satisfies statutory determinations the FAA entrusts to courts. *See, e.g.*, *Cahill*, 786 F.3d at 1294 ("default"); *Sink*, 352 F.3d at 1199-1200 (same); *Espinoza*, 2017 WL 9511098, at *2-3 ("refusal" under section 4). In doing so, courts are no more usurping the AAA's authority than when they enforce an arbitral award including arbitral fees.

Allowing courts to impose consequences for a party's refusal to pay its fees actually supports the arbitrator's authority. Such orders ensure compliance with the arbitrator's rules, which a private party like the AAA has limited ability to enforce. *See* Pfeffer-Gillett, *Unfair by Default*, 171 U. Pa. L. Rev. 459, 486 (2023). Otherwise, uncooperative parties could unilaterally exit the parties' agreed-upon forum and thereby circumvent the FAA.

Even if *BG Group*'s distinction were the operative question here, disputes about an agreement's "enforceability" and "whether [arbitration] may occur" are "matters ... the court must resolve." 572 U.S. at 34-36. In determining whether arbitration may occur, courts must decide not just disputes over "the making of the arbitration agreement," but also "the failure, neglect, or refusal to perform the same." 9 U.S.C. § 4. As the district court explained, Samsung's refusal to pay was bound up with a refusal to arbitrate that, absent a court order, would deprive the claimants of their right to enforce their arbitration contract at all. RSA35. Further, in cases determining that a dispute is for the arbitrator, this Court has compelled arbitration so the arbitrator can determine that issue. *See Zurich*, 466 F.3d at 581; *Lumbermens*, 623 F.3d at 481-83. But that's the very relief Samsung opposes. Moreover, the AAA *already* determined the filing fees issue. Samsung can't disagree with a determination by the arbitrator, refuse to arbitrate based on that disagreement, and then argue that it can't be compelled into arbitration because that determination is solely for the arbitrator. *See Zurich*, 466 F.3d at 581; *see also Stevens Const. v. Chicago Reg'l Council of Carpenters*, 464 F.3d 682, 686-87 (7th Cir. 2006). Otherwise parties could evade section 4 (and thus arbitration) by justifying their refusal to arbitrate with their own view of a procedural issue.

**2.** Having found that Samsung blocked arbitration by willfully refusing to pay its fees, the district court concluded that this was "failure, neglect, or refusal" to

arbitrate under section 4. RSA29. At that point, the district court had no discretion: Once a party has refused to arbitrate, "the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). This ruling was entirely in line with the other courts to have faced this issue. *See supra* 50-51.

**3.** Samsung never comes out and says that a court properly compelling an uncooperative party to arbitrate may not, incidental to that order, compel that party to pay its share of filing fees. So Samsung has forfeited any such argument. But, in any event, it would be incorrect. The FAA gives courts the power to compel arbitration in the face of a party's "refusal … to arbitrate" "in accordance with the terms of the agreement." 9 U.S.C. § 4. By its nature, an order to compel arbitration must reflect the nature of the refusal. Because Samsung's refusal consisted of its refusal to pay its filing fees, the district court correctly ordered payment of those fees to ensure the arbitrations could actually commence.

*Moglia* is instructive. The AAA, under its own rules, stated that it would not begin arbitration unless the parties signed hold-harmless agreements protecting the arbitrators. 547 F.3d at 836. One party refused to do so. *Id.* After concluding that this constituted a refusal under section 4, the district court "directed the [uncooperative party] to sign the hold-harmless agreement and proceed with the arbitration." *Id.* The parties "had promised to arbitrate," so the uncooperative party could be

ordered to take steps necessary "to fulfill that promise." *Id.* This wasn't usurping the AAA's ability to require hold-harmless agreements under its rules, just preventing an uncooperative party from refusing to comply with the AAA's requirements to begin arbitration.

This Court refused to treat this order as any different from a typical "order staying litigation in favor of arbitration." *Id.* at 837-838. As Judge Easterbrook explained, "[j]udges routinely direct parties to do things" through "case-management orders," including orders requiring parties to "pay arbitrators." *Id.* Requiring a party to satisfy the AAA's requirement was no different from other garden-variety orders courts issue to make their rulings effective and keep things moving. *Id.*; *see also Lumbermens*, 623 F.3d at 479-80, 483 (affirming order compelling arbitration and ordering party to produce documents requested by arbitrator); *Espinoza*, 2017 WL 9511098, at *2-3.

Anything less and Samsung could just refuse to pay its filing fees once again. That would make no sense. It would "allow a party refusing to cooperate with arbitration to indefinitely postpone litigation" because "the sole remedy available to a party prejudiced by [nonpayment] would be a court order compelling a return to arbitration. The same offending party could then [refuse to pay] a second time, and

the prejudiced party's sole remedy, again, would be another order compelling arbitration." *Sink*, 352 F.3d at 1201.[17]

Here, the AAA has already weighed in. It determined under its rules that Samsung owed $4 million in filing fees and closed the arbitrations because Samsung refused to pay those fees. In these particular circumstances, it was appropriate to order compliance with a threshold requirement set by the AAA to allow the claimants to have—at long last—their day in arbitration.

## CONCLUSION

This Court should dismiss the appeal for lack of jurisdiction or, alternatively, affirm the district court.

