In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-2842

PAULA WALLRICH, *et al.*,

*Plaintiffs-Appellees*,

*v.*

SAMSUNG ELECTRONICS AMERICA, INCORPORATED and SAMSUNG ELECTRONICS COMPANY, LIMITED,

*Defendants-Appellants*.

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
No. 1:22-cv-05506 — **Harry D. Leinenweber**, *Judge*.

ARGUED FEBRUARY 15, 2024 — DECIDED JULY 1, 2024

Before SYKES, *Chief Judge*, and EASTERBROOK and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Paula Wallrich and several thousand other consumers filed arbitration claims before the American Arbitration Association alleging that Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., through their electronic devices, unlawfully collect and store sensitive biometric data in violation of Illinois law. Samsung denied the

allegations. Further, it refused to pay the administrative filing fees required by the AAA. The AAA, in its discretion and in line with its rules, terminated the arbitration proceedings, opening the door for the parties to pursue their claims in federal court. Rather than take that approach, the consumers filed a petition to compel arbitration in district court under 9 U.S.C. § 4 of the Federal Arbitration Act. The court ordered Samsung to arbitrate and to pay the associated AAA filing fees. Samsung appealed, disputing the existence of an arbitration agreement with the consumers and challenging the district court's authority to require it to pay the AAA's fees. Because the consumers failed to meet their evidentiary burden in proving the existence of an arbitration agreement with Samsung, and because the parties' alleged agreement incorporated the AAA's rules and procedures, which granted the AAA substantial discretion over resolving fee disputes, we reverse.

I

Appellants, Samsung Electronics Co., Ltd. and its subsidiary, Samsung Electronics America, Inc., design, manufacture, and sell electronic devices, including smartphones and tablets. When consumers purchase or use Samsung devices, they automatically agree to Samsung's terms and conditions, either by opening the original product packaging or by creating a Samsung user account to be used with the device. Under those terms, the consumer agrees that "all disputes" between the consumer and Samsung arising in any way from the sale, condition, or performance of the device "shall be resolved exclusively through final and binding arbitration, and not by a court or jury." Further, the terms specify that the arbitration "shall be conducted according to the American Arbitration

Association (AAA) Commercial Arbitration Rules" and that administrative, facility, and arbitrator fees shall likewise "be determined according to AAA rules" when, as here, the damage claims exceed $5,000.

Under the AAA rules, the AAA "has the discretion to apply or not to apply" any of its rules, including rules that cover administrative fees. These rules outline the initial filing fee requirements imposed on parties when 25 or more similar claims for arbitration are filed. In such cases, both the individual consumers and the business entity have initial filing fees due to the AAA before the arbitration can continue.

Despite this initial fee requirement, the AAA Supplementary Rules for Multiple Case Filings contemplate the scenario where one party refuses to pay its share of the filing fees. Rule MC-10(d) states, "If administrative fees, arbitrator compensation, and/or expenses have not been paid in full, the AAA may notify the parties in order that one party may advance the required payment within the time specified by the AAA." In other words, if a business entity like Samsung refuses to pay the fees, the AAA will notify the consumers of the business's nonpayment, and if the consumers still wish to proceed, they can advance the business's fees. On the other hand, according to rule MC-10(e), if the consumers choose not to advance the fees, "the AAA may suspend or terminate [the] proceedings" and "may also decline to administer future arbitrations with the parties involved." At that point, the rules specify that either party may choose to submit its dispute to the appropriate court for resolution.

Enter Appellees, a group of 35,651 Illinois consumers, who filed arbitration demands before the AAA alleging that they purchased Samsung devices and that those devices

unlawfully collected and stored sensitive biometric data in violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. Skeptical of the consumers' litigation tactics and the veracity of their claims, Samsung flagged several problems with the consumers' filings to the AAA, such as missing or inaccurate contact information and misspelled addresses. The AAA agreed that the filings were deficient and requested that the consumers submit revised versions. When the consumers complied, the AAA notified the parties that the consumers had met the AAA's filing requirements. Then, the AAA requested $4,125,000 from Samsung, representing Samsung's share of the initial administrative filing fees (the consumers had already paid their share).

Samsung, still doubting the merits of the claims, refused to pay its share of the filing fees. In response, and in accordance with the rules discussed above, the AAA offered the consumers the opportunity to advance Samsung's fees so that the arbitration could proceed, but they declined. The AAA then notified the parties that, unless it heard otherwise, it would close the arbitration proceedings and refund the consumers' filing fees, allowing either party to submit the dispute to the appropriate court for resolution. The consumers responded, reiterating that they would not advance the fees and asking the AAA to stay the proceedings until they could get an order compelling arbitration from a federal court. The AAA denied the request for a stay and closed the arbitration proceedings.

Rather than submit their cases to federal court on the merits, the consumers filed a Petition to Compel Arbitration under § 4 of the Federal Arbitration Act. 9 U.S.C. § 4. Aside from attorneys' fees and costs, the only relief sought in the petition was an order compelling Samsung to pay its AAA filing fees

and to arbitrate the claims. The district court, relying on copies of the consumers' arbitration demands before the AAA, copies of Samsung's terms and conditions, a spreadsheet containing the consumers' names and addresses, and the AAA's determination that the consumers had met the AAA filing requirements, found that the consumers sufficiently established the existence of a valid arbitration agreement. Then, the court ordered Samsung to pay its administrative filing fees and proceed to arbitration. It issued a separate minute entry indicating that it granted the consumers' petition and staying the case pending the arbitration. This appeal followed.

## II

Before turning to the merits of the appeal, we must address two jurisdictional hurdles. First, we agree with the parties that the district court had subject matter jurisdiction over the case. Chapter 2 of the Federal Arbitration Act, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, confers subject matter jurisdiction upon district courts for actions or proceedings falling under the Convention, regardless of the amount in controversy. 9 U.S.C. § 203. And an action to enforce an arbitration agreement falls under the Convention if the agreement (1) arises out of a commercial relationship (2) that is not entirely between citizens of the United States. *Id.* § 202; see also *Vaden v. Discover Bank*, 556 U.S. 49, 59 n.9 (2009) (citing Chapter 2 of the FAA as an example of Congress expanding federal subject matter jurisdiction). Here, the alleged arbitration agreements at issue indisputably arose out of a commercial relationship—the consumers purchased electronic goods from Samsung. And at least one of the parties, Samsung Electronics Co., Ltd., is not a citizen of the United States.

Therefore, under § 203 of the FAA, the district court had subject matter jurisdiction over the consumers' action seeking to enforce the agreements.

We next turn to appellate jurisdiction. The consumers argue that we do not have appellate jurisdiction over Samsung's appeal. We disagree. The consumers proceeded in the district court under § 4 of the FAA by petitioning "for an order directing that … arbitration proceed in the manner provided for" in "a written agreement for arbitration." 9 U.S.C. § 4. The district court granted the petition and ordered Samsung to arbitrate, then inexplicably stayed the case. Section 16 of the FAA, 9 U.S.C. § 16, governs appellate review of arbitration orders. Pertinent to this appeal are two subsections: § 16(a)(3) and § 16(b)(1). Section 16(a)(3) states, "An appeal may be taken from … a final decision with respect to an arbitration that is subject to this title." But § 16(b)(1) limits appellate review in certain circumstances, stating, "[A]n appeal may not be taken from an interlocutory order … granting a stay of any action under section 3 of this title." The consumers believe § 16(b)(1) precludes our appellate review because the district court stayed the case after compelling Samsung to arbitrate. In further support, they chiefly rely on a footnote from the Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000). The consumers' argument is flawed. Section 16(b)(1) and *Green Tree* do not apply here.

Section 16(b)(1) only limits appellate review of an "interlocutory order" granting a stay "under section 3." And a § 3 stay only occurs in proceedings brought "upon any issue referable to arbitration" after one of the parties asks the court for the stay. Such proceedings are distinguishable from those

brought under § 4 (like the proceedings here) in that they involve underlying substantive claims for relief that are themselves, in whole or in part, referable to arbitration and distinct from mere requests to compel arbitration. See *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) ("The FAA also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4."); see, e.g., *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 413–15 (7th Cir. 2014) (seeking a stay under § 3 where underlying fraud claims were referable to arbitration).

Thus, in a § 3 setting, a district court will have substantive claims before it that are distinct from a request to arbitrate. If the court finds that a valid arbitration agreement exists, it must compel arbitration, stay the case, and retain jurisdiction over those substantive claims until arbitration concludes. The district court's interlocutory order compelling arbitration in that circumstance would not be appealable, squarely fitting within the limitation set forth in § 16(b)(1). On the other hand, in a § 4 setting, the only issue before the district court is a petition to compel arbitration; no underlying substantive claims for relief are raised. Therefore, once the court issues its arbitration order (leaving nothing else for it to do), it renders a final decision that is appealable under § 16(a)(3); § 16(b)(1) would not apply.

The Supreme Court's reasoning in *Green Tree* tracks with our interpretation of § 16(a)(3) and § 16(b)(1). In that case, Larketta Randolph had sued Green Tree Financial Corp. for violations of the Truth in Lending Act (TLA) and the Equal Credit Opportunity Act (ECOA) based on a finance agreement

between the parties. 531 U.S. at 82–83. Green Tree filed a motion to compel arbitration based on provisions of the agreement and sought a stay of the case, or, alternatively, a dismissal. *Id.* at 83. The district court granted the motion to compel, denied the request for a stay, and dismissed her TLA and ECOA claims with prejudice. *Id.* Randolph appealed. *Id.* at 84. The Supreme Court concluded that it had appellate jurisdiction under § 16(a)(3) to review the order compelling arbitration, holding that "where … the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable." *Id.* at 89; see also *id.* at 86 (defining a "final decision" in § 16(a)(3) as "a decision that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment'") (quotation omitted).

In a footnote, however, the Court observed, "Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." *Id.* at 87 n.2 (citing 9 U.S.C. § 16(b)(1)). The consumers latch onto this footnote, reading it expansively to mean that any entry of a stay by a district court renders an arbitration order unappealable. But that view wholly ignores the context of the Court's observation. A stay in *Green Tree* would have necessarily been under § 3 because Randolph brought substantive TLA and ECOA claims—the issues referable to arbitration—before the district court, not merely a petition to compel arbitration under § 4. If it stayed the case, then, the court would have needed to retain jurisdiction over those substantive claims, thereby precluding appellate review. Thus, read correctly and in context, the Court's footnote in *Green Tree* merely confirms our discussion above—that a stay entered under § 3 is an interlocutory order

precluded from immediate appellate review under § 16(b)(1). *Green Tree* did not involve a § 4 proceeding, and nothing in the Court's reasoning or in the language of § 16(b)(1) supports the consumers' broad rule that any entry of a stay, even an unnecessary one in a § 4 proceeding, precludes appellate review.

Our sister circuits have reached this same conclusion. For example, in *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. Wise Alloys, LLC*, 807 F.3d 1258 (11th Cir. 2015), a district court compelled arbitration and stayed the proceedings even though the plaintiff had only sought an arbitration order without bringing any substantive claims. *Id.* at 1264–65. The court rejected the argument that the stay precluded appellate review, noting (1) that the language in *Green Tree* read in context only referred to stays entered as interlocutory orders in § 3 proceedings, (2) that the district court was not authorized to enter a stay (especially under § 3), and (3) that the district court's order compelling arbitration resolved "the only claim for relief advanced by any party to the action," rendering the order a final decision appealable under § 16(a)(3). *Id.* at 1268–70; see also *Int'l All. of Theatrical Stage Emp. & Moving Picture Technicians, Artists, and Allied Crafts v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1040 (9th Cir. 2015) ("When the only matter before a district court is a petition to compel arbitration and the district court grants the petition, appellate jurisdiction may attach regardless of whether the district court issues a stay."); *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 391–93 (5th Cir. 2006) (rejecting the appellees' argument that a stay in the case rendered the order non-appealable because the stay was not issued "pursuant to section 3" as required under § 16(b)(1)).

Our precedent likewise only reaffirms our appellate jurisdiction. For instance, the consumers argue that in *INTL FCStone Financial Inc. v. Jacobson*, 950 F.3d 491 (7th Cir. 2020), we barred a similar appeal in an action that only sought to compel arbitration. That is not accurate. Unlike here, the plaintiff in *FCStone* did not solely petition to compel arbitration under § 4. See *id.* at 495 (noting that the plaintiff's amended complaint "added" a § 4 count). Rather, it filed suit seeking a declaratory judgment that "FINRA is not a valid arbitration forum for the parties' dispute" and that "NFA is the valid forum for this dispute." *Id.* We contemplated whether § 16(a)(3) conferred appellate jurisdiction but determined that it did not because "[t]he district court kept the lawsuit open to address arbitration-related issues, including arbitration venue and whether grounds existed to grant a permanent injunction." *Id.* at 501. Thus, we could not conclude that "the district court left 'nothing more for the court to do but execute the judgment,' as needed to qualify the arbitration order as a final decision." *Id.* (quotation omitted); cf. *Moglia v. Pac. Emps. Ins. Co. of N.A.*, 547 F.3d 835, 836–37 (7th Cir. 2008) (finding district court's order compelling arbitration and staying proceedings involving unresolved bankruptcy claims to not be appealable).

Finally, the consumers believe that the Supreme Court's recent decision in *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024), supports their argument. Not so. *Spizzirri* merely held that a district court must issue a stay (rather than dismiss a case) when a party requests a stay under § 3. *Id.* at 1175. The Court therefore answered a question that had been explicitly left open in *Green Tree*. See 531 U.S. at 87 n.2 ("The question whether the District Court should have [stayed rather than dismissed the case] is not before us, and we do not address it."). *Spizzirri*'s

holding adheres to our § 3 analysis above and did not address § 4. It does not apply.

Because the consumers proceeded in the district court under § 4 and merely sought an order compelling arbitration, the limitation on appellate review found in § 16(b)(1) is inapposite. The district court did not have the authority to enter a stay, and whatever stay it did enter was certainly not one authorized under § 3—no party sought a stay, and the case did not involve an issue referable to arbitration. Rather, after the district court compelled arbitration, it resolved the action's only claim for relief. As in *Green Tree*, we conclude that the district court's decision ended the litigation on the merits and left "nothing more for [it] to do but execute the judgment." 531 U.S. at 86. It therefore issued an appealable final decision under § 16(a)(3).

III

We next turn to the merits. A party seeking to compel arbitration under the FAA must show three elements: (1) an enforceable written agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal to arbitrate. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018). Samsung disputes the first and third elements. First, it argues that the consumers failed to present evidence of an arbitration agreement and that the district court's finding of an enforceable agreement wrongly shifted the evidentiary burden to Samsung. Second, Samsung asserts that it did not refuse to arbitrate by not paying the initial AAA filing fees. Instead, in its view, the arbitration proceeded according to the alleged agreement's terms, and the district court exceeded its authority when it ordered Samsung to pay the fees. We address each argument in turn.

A

While the FAA does not provide the evidentiary standard applicable for determining whether to compel arbitration, we (as well as our sister circuits) have analogized the standard needed to that required at summary judgment. A district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if no genuine dispute of material fact exists as to the formation of the agreement. See *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The party seeking to compel arbitration bears the initial burden to show that an arbitration agreement exists. See *A.D.*, 889 F.3d at 1063 ("However, as the party seeking to compel arbitration, Credit One had the burden of showing that A.D. was bound by the cardholder agreement as an authorized user."); see also *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021) ("To determine whether the existence of an [arbitration] agreement is 'in issue,' this court applies the standard for summary judgment. … [T]he movant asserting the existence of a contract[] must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists.").

In this case, as the parties seeking to compel arbitration, the consumers bore the burden of producing a valid arbitration agreement with Samsung. But because Samsung conceded that an individual agrees to arbitrate all disputes when he or she purchases or uses a Samsung device, the consumers effectively only needed to present evidence that they were in fact Samsung customers. (Individuals who, for instance, purchase or use the Samsung device of another without resetting

that device or without creating a unique user account might not have notice of or be subject to Samsung's terms. But the parties proceed as if the consumers do not fall into this narrow category, so we do the same.) To support their petition to compel arbitration, the consumers relied on the following: (1) copies of their arbitration demands made before the AAA; (2) a spreadsheet containing their names and addresses; (3) copies of Samsung's terms and conditions; and (4) the AAA's determination that the consumers had met the AAA filing requirements. That was not enough.

First, the arbitration demands are nothing more than allegations, much like a complaint filed in a district court. For example, one representative demand stated, "Paula Wallrich … is a natural person who owns a Samsung Galaxy device." But like a complaint, the demand is only signed by counsel. No claimant submitted any declaration or otherwise attested under the penalty of perjury to the facts alleged in the arbitration demands. "[A] plaintiff must do more than simply point to the allegations in his complaint," or in this case, the allegations in an arbitration demand, to defeat summary judgment. *Est. of Perry v. Wenzel*, 872 F.3d 439, 461 (7th Cir. 2017).

The copies of Samsung's terms and conditions and the spreadsheet containing the consumers' names and addresses are also insufficient. Again, Samsung does not dispute that its terms and conditions bind its customers to arbitration agreements. The terms and conditions the consumers identify are simply copies found in any Samsung device or on Samsung's website, not terms and conditions reviewed and received by specific consumers. Without more, those copies do nothing to show that any of the consumers purchased a Samsung device. And a spreadsheet of only names and addresses likewise fails

to show that any of those named were Samsung customers. Identifying a generic arbitration agreement and then independently listing the names and addresses of alleged consumers without doing anything to link those consumers to the agreement does not satisfy the "existence of an arbitration agreement" element—like any agreement, the element requires a showing of assent between the relevant parties. See *A.D.*, 885 F.3d at 1062–63 (acknowledging undisputed arbitration agreement between Credit One Bank and a mother but noting that Credit One had the burden of independently showing "that A.D. was bound by the cardholder agreement").

Finally, the AAA's determination that the consumers had met the filing requirements under the AAA rules also does not serve as evidence of an arbitration agreement between the consumers and Samsung. The AAA's filing requirements involve no substantive determinations. Rather, a claimant only needs to explain the dispute, list the names and addresses of the consumers, specify the amount in dispute, identify a location for the hearing, state the relief sought, and attach a copy of the alleged arbitration agreement. Once those boxes are checked, the AAA concludes that filing requirements have been met. At no point in this initial process does the AAA determine whether the claimants entered into an arbitration agreement with the business or even whether the claimants were customers of the business. Cf. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1048, 1050–51 (7th Cir. 2020) (reversing a district court's finding of valid arbitration agreements based only on templates of agreements rather than specific agreements with employees). Thus, the AAA's filing determination adds nothing to support the consumers' bare allegations that they

purchased Samsung devices or otherwise entered into arbitration agreements with Samsung.

The consumers could have submitted almost anything to meet their burden of proving the existence of an arbitration agreement. For example, they could have submitted receipts, order numbers, or confirmation numbers from their purchases of Samsung devices. Or even more directly, they could have submitted declarations attesting to the allegations in their arbitration demands. They did not. Without adducing any evidence aside from their allegations, the consumers failed to meet their initial burden of proving the existence of a valid arbitration agreement with Samsung.

The consumers alternatively argue that we should remand the case to allow them to present additional evidence. But the summary judgment stage, which our posture is akin to, does not allow second chances. See *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit … .") (quotation omitted); see also *Bazemore*, 827 F.3d at 1333 ("[Defendant] would have us hold, essentially, that a party cannot lose a motion to compel arbitration for failure to prove that an arbitration agreement exists without being afforded a second bite at the apple—an opportunity to prove the agreement's existence at trial. This we decline to do."). The consumers had the opportunity to present their evidence, and they failed to do so.

B

Even if the consumers had met their evidentiary burden, the district court exceeded its authority and the scope of the arbitration agreement by ordering Samsung to pay the AAA

filing fees. As discussed above, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court … for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Here, Samsung and the consumers proceeded through arbitration in the manner provided for in their agreement. That is all that was required.

The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). Thus, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*; see also *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) ("Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."). Additionally, procedural issues, like fee disputes, are "presumptively *not* for the judge, but for an arbitrator, to decide." See *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (emphasis in original).

The arbitration agreement allegedly entered into between Samsung and the consumers delegated threshold arbitration fee disputes to the AAA. The parties thus bargained for the AAA's discretion over the payment of administrative filing fees, including the consequences that would stem from a party's refusal to pay those fees. After Samsung refused to pay its fees, the AAA, in line with its rules (which it applies in

its discretion), allowed the consumers to advance Samsung's fees. If the consumers had advanced the fees, Samsung would have arbitrated the merits of the consumers' claims. However, the consumers declined. The AAA then could have stayed the arbitration, as requested by the consumers, but it chose not to. Instead, it terminated the proceedings, opening the door for the consumers to pursue their claims in district court. Rather than take this route, the consumers sought an order compelling Samsung to arbitrate and to pay the required fees. But this request was outside the district court's authority. Samsung and the consumers' arbitration proceeded in line with their agreement. The AAA considered the dispute and terminated the arbitration within its discretion. At that point, arbitration was complete, and the district court did not have the authority to flout the parties' agreement and disturb the AAA's judgment.

Other circuits agree with our position. In *Dealer Computer Services, Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884 (5th Cir. 2009), for example, Dealer Services and Old Colony agreed to arbitrate under AAA rules. *Id.* at 886. Dealer Services paid its share of arbitration fees, but Old Colony did not, citing a lack of assets. *Id.* Dealer Services therefore brought a § 4 petition to compel Old Colony to arbitrate and pay the required fees, which the district court granted. *Id.* The Fifth Circuit reversed, concluding that the district court could not compel Old Colony to arbitrate and pay the AAA fees because administrative filing fees (which the parties had agreed would be resolved per AAA rules) are "conditions precedent to arbitration" and "are procedural issues left to the discretion of the arbitrators." *Id.* at 888.

Similarly, in *Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010 (9th Cir. 2004), the parties agreed to resolve their disputes, including disputes related to the payment of fees, based on AAA rules. *Id.* at 1011–12. After Premier did not pay its share of filing fees, the AAA suspended the arbitration proceedings, and Lifescan filed a petition to compel Premier to arbitrate and pay the fees—the district court granted the petition. *Id.* at 1011. Like the Fifth Circuit, the Ninth Circuit reversed. The court rejected Lifescan's argument that arbitration does not "begin" until the parties deposit their fees. *Id.* at 1012. Rather, the court noted the substantial discretion given to arbitrators under AAA rules in how to handle the procedure and payment of fees. *Id.* 1012–13 ("The arbitrators exercised their discretion in this case by allowing the arbitration to proceed on the condition that Lifescan advance the remaining fees. This may not be an ideal solution to the problem of a party's failure to pay its share of the fees, but it is well within the discretion of the arbitrators."). It therefore concluded that the arbitration "proceeded pursuant to the parties' agreement and the rules they incorporated." *Id.* at 1013.

The consumers note that *Dealer Computer Services* and *Lifescan* involved parties who did not have the means to pay their fees. They urge us to draw a line between those types of parties and parties like Samsung, who simply choose not to pay their fees despite having the funds. In the consumers' view, such action is an outright neglect and refusal to arbitrate, and allowing a company like Samsung to avoid arbitration in this way would render the arbitration process and the FAA without force. No doubt, some courts have pondered drawing this line between indigent and non-indigent parties. See, e.g., *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) ("Our decision that Tillman's case may proceed does not

mean that parties may refuse to arbitrate by *choosing* not to pay for arbitration. If Tillman had refused to pay for arbitration despite having the capacity to do so, the district court probably could still have sought to compel arbitration … .") (emphasis in original). But we see no reason to make that distinction.

The Federal Arbitration Act does not grant the consumers an unfettered right to arbitrate, and nothing in the statute treats parties differently based on financial status. Rather, all the law requires is that the parties arbitrate according to the terms of their agreement. The agreement here delegated fee issues to the procedures and rules of the AAA. And the AAA, using those rules, denied a stay, terminated the arbitration, and sent the claims to federal court after Samsung refused to pay its fees. The parties therefore fully "arbitrated" under their agreement. See *Noble Cap. Fund Mgmt., LLC v. US Cap. Glob. Inv. Mgmt., LLC*, 31 F.4th 333, 336 (5th Cir. 2022) ("Here the parties' arbitration agreements called for arbitration pursuant to JAMS [Rules], which included the right of JAMS to terminate the arbitration proceedings for nonpayment of fees by any party. Exercising this right, JAMS terminated the arbitration proceeding following the Fund's nonpayment. Following the lead of our sister circuits, we conclude that arbitration 'has been had.'"). Thus, even in a case like this one, where an arbitration proceeding ends before reaching the merits, "the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements." *Id.*; see also *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir. 2015) (concluding that the arbitration "had been had" in accordance with the arbitration agreement when the AAA terminated the proceedings following Cahill's refusal to pay fees).

In sum, even assuming an arbitration agreement between the consumers and Samsung, the consumers cannot compel Samsung to pay the AAA's administrative fees. The parties agreed to abide by the rules and procedures of the AAA, and they proceeded through arbitration in accordance with those rules and their consequences. If the AAA believed Samsung was abusing the arbitration process, it could have stayed the case or threatened to decline administering future consumer arbitrations with Samsung, but it did not. Instead, the AAA terminated the proceedings and invited the parties to resolve their claims in district court. At that point, Samsung and the consumers' arbitration was complete. The consumers may view this result as unjust, but we are here because they invoked their alleged agreement with Samsung; they cannot now complain of that agreement's terms. Further, the consumers were not left without recourse. They could have advanced Samsung's fees and continued with arbitration, or they can now pursue their claims on the merits in district court.

REVERSED