December 12, 2023                    Respectfully submitted,

                                    DEEPAK GUPTA
                                    MATTHEW W.H. WESSLER
                                    THOMAS SCOTT-RAILTON
                                    STEFANIE OSTROWSKI
                                    GUPTA WESSLER LLP
                                    2001 K Street, NW
                                    Suite 850 North
                                    Washington, DC 20006
                                    (202) 888-1741
                                    *deepak@guptawessler.com*

                                    JONATHAN GARDNER
                                    MELISSA H. NAFASH
                                    JONATHAN D. WAISNOR

---

[17] Because *Dealer Computer* and *Lifescan* held that it was inappropriate to compel the insolvent parties to arbitrate, they never addressed courts' authority to order the payment of fees incident to compelling arbitration.

ALEX F. SCHLOW
SHANNON K. TULLY
LABATON SUCHAROW LLP
140 Broadway, 34th Floor
New York, NY 10005
(212) 907-0700

*Counsel for Petitioners-Appellees*

**ADDENDUM**

period at end in pars. (1) and (2) and ''; or'' for the period at end in par. (3).

Subsec. (a)(5). Pub. L. 107–169, § 1(5), substituted ''If an award'' for ''Where an award'', inserted a comma after ''expired'', and redesignated par. (5) as subsec. (b).

Subsec. (b). Pub. L. 107–169, § 1(4), (5), redesignated subsec. (a)(5) as (b). Former subsec. (b) redesignated (c).

Subsec. (c). Pub. L. 107–169, § 1(4), redesignated subsec. (b) as (c).

1992—Subsec. (b). Pub. L. 102–354 substituted ''section 580'' for ''section 590'' and ''section 572'' for ''section 582''.

1990—Pub. L. 101–552 designated existing provisions as subsec. (a), in introductory provisions substituted ''In any'' for ''In either'', redesignated former subsecs. (a) to (e) as pars. (1) to (5), respectively, and added subsec. (b) which read as follows: ''The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.''

## § 11. Same; modification or correction; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

(July 30, 1947, ch. 392, 61 Stat. 673.)

DERIVATION

Act Feb. 12, 1925, ch. 213, § 11, 43 Stat. 885.

## § 12. Notice of motions to vacate or modify; service; stay of proceedings

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident then the notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

(July 30, 1947, ch. 392, 61 Stat. 673.)

DERIVATION

Act Feb. 12, 1925, ch. 213, § 12, 43 Stat. 885.

## § 13. Papers filed with order on motions; judgment; docketing; force and effect; enforcement

The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:

(a) The agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.

(b) The award.

(c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application.

The judgment shall be docketed as if it was rendered in an action.

The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

(July 30, 1947, ch. 392, 61 Stat. 673.)

DERIVATION

Act Feb. 12, 1925, ch. 213, § 13, 43 Stat. 886.

## § 14. Contracts not affected

This title shall not apply to contracts made prior to January 1, 1926.

(July 30, 1947, ch. 392, 61 Stat. 674.)

DERIVATION

Act Feb. 12, 1925, ch. 213, § 15, 43 Stat. 886.

PRIOR PROVISIONS

Act Feb. 12, 1925, ch. 213, § 14, 43 Stat. 886, former provisions of section 14 of this title relating to ''short title'' is not now covered.

## § 15. Inapplicability of the Act of State doctrine

Enforcement of arbitral agreements, confirmation of arbitral awards, and execution upon judgments based on orders confirming such awards shall not be refused on the basis of the Act of State doctrine.

(Added Pub. L. 100–669, § 1, Nov. 16, 1988, 102 Stat. 3969.)

CODIFICATION

Another section 15 of this title was renumbered section 16 of this title.

## § 16. Appeals

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

(Added Pub. L. 100–702, title X, § 1019(a), Nov. 19, 1988, 102 Stat. 4670, § 15; renumbered § 16, Pub. L. 101–650, title III, § 325(a)(1), Dec. 1, 1990, 104 Stat. 5120.)

Amendments

1990—Pub. L. 101–650 renumbered the second section 15 of this title as this section.

## CHAPTER 2—CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

Sec.
201.   Enforcement of Convention.
202.   Agreement or award falling under the Convention.
203.   Jurisdiction; amount in controversy.
204.   Venue.
205.   Removal of cases from State courts.
206.   Order to compel arbitration; appointment of arbitrators.
207.   Award of arbitrators; confirmation; jurisdiction; proceeding.
208.   Chapter 1; residual application.

Amendments

1970—Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692, added heading for chapter 2 and analysis of sections for such chapter.

### § 201. Enforcement of Convention

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

(Added Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692.)

Effective Date

Section 4 of Pub. L. 91–368 provided that: "This Act [enacting this chapter] shall be effective upon the entry into force of the Convention on Recognition and Enforcement of Foreign Arbitral Awards with respect to the United States." The Convention was entered into force for the United States on Dec. 29, 1970.

### § 202. Agreement or award falling under the Convention

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

(Added Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692.)

### § 203. Jurisdiction; amount in controversy

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

(Added Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692.)

### § 204. Venue

An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

(Added Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692.)

### § 205. Removal of cases from State courts

Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

(Added Pub. L. 91–368, § 1, July 31, 1970, 84 Stat. 692.)

### § 206. Order to compel arbitration; appointment of arbitrators

A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32(c) because this brief contains 13,999 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

*/s/ Deepak Gupta*
Deepak Gupta

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Seventh Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